```
 1                      IN THE UNITED STATES DISTRICT COURT

 2                      IN AND FOR THE DISTRICT OF DELAWARE

 3                                  - - -

 4    UNITED STATES OF AMERICA,        :     CRIMINAL ACTION
                                       :
 5               Plaintiff,            :
      v                                :
 6                                     :
      OMAR MORALES COLON,              :
 7                                     :
                 Defendant.            :     NO. 17-47-LPS-1
 8
                                  - - -
 9
                          Wilmington, Delaware
10                     Friday, September 17, 2021
                       Jury Trial - Volume A
11
                                  - - -
12
      BEFORE:   HONORABLE LEONARD P. STARK, U.S.D.C.J., and a jury
13
                                  - - -
14    APPEARANCES:

15

16               UNITED STATES ATTORNEY'S OFFICE
                 BY:  WHITNEY CLOUD, ESQ.,
17               And, JENNIFER K. WELSH, ESQ.
                 Assistant United States Attorneys
18
                          Counsel for Government
19

20               LAW OFFICE OF DINA CHAVAR
                 BY:  DINA CHAVAR, ESQ.
21
                          Counsel for Omar Morales Colon
22

23
      Valerie J. Gunning              Brian P. Gaffigan
24    Official Court Reporter         Official Court Reporter

25
```

1                           - oOo -

2                    P R O C E E D I N G S

3              (REPORTER'S NOTE:  The following jury trial was

4    held in open court, beginning at 8:30 p.m.)

5              THE COURT:  Good morning, everyone.

6              (The attorneys respond, "Good morning, Your

7    Honor.")

8              THE COURT:  I'll have the government introduce

9    the case, please.

10             MS. WELSH:  Yes, Your Honor.  I'm sorry.  I'm a

11   little rusty.

12             THE COURT:  Okay.

13             MS. WELSH:  Your Honor, Jennifer Welsh for

14   the government with Whitney Cloud, co-counsel in the case.

15   And we're here in the matter of United States versus Omar

16   Morales Colon.

17             Can I remove my mask?

18             THE COURT:  You may while we're speaking, yes.

19             MS. WELSH:  And it's Criminal Action No. 17-47.

20   The defendant is present with counsel.  And the government

21   is ready to proceed.

22             THE COURT:  Okay.  Thank you very much.

23             Good morning, Ms. Chavar.

24             MS. CHAVAR:  Good morning, Your Honor.

25             THE COURT:  You are ready to proceed as well;

1    correct?  Ms. Chavar, are you ready to proceed?

2              MS. CHAVAR:  I am.  And may I introduce you to

3    Marisa Rossman, an attorney who will be assisting me during

4    the jury selection?

5              THE COURT:  Good morning, Ms. Rossman.

6    Welcome.

7              MS. ROSSMAN:  Good morning.  Thank you.

8              THE COURT:  Good morning, Mr. Colon.

9              So let's start with this continuance request we

10   got late in the date yesterday.

11             Ms. Chavar, why don't you come to the podium.

12   There is really not much in here, and as best I can tell,

13   you don't indicate you are not prepared for trial but if I

14   misunderstand, let me know.  And you can take your mask off

15   while speaking if you want to.

16             MS. CHAVAR:  I do.  And I thank you.

17             Your Honor, there is not much in that motion

18   because I think it's pretty simple.  What I wanted to bring

19   to the Court's attention is that there are certain tasks

20   that Mr. Colon has asked me to do, and they can be put in

21   two groups.  One of them would be to locate witnesses and

22   the other would be to subpoena certain records, and which,

23   because they would go to the defense, I'm reluctant to name

24   those records.  I'm happy to let Your Honor know at sidebar,

25   but ...

1          THE COURT:  Sure.  I'm not looking for

2    specifics.

3          MS. CHAVAR:  Thank you.

4          THE COURT:  Really mostly I want to know what is

5    your view because I read this motion as Mr. Colon would like

6    certain things, but I'm ready for trial.

7          MS. CHAVAR:  My view is this:  I have an

8    investigator looking for those witnesses.  I don't know how

9    many he will find before Monday.

10          As for the records, and I pondered this

11    yesterday afternoon for awhile after I was through meeting

12    with Mr. Colon.  How -- I don't know how can I say, I don't

13    know what is in them, whether I am fully prepared for trial.

14          I looked back at some of my notes and notes that

15    I had with prior counsel.  It has been a consistent request.

16    It's not something new.  I looked at that first, or later in

17    the day, rather.

18          We met, Your Honor, Mr. Colon and I.  I'll just

19    get right to the point.  I did as much as I could as far as

20    focusing on the case, learning the case, reviewing the

21    evidence because it's, it's a lot.  To that end, I have

22    working knowledge of the case.

23          And now we have this.  And it was one of those

24    things where, in the last month, it was on my list.  I had

25    difficulties trying to get an investigator onboard.  A lot

1    of difficulties with that.

2           And before you know it, then time goes by, and

3    at our meeting yesterday, Mr. Colon said to me, at the end

4    of the meeting, do you think that we're going to get these

5    records in time?

6           It usually takes 21 days.  It says on their

7    notice 21 days, so I don't know.  I don't know how they

8    would respond to a court order with a specific date to

9    produce, which I would make the 20th.  And that's where it's

10   at.  He has asked for a modest continuance, very modest,

11   30 days.  He made that clear to me, like could we just get

12   30 days, no more.

13          I, in my paper, extended that because that would

14   be the end of October to a date in November because of

15   scheduling difficulties I have in October.

16          Your Honor, in a case like this, where I was

17   appointed maybe four months ago, I'm ready for a trial as

18   far as knowing the case and understanding the government's

19   theory and formulating a strategy for defense.  But it's

20   kind of, I don't know that I could stand here, that any

21   attorney should stand here and say I am fully prepared,

22   there is no need to do anything further when Mr. Colon has

23   brought this to my attention and had a reasonable discussion

24   about it.

25          THE COURT:  All right.  Let me ask you just a

1    couple more questions.

2            MS. CHAVAR:  Yes.

3            THE COURT:  It sound like what you are saying is

4    some or all of what Mr. Colon is asking you to do, he has

5    asked for some time; that is, these witnesses and these

6    records, he didn't ask you just for the first time yesterday

7    to locate them or subpoena them.  Is that right?

8            MS. CHAVAR:  That is correct, Your Honor.  And I

9    apologize for that.  I think it came -- well, I know it came

10    up briefly in our first meeting and then he raised it again

11    at end of our meeting in July, after we went through a lot

12    of other.

13            THE COURT:  Was any of this new to you yesterday

14    or did you know all of it was something he wanted by July?

15            MS. CHAVAR:  I knew it was something he wanted

16    by July and I lost track of that.

17            THE COURT:  And the subpoenaed record, the

18    records he wants subpoenaed, you have subpoenaed them but

19    you just haven't gotten them returned yet; is that right?

20            MS. CHAVAR:  I have not subpoenaed them yet.

21    When he brought it up yesterday, it was like I remembered

22    from the week before or whenever we finished pretrial

23    motions.  And I spoke to him and I said, okay, we're going

24    to turn our direction to that now and then I got caught up

25    in getting an investigator, getting that going.  I just --

1          THE COURT:  Okay.  And then your motion does say

2     there were factors that arose that were beyond your control

3     which delayed the completion of certain tasks requested by

4     Mr. Colon.  I take it is one of them the difficulty you had

5     finding an investigator?

6          MS. CHAVAR:  Yes, as well as complications only

7     other cases.

8          THE COURT:  Is there anything else that was

9     unforeseen that you feel comfortable saying to me in open

10     court?  If there is anything.

11          MS. CHAVAR:  Yes, I would just say difficulties

12     with three other cases that was unforeseen and required my

13     immediate attention in the month of August.  One in the very

14     beginning of August.

15          THE COURT:  I don't --

16          MS. CHAVAR:  I'm sorry.

17          THE COURT:  Okay.  I really am looking for, I'm

18     making a list of the things that were unforeseen.  I

19     understand difficulty finding an investigator, complications

20     with other cases.  Is there anything else on that list, not

21     more detail but other items that would have been unforeseen

22     to you that you feel comfortable talking about?

23          MS. CHAVAR:  Well, in the week that the pretrial

24     motions were due, I had a personal issue that prevented me

25     from working at full speed that week.

1          THE COURT:  All right.

2          MS. CHAVAR:  And I apologize, Your Honor.

3          THE COURT:  Thank you.  Let me see what the

4   government wants to say about this.

5          MS. WELSH:  Your Honor, I'm going say with

6   slightly more urgency than the things we said before because

7   we are coming to another trial date as close as we have ever

8   come and here we are with another continuance request.

9          Here we stand four years and four months since

10  the defendant was arrested.  By the way, also four years and

11  four months since potential testifying cooperators were

12  arrested.  A jury is here to be impaneled, and the night

13  before jury selection, the defendant reiterates his request

14  for witnesses and documents that he claims are going to

15  change the trajectory of this case.

16         They will not.  There are no magic witnesses

17  here.  There are no magic documents that are going to

18  explain away why the defendant showed up to the parking lot

19  of a hotel with almost $400,000 to meet with somebody who

20  had 17 kilograms of cocaine and why he had a secret

21  underground marijuana bunker.

22         His goal as always is not to, you know, come up

23  with documents or witnesses that are going materially impact

24  the case.  It's to run out the clock so that our cooperators

25  will decide it is not worth their while to continue to wait

1    to be sentenced.

2            And to some extent, his strategy has worked.

3    The government's case has changed and evolved over the case

4    of four years, and we have fewer witnesses starting Monday

5    than we would had this case gone to trial a couple of years

6    ago.  Some important witnesses.  Our case is still strong,

7    we've evolved, but we have lost witnesses and we would

8    continue to lose witnesses even if there were a short

9    continuance, potentially.

10            You know, it seems on its face like a reasonable

11    request to just move -- if you don't know the whole history

12    of this case, to just move by 30 days, but given the

13    circumstances, the logistics here, the jury is here.  Our

14    witnesses are prepared to testify, some of whom have moved

15    on by the way because of the passage of time, retired, have

16    to travel.  Everybody is prepared to come for trial next

17    week.

18            If the defendant has witnesses that he would

19    like to have here, he's got until the middle of next week to

20    get them here.  And my guess is that they're people that he

21    knows and knows where to find them.

22            Giving him additional time -- I would also note,

23    Your Honor, that the government filed its trial brief in

24    this case on August 18th, which was before defense motions

25    were due.  We did that on purpose to sort of help, you know,

1    get this case in a good trajectory to trial on time, and

2    because of that, and because of discovery, the defendant

3    knows now who is going to be testifying, who the cooperators

4    are, and giving him any additional time is giving him

5    additional time to attempt to obstruct the administration of

6    justice, which even just the delay has done that, but he can

7    get even more bold in that regard.

8            Prior counsel was apparently asked, I believe,

9    to undertake some of these tasks and chose not to do so.

10           If this were some sort of an alibi witness, by

11   the way, we would have expected to receive that information

12   before, since we made a reciprocal discovery request, but if

13   it was a game changing witness, someone would expect that

14   prior counsel or that counsel would have known to go talk to

15   those people.  What we suspect is they are folks that have

16   information potentially about, you know, the defendant's

17   larger activities.

18           But again this trial is pretty limited.  It's

19   about the six month cocaine conspiracy that ended in the

20   parking lot of the hotel that day with the money exchanged

21   for the kilos, and it's about the underground marijuana

22   bunker.  And we are unaware of any witnesses who could come

23   save the day here.  And that is after a long investigation

24   and a post-arrest interview with the defendant, a proffer

25   interview with the defendant at which he laid out, you know,

1    his potential defense.  We don't expect that there are any

2    sort of magic witnesses here.

3              We don't know for sure, but that's our

4    expectation.  And as for the records that the defendant

5    seeks now, the defendant, I'm sure the Court has noticed

6    this as well, but I will just say he has certain issues,

7    certain facts that he is very focused on.  In the motion to

8    suppress the wiretap, those became clear in the subsequent

9    motions, renewed motions to suppress the wiretap.  For

10   example, there are some phone records that he thought would

11   be really, really critically important to his case.  I don't

12   know if those are the documents he's looking to subpoena

13   here.  You know, he has sort of issues that he believes the

14   government is lying about in some way.

15             Those issues are only very, very a little bit

16   relevant here.  Putatively, we could try our case completely

17   without any phone records basically and you still have the

18   defendant showing up to the parking lot that day with the

19   money, the kilos are there and the bunkers underneath the

20   house.

21             So I think it's important that counsel is not

22   required to be constitutionally effective, counsel is not

23   required to run down absolutely every single lead, subpoena

24   every single document, talk to every single potential

25   witness.  If there were a material witness here who would

1    change the trajectory of this case, that would obviously be

2    something that counsel should have done, any counsel, over

3    the course of the last four years and four months.  We

4    strongly suspect that's not the case.

5              Now, Your Honor, we ask that you deny the

6    continuance request and we ask that we select the jury

7    today, that we go to trial on Monday; that the defendant

8    spend the next several days through the investigator or

9    through counsel seeking out these witnesses and attempting

10   to compel them to testify.  Perhaps, you know, the Court

11   could issue an order for these documents, but we would ask

12   that the trial not be continued for that reason.

13             And, Your Honor, if the Court is inclined to

14   deny the continuance request, which we hope that the Court

15   is, we would ask that sort of a brief record be made not in

16   our presence, ex parte, so that the Court can understand who

17   these witnesses are, what these documents are, because if we

18   are to argue about this potentially post-conviction, I

19   assume that, you know, the Third Circuit would want to know

20   exactly what it is that the defendant intended to bring to

21   court next week.

22             And, Your Honor, you know, the Court is very

23   busy.  Counsel is all very busy in terms of other cases.

24   November, personally, I have another trial.  I wouldn't be

25   surprised if the Court has several other trials.  Every time

1    this gets moved, it requires a significant reshuffling.  Law

2    enforcement resources are wasted, the Government's

3    significant resources are wasted.  We've prepared all of our

4    witnesses.  We prepared all of our documents and we are

5    ready to go and it is time.

6              THE COURT:  Just one question.  You suggested if

7    I were to continue the trial by 30 or 45 days, you might

8    lose yet another witness.  Are you saying that there's a

9    theoretical possibility none of us can see the future or do

10   you really have a good faith belief that there is a specific

11   witness or witnesses who may not be available?

12             MS. WELSH:  I have a significant witness in

13   mind, Your Honor.  The defendant knows who that is.  I'm

14   inclined not to say who that is.

15             THE COURT:  That's fine.  I don't need the

16   details.

17             MS. WELSH:  I don't want to imply we've been

18   told 30 days will be a deal breaker here, but every time

19   this gets moved, that conversation of whether or not that

20   person will come testify, that conversation has to start

21   anew every time the trial gets moved, and even if it were to

22   be moved by 30 days given the schedule in that person's

23   case, 30 days is a big deal.

24             THE COURT:  Okay.  Thank you very much.

25             Ms. Chavar, anything you want to add?

1          MS. CHAVAR:  Very briefly.  I don't know

2     anything about the representations Ms. Welsh made about what

3     his agenda, what Mr. Colon's agenda was or strategy was or

4     prior continuance.  I don't know anything about that.  I

5     can't speak to it.

6          I was appointed May 18th.  I have not had any

7     issues in my attorney/client relationship with him.  He

8     never talked about a continuance.  He didn't even bring it

9     up until the end of the meeting yesterday with the inquiry,

10    do you think it's possible that we're even going to get

11    these on time.

12          Now, admittedly, I don't know what the test

13    is.  I don't know if I have to come here and show that I

14    have a belief that the records that he wants will change the

15    day.  I don't know that.  If it is, Your Honor, I can't say

16    that.

17          I know that -- I mean, I can't say it either

18    way, whether it will or will not.  I don't know if I agree

19    with the representation that defense counsel is not

20    obligated to run down every witness or every lead provided

21    by the defendant to be effective.

22          It's my understanding that I am supposed to seek

23    out witnesses that are brought to my attention, but

24    admittedly, I don't know if that's the definitive position,

25    that I have to run down every one of them.  I'm just saying

1    that this is something he did ask prior counsel to get.  He

2    asked me.  And I will be remiss if I did not bring it to the

3    Court's attention today and to say I didn't do it.  I didn't

4    have the time.  I lost track of things and I don't think

5    it's unreasonable for him to ask for 30 days.

6                    Thank you, Your Honor.

7                    THE COURT:  Thank you.

8                    MS. CHAVAR:  Your Honor, would you indulge me a

9    minute?

10                    THE COURT:  Go right ahead.

11                    (Pause while Ms. Chavar and the defendant

12    conferred.)

13                    THE COURT:  Ms. Chavar, I'm ready whenever you

14    are.

15                    MS. CHAVAR:  Okay.  Your Honor, I apologize.

16    We're okay, Your Honor.  Thank you.

17                    THE COURT:  Okay.

18                    MS. CHAVAR:  Nothing further.

19                    THE COURT:  All right.  So a couple things.

20    Half of our jury pool, approximately 40, are here.  They

21    will be ready for us in just a few minutes.  I'm mindful of

22    that, but that principally means I'm going to have to make a

23    decision pretty soon about whether we're going forward with

24    jury selection and with trial.

25                    I think regardless of whether we're going

1    forward or not, it's probably the right thing to do next to

2    excuse the government, have the ex parte discussion so I

3    have a better understanding as to what the defense is really

4    asking.  Don't go far.  We'll bring you right back.  Then

5    it's quite likely that I'm going to need to take at least a

6    short break to give this a little thought, but I recognize I

7    need to make a decision.  We need to know which way we're

8    going.  So we'll ask the AUSAs to step out for a few

9    moments.

10                  (The Assistant United States Attorneys were

11   excused from the courtroom.  Following portion ordered

12   sealed by the Court, bound separately.)

13                  *    *    *

14                  THE COURT:  I'll note for the record we reopened

15   the courtroom.  This discussion is not under seal and we've

16   been rejoined by the two AUSAs.

17                  For your benefit, I'll advise you that I have

18   received a proffer ex parte from Ms. Chavar listing for me

19   the documents that she would be hoping to have in time for

20   trial next week as well as a list of witnesses which I

21   believe is nine witnesses.  And I have had her list them by

22   name for me and tell me about how they may fit into this

23   trial.

24                  With respect to the documents, I have been,

25   without objection, I have been permitted to tell you that

1    they relate to the seven T-Mobile phones, seven T-Mobile

2    phones.

3                    MS. CHAVAR:   Seven.

4                    THE COURT:   Seven, yes.   And I am asking the

5    government whether you have any additional records related

6    to those seven T-Mobile phones that have not been produced

7    or that possibly maybe have been produced but didn't get to

8    Ms. Chavar.

9                    But are there any documents relating to how you

10   requested those T-Mobile phones or records that you got back

11   relating to the T-Mobile phones that have not been produced?

12                   MS. CLOUD:   Your Honor, Whitney Cloud for the

13   government.

14                   No.   We have produced the records to Ms. Chavar,

15   we produced the records to prior counsel.   There are no

16   additional records that we have that have not been produced.

17                   Further, T-Mobile would not be able, relating to

18   these prepaid phones, would not be able to produce records

19   at this time.

20                   THE COURT:   They would not be able to produce

21   additional records.

22                   MS. CLOUD:   Correct.

23                   THE COURT:   Even under a court order?

24                   MS. CLOUD:   Even under court order.

25                   THE COURT:   And how do you know that?

1            MS. CLOUD:  I know that because T-Mobile no

2    longer maintains these records because they're prepaid

3    phones and it's been four years, so that's outside the time

4    for which they retain these records.

5            THE COURT:  Okay.

6            MS. CLOUD:  We asked them specifically for this,

7    so we know, we know this to a certainty.

8            THE COURT:  Okay.  All right.  We're going to

9    take a short recess.

10            Is there anything you want to add, Ms. Chavar?

11            MS. CHAVAR:  No, Your Honor.

12            THE COURT:  Okay.  Let's take a short recess.

13            (Brief recess taken.)

14            *     *     *

15            (Proceedings reconvened after recess.)

16            THE COURT:  Have a seat.

17            All right.  Well, the first order of business is

18    to give you a decision on the defendant's motion to continue

19    trial.

20            I have decided to deny the motion.  We're going

21    to go forward with this trial as scheduled and we'll begin

22    jury selection just as quickly as we can.

23            I have a few jury-related issues to talk about

24    before we bring the jurors up, and we are already well

25    behind the schedule that we were trying to follow, but I'm

1    hopeful that we can get this jury selected today that we

2    have scheduled.

3              The motion to continue trial comes in at the

4    last moment.  It was filed late in the day, the day before

5    jury selection.  In my view, defendant's counsel is prepared

6    to proceed with this trial, and I know she did quite a lot

7    of work to be prepared.  I recognize she has only been on

8    the case since May and that was a lot of work to do to get

9    to this point but -- and from everything I can tell, she did

10   the work that was necessary.  She did the work she thought

11   would put her in a good position to competently and

12   effectively represent Mr. Colon in this trial which has been

13   on the calendar for awhile.

14             We had the pretrial conference.  We had all the

15   motions practice.  No indication that defense counsel wasn't

16   prepared.  And from my discussions this morning both in open

17   court and ex parte, I continue to believe that she is

18   prepared to proceed and to effectively represent Mr. Colon.

19             It's true that effective counsel does not have

20   to necessarily do everything that her client asks her to do.

21             And I should add, I am informed in part by the

22   ex parte proffer.  I have no basis to believe that anything

23   that in terms of the bucket of documents or witnesses that

24   the continuance is based on would make any meaningful

25   difference to how this trial would proceed.

1              In terms of the documents, it appears that based

2      on the discussion that defense authorized me to have with

3      the government that no additional documents exist.  Not only

4      does the government not have additional T-Mobile related

5      documents, they represent that given the passage of time, no

6      more documents exist.  So clearly that is not a basis for a

7      continuance.

8              And in terms of the witnesses, I won't go into

9      any details.  A record has been made ex parte but given the

10     nature of the charges, given the nature of the evidence

11     that the government has, I believe that those witnesses

12     would make a minuscule, if any, difference to how this trial

13     would proceed, and therefore I find no meritorious basis to

14     continue with respect to those witnesses.

15             I do need to balance all of that against the

16     government's interest here.  And I think, and find, that the

17     government would be enormously prejudiced were I to continue

18     this trial yet again.  Obviously, the government is

19     prepared, and they prepared their witnesses and prepared

20     their documents.  This is not probably even the first time

21     the government has prepared for this trial.

22             If the government represents, and I accept their

23     representation, that they have lost witnesses from their

24     witness list given the delays that have been encountered in

25     just getting to this point, that is the many times we had

to reschedule this trial and they represent that even a

continuance of 30 days might cause them to lose an additional

witness, and even if they didn't, clearly rescheduling the

trial at the last minute would lead to, you know, having to

prepare yet again, wasting government resource, wasting law

enforcement resources, and I just see absolutely no basis to

impose those costs on the government.

I will add to that although that is more than

enough already, we had roughly 40 jurors waiting elsewhere in

the courthouse who have indicated they're ready to perform

their duty of citizenship to serve on this jury in a time of

COVID.  It's unfortunately at some risk, we think a risk that

we have managed effectively but some risk for them to leave

their jobs, leave their families to be here with us today to

assemble in a group and be available to us as potential

jurors, and we have another group of roughly 40 that is due

in the building in an hour or so to also make themselves

available to us.  It would be prejudicial and unfortunate to

all of them who went to that trouble to now turn them away

just so another group like them would have to assemble roughly

30 days and take all the risks attendant and all costs with

that.

I won't go into any detail about what it would

do to my schedule, and when if ever -- "if ever" is an

exaggeration, but when and how I would get you back in my

 1    calendar in the next 30 to 45 days, that is a challenge in

 2    itself, but not one that I considered too much.

 3              But anyway, the government -- sorry, the

 4    defendant's motion for continuance is denied.

 5              Ms. Chavar, any questions about that?

 6              MS. CHAVAR:  No, Your Honor.  I understand the

 7    Court's ruling.  I thank Your Honor for hearing us this

 8    morning, and just for purposes of the record, I'll just note

 9    my exception.

10              THE COURT:  Of course.

11              MS. CHAVAR:  Thank you, Your Honor.

12              THE COURT:  I should have also added, I know

13    Ms. Chavar is well aware of this, we won't get to the

14    defense case until some time next week.  Obviously we're not

15    calling any witnesses today, and I expect the government, I

16    expect you know their case pretty well.

17              MS. CHAVAR:  Um-hmm.

18              THE COURT:  They've got a list of a fair number

19    of witnesses, so you've probably got a couple days next week

20    also to keep trying to track down these witnesses.

21              MS. CHAVAR:  And I am doing so, Your Honor.

22    Thank you.

23              THE COURT:  All right.

24              MS. CHAVAR:  And just so Your Honor is aware, I

25    had some discussions with AUSAs Welsh and Cloud during the

1    break.  And there is some raw data from T-Mobile that they

2    can produce which is what they used to make this chart that

3    they produced of the calls, and I think that is a portion of

4    what Mr. Colon is seeking.  So we've made some progress in

5    that regard.  It's certainly not anything that is held back.

6    It's the raw data.

7              So I can get that from them later today.

8              THE COURT:  Okay.  Do you want to confirm that

9    for the record?

10             MS. WELSH:  Your Honor, we have agreed to

11   produce it.  I want to make sure that the record is clear

12   that these are CSC files that we produced to the defendant

13   himself long ago.  He has had them for a long time.  We

14   produced them straight to the, defendant and, in fact, we

15   had to put them into a different format besides CSC files

16   because he couldn't view them in prison, so he has had this.

17   He personally has had this material for quite some time,

18   since before COVID.

19             THE COURT:  Okay.  But you will reproduce them.

20             MS. WELSH:  We will reproduce them.  Absolutely.

21             THE COURT:  Okay.

22             MS. CHAVAR:  That would be with his counselor at

23   the FDC?  Is that where it was produced?

24             MS. CLOUD:  Yes, it was produced directly to the

25   FDC, I want to say it was in February of 2019.  We heard

1    this request before.  We complied with the request back

2    then.  We introduced the CSC files.  Everything is fine, so

3    ...

4                    THE COURT:  Okay.  Thank you.

5                    MS. CHAVAR:  Thank you, Your Honor.

6                    THE COURT:  Is there anything else the

7    government wants to say about my ruling or about the

8    continuance or anything else?

9                    MS. WELSH:  No, Your Honor.

10                   THE COURT:  All right.  Just quickly.  Let's

11   update the record on the jury pool, make sure we're all in

12   agreement about what is going to happen next.

13                   And some of this is just to make the record,

14   because thank you to counsel, we've had various email

15   communications to get us from the pretrial conference to

16   this point.

17                   128 jurors were noticed for this trial.  As this

18   morning, 90 jurors remained in the pool.  70 had answered

19   our COVID questionnaire, 20 had not.

20                   As to the jurors who did not answer the COVID

21   questionnaire, the parties asked that we not excuse them en

22   masse, so we honored that request and those jurors remained

23   in the pool as of this morning.

24                   38 jurors as of this morning had been excused.

25   There was a dispute about four of them.  Defense wanted to

1      excuse those four jurors based on their responses, based on

2      hardship.   The government wanted them to report for service.

3      The Court excused those four based on the hardship.

4              Three other hardship requests were sent to the

5      Court.   I shared those requests with the parties.   There

6      were no objections to the Court excusing them so we excused

7      all three of them based on the hardship.   There were 11

8      jurors that both sides agreed should be excused.

9              Then there were 19 other jurors that were

10     excused based on the parties' agreement that anyone who

11     answered "yes" to Questions 1, 2, or 3 on the COVID

12     questionnaire could automatically be excused.

13             One more juror was excused because she told us

14     on September 16th, yesterday, that she had been exposed to

15     COVID.

16             Are there any questions to that or did I get any

17     of that wrong from the government's perspective?

18             MS. WELSH:  No, Your Honor.   That all sounds

19     right.

20             THE COURT:  Ms. Chavar.

21             MS. CHAVAR:  No, Your Honor.

22             THE COURT:  Okay.  Now, in terms of where we are

23     now with pool number 1.  Perhaps our jury administrator who

24     is here, would you mind telling us if you know how many

25     people showed up in this first group and what we should

 1    expect?

 2                    THE JUROR ADMINISTRATOR:  Yes, Your Honor.

 3    There are 38 jurors.  We had maybe eight fill out COVID

 4    questionnaires over the night which I, I sent along.  And

 5    then I think another six or eight completed them in person

 6    by hand that I have given you.

 7                    But 38 jurors have been randomized and are

 8    awaiting.

 9                    THE COURT:  Okay.  Great.

10                    So the parties don't yet have the randomized

11    list; correct?

12                    MS. WELSH:  Yes.

13                    THE COURT:  We'll give you the randomized list

14    now.  So this should be the 38; is that right?

15                    So as we discussed earlier, they have been

16    pre-randomized.  After I read the general voir dire

17    questions, I will bring them back in one by one in this

18    order.  That is the randomized order.

19                    Now, for some of these, I take it the parties

20    have not yet seen the COVID questionnaire response?

21                    (Documents passed out.)

22                    Okay.  So we're now going to hand you additional

23    COVID questionnaire responses.  Some of which you have not

24    seen yet.  And I would ask that you try to look through

25    these and we're going to take a short break in a moment.

1   Because I assume the jurors are downstairs; correct?

2                    THE JUROR ADMINISTRATOR:  They're up here.

3                    THE COURT:  Oh, they're out in the hallway?

4                    THE JUROR ADMINISTRATOR:  Yes.

5                    THE COURT:  Great.  So I'm going to take a short

6   break just so the jurors can come in and get settled.

7                    The next thing that will happen is I will read

8   that voir dire to them.  Then we'll send them all to

9   Courtroom 6A.  At that point, I will ask if you have had

10  time to look at these new questionnaires and that maybe

11  there is some additional folks we can excuse and not bring

12  them back in, one by one.

13                   Any questions about that or anything else?  I

14  know there are other issues we have to get to today but I'm

15  focused on trying to pick a jury.  Is there anything else

16  before we take a short break?

17                   MS. WELSH:  Nothing else, Your Honor.

18                   THE COURT:  Nothing.  Ms. Chavar?

19                   MS. CHAVAR:  No, Your Honor.

20                   THE COURT:  All right.  We'll be back as soon as

21  the jury pool is ready.

22                   (Brief recess taken.)

23                   *     *     *

24                   (Proceedings reconvened after recess.)

25                   THE COURT:  Good morning, everyone.

1          Have a seat, please.

2          I am Judge Stark, one of the District Judges

3    here in the District Court for the District of Delaware.

4    Thank you as potential jurors for being here and being

5    willing to perform a valuable duty of serving on a jury, a

6    duty we all share as citizens.

7          In a moment I am going to turn to a somewhat

8    lengthy document called voir dire and read it to you and

9    read you a bunch of questions, but before I do that, I just

10   wanted to say something about our face covering, our masking

11   policy.

12         As you know, and as you all have your masks on

13   in our building, the policy right now is that you have to

14   have a mask on basically at all times.  There are very

15   limited exceptions to that.

16         One exception is that during this jury selection

17   process, I'm going to have a chance to meet with each of you

18   individually to discuss if you have any concerns about COVID

19   or any other concerns about serving on this jury.  When we

20   have that one-on-one meeting, and I say the parties will be

21   here as well, but when you come in as the only potential

22   juror, I will ask you if you are comfortable doing so to

23   remove your mask just for that brief discussion.

24         If you would rather not remove your mask, I

25   would ask you if you are comfortable wearing a clear mask we

1     can provide you.  And if you are not comfortable with that,

2     that's fine.  You will just keep your mask on.

3               But that is one exception to our masking policy.

4               Another one is when the witnesses or lawyers or

5     me are speaking, we're permitted to take our masks off.  All

6     of us are vaccinated and I do permit when speaking for those

7     folks to remove their masks.

8               And then finally, when each of you are eating or

9     drinking, of course you can remove your mask, and those of

10    you who are on our jury will have occasion to have lunch

11    here or maybe be drinking water during the trial.  Of course

12    you can remove your mask for that, but otherwise the mask is

13    to remain on.

14              So with that, I'm going to turn to this document

15    called voir dire.  And I'm going to take my mask off because

16    as I warned you, it's a little bit lengthy for the me to

17    read to you.

18              It begins:

19              I am Judge Stark, the Trial Judge in this case.

20    You have been called to this courtroom as a panel of

21    prospective jurors in the case of United States versus Omar

22    Morales Colon.  This is a criminal case in which Mr. Colon

23    is charged with Conspiracy to Distribute Cocaine, Attempted

24    Possession With Intent to Distribute Cocaine, Manufacture of

25    Marijuana, and Possession With Intent to Distribute

1    Marijuana.

2              From this panel, we will select the jurors who

3    will sit on the jury trial that will decide this case.  We

4    will also select alternative jurors who will be part of this

5    trial and available in the event that one of the regular

6    jurors becomes ill or is otherwise unable to continue on the

7    jury.

8              Under our system of justice, the role of the

9    jury is to find the facts of the case based on the evidence

10   presented in the trial.  That is, from the evidence seen and

11   heard in court, the jury decides what the facts are, and

12   then applies to those facts the law that I will give in my

13   instructions to the jury.  My role as the Trial Judge is to

14   make whatever legal decisions that must be made during the

15   trial and to explain to the jury the legal principles that

16   will guide its decisions.

17             The ongoing COVID-19 pandemic has made for

18   difficult and trying times for all of us.  I expect you may

19   have questions and concerns about the possibility of serving

20   on a jury at this time.  We want you to know that we are

21   absolutely committed to the safety and well-being of our

22   jurors.  We are closely monitoring and following the

23   guidance issued by the CDC and local health authorities and

24   have undertaken extensive efforts to make our spaces as safe

25   as possible.  We are also taking all possible precautions

1    throughout the process of jury selection, trial, and

2    deliberations to safeguard everyone's participation.

3              We recognize that you are all here at some

4    sacrifice, especially during this ongoing pandemic.

5    However, we cannot excuse anyone merely because of personal

6    inconvenience, unless serving on this jury would be a

7    compelling hardship.  We have reviewed the COVID-19

8    questionnaires that you have filled in and submitted, and we

9    have carefully considered the answers that you provided to

10   us.

11             Jurors perform a vital role in the American

12   system of justice.  We rely on juries to decide cases tried

13   in our courts, so service on a jury is an important duty of

14   citizenship.  Jurors must conduct themselves with honesty,

15   integrity, and fairness.

16             In a few minutes, you will be sworn to answer

17   truthfully questions about your qualifications to sit as

18   jurors in this case.  This questioning process is called

19   voir dire.  I will conduct the questioning, and the lawyers

20   for the parties may also participate.  It is, of course,

21   essential that you answer these questions truthfully.  A

22   deliberately untruthful answer could result in severe

23   penalties.

24             Questions will be asked to find out whether any

25   of you has any personal interest in this case or know of any

1    reason why you cannot render a fair and impartial verdict.

2    We want to know whether you are related to or personally

3    acquainted with any of the parties, their lawyers, or any of

4    the witnesses who may appear during the trial, and whether

5    you already know anything about this case.

6           Other questions will be asked to determine

7    whether any of you has any feelings, beliefs, life

8    experiences, or any other reasons that might influence you

9    in rendering a verdict.

10          I am going to read the questions one by one.  As

11   I do, please listen closely and think to yourself whether

12   you have a "yes" answer to any of the questions.  If you

13   have a "yes" answer, you do not need to do or say anything.

14   You do not need to raise your hand; you do not need to

15   stand.  Just try to keep in mind if you have a "yes" answer.

16          It is not necessary for you to remember the

17   number of questions you answered yes to.  Instead, after I

18   have read all the questions, members of my staff will take

19   you back to the courtroom next to us, which we will use as

20   the jury room throughout this trial.  Please wear a mask and

21   practice social distancing while you are in that courtroom

22   and whenever you are in and moving about the courthouse.

23   You may talk in that other courtroom, but you must not talk

24   about this case or about the voir dire questions and

25   answers.

1          We will then bring each of you back to this

2     courtroom one by one and discuss any "yes" answers you may

3     have had to any of my voir dire questions.  I will be joined

4     by the lawyers and the court reporter and we will talk about

5     your concerns.  To help with that discussion, we will ask

6     you to please remove your mask, and if you feel

7     uncomfortable doing that, we will provide you with a clear

8     face covering.

9          After we talk about your concerns, I will give

10    you further instructions on where to go next.  Those

11    instructions may be that you are to return to the courtroom

12    later today for additional steps in the jury selection

13    process.

14         Once we have met with all members of the injury

15    pool one by one, we will bring some of you back into the

16    courtroom as a group.  Those of you who remain in our jury

17    pool at that time will be joined by other potential jurors

18    we are meeting with at another time today.  Then both the

19    government and the defendant will have the opportunity to

20    exercise peremptory challenges -- that is, they can strike

21    potential jurors for no reason at all.

22         After each side uses all of its peremptory

23    challenges, we will be left with our jury which will consist

24    of 12 jurors and 2 alternates.  Those 14 individuals will be

25    required to return to court each day until the trial is

1    concluded.

2              As I have explained, after this process is

3    completed, not all of you will be chosen to sit on the jury

4    for this case.  If you are not chosen, you should not take

5    it personally, and you should not consider it a reflection

6    on your ability or integrity.

7              I will have further instructions for you on the

8    schedule as we proceed through the selection process today.

9    Please be patient while we complete this process.

10             At this point, I will now ask my courtroom

11   deputy to administer an oath to the jury pool.

12             (Prospective jurors placed under oath.)

13             THE COURT:  Thank you.  You can all be seated.

14             As I noted at the start, this case is captioned

15   United States vs. Omar Morales Colon.  The defendant is

16   charged with several controlled substance offenses.  The

17   defendant has pleaded not guilty to the charges.  The

18   trialed in this case is expected to conclude by next Friday,

19   September 24th, and may conclude earlier.

20             With that background, I will now read to you the

21   voir dire questions.  There are 37 of them.

22             Question 1.  The government is represented by

23   assistant United States of Attorney, Jennifer Welsh and

24   Whitney Cloud.  They will also be joined by Drug Enforcement

25   Administration special agent, Jeremy Smith, as well as

1     United States Attorney's Office Paralegal, Stephania Roca.

2                 Question 1, ladies and gentlemen, is:  Are you

3     related to or personally acquainted with any of these

4     individuals?

5                 Question 2.  Have you or any member of your

6     immediate family, or a close friend, had any dealings with

7     the United States Attorney's Office, the Drug Enforcement

8     Administration, Homeland Security investigations, the Newark

9     Police Department, the New Castle County Police Department,

10    or Zemi Property Management?

11                Question 3.  The defendant is Omar Morales

12    Colon.  The defendant is represented by attorney Dina

13    Chavar.

14                Do you or any member of your immediate family,

15    or a close friend, have any connection of any kind with

16    these individuals?

17                Question 4.  Members of the jury, I am now going

18    to read the names of persons who may appear as witnesses in

19    this trial and will then ask if you know any of these

20    individuals:  Shakira Martinez Smith, Anthony Salvemini,

21    Craig Maurer, Mark Lewis, James Kelly, Michelle Burrus,

22    Thomas Dillon Kashner, Gregory Simplter, Patrick M.

23    Campbell, James Skinner, Maolin Li, Mohamed Aviles Camberos,

24    Roque Valdez, John Cooper, and Nilsa Martinez.

25                Are you related to, or personally acquainted

1    with, any of these individuals?

2              Members of the panel, I am now going to read the

3    names of other individuals who may be discussed during this

4    case and then I will ask whether you know any of these

5    individuals:  Shakira Martinez of Bear, Delaware.  William

6    Brisco of Wilmington, Delaware.  Devin Hackett of

7    Wilmington, Delaware.  Karina Colon of Bear, Delaware.

8    Marisol Quiles Rivera of Wilmington, Delaware.  Josue *Torres*

9    of Wilmington, Delaware.  Elijah Barnett of Wilmington,

10   Delaware.  Jose Molina-Martol of Aston, Pennsylvania.

11   Guadalupe Perez of Aston, Pennsylvania.  Lewis Alvarez of

12   Aston, Pennsylvania.

13             Are you related to, or personally acquainted

14   with, any of these individuals?

15             Question 6.  Have you read or heard anything in

16   the news media or on the internet concerning this case or

17   about the criminal charges being filed against Omar Morales

18   Colon?

19             Question 7.  Have you ever served as a juror in

20   a criminal or a civil case or as a member of a grand jury in

21   either a federal or state court?

22             Question 8.  Have you or any members of your

23   family ever been a witness to, victim of, or convicted of a

24   crime?

25             Question 9.  Have you or any member of your

1    family been employed by or investigated by any law

2    enforcement agency, including any local police, private

3    security, or federal agency?

4            Question 10.  Would you give more or less weight

5    to the testimony of a law enforcement agent or police

6    officer than you would to that of a civilian witness, simply

7    because he or she is employed as a law enforcement agent or

8    police officer?

9            Question 11.  Would you tend to give the

10   testimony of a witness called by the prosecutor more weight

11   than the testimony of a witness called by a defendant?

12           Question 12.  Do you belong to any crime

13   prevention societies, including but not limited to a

14   neighborhood watch organization?

15           Question 13.  One or more of the witnesses in

16   this case may receive in the future lesser sentences in

17   exchange for cooperation with the government.  Such plea

18   bargaining is lawful and proper.

19           Do you believe that the government should not

20   offer reduced sentences in exchange for cooperation and

21   testimony?

22           Question 14.  Do you have opinions about guilty

23   plea agreements that would prevent you from being a fair and

24   impartial juror in this case?

25           Question 15.  Would you refuse to believe such a

1    witness simply because he or she has been convicted of a

2    federal offense?

3            Question 16.  Do you have any objections to

4    law enforcement officers legally taping conversations of

5    the defendants and others related to a criminal

6    investigation?

7            17.  Have you or anyone in your family ever been

8    self-employed or owned their own business?

9            Question 18.  The defendant is charged with

10   conspiring to distribute cocaine and manufacturing

11   marijuana, along with two possession with intent to

12   distribute charges.

13           Do you hold any beliefs, feelings, or prejudices

14   against these types of prosecutions such that you could not

15   sit as a fair and impartial juror in this case?

16           19.  Do you have any opinions about drawing laws

17   that would make you unable to decide this case on the

18   evidence presented and the law as stated by the Court?

19           20.  Do you have any such negative feelings

20   about drugs that you would be unable to evaluate the

21   evidence fairly as to the defendant?

22           21.  Have you or any member of your family, or a

23   close friend, been addicted to drugs or placed in a drug

24   treatment program?

25           22.  The possible punishment of the case is not

for the jury to decide.  Will you have difficulty deciding

this case without concerns for any potential punishment the

defendant may or may not receive?

        23.  Would you be unable to sit in judgment of

another individual because of any personal beliefs?

        24.  Do you believe that if the government

charged someone with a crime, then that person is probably

guilty of something?

        25.  A fundamental principle of our legal system

is that when a person is charged with a criminal offense, he

is presumed to be innocent unless and until the government

proves guilt beyond a reasonable doubt.  A defendant in a

criminal case has no obligation to prove anything or to

offer any evidence at all.  If you are selected as a juror

in this case, will you have difficulty following this

instruction?

        26.  In a criminal case such as this, the

prosecution must prove each and every element of the

offenses charged beyond a reasonable doubt.  If the

prosecution does not prove each and every element of the

offenses charged beyond a reasonable doubt, then the jury is

required by law to acquit the defendant; that is, to return

a verdict of not guilty.

        If you are selected as a juror in this case,

will you have difficulty following this instruction?

1      27.  A defendant has a constitutional right to

2  remain silent throughout the trial and not testify, and that

3  decision cannot be held against him or her.

4      If you are selected as a juror in this case,

5  will you have difficulty following this instruction?

6      28.  In order to reach a verdict, all jurors

7  must reach the same conclusion.  In deliberations, you must

8  consider the opinions and points of your fellow jurors, but

9  in the final analysis you must follow your own conscience

10 and be personally satisfied with the verdict.

11     Will you have difficulty expressing your own

12 opinions and thoughts about this case?

13     29.  Will you have any difficulty in respecting

14 the views of your fellow jurors even if they are different

15 from your own?

16     30.  Do you feel that you will tend to go along

17 with the majority of jurors even if you do not agree, just

18 because you are in the minority?

19     31.  If you are selected as a juror in this

20 case, you will take an oath to render a verdict based upon

21 the law as given to you by the Court.  You will be required

22 to accept the law as given to you by the Court without

23 regard to any personal opinion you may have as to what the

24 law is or should be.

25     Would you be unable to reach a verdict in

1    accordance with the law as given to you in the instructions

2    of the Court?

3            32.   Provided the government proves the

4    defendant's guilt beyond a reasonable doubt, would anything

5    you might learn about the defendant concerning such things

6    as his age, health, race, national origin, religious

7    affiliation, family circumstances, or economic circumstances

8    prevent you from finding him guilty?

9            33.   If you find, after considering the evidence

10   along with my instructions as to the law, that the defendant

11   is guilty of one or more of the counts of the indictment,

12   it will be my duty, as judge, to determine any punishment.

13   The law does not permit you to consider the issue of

14   punishment.

15           Would you vote not guilty no matter what the

16   evidence indicates, because of any possible punishment?

17           34.   This trial may last until next Friday,

18   September 24th.  So, if selected for the jury, you may have

19   to be here each day next week.

20           Each day will begin at 9:00 a.m. and may run

21   until as late as 5:00 p.m.  We will have at least one

22   morning break and one afternoon break each day.  Also,

23   there will be a lunch break and we will provide you with

24   lunch.

25           Does this schedule impose a substantial hardship

1    on?

2              35.   Do you have any medical condition, for

3    instance, a visual or hearing impairment, which might affect

4    your ability to devote full attention to this proceeding?

5              36.   In the time since you completed the

6    questionnaire regarding COVID 19, have you or anyone in your

7    household tested positive for COVID 19 or experienced

8    COVID-like symptoms, such as cough, fever, shortness of

9    breath, or loss of the sense of taste or smell?

10             37.   Can you think of any other matter which you

11   should call to the Court's attention which may have some

12   bearing on your qualification as a juror, or which may

13   prevent you from render a fair and impartial verdict based

14   solely upon the evidence and my instructions as to the

15   law?

16             So that completes the voir dire questions.  As I

17   have indicated, we're now going to take our jury pool into

18   the courtroom next to me, 6A, and then shortly we'll start

19   bringing you back in one by one to discuss whether you had

20   any "yes" answers to any of my questions, so please bear

21   with us.

22             Thank you for your patience at this point and I

23   will see all of you again shortly.

24             Take the jury out, please.

25             (The prospective jurors were excused to the

1   alternate courtroom.)

2           THE COURT:  Before we start bringing the jurors

3   back in one by one, have you had a chance to look at the

4   latest COVID questionnaire responses and anything to say

5   about any members of the 38 that are in there right now?

6           MS. WELSH:  Yes, Your Honor.  We are in

7   agreement that the first person that we had here, is /////////

8   /////////.

9           THE COURT:  What number?

10           MS. WELSH:  No. 100965379.

11           MS. CHAVAR:  Juror 25.

12           THE COURT:  25?

13           MS. CLOUD:  Yes, 25.

14           MS. WELSH:  Sorry about that.

15           THE COURT:  That's okay.

16           MS. WELSH:  We're in agreement that that person

17   who has a COVID vaccination scheduled today, we would be a

18   couple days into the trial and also have child care

19   concerns, that --

20           THE COURT:  Do you agree to striking 25?

21           MS. WELSH:  Yes.

22           THE COURT:  Is that correct, Ms. Chavar?

23           MS. CHAVAR:  It is, Your Honor.

24           THE COURT:  Are there any others you're

25   agreeable to striking?

1          MS. WELSH:  No, Your Honor.

2          THE COURT:  No?  So I would propose we ask the

3    jury administrator to bring Juror No. 25 in here first and

4    we'll let that juror know that they are free to leave and

5    then after that we'll start with Juror No. 1.

6          I'm also advised by my law clerk that there are

7    four others who have answered yes to Question 1, 2 or 3, so

8    based on our prior discussion, I would think we should be

9    agreeable to striking them, but have you noticed that or do

10   you have an objection to that?  I can tell you the jurors in

11   a moment.

12         MS. WELSH:  Your Honor, anyone who answered yes

13   to 1, 2, or 3 --

14         THE COURT:  Can be stricken?

15         MS. WELSH:  Yes.

16         THE COURT:  Do you agree with that, Ms. Chavar?

17         MS. CHAVAR:  I do agree, Your Honor.

18         THE COURT:  All right.  All right.  So the four

19   that I'm going to strike based on their "yes" answers are

20   Juror No. 10, ▨▨▨; Juror No. 16, ▨▨▨; Juror No. 19,

21   ▨▨▨▨; and Juror No. 28, ▨▨▨▨.

22         Any objection to that based on what we

23   discussed?

24         MS. WELSH:  No, Your Honor.

25         THE COURT:  Ms. Chavar?

1               MS. CHAVAR:  No, Your Honor.

2               THE COURT:  Okay.  All right.  So my deputy is

3    here.  There are five jurors that we have stricken.  I want

4    to bring them in first.  So I think I already indicated

5    Juror No. 25, but if we could then work the lineup, 10, 16,

6    19 and 28, and then we'll go to Juror No. 1 after that.

7               Any question about how I'm going to do this?

8               MS. CHAVAR:  No, Your Honor.

9               THE COURT:  Okay.  We're ready for No 25.

10              (The juror entered the courtroom.)

11              THE COURT:  Good morning.  Can you hear me okay

12   from here?

13              A JUROR:  Yes, sir.

14              THE COURT:  And you're our Juror No. 25, I

15   believe?

16              A JUROR:  Yes.

17              THE COURT:  Is that correct?

18              A JUROR:  That's correct.

19              THE COURT:  You are excused from serving on this

20   jury.  I just wanted to bring you in here to tell you are

21   excused and to thank you very much for being willing to

22   serve.  You're free to go.

23              A JUROR:  All right.

24              THE COURT:  Thank you.

25              (The juror left the courtroom.)

```
 1                           *  *  *
 2                (Juror entered juryroom.)
 3                THE COURT:  Good morning.  Are you our Juror No.
 4     10?
 5                A JUROR:  Yes -- I'm 28.
 6                THE COURT:  You're 28.  Okay.  Thank you.  We're
 7     going to excuse you from service on this jury.  Thank you
 8     very much for being here and being willing to serve, but
 9     you're excused and free to go.
10                A JUROR:  Thank you, Your Honor.  Appreciate it.
11                THE COURT:  Thank you.
12                (Juror left courtroom.)
13                           *     *     *
14                (Juror entered juryroom.)
15                THE DEPUTY CLERK:  Does it matter which order?
16                THE COURT:  No.
17                (Juror entered juryroom.)
18                THE COURT:  Good morning.  Can you hear me okay?
19                A JUROR:  Yes.
20                THE COURT:  What is your juror number?
21                A JUROR:  19.
22                THE COURT:  19.  Okay.  You can leave it on if
23     you want.  We are going to excuse you from serving on this
24     jury.  I just wanted to thank you for being willing to
25     serve.  And you are free to go.
```

```
 1                    A JUROR:  You're welcome.

 2                    THE COURT:  Thank you.

 3                    (Juror left courtroom.)

 4                        *    *    *

 5                    (Juror entered juryroom.)

 6                    THE COURT:  Good morning.

 7                    A JUROR:  Good morning.

 8                    THE COURT:  What is your juror number, please?

 9                    A JUROR:  16.

10                    THE COURT:  16.  Thank you.  We're going to

11      excuse you from serving on the jury.  Thank you very much

12      for being willing to serve and for being here, but you are

13      free to go.

14                    A JUROR:  All right.  Thank you.

15                    THE COURT:  Thank you.

16                    (Juror left courtroom.)

17                        *    *    *

18                    (Juror entered juryroom.)

19                    THE COURT:  Good morning.  Are you Juror No. 10?

20                    A JUROR:  Yes, sir.

21                    THE COURT:  Okay.  We are going to excuse you

22      from serving on the jury.  Thank you for being here, for

23      being willing to serve, but you are free to go.

24                    A JUROR:  Okay.  Thank you very much.

25                    THE COURT:  Thank you.
```

```
 1                    (Juror left courtroom.)

 2                         *    *    *

 3                    (Juror entered juryroom.)

 4              THE COURT:  All right.  Good morning.  If you

 5    don't mind coming forward through those doors.

 6              A JUROR:  Yes.

 7              THE COURT:  And do you mind taking your mask off

 8    for our discussion?

 9              A JUROR:  Oh, no.

10              THE COURT:  You're okay with that?  Thank you.

11              Are you Juror No. 1?

12              A JUROR:  Yes, sir.

13              THE COURT:  Congratulations.

14              Did you have any "yes" answers to my questions,

15    do you remember?

16              A JUROR:  Just one.  I believe.

17              THE COURT:  Okay.  Can you come a little bit

18    closer so I can be sure to hear you?

19              Do you remember what it was?

20              A JUROR:  The family member who have been

21    incarcerated.

22              THE COURT:  Okay.

23              A JUROR:  I didn't know if juvenile, if that

24    counted, but my son was incarcerate.

25              THE COURT:  Your son was.
```

1            A JUROR:  Um-hmm.

2            THE COURT:  Okay.  Is that currently ongoing?

3            A JUROR:  No, he was 16.  And he was released

4    like 10 years ago.

5            THE COURT:  Okay.  Is there anything about your

6    son's experience and what you know about it that would make

7    it difficult for you to be fair and impartial in a criminal

8    case here?

9            A JUROR:  No, sir.  It wasn't even in the same

10   realm as this situation.

11           THE COURT:  Okay.  Do you have any other

12   concerns about serving on this jury?

13           A JUROR:  No, sir.

14           THE COURT:  No.  Is there any questions from the

15   government?

16           MS. WELSH:  No, Your Honor.

17           THE COURT:  Any questions from the defense?

18           MS. CHAVAR:  No, Your Honor.

19           THE COURT:  Okay.  All right.  So we're going to

20   need you back here at 1:00 o'clock today for the next step

21   in the jury selection process.  You are to report to the

22   jury assembly room where I think you started this morning on

23   the third floor, but you are free until 1:00 o'clock.

24           A JUROR:  Okay.  Thank you.

25           THE COURT:  Thank you.

```
 1                    A JUROR:  Um-hmm.

 2                    (Juror left courtroom.)

 3                         *    *    *

 4                    (Juror entered juryroom.)

 5                    THE COURT:  Good morning.  If you don't mind

 6      coming forward through those doors.

 7                    Are you Juror No. 2?

 8                    A JUROR:  Yes.

 9                    THE COURT:  Okay.  Do you mind coming closer so

10      we can be sure to here each other?

11                    Do you mind taking your mask off?

12                    A JUROR:  Oh, sure.

13                    THE COURT:  Thank you.  And do you recall if you

14      had any "yes" answers to my questions?

15                    A JUROR:  Just the one.  When I was a teenager,

16      I was in treatment.

17                    THE COURT:  Okay.

18                    A JUROR:  But that was a long time ago.

19                    THE COURT:  Okay.  Some years ago.

20                    A JUROR:  (Nodding yes.)

21                    THE COURT:  Do you think that experience would

22      make it difficult for you to be a fair and impartial juror

23      in a case involving allegations about drugs?

24                    A JUROR:  Oh, no.  Not at all.

25                    THE COURT:  Any other "yes" answers or concerns?
```

1            A JUROR:  That was the only one.

2            THE COURT:  Okay.  Any questions from the

3    government?

4            MS. WELSH:  No, Your Honor.

5            THE COURT:  From the defendant?

6            MS. CHAVAR:  No, Your Honor.

7            THE COURT:  All right.  We're going to need you

8    back at 1:00 o'clock to continue with this process.  You are

9    free until 1:00, but at 1:00 o'clock, please report down to

10   the third floor where you started this morning.  Okay?

11           A JUROR:  Okay.  Thank you.

12           THE COURT:  Thank you.

13           (Juror left courtroom.)

14                    *    *    *

15           (Juror entered juryroom.)

16           THE COURT:  Good morning.  If you don't mind

17   coming forward through those doors.

18           Are you Juror No. 3?

19           A JUROR:  Yes, I am.

20           THE COURT:  Okay.  Do you mind taking your mask

21   off for our discussion?

22           Thank you.

23           Do you recall did you have any "yes" answers to

24   my questions?

25           A JUROR:  I did not.

```
 1                    THE COURT:  Okay.  Anything you wanted to talk
 2     about?  Any concerns about serving on this jury?
 3                    A JUROR:  No.
 4                    THE COURT:  No.  Okay.  Any questions from the
 5     government?
 6                    MS. WELSH:  No, Your Honor.
 7                    THE COURT:  From the defense?
 8                    MS. CHAVAR:  No, Your Honor.
 9                    THE COURT:  Okay.  So we're going to need you
10     back here at 1:00 p.m.  You are free until 1:00 p.m., but
11     please report to the third floor of the jury assembly room
12     at 1:00 o'clock.  Okay?
13                    A JUROR:  All right.
14                    THE COURT:  Thank you.
15                    (Juror left courtroom.)
16                        *    *    *
17                    (Juror entered juryroom.)
18                    THE COURT:  Good morning.  If you don't mind
19     coming forward through the doors.
20                    And are you our Juror No. 4?
21                    A JUROR:  Yes.
22                    THE COURT:  Do you mind taking your mask off for
23     our discussion?
24                    Thank you.
25                    Do you remember if you had any "yes" answers to
```

1    my questions.

2                    A JUROR:  I did.

3                    THE COURT:  You did.  Okay.  Did you recall what

4    they were?

5                    A JUROR:  I recall two.  One was has a family

6    member ever been a victim of a crime.

7                    THE COURT:  Okay.

8                    A JUROR:  Answered affirmatively to that.

9                    And also question about giving weight to

10   information provided by law enforcement.

11                   THE COURT:  Okay.  I'm sorry to have to ask you,

12   but can you give me some general ideas of who in your family

13   was a victim of a crime and roughly when that was?

14                   A JUROR:  It's remote.  My sister was robbed

15   when I was with her.  That's many years ago.  Probably 10 or

16   12 years or more ago my car was stolen and I had to appear

17   in juvenile court, et cetera.

18                   THE COURT:  Okay.  Is there anything about your

19   experience as a victim, and your sister, that you think

20   would make it hard for you to be fair and impartial and

21   mature in a criminal case?

22                   THE JURORS:  I do not.

23                   THE COURT:  You don't think that would be a

24   problem for you?

25                   A JUROR:  No.

1          THE COURT:  Okay.  And what about your views of

2     law enforcement and their testimony?

3          A JUROR:  There was a time when I was working in

4     a hospital in Philadelphia.  The hospital was very closely

5     aligned with their own police force that I worked very

6     closely with.  So I had a lot of insight into the work that

7     they were doing.  And then, you know, established

8     relationships with them, working relationships.

9          THE COURT:  So at least with that law

10    enforcement entity, you came to grow comfortable with them?

11         A JUROR:  Yes.

12         THE COURT:  And would tend to believe those

13    folks --

14         A JUROR:  Yes.

15         THE COURT:  -- is that right?  Do you think that

16    will extend to other law enforcement agencies and agents

17    that might appear at this trial?

18         A JUROR:  I do believe that that is my opinion,

19    yes.

20         THE COURT:  That are you --

21         A JUROR:  I'm more likely to give weight to

22    their -- what they offer.

23         THE COURT:  Simply because they're from law

24    enforcement.

25         A JUROR:  I would say, yes.

```
 1                    THE COURT:  Okay.  Anything else you answered
 2    yes to or you wanted to raise with me?
 3                    A JUROR:  No.
 4                    THE COURT:  No.  Any questions from the
 5    government?
 6                    MS. WELSH:  No questions, Your Honor.
 7                    THE COURT:  Any questions from the defense?
 8                    MS. CHAVAR:  No, Your Honor.
 9                    THE COURT:  Okay.  I'll ask you to stand outside
10    there for a moment and we'll bring you back here.
11                    A JUROR:  Sure.
12                    (Juror left courtroom.)
13                    THE COURT:  Is there any motion from the
14    government to strike Juror No. 4?
15                    MS. WELSH:  Your Honor, I would say there will
16    be a motion to strike because she says she can't be fair,
17    essentially.
18                    THE COURT:  Would you oppose?
19                    MS. WELSH:  No, no.
20                    THE COURT:  She is just saying she would not
21    oppose your motion.
22                    MS. CHAVAR:  Yes.  And I would agree with that.
23    Thank you.
24                    THE COURT:  I will grant the unopposed motion to
25    strike Juror No. 4 for cause.  Let's bring her back in,
```

```
 1    please.
 2                    All right.  ///////////, we're going to excuse you
 3    from any further obligation to serve on this jury.  Thank
 4    you for being willing to serve and for being here.  You are
 5    free to go.
 6                    A JUROR:  Thank you.
 7                    THE COURT:  Okay.  Bye-bye.
 8                    (Juror left courtroom.)
 9                         *    *    *
10                    (Juror entered juryroom.)
11                    THE COURT:  Good morning.  If you don't mind
12    coming forward through those doors.
13                    And would you be okay with taking your mask off
14    for this discussion?
15                    A JUROR:  (Nodding yes.)
16                    THE COURT:  Thank you.  Are you Juror No. 5?
17                    A JUROR:  Yes.
18                    THE COURT:  Did you have any "yes" answers to my
19    questions?
20                    A JUROR:  I believe so, yes.
21                    THE COURT:  Do you remember either the number or
22    the nature --
23                    A JUROR:  The knowing anyone in rehab.
24                    THE COURT:  Okay.
25                    A JUROR:  And the hardship of I'm a single
```

1  parent.

2            THE COURT:  Okay.  So somebody you know has been

3  or is in rehab, some type of drug rehab?

4            A JUROR:  Uh-huh.

5            THE COURT:  And that is a yes for the court

6  reporter?

7            A JUROR:  Yes.

8            THE COURT:  Thank you.  Is that an ongoing

9  situation or in the past?

10            A JUROR:  Ongoing.

11            THE COURT:  Okay.  Do you think that that might

12  make it difficult for you to be fair and impartial in a drug

13  related case?

14            A JUROR:  I would say no.

15            THE COURT:  No, okay.  And what about hardship,

16  you said you are a single parent?

17            A JUROR:  Single parent, yes, and I'm not being

18  paid as I'm here.

19            THE COURT:  Okay.  What type of work do you do?

20            A JUROR:  Construction.  Heavy construction.

21            THE COURT:  Okay.  Would you be planning to work

22  next week if you weren't on this jury?

23            A JUROR:  (Nodding yes.)  Yes.

24            THE COURT:  Yes.  And I think you are saying you

25  don't get paid if you don't show up to work?

1              A JUROR:  Right.

2              THE COURT:  Okay.  And what about you have a

3    child, how old?

4              A JUROR:  14 and 16-year-old.

5              THE COURT:  Okay.

6              A JUROR:  Not driving, 16.

7              THE COURT:  Not driving.

8              A JUROR:  Yes, Christmas, he will be driving.

9              THE COURT:  An important distinction.  So

10   what -- are there any other arrangements possible or what

11   would happen with them, you think, if you weren't there next

12   week.

13             A JUROR:  Depending upon what time I got out of

14   here, I would be -- I would have to find out something for

15   them after school.

16             THE COURT:  You will probably not get out here

17   until about five, and if I am right, you live in Dagsboro.

18             And that is what a two hour drive.

19             A JUROR:  Yep.  (Nodding yes.)

20             THE COURT:  Let's me see if the lawyers have any

21   questions for you.

22             Any questions from the government?

23             MS. WELSH:  I do have one question.

24             So I think the question was phrased for yourself

25   or someone that you know been in rehabilitation.

1                    Who was the person?

2                    A JUROR:  I'm sorry?

3                    MS. WELSH:  Who was the person?

4                    A JUROR:  It's a co-worker that I have.

5      Actually, my owner's son.  He is ongoing in and out of

6      rehab.

7                    MS. WELSH:  Okay.

8                    THE COURT:  Any questions from the defense?

9                    MS. CHAVAR:  Can I just follow that with the use

10     of an illegal drug?

11                   A JUROR:  He is on opioids.

12                   MS. CHAVAR:  Okay.

13                   And you say that you are scheduled.  Do you have

14     work next week?

15                   A JUROR:  Yes.

16                   MS. CHAVAR:  Okay.  Thank you.

17                   THE COURT:  Okay.  Let me ask you just to wait

18     outside that door there for me and we'll bring you back

19     momentarily.

20                   (Juror left courtroom.)

21                   THE COURT:  What is the government's position on

22     Juror No. 5?

23                   MS. WELSH:  We don't have a motion, Your

24     Honoring.

25                   THE COURT:  All right.  Ms. Chavar?

1          MS. CHAVAR:  Your Honor, I think he does have a

2    hardship.  Construction jobs are there when they are there.

3    He is a single parent.  He says he has work next week.  He

4    doesn't get paid, he doesn't have vacation or sick pay.  He

5    has two children he is supporting.  I think that is a

6    hardship.

7          THE COURT:  Does the government oppose that

8    motion?

9          MS. WELSH:  Your Honor, the concern is that if

10   someone, you know, isn't salaried, we can't sort of exclude

11   anybody who is not getting paid if they're not working.  So

12   I do understand that it certainly presents some level of

13   hardship to him but I -- we do oppose the motion.

14         THE COURT:  Okay.  I'm going to strike this

15   Juror No. 5 for the hardship.  It's a combination of

16   reasons.  The two children.  The two hour drive.  He is

17   going to have to leave presumably before they get ready to

18   go to school to be here with us at 9:00 o'clock and get home

19   probably after dark next week, and that he won't be getting

20   paid.

21         I'm going to -- altogether that convinces me it

22   would be too much of a hardship to ask him to serve on this

23   jury.  So I'm going to strike Juror No. 5.  Bring him in.

24         (Juror entered juryroom.)

25         THE COURT:  //////////////, thank you.  I'm going

```
 1    to excuse you from serving on this jury.  But thank you for

 2    being willing to serve.  And good luck to you.

 3                   A JUROR:  Thank you very much.

 4                   THE COURT:  Thank you.

 5                   (Juror left courtroom.)

 6                   *    *    *

 7                   (The juror entered the courtroom.)

 8                   THE COURT:  Good morning.  If you don't mind

 9    coming forward through the doors.  Thank you.

10                   Are you Juror No. 6?

11                   A JUROR:  Yes.

12                   THE COURT:  Do you mind taking your mask off for

13    our discussion?

14                   A JUROR:  No.

15                   THE COURT:  Thank you.  Do you remember if you

16    had any -- I'm sorry.  Do you remember if you had any "yes"

17    answers to my questions?

18                   A JUROR:  No, I did not.  Well, yeah.  About

19    family members with rehab thing.

20                   THE COURT:  Okay.  Do you mind coming a little

21    bit closer so I'm sure to hear you?  Thank you.

22                   A JUROR:  Yes.

23                   THE COURT:  I'm sorry, but I think you said some

24    family members have had rehab experience?

25                   A JUROR:  Yes.
```

```
 1                      THE COURT:  Thank you.  Is that an ongoing
 2      experience?
 3                      A JUROR:  No.
 4                      THE COURT:  About how long ago?
 5                      A JUROR:  About five years ago.
 6                      THE COURT:  Okay.  And could you tell us who it
 7      was?
 8                      A JUROR:  My son.
 9                      THE COURT:  Your son?
10                      A JUROR:  Mm-hmm.
11                      THE COURT:  Okay.  And was it an illegal
12      substance?
13                      A JUROR:  Drugs and alcohol.
14                      THE COURT:  Drugs and alcohol?
15                      A JUROR:  Yes.
16                      THE COURT:  Okay.  All right.  Do you think
17      that that might make it difficult for you to sit on a
18      jury?
19                      A JUROR:  No.
20                      THE COURT:  Okay.  Anything else you answered
21      yes to?
22                      A JUROR:  No.
23                      THE COURT:  No.  Any questions from the
24      government?
25                      MS. WELSH:  No, Your Honor.
```

```
1              THE COURT:  From the defense?

2              MS. CHAVAR:  No, Your Honor.

3              THE COURT:  Okay.  We're going to need you back

4  here at 1:00 o'clock.

5              A JUROR:  Okay.

6              THE COURT:  Today.  You're free until

7  1:00 o'clock, but please report back to the third floor to

8  the jury assembly room.

9              A JUROR:  Third floor?

10             THE COURT:  Third floor at 1:00 o'clock.

11             A JUROR:  Okay.

12             THE COURT:  Thank you very much.

13             A JUROR:  Mm-hmm.

14             (The juror left the courtroom.)

15                     *  *  *

16             (The juror entered the courtroom.)

17             THE COURT:  Good morning.  Would you mind come

18  forward through those doors there?

19             Are you Juror No. 7?

20             A JUROR:  Yes.

21             THE COURT:  Do you mind coming closer?

22             A JUROR:  All right.

23             THE COURT:  Thank you.  Do you mind taking your

24  mask off for our discussion?

25             A JUROR:  I'm fine.
```

```
 1                    THE COURT:  Do you remember, did you have any
 2        "yes" answers to any of my questions?
 3                    A JUROR:  So the one about the business.  My dad
 4        owned a business before.
 5                    THE COURT:  Okay.
 6                    A JUROR:  It was a little confused about that
 7        question, honestly.
 8                    THE COURT:  That's fine.  Does he currently own
 9        or operate a business?
10                    A JUROR:  No, not anymore.  He's working --
11        well, not that it matters.  But, yes, he doesn't own it
12        anymore.
13                    THE COURT:  All right.  What kind of business
14        was it?
15                    A JUROR:  He was an electrician.
16                    THE COURT:  Okay.  Other "yes" answers?
17                    A JUROR:  If I had to be honest with you, just
18        the nature of the crime itself, being drug-related kind of
19        has me on edge a little bit, to be honest with you.
20                    Just all the things I've read about, you know,
21        people being sent for the equivalent of a life sentence, or
22        not a life sentence, but 20 years for nonviolent
23        drug-related crimes has honestly got me really anxious.
24                    I'm a little nervous, to be honest with you,
25        about having to be a juror for this crime, but --
```

```
 1                    THE COURT:  Okay.  Thank you for sharing that
 2      with us.
 3                    You heard in my question if you were on the
 4      jury, you would hear much more extensive questions, but that
 5      jurors are to put out of their minds any concerns about what
 6      may happen to the defendant, for instance, if he were found
 7      guilty.
 8                    A JUROR:  Yes, I understand.
 9                    THE COURT:  Do you think you would be able to do
10      that or do you think you would not be able to do that?
11                    A JUROR:  Like I said, it got me anxious.  I
12      would definitely try my hardest, but I -- I mean, I would be
13      lying if I said I wasn't nervous about it.
14                    THE COURT:  Sure.  Were there other things you
15      said yes to?
16                    A JUROR:  I believe that's it.
17                    THE COURT:  Okay.  Any questions from the
18      government?
19                    MS. WELSH:  No, Your Honor.
20                    THE COURT:  Any questions from the defense?
21                    MS. CHAVAR:  Do I understand correctly --
22                    THE COURT:  I can't hear you.
23                    MS. CHAVAR:  Do I understand you correctly that
24      it makes you -- the potential of a high sentence makes you
25      nervous to serve on a jury if you find them guilty?
```

1              A JUROR:  Yes.  I believe -- I'm sorry.  You

2       said --

3              MS. CHAVAR:  Maybe I can make it easier.  What

4       is it that makes you nervous about it?

5              A JUROR:  I just feel like being -- like, having

6       to be somebody who ends up doing that to somebody makes me

7       really nervous, about the issue.

8              MS. CHAVAR:  Okay.

9              A JUROR:  Like, I don't really know how to

10      explain it.  It was kind of wracking at me ever since I went

11      into the room.

12             I know it has been kind of an issue, you know,

13      we incarcerate people for just the equivalent of offenses,

14      nonviolent crimes, drug-related.  I just -- I'm sure that,

15      you know, it doesn't have to happen all the time.  I'm sure

16      it doesn't happen all the time, but just the matter that it

17      could gets me, you know, riled up -- or not riled up, but

18      nervous.

19             MS. CHAVAR:  Okay.  And that is exclusive to

20      drug-related crimes?

21             A JUROR:  Yes.

22             MS. CHAVAR:  All right.  Thank you.

23             THE COURT:  Thank you.  I'm going to ask you to

24      wait outside for a moment.  We'll bring you back in.

25             A JUROR:  Thank you.

```
 1                    (The juror left the courtroom.)
 2                    THE COURT:  Any motion from the government?
 3                    MS. WELSH:  Yes, Your Honor.  We would like to
 4    strike this juror.  He's admitting he won't be able to
 5    follow the instructions.
 6                    THE COURT:  Ms. Chavar, what's your position?
 7                    MS. CHAVAR:  I think he's saying it would make
 8    him nervous, but he didn't say he couldn't do it.
 9                    THE COURT:  Okay.  I'm going to grant the
10    government's motion to strike Juror No. 7.  He repeatedly
11    said he would be nervous and anxious, and he physically
12    appeared nervous and anxious and shaky and in response to
13    Ms. Chavar's question, acknowledged really this type of
14    charge that he thinks this case is going to be about, that
15    leads to his anxiety, and I think he will be able to serve
16    on another potential jury, so I'm excusing him.  We'll bring
17    him back for a moment.
18                    (The juror entered the courtroom.)
19                    THE COURT:  ////////////, I'm going to excuse you
20    from serving on this jury.  Thank you very much for being
21    willing to serve, but you're free to go and have a good rest
22    of the day.
23                    A JUROR:  Thank you.
24                    THE COURT:  Thank you.
25                    (The juror left the courtroom.)
```

```
 1                          *  *  *
 2               (The juror entered the courtroom.)
 3               THE COURT:  Good morning.  If you don't mind
 4    coming forward through those doors.
 5               Are you /////////////?
 6               A JUROR:  Yes.
 7               THE COURT:  Okay.  Our Juror No. 8.
 8               Do you mind taking your face covering off?
 9    Thank you.
10               Do you recall if you had any "yes" answers to my
11    questions?
12               A JUROR:  I did.
13               THE COURT:  Okay.  Do you remember what
14    question?
15               A JUROR:  I do have a paid vacation that I leave
16    on next Thursday that is nonrefundable.
17               THE COURT:  Okay.
18               A JUROR:  My ex-husband worked for Homeland
19    Security.  I think that was a question.
20               And I worked for an establishment, I'm not sure
21    if I had contact with ATF or any of those.  I know DAR and
22    ABC was involved.  I'm not sure of the exact agency.
23               THE COURT:  Okay.  Where is your vacation to
24    next Thursday?
25               A JUROR:  Gatlinburg, Tennessee.
```

```
1                    THE COURT:  Okay.  You already paid for?

2                    A JUROR:  Log cabin rental, yes.

3                    THE COURT:  You would not be able to get that

4     money back?

5                    A JUROR:  It's nonrefundable.

6                    THE COURT:  And your ex-husband, I think you

7     said, what did he do?

8                    A JUROR:  He worked for Homeland Security at

9     Dover Air Force base.

10                   THE COURT:  Okay.

11                   A JUROR:  He's in anti-terrorism now.  He's not

12    in that position now.  He did work there.

13                   THE COURT:  Do you think you could be fair and

14    impartial in evaluating the testimony of law enforcement

15    witnesses?

16                   A JUROR:  I don't know.  I was married to a cop

17    for 25 years.  I kind of go back and forth on whether I

18    would be -- I don't know.

19                   THE COURT:  Okay.  All right.  Thank you.  I'm

20    going to ask you to wait outside for a moment, please.

21                   A JUROR:  Okay.

22                   (The juror left the courtroom.)

23                   THE COURT:  All right.  Would there be any

24    objection to striking Juror No. 8 based on the hardship as

25    well as the possibility that she may not be fair and
```

```
 1    impartial?
 2              MS. WELSH:  No.
 3              THE COURT:  Any objection?
 4              MS. WELSH:  No.
 5              MS. CHAVAR:  No, Your Honor.
 6              THE COURT:  I'm going to strike Juror No. 8.
 7    Let's bring her back briefly.
 8              (The juror entered the courtroom.)
 9              THE COURT: All right, ///////////.  Thank you
10    very much for willing to serve.  I'm going to excuse you
11    from serving on this jury.  You're free to go.  Thank you
12    very much.
13              A JUROR:  Thank you.
14              (The juror left the courtroom.)
15                        *  *  *
16              (The juror entered the courtroom.)
17              THE COURT:  Good morning.  If you don't mind
18    coming forward through those doors, that's great.  Are you
19    Juror No. 9?
20              A JUROR:  Yes.
21              THE COURT:  Okay.  Do you mind taking the mask
22    off for our discussion?  Thank you very much.
23              Do you remember, did you have any "yes" answers
24    to my questions?
25              A JUROR:  Just that one, yes.
```

```
 1                    THE COURT:  Let me have you come closer so I can
 2    hear you.
 3                    A JUROR:  Yes.
 4                    THE COURT:  So you had one yes answer?
 5                    A JUROR:  Yes.  Ministry.
 6                    THE COURT:  I'm afraid I can't hear you.  Could
 7    I have you come a little closer?
 8                    A JUROR:  Okay.
 9                    THE COURT:  I'm sorry.  I can't hear you.
10                    A JUROR:  I'm in ministry, my husband.
11                    THE COURT:  You're a minister?
12                    A JUROR:  You asked about business.
13                    THE COURT:  Yes.  Do you own or operate your own
14    business?
15                    A JUROR:  In ministry.  We have a ministry.
16                    THE COURT:  In ministry?
17                    A JUROR:  My husband used to own and sell
18    electronics.  That was business you mentioned.  That's the
19    only thing.
20                    THE COURT:  I'm so sorry.  I can't, I cannot
21    hear you.
22                    A JUROR:  I'm sorry.
23                    THE COURT:  Do you mind coming a little bit
24    closer?  All right.  There was something about electronics
25    as well?
```

1                    A JUROR:  Yeah.  My husband used to run a

2       business selling electronics.

3                    THE COURT:  Your husband used to sell

4       electronics?

5                    A JUROR:  Yes.

6                    THE COURT:  And have his own business?

7                    A JUROR:  Yes, but not anymore.  Currently, a

8       ministry.

9                    THE COURT:  Now, is he a minister or you are?

10                   A JUROR:  Both of us are.

11                   THE COURT:  Both of you?

12                   A JUROR:  Yes.

13                   THE COURT:  All right.  Anything else you

14      answered yes to?

15                   A JUROR:  No.

16                   THE COURT:  Any questions from the government?

17                   MS. WELSH:  No, Your Honor.

18                   THE COURT:  Any questions from the defense?

19                   MS. CHAVAR:  Only because I could not hear, I

20      believe you said you and your husband own and operate your

21      own business?

22                   A JUROR:  Ministry.  We're in ministry, yes.

23                   MS. CHAVAR:  Okay.  Thank you.

24                   THE COURT:  Okay.  I'm going to ask you to wait

25      outside for a moment, please.

```
1                      A JUROR:  Okay.

2                      (The juror left the courtroom.)

3                      THE COURT:  Any motions from the government?

4                      MS. WELSH:  No.

5                      THE COURT:  From the defense, any motion?

6                      MS. CHAVAR:  No, Your Honor.

7                      THE COURT:  Okay.  Let's bring her back.

8                      (The juror entered the courtroom.)

9                      THE COURT:  All right.  Thank you very much.

10   We're going to need you back here at 1:00 o'clock.  If you

11   can report back to the third floor at 1:00 p.m., but you are

12   free until 1:00 o'clock.  Understood?

13                      A JUROR:  Okay.  Thank you.

14                      THE COURT:  Thank you.  See you later.

15                      (The juror left the courtroom.)

16                      (The juror entered the courtroom.)

17                      THE COURT:  Good morning.  If you don't mind

18   coming forward through those doors there.  Are you ////

19   /////////?

20                      A JUROR:  Yes.

21                      THE COURT:  Our Juror No. 11.

22            Do you mind taking your mask off for a moment?

23   Thanks very much.

24            Do you remember, did you have any "yes" answers

25   to my questions?
```

```
 1                    A JUROR:  I don't believe so.  That was a lot of
 2      questions, sir.
 3                    THE COURT:  It was a lot of questions, but did
 4      you have any concerns you wanted to share with us about
 5      serving on this jury?
 6                    A JUROR:  No.
 7                    THE COURT:  No?
 8                    A JUROR:  I don't believe so.
 9                    THE COURT:  Okay.  All right.  Any questions
10      from the government?
11                    MS. WELSH:  No.
12                    THE COURT:  From the defense?
13                    MS. CHAVAR:  No, Your Honor.
14                    THE COURT:  Okay.  So we're going to need you
15      back here at 1:00 o'clock.
16                    A JUROR:  Okay.
17                    THE COURT:  You are free until 1:00, but
18      please report back to the third floor at 1:00 o'clock.  All
19      right?
20                    A JUROR:  Okay.
21                    THE COURT:  Okay.  We'll see you later.  Thank
22      you.
23                    A JUROR:  Thank you.
24                    (The juror left the courtroom.)
25                              *  *  *
```

1              (The juror entered the courtroom.)

2              THE COURT:  Good morning.  Do you mind coming

3      through those doors?  Great.

4              Are you //////////////?

5              A JUROR:  Yes.

6              THE COURT:  Okay.  Do you mind taking your mask

7      off for our discussion?  Thank you.

8              I believe you are Juror No. 12?

9              A JUROR:  Yes.

10             THE COURT:  Do you recall, did you have any

11     "yes" answers to my questions?

12             A JUROR:  Yes.

13             THE COURT:  And do you remember what they were?

14             A JUROR:  The one in reference to I believe a

15     family member being convicted.

16             THE COURT:  Okay.  There's a family member that

17     has been convicted?

18             A JUROR:  Yes.

19             THE COURT:  Can you tell us who it was?

20             A JUROR:  It's my son.  It was about five years

21     ago.  It was an accidental shooting of a friend.  He had a

22     legal gun in the house and it went off.

23             THE COURT:  Okay.  And do you think anything

24     about that process that your son went through would make it

25     difficult for you to be a fair and impartial juror in a

1    criminal case?

2              A JUROR:  No.  I think it was reasonable.

3              THE COURT:  Anything else that you might have

4    answered yes to?

5              A JUROR:  No.

6              THE COURT:  No?  Okay.  Any questions from the

7    government?

8              MS. WELSH:  Did your experience, your son's

9    experience in the criminal justice system leave you with any

10   feelings about law enforcement or the system that you need

11   to tell us about?

12             A JUROR:  No.  I think it was handled fairly

13   based on the circumstances and the outcome.

14             MS. WELSH:  Nothing further.

15             THE COURT:  Any questions from the defense?

16             MS. CHAVAR:  No, Your Honor.

17             THE COURT:  Okay.  All right.  I'm going to ask

18   you to wait outside just for a moment, please.

19             (The juror left the courtroom.)

20             THE COURT:  Any motion from the government?

21             MS. WELSH:  None, Your Honor.

22             THE COURT:  From the defense?

23             MS. CHAVAR:  No, Your Honor.

24             THE COURT:  Okay.  Let's bring her back.

25             (The juror entered the courtroom.)

```
 1              THE COURT:  All right.  ///////////, we'll need
 2   you back here at 1:00 p.m.  Please report back to the third
 3   floor at 1:00 p.m., but you are free until 1:00 o'clock.
 4   Okay?
 5              A JUROR:  Yes.
 6              THE COURT:  Thank you.
 7              (The juror left the courtroom.)
 8                        *  *  *
 9              (The juror entered the courtroom.)
10              THE COURT:  Good morning.  Would you mind coming
11   forward through those doors?  Are you ///////////////?
12              A JUROR:  Yes, sir.
13              THE COURT:  Okay.  And do you mind taking the
14   mask off?  Thank you.
15              Do you remember, did you have any "yes" answers
16   to my questions?
17              A JUROR:  I did.
18              THE COURT:  Okay.
19              A JUROR:  My sister is currently addicted to
20   drugs and she's in the hospital right now.
21              THE COURT:  She's in the hospital?
22              A JUROR:  So as soon as said that, yeah.  I'm
23   trying to --
24              THE COURT:  I'm sorry.  I'm sorry.
25              Okay.  Do you think that that would make it
```

1    difficult for you to be a fair and impartial juror in a case

2    related to drugs?

3                A JUROR:  Yes.  And this wouldn't exclude me

4    from doing my jury duty again.  I just know that I couldn't

5    be fair.

6                THE COURT:  You don't think you could sit

7    through a week of testimony related to drug dealing.

8    Correct?

9                A JUROR:  No, sir.

10                THE COURT:  Okay.  All right.  Well, I'm going

11    to excuse you from serving on this jury.  I hope your sister

12    recovers.

13                A JUROR:  Thank you.

14                THE COURT:  You're free to go.

15                A JUROR:  Thank you.

16                THE COURT:  Thank you.

17                (The juror left the courtroom.)

18                *    *    *

19                (Juror left courtroom.)

20                THE COURT:  So I have stricken Juror No. 13.

21    She was, as we all saw, in tears just trying to tell us

22    about her concern and I don't think she could be a fair and

23    impartial juror in a case like this rights now.  So 13 is

24    stricken.

25                Bring in the next one.

```
 1                    (Juror entered juryroom.)

 2              THE COURT:  Good morning.  If you don't mind

 3     coming forward through those doors.

 4              Are you ////////////////?

 5              A JUROR:  Good morning.  Yes.

 6              THE COURT:  Do up mind taking the mask off for

 7     our discussion?

 8              A JUROR:  I'm sorry?

 9              THE COURT:  Do you mind taking off your mask for

10     our discussion?

11              A JUROR:  Oh, sure.  Thank you.  Appreciate it.

12              THE COURT:  Sure.  Do you recall if you had a

13     "yes" answer to any of my many questions?

14              A JUROR:  Yes, sir.

15              THE COURT:  Okay.  If you remember any of them,

16     please tell me.

17              A JUROR:  Specifically, I have two kids who have

18     both been involved with drug problems.  One is just being

19     released from jail and the other one is being rehabilitated.

20              THE COURT:  Okay.

21              A JUROR:  Three years ago.

22              THE COURT:  Okay.  One just got released from

23     jail.  What kind of charges was he or she convicted of?

24              A JUROR:  Drug charges.

25              THE COURT:  Okay.  Do you think with those
```

1    experiences you could be a fair and impartial juror in a

2    case involving allegations related to drugs?

3              A JUROR:  I don't think so.

4              THE COURT:  You don't think you could be fair?

5              A JUROR:  I don't think I can be fair or unfair.

6    It was very traumatic for me to have -- I'm a practicing Zen

7    Buddhist, monastically trained, but to have two kids, for

8    perhaps perhaps circumstantial reasons, turn out to be not

9    law-abiding citizens.

10             THE COURT:  Okay.  And were there other things

11   you answered yes to, do you remember?

12             A JUROR:  The other one is the hardship.  I'm an

13   independent contractor, a licensed massage therapist myself.

14   I recently divorced.  I need the work.

15             THE COURT:  And when you don't work and don't

16   have your appointments, you don't make money, I take it?

17             THE JURORS:  That is correct, sir.

18             THE COURT:  Okay.  All right.  Is there anything

19   else you answered yes to?  No?

20             A JUROR:  No.

21             THE COURT:  No.  All right.  Let me have you

22   just wait outside for a moment.

23             A JUROR:  Thank you.

24             THE COURT:  Thank you.

25             (Juror left courtroom.)

```
 1                    THE COURT:  Any objection from the government to

 2    striking Juror No. 14?

 3                    MS. WELSH:  No objection, Your Honor.

 4                    THE COURT:  Ms. Chavar, any objection?

 5                    MS. CHAVAR:  No objection.

 6                    THE COURT:  We'll bring him back in.

 7                    (Juror entered juryroom.)

 8                    THE COURT:  //////////////, I'm going to excuse

 9    you from serving on this jury at this time.  So you are free

10    to go.  Thank you very much.

11                    A JUROR:  Thank you.

12                    THE COURT:  Thank you.

13                    (Juror left courtroom.)

14                         *    *    *

15                    (Juror entered juryroom.)

16                    THE COURT:  Good morning.  If you don't mind

17    coming forward through those doors.

18                    Are you /////////?

19                    A JUROR:  Yes, sir.

20                    THE COURT:  Okay.  Do you mind taking the mask

21    off?

22                    A JUROR:  Sure.

23                    THE COURT:  Thank you.  Do you recall if you had

24    any "yes" answers to my questions?

25                    A JUROR:  No, sir.
```

```
 1                    THE COURT:  You had no "yes" answers?

 2                    A JUROR:  No, sir.

 3                    THE COURT:  Okay.  Anything else you wanted to

 4    raise with me?

 5                    A JUROR:  No.

 6                    THE COURT:  No.  Any questions from the

 7    government?

 8                    MS. WELSH:  None, Your Honor.

 9                    THE COURT:  From the defense?

10                    MS. CHAVAR:  No, Your Honor.

11                    THE COURT:  Okay.  Mr. Diego, I'll need you back

12    here at 1:00 o'clock today.  You can report back to the

13    third floor at 1:00 o'clock.  That would be great.  But you

14    are free until then.

15                    A JUROR:  Thank you.

16                    THE COURT:  Okay.  Thank you.

17                    (Juror left courtroom.)

18                         *    *    *

19                    (Juror entered juryroom.)

20                    THE COURT:  Good morning.  If you could come

21    forward through the doors for me.  Thank you.

22                    Are you ////////////////?

23                    A JUROR:  I am.

24                    THE COURT:  Do you mind taking the mask off?

25                    A JUROR:  No.
```

```
 1                    THE COURT:  Do you recall, did you have any

 2      "yes" answers to my questions?

 3                    A JUROR:  Yes.

 4                    THE COURT:  Okay.  Do you remember what any of

 5      them were?

 6                    A JUROR:  A family member in drug rehab.

 7                    THE COURT:  Okay.  I'm sorry to have to ask, but

 8      which family member?

 9                    A JUROR:  A niece of mine.

10                    THE COURT:  Okay.  Is she currently in rehab?

11                    A JUROR:  No, she is doing -- doing very well.

12                    THE COURT:  Good.  Glad to hear that.

13                    Well, did -- illegal drugs or was it alcohol?

14                    A JUROR:  Opioids.

15                    THE COURT:  Opioids.  Okay.

16                    Do you think anything about that experience

17      would make it hard for you to be a fair and impartial juror

18      in a drug related case?

19                    A JUROR:  No.

20                    THE COURT:  No.  Is there anything else you

21      answered yes to?

22                    A JUROR:  About a -- self-employed or owning a

23      business.  I have a business with three partners.  I'm not

24      sure if that counts.

25                    THE COURT:  Sure, that counts.  What kind of
```

1    business is it?

2                    A JUROR:  Advertising.

3                    THE COURT:  Okay.  And that's what you currently

4    partly own and operate?

5                    A JUROR:  Correct.

6                    THE COURT:  About how long have you had that

7    business?

8                    A JUROR:  I've been with the company 36 years,

9    but I've been partner for about 12, so ...

10                   THE COURT:  Okay.  And do you have a role in

11   running it or --

12                   A JUROR:  Yes, correct.  Yes.

13                   THE COURT:  All right.  Anything else you

14   answered "yes" to?

15                   A JUROR:  No.

16                   THE COURT:  Okay.  Any questions from the

17   government?

18                   MS. WELSH:  No.

19                   THE COURT:  No.  From the defense, any

20   questions?

21                   MS. CHAVAR:  No, Your Honor.

22                   THE COURT:  Okay.  We're going to need you back

23   here at 1:00 o'clock --

24                   A JUROR:  Okay.

25                   THE COURT:  -- for the next step in this

```
 1   process.  If you can report back to the third floor at 1:00
 2   o'clock, that would be great.
 3                A JUROR:  Okay.
 4                THE COURT:  You are free until then.
 5                A JUROR:  Okay.
 6                THE COURT:  Okay.  Thank you.
 7                (Juror left courtroom.)
 8                     *    *    *
 9                (Juror entered juryroom.)
10                THE COURT:  Good morning.  Do you mind coming
11   forward through the doors.
12                Are you //////////?
13                A JUROR:  Yes.
14                THE COURT:  Okay.  Do you mind taking the mask
15   off?
16                A JUROR:  No.
17                THE COURT:  Okay.  Great.  Thank you.
18                Do you remember, did you have any "yes" answers
19   to my questions?
20                A JUROR:  Well, there was one that wasn't really
21   on there is about, it's kind of embarrassing, it's personal.
22                THE COURT:  Do you wants to just talk to me
23   separately?
24                A JUROR:  Could I.
25                THE COURT:  Sure:  No, that's fine.  Do you
```

1    mind -- usually I have the court reporter take down what you

2    say.

3                  A JUROR:  That's fine.

4                  THE COURT:  But I can seal that.

5                  A JUROR:  Yes.

6                  THE COURT:  Okay.  Let's just have you come over

7    to this area for me.

8                  A JUROR:  Okay.

9                  (Sidebar conference under seal; bound separately.)

10                 THE COURT:  So the juror had shared some

11   information with me about buy she may also have some other

12   "yes" answers which she thought she could probably talk

13   about in front of everyone.  So we're going to try to figure

14   that out.  I think you figured out it was possibly 25 or 23,

15   was it?

16                 A JUROR:  25 or 7.  25 or 7.

17                 THE COURT:  27 is about defendant's right to

18   remain silent throughout trial.

19                 A JUROR:  No.

20                 THE COURT:  No?  25 was about a defendant is

21   presumed innocent unless the government comes forward with

22   evidence beyond a reasonable doubt.

23                 Do you think those were the questions you

24   answered "yes" to?

25                 A JUROR:  It doesn't sound like those were the

1    ones.

2              THE COURT:  Do you remember anything about what

3    the concern was?  And I can run through some of these again,

4    if you would like.

5              A JUROR:  Yes.  I don't think so.

6              THE COURT:  You don't remember?

7              A JUROR:  I don't, I don't think there were any

8    others.

9              THE COURT:  Okay.

10             A JUROR:  That was mainly the one I talked to

11   you about.

12             THE COURT:  Right.  Okay.  Let me have you step

13   outside just for a moment, okay?  Thank you.

14             (Juror left courtroom.)

15             THE COURT:  I am going strike Juror No. 18.  She

16   discussed essentially a medical related issue, and I think

17   it would make it difficult, if not impossible for her to

18   give the trial the attention that it needs.  I don't think

19   you need the details of it but that's my finding so I am

20   going strike Juror No. 18.  We'll bring her back in.

21             (Juror entered juryroom.)

22             THE COURT:  ///////////, thank you very much.  I'm

23   going to excuse you from serving on this jury.

24             A JUROR:  Okay.

25             THE COURT:  But thank you for being willing to

1    serve and be well.

2                    A JUROR:  Thank you.

3                    THE COURT:  Bye-bye.

4                    (Juror left courtroom.)

5                         *    *    *

6                    (Juror entered juryroom.)

7                    THE COURT:  Good morning.  Yes.  If you don't

8    mind coming forward through the doors there.

9                    Are you ///////////?

10                   A JUROR:  Yes, I am.

11                   THE COURT:  Do you mind taking your mask off?

12                   A JUROR:  I do not mind.

13                   THE COURT:  Okay.  Thank you.

14                   Do you remember if you had any "yes" answers?

15                   A JUROR:  Yes, I do.

16                   THE COURT:  Okay.  Any chance you remember what

17   they may be?

18                   A JUROR:  I can't remember the number, but.

19                   THE COURT:  That's fine.

20                   A JUROR:  I have served on a jury in a civic

21   trial.

22                   THE COURT:  In a civil.

23                   A JUROR:  Civil case, yes.

24                   THE COURT:  Okay.

25                   A JUROR:  Also there was another question about

1   do I know a close relative who has been addicted to drugs

2   and I do.  My father, my grandfather and my uncle.

3               THE COURT:  Okay.  Are the three of them

4   recovered or ...

5               A JUROR:  Two of them are now deceased.  My

6   uncle, my grandfather.  My father is in and out.

7               THE COURT:  Okay.  I'm sorry about all that.  Do

8   you think that you could be a fair and impartial juror in a

9   case that relates to allegations relating to drugs?

10              A JUROR:  To be honest, I'm not sure.  I'll try

11  my best but I can't say.

12              THE COURT:  And are you able to say what makes

13  you hesitant?  What do you think might prevent you from

14  being fair and impartial as you sit here and hear evidence

15  about alleged drug related transactions, et cetera?

16              A JUROR:  Well, just speaking right now, I can't

17  say, but I guess after hearing the evidence and things, I

18  think I just feel a certain kind of way about drugs, period,

19  just what they have done to my family.  So I don't, I'm not

20  sure I can really give a fair verdict.

21              THE COURT:  Okay.  Okay.  You have been on a

22  jury before.  You said a civil jury, right?

23              A JUROR:  Um-hmm.  Yes.

24              THE COURT:  Is that here in Delaware?

25              A JUROR:  Yes.

1          THE COURT:  Was it -- do you recall, was it here

2   in federal court or was it state court?

3          A JUROR:  No, it was state.

4          THE COURT:  Do you remember about what kind of

5   case it was, what kind of charges it involved?

6          A JUROR:  It involved traffic charges.  I can't

7   remember.

8          THE COURT:  Did that jury reach a verdict?

9          A JUROR:  Yes.

10         THE COURT:  Do you remember what it was?

11         A JUROR:  It was guilty.

12         THE COURT:  Okay.  Do you think there was

13  anything about that process that would impact your ability

14  to be a fair and impartial juror here?

15         A JUROR:  No.

16         THE COURT:  Do you think you had any other "yes"

17  answers?

18         A JUROR:  No, not that I can recall.

19         THE COURT:  Let's see if there are any other

20  questions for you.

21         Any questions from the government?

22         MS. WELSH:  I don't.

23         THE COURT:  Any questions from the defense?

24         MS. CHAVAR:  No.  No, Your Honor.

25         THE COURT:  Okay.  I'm going to ask you just to

1    step outside for a moment for me.  Thank you.

2                    A JUROR:  Um-hmm.

3                    (Juror left courtroom.)

4                    THE COURT:  Any motion from the government?

5                    MS. WELSH:  Your Honor, I'm thinking it's a

6    defense motion here that we would not oppose.

7                    THE COURT:  Would not oppose.

8                    Ms. Chavar, do you have a motion?

9                    MS. CHAVAR:  Yes, Your Honor.  I will move to

10   strike for cause.

11                   THE COURT:  All right.  Well, I will grant the

12   unopposed motion to strike for cause given what she had said

13   about the impact of drugs on her family and how it might

14   affect her ability to be fair and impartial.

15                   Let's bring her back, please.

16                   (Juror entered the courtroom.)

17                   THE COURT:  //////////, I'm going to thank you

18   but excuse you from this jury.  Thank you for being willing

19   to serve.

20                   A JUROR:  Thank you.

21                   THE COURT:  Thank you.

22                   (Juror left courtroom.)

23                       *    *    *

24                   (Juror entered juryroom.)

25                   THE COURT:  Good morning.  If you don't mind

1    coming through those doors.

2                    Are you //////////////?

3                    A JUROR:  I am.

4                    THE COURT:  Do you mind taking the mask off?

5                    A JUROR:  No.

6                    THE COURT:  Thank you.  Do you remember if you

7    had any "yes" answers to my questions?

8                    A JUROR:  I had a couple of answers that I

9    wasn't sure of.

10                    THE COURT:  Okay.

11                    A JUROR:  I have worked at the Wal-Mart in New

12    Castle for about 22 years and during that time, I worked as

13    the asset protection manager dealing with loss prevention

14    and then the Delaware State Police but was not aware of any

15    of the people mentioned.

16                    THE COURT:  Okay.  Do you think that you could

17    be fair and impartial in evaluating testimony from law

18    enforcement witnesses?

19                    A JUROR:  Yeah.

20                    THE COURT:  Okay.  Are there other things that

21    you may have answered "yes" to?

22                    A JUROR:  No.

23                    THE COURT:  That was it?

24                    A JUROR:  Yes.

25                    THE COURT:  Okay.  Any questions?

```
 1                    MS. WELSH:  None from us.

 2                    THE COURT:  Any questions?

 3                    MS. CHAVAR:  No, Your Honor.

 4                    THE COURT:  All right.  We'll need you back here

 5      at 1:00 o'clock.  If you could report to the third floor at

 6      1:00 o'clock, but you are free until 1:00 o'clock.

 7                    A JUROR:  Okay.  Thank you.

 8                    THE COURT:  Thank you very much.

 9                    (Juror left courtroom.)

10                         *     *     *

11                    (Juror entered juryroom.)

12                    THE COURT:  Good morning.  Would you mind coming

13      forward through the doors.  Are you //////////?

14                    A JUROR:  Yes.

15                    THE COURT:  Do you mind taking the mask off?

16                    A JUROR:  No, I don't mind.

17                    THE COURT:  Thank you.  Do you remember, did you

18      have any "yes" answers to my questions?

19                    A JUROR:  Yes.

20                    THE COURT:  And do you remember what they were?

21                    A JUROR:  Family member with an addiction.

22                    THE COURT:  Okay.  I'm sorry to have to ask, but

23      which family member is it?

24                    A JUROR:  Sister-in-law.

25                    THE COURT:  Okay.  And is that a current
```

1    situation?

2              A JUROR:  Yes.

3              THE COURT:  Okay.  And is it an illegal drug or

4    legal drug?

5              A JUROR:  No.  Legal.

6              THE COURT:  Which kind of drug is she dealing

7    with?

8              A JUROR:  Prescription medication.

9              THE COURT:  I'm sorry about that.  Do you think

10   that would affect your ability to be a fair and impartial

11   juror in this case given what I've told you about the type

12   of allegations here?

13             A JUROR:  No.

14             THE COURT:  Okay.  Were there other things you

15   answered yes to?

16             A JUROR:  No.

17             THE COURT:  That was it?

18             A JUROR:  Yes.

19             THE COURT:  Any questions?

20             MS. WELSH:  No, Your Honor.

21             THE COURT:  Any questions?

22             MS. CHAVAR:  No, Your Honor.

23             THE COURT:  All right.  We're going to need you

24   back here at 1:00 o'clock.  If you could report to the third

25   floor at 1:00 o'clock, but you are free until 1:00.

```
 1                    A JUROR:  All right.

 2                    THE COURT:  Thank you very much.

 3                    (The juror left the courtroom.)

 4                         *  *  *

 5                    (The juror entered the courtroom.)

 6                    THE COURT:  Good morning.  If you don't mind

 7      coming forward here.  What is your juror number, please?

 8                    A JUROR:  23.

 9                    THE COURT:  23.  Do you mind taking the mask

10      off?

11                    A JUROR:  Yeah.

12                    THE COURT:  //////////.  Right?

13                    A JUROR:  Stay right here?

14                    THE COURT:  Yes.  As long as you can hear me

15      okay.

16                    A JUROR:  Yeah.

17                    THE COURT:  Do you remember, did you have any

18      "yes" answers?

19                    A JUROR:  No.

20                    THE COURT:  No?  Any concerns you had or issues

21      you want to raise with me?

22                    A JUROR:  I just have ADD, so it's hard for me

23      to focus a little bit, but that's all.

24                    THE COURT:  Were you able to focus and follow on

25      what I was reading to you earlier today?
```

1          A JUROR:  Yes, very much.  Yes.

2          THE COURT:  Do you have concerns about your

3     ability to follow, you know, a week-long trial and the

4     evidence that's going to be presented to you?

5          A JUROR:  I'm not sure.

6          THE COURT:  I didn't hear that.

7          A JUROR:  I said I'm not sure.  For the most

8     part, I can focus for the majority of the trial, yeah.

9          THE COURT:  We do take breaks.

10         A JUROR:  Okay.

11         THE COURT:  At least three times every day and

12    we can take more frequent breaks if a juror needs it.  These

13    are the jury seats.  That's where you're seated.

14         A JUROR:  Okay.

15         THE COURT:  I will need you to raise your hand

16    if you are losing focus and just need a break.

17         A JUROR:  Okay.

18         THE COURT:  Would you feel comfortable doing

19    that?

20         A JUROR:  Yeah, that's no problem.

21         THE COURT:  Anything else you answered yes to or

22    anything else you wanted to raise?  Sorry.

23         A JUROR:  The marijuana one, I guess.  My stance

24    on that is I don't find any big deal about the possession,

25    but the selling of it, I find that's a problem, but that's I

```
 1      think the only one I kind of had a yes to.
 2                  THE COURT:  All right.  Do you think you could
 3      follow my instructions on the law even if you disagree with
 4      them?
 5                  A JUROR:  Yes.
 6                  THE COURT:  Okay.  All right.  Let me see if
 7      anyone else has questions for you.
 8                  Anything from the government?
 9                  MS. WELSH:  No, Your Honor.
10                  THE COURT:  From the defense?
11                  A JUROR:  I thought they were talking to me.
12                  THE COURT:  No.  They were telling me they had
13      no questions.
14                  A JUROR:  Oh, okay.
15                  THE COURT:  Let me ask the defense lawyers.  Any
16      questions for Mr. Jones?
17                  MS. CHAVAR:  One moment, Your Honor.
18                  (Pause.)
19                  MS. CHAVAR:  No, Your Honor.
20                  THE COURT:  No questions?
21                  MS. CHAVAR:  No questions.
22                  THE COURT:  Can I have you wait outside?
23                  A JUROR:  Okay.
24                  THE COURT:  Just wait outside for a moment.  We
25      will bring you back.
```

```
 1                    (The juror left the courtroom.)

 2               THE COURT:  Any motion from the government?

 3               MS. WELSH:  No, Your Honor.

 4               THE COURT:  Any motion from the defense?

 5               MS. CHAVAR:  No, Your Honor.

 6               THE COURT:  Okay.  Let's bring him back in.

 7                    (The juror entered the courtroom.)

 8               THE COURT:  All right.  /////////, I'm going to

 9    need you back here at 1:00 p.m. --

10               A JUROR:  Okay.

11               THE COURT:  -- today.  Report to the third floor

12    at 1:00 o'clock, please.

13               A JUROR:  Yes.

14               THE COURT:  And then we'll have you back here

15    after that.

16               A JUROR:  All right.

17               THE COURT:  Thank you very much.

18               A JUROR:  Yeah, no problem.

19                    (The juror left the courtroom.)

20                         *  *  *

21                    (The juror entered the courtroom.)

22               THE COURT:  Good morning.  If you don't mind

23    coming through those doors.

24               A JUROR:  Sure.

25               THE COURT:  Are you //////////////?
```

```
 1                    A JUROR:  Yes.  You're close enough.
 2                    THE COURT:  Close enough?  Okay.
 3                    THE JUROR:  Where do you want me?
 4                    THE COURT:  You've heard worse, I hope.  Right
 5       there.
 6                    A JUROR:  Okay.
 7                    THE COURT:  Do you mind taking your mask off?
 8                    A JUROR:  Oh, God.  No, thank you.
 9                    THE COURT:  Do you recall having a yes answer?
10                    A JUROR:  What were the ones about the New
11       Castle County Police?  That was the only one that like stuck
12       out to me.
13                    THE COURT:  Sure.  Have you had any dealings
14       with the New Castle County Police?
15                    A JUROR:  It was like a couple years back when
16       my brother was having custody issues with his daughter.
17                    THE COURT:  Okay.
18                    A JUROR:  But that's about it.
19                    THE COURT:  If you saw a New Castle County
20       police employee or officer testifying at this trial, do you
21       think you would be fair and impartial in evaluating their
22       testimony?
23                    A JUROR:  Yeah.
24                    THE COURT:  Anything else you said yes to?
25                    A JUROR:  That was the only one that, like,
```

```
 1    stuck out to me.

 2              THE COURT:  Any questions?

 3              MS. WELSH:  No.

 4              THE COURT:  Any questions?

 5              MS. CHAVAR:  No, Your Honor.

 6              THE COURT:  So you're free until 1:00 o'clock.

 7              A JUROR:  All right.

 8              THE COURT:  I will need you back here at

 9    1:00 o'clock.  If you could report to the third floor, we'll

10    give you directions on what to do.

11              A JUROR:  Okay.

12              THE COURT:  Thank you.

13              A JUROR:  You're welcome.

14              (The juror left the courtroom.)

15                      *  *  *

16              (The juror entered the courtroom.)

17              THE COURT:  Good morning.  If you would come

18    forward through those doors, that would be great.

19              Are you ////////////////?

20              A JUROR:  Yes, I am.

21              THE COURT:  If you don't mind taking the mask

22    off.

23              A JUROR:  Sure.

24              THE COURT:  Can I have you come a little bit

25    closer?
```

```
 1                        A JUROR:  Yes.

 2                        THE COURT:  That way I can be sure I can hear

 3       you.

 4                        Do you recall if you have any "yes" answers?

 5                        A JUROR:  Yes, I do.

 6                        THE COURT:  What may they be?

 7                        A JUROR:  I don't know the exact phrase.  It was

 8       I would believe a police officer, if he testified.

 9                        THE COURT:  Okay.  So do you think you would

10       give more weight to a law enforcement officer simply because

11       he or she is a law enforcement officer?

12                        A JUROR:  Yes, I would.

13                        THE COURT:  So even if I instruct you, you have

14       to treat law enforcement and non-law enforcement witnesses

15       the same and try and fairly and impartially evaluate their

16       testimony, you think you would have trouble following that

17       instruction?

18                        A JUROR:  I think I would have a bias.

19                        THE COURT:  Okay.

20                        A JUROR:  I honestly do.

21                        THE COURT:  All right.  Are there other things

22       you answered yes to?

23                        A JUROR:  Anything else?

24                        THE COURT:  Yes.  Was there anything else you

25       answered yes to?
```

```
 1              A JUROR:  Was it about knowing law enforcement
 2    or was it just particular to this?
 3              THE COURT:  No.  Have you had interactions
 4    though with law enforcement?
 5              A JUROR:  Yes.  For 38 years, I've been married
 6    to a police officer.
 7              THE COURT:  I see.  Okay.  All right.  Anything
 8    else you answered yes to?
 9              A JUROR:  No.  That was it.
10              THE COURT:  Okay.  Any questions from the
11    government?
12              MS. WELSH:  No questions.
13              THE COURT:  Any questions from the defense?
14              MS. CHAVAR:  No, Your Honor.
15              THE COURT:  Let me have you step outside for a
16    moment, please.
17              A JUROR:  Sure.
18              (The juror left the courtroom.)
19              THE COURT:  Ms. Chavar, do you want to move to
20    strike this juror?
21              MS. CHAVAR:  I do, Your Honor.
22              THE COURT:  Any objection?
23              MS. WELSH:  None, Your Honor.
24              THE COURT:  All right.  So we'll strike Juror
25    No. 26 based on her answers.
```

1              Let's bring her back.

2                    (The juror entered the courtroom.)

3              THE COURT:  Thanks very much for being willing

4    to serve.  I have excused you from serving on this jury, so

5    you are free to go.  Thank you.

6                    A JUROR:  Thanks very much.

7              THE COURT:  Bye-bye.

8                    (The juror left the courtroom.)

9                         *   *   *

10                   (The juror entered the courtroom.)

11             THE COURT:  Good morning.  Is it ///////////?

12             A JUROR:  Yes, sir.

13             THE COURT:  Can you come through those doors

14   there?  Do you mind taking the mask off?

15             A JUROR:  No.

16             THE COURT:  Thanks.  Do you remember, did you

17   have any "yes" answers to my questions?

18             A JUROR:  Yes.

19             THE COURT:  Let me have you come a little closer

20   so I can be sure that we can hear each other.  Did you have

21   any "yes" answers?

22             A JUROR:  No.

23             THE COURT:  No "yes" answers?

24             A JUROR:  No.

25             THE COURT:  Anything you wanted to talk to me

1    about?

2                    A JUROR:  No.

3                    THE COURT:  Okay.  Any questions?

4                    MS. WELSH:  No.

5                    THE COURT:  Any questions?

6                    MS. CHAVAR:  No, Your Honor.

7                    THE COURT:  Okay.  So we'll need you back here

8    at 1:00 o'clock today.  If you could report to the third

9    floor at 1:00 o'clock today, you'll be given further

10   direction at that time.  Okay?

11                   A JUROR:  All right.

12                   THE COURT:  All right.  You are free to go until

13   1:00.  Thanks.

14                   A JUROR:  Thank you.

15                   (The juror left the courtroom.)

16                           *   *   *

17                   (The juror entered the courtroom.)

18                   THE COURT:  Good morning.  If you could come

19   through the doors, please.  Are you ///////////////?

20                   A JUROR:  Yes.

21                   THE COURT:  Do you mind taking the mask off?  Is

22   that okay?

23                   A JUROR:  That's fine.

24                   THE COURT:  Thank you.  Do you remember to

25   having "yes" answers to my questions?

```
1                    A JUROR:  Yes, I did.

2                    THE COURT:  Do you remember what any of them

3      were?

4                    A JUROR:  Well, I know one is my -- guy I went

5      to elementary school with, he, right after graduation, he

6      died of a drug overdose.

7                    THE COURT:  Sorry.

8                    A JUROR:  So -- and then I think you said if I

9      knew anybody that is in, like, law enforcement.

10                   THE COURT:  Yes.

11                   A JUROR:  My cousin's husband is a retired

12     narcotics officer from Pennsylvania.

13                   THE COURT:  Okay.  Have you ever talked to him

14     about what he does?

15                   A JUROR:  Yeah, yeah.  During family events, you

16     know.

17                   THE COURT:  Sure.

18                   A JUROR:  Not in depth, but, yeah.

19                   THE COURT:  Do you think you could be fair and

20     impartial if you hear the testimony of law enforcement

21     witnesses who do that kind of work?

22                   A JUROR:  I assume so, yes.

23                   THE COURT:  All right.  And this high school

24     friend, do you think what happened to him -- I think you

25     said it was a him -- would that make it difficult for you to
```

1    be a fair and impartial juror in a case that relates to drug

2    issues?

3                    A JUROR:  It could be, yeah.

4                    THE COURT:  And what is your concern there?  How

5    might it affect you, do you think?

6                    A JUROR:  Just that it was so easy for him to

7    get the drugs, that if it would be more difficult for him to

8    get it, maybe he wouldn't have succumbed to that.

9                    THE COURT:  Okay.  Other questions you answered

10   yes to?

11                   A JUROR:  You said about a cough.  I do have a

12   little bit of a cough.

13                   THE COURT:  You do have a cough?

14                   A JUROR:  Yes.

15                   THE COURT:  That's a new cough?

16                   A JUROR:  About a week-and-a-half.

17                   THE COURT:  Okay.

18                   A JUROR:  I assume it's allergies.

19                   THE COURT:  Right.  Okay.  So that's something

20   you had --

21                   A JUROR:  I get every year.

22                   THE COURT:  Every year around this time?

23                   A JUROR:  Usually spring and fall.

24                   THE COURT:  Okay.  Other things you want to tell

25   us?

```
1            A JUROR:  Just my brother is a lawyer in

2    Pennsylvania, but other than that...

3            THE COURT:  Okay.  All right.  Let me see if the

4    lawyers here have any questions for you.

5            Anything from the government?

6            MS. WELSH:  Would you be able to follow the

7    Judge's instructions about being impartial and listening to

8    the evidence in making a decision based on what you hear?

9            A JUROR:  Probably, yes, I would say.

10           THE COURT:  Anything else?

11           MS. WELSH:  No.

12           THE COURT:  Ms. Chavar, any questions?

13           MS. CHAVAR:  Yes.  Hi.

14           A JUROR:  Hi.

15           MS. CHAVAR:  I think you said that you

16   assumed --

17           THE COURT:  Ms. Chavar, if you could just speak

18   up.  I can't hear you.

19           MS. CHAVAR:  I understand.  Thank you.

20           I think you said that you assumed that you could

21   be impartial if you heard the testimony of a police officer,

22   or you assumed you wouldn't give it more weight.  Is that

23   correct?

24           A JUROR:  Yeah.  I don't think I would give it

25   any more weight.
```

1              MS. CHAVAR:  Okay.  But you said you had a good

2    friend or it's your husband's good friend who is a police

3    officer?

4              A JUROR:  My husband's cousin is a retired narc

5    officer from Pennsylvania.

6              MS. CHAVAR:  A narcotics?

7              A JUROR:  Yes.

8              MS. CHAVAR:  Undercover?

9              A JUROR:  Yes.

10             MS. CHAVAR:  All right.

11             A JUROR:  He did Wilmington and Philadelphia.

12             MS. CHAVAR:  Tough area.  And how long have you

13   known him?

14             A JUROR:  Ever since he has been married.

15   Probably 30 years, at least.

16             MS. CHAVAR:  And I would assume when you get

17   together, things would come up.  He might have shared

18   stories about --

19             A JUROR:  Yeah.  Nothing in depth, no names or

20   anything like that.

21             MS. CHAVAR:  Of course.

22             A JUROR:  Yes.  Just different things that came

23   up, yes.

24             MS. CHAVAR:  Did you ever have any reason to

25   think he was exaggerating his stories?

1           A JUROR:  I don't think so, no.

2           MS. CHAVAR:  You believed him?

3           A JUROR:  Yeah, I believed him.

4           MS. CHAVAR:  So if you heard a police officer's

5    testimony similar to maybe something that your husband's

6    cousin said, you probably would be likely to believe that

7    testimony?

8           A JUROR:  I mean, I know I believe my husband's

9    cousin because I knew him.  I don't know if I would believe

10   somebody I didn't know as well.

11          MS. CHAVAR:  You're not positive though?

12          A JUROR:  No, not a hundred percent.

13          MS. CHAVAR:  That's fair.  No, that's fair.

14          A JUROR:  Okay.

15          MS. CHAVAR:  That's a fair answer.

16          A JUROR:  Okay.

17          MS. CHAVAR:  Thank you.

18          A JUROR:  Okay.

19          THE COURT:  Thank you.  Let me have you wait

20   outside for a moment and we'll bring you back.

21          A JUROR:  Okay.

22          THE COURT:  Thank you.

23          A JUROR:  Thank you.

24          (The juror left the courtroom.)

25          THE COURT:  What is the government's position on

1    Ms. Kauffman?

2              MS. WELSH:  We don't have a motion and we would

3    oppose a motion, actually.

4              THE COURT:  Ms. Chavar?

5              MS. CHAVAR:  Your Honor, I move to strike this

6    juror.  I think that she wants to think that she'll be fair

7    and impartial, and she may be, but she's not sure.

8              And I am concerned about the, you know, the

9    person in her life who died of an overdose of drugs, and

10   that in combination with this longtime friendship with a

11   narcotics officer, I move to strike for cause.

12             THE COURT:  Ms. Welsh, did you want to be heard

13   on that?

14             MS. WELSH:  Your Honor, yes.  I think when the

15   potential juror was questioned, she said that she believed

16   her cousin.  She clarified that she believed her cousin's

17   husband because there was another officer she would evaluate

18   fairly.  I don't think it's appropriate to strike her.

19             THE COURT:  Give me a second.

20             Ms. Chavar, you had something that you wanted to

21   add?

22             MS. CHAVAR:  Your Honor, I think the larger

23   issue really is that my client, the person that sold the

24   drugs to the person in her life that she lost.

25             THE COURT:  All right.  I think it's a difficult

1     one for cause, but I have been reminded that the

2     questionnaire, COVID questionnaire, Question 2, does include

3     at any time, in the last two weeks have you had a cough, and

4     had she answered yes, it would have stricken this juror

5     automatically.

6               I don't know the timing of when this particular

7     juror filled it out, but, in any event, I'm going to fall

8     back on that and I'm going to strike the juror.  I think

9     it's a close call on it for cause, but I'm going to strike

10    the juror based on the cough even though it's probably and

11    hopefully just a symptom of her allergies, but I'm striking

12    Juror 29.  Let's bring her back.

13               (The juror entered the courtroom.)

14          THE COURT:  ///////////////, I'm going to excuse

15    you from serving on this jury.  Thank you very much for

16    being willing to serve.

17               A JUROR:  Okay.

18               THE COURT:  I hope the cough goes away and

19    thanks you for being willing --

20               A JUROR:  Thank you.

21               THE COURT:  -- to be with us.

22               A JUROR:  So I can leave?

23               THE COURT:  You are free to go, yes.

24               A JUROR:  Thank you.

25               (The juror left the courtroom.)

```
 1                          *   *   *
 2                (The juror entered the courtroom.)
 3                THE COURT:  Good morning.  If you don't mind
 4    coming through those doors there.
 5                Are you //////////?
 6                A JUROR:  Yes.
 7                THE COURT:  Okay.  I see you have a Giants mask.
 8    I'm sorry about the game last night.  Do you mind taking the
 9    mask off?
10                A JUROR:  Yes.
11                THE COURT:  Do you recall if you had any "yes"
12    answers?
13                A JUROR:  No.
14                THE COURT:  You had no "yes" answers?
15                A JUROR:  No.
16                THE COURT:  Any concern about serving on this
17    jury?
18                A JUROR:  No.
19                THE COURT:  No?
20                A JUROR:  This is my first time.
21                THE COURT:  Your first time?
22                A JUROR:  Yeah.
23                THE COURT:  Okay.  Any questions?
24                MS. WELSH:  None, Your Honor.
25                THE COURT:  Any questions?
```

```
 1                    MS. CHAVAR:  No, Your Honor.

 2                    THE COURT:  All right.  So we'll need you back

 3     here at 1:00 o'clock.

 4                    A JUROR:  Okay.

 5                    THE COURT:  If you could report back to the

 6     third floor the a 1:00 o'clock, but you are free until 1:00.

 7                    A JUROR:  Okay.

 8                    THE COURT:  Thanks very much.

 9                    A JUROR:  Thank you.

10                    (Juror left courtroom.)

11                         *    *    *

12                    (Juror entered juryroom.)

13                    THE COURT:  Good morning.  Could you come

14     forward through the doors?  Thank you.

15                    Are you ////////////?

16                    A JUROR:  Yes.

17                    THE COURT:  Do you mind taking your mask off?

18                    A JUROR:  No, not at all.

19                    THE COURT:  Thank you.  Do you remember if you

20     had any "yes" answers to my questions?

21                    A JUROR:  Yes, I think I do have a couple yeses.

22     You said about law enforcement?

23                    THE COURT:  Yes.  Do you have some familiarity

24     with law enforcement?

25                    A JUROR:  Well, I have two cousins that are
```

1       police officers.

2                   THE COURT:  Two cousins.  Here in Delaware?

3                   A JUROR:  No, Central Pennsylvania and Virginia.

4                   THE COURT:  Okay.  Do you think given that

5       familiarity it would be difficult for you to be fair and

6       impartial in evaluating the testimony of law enforcement

7       witnesses in this trial.

8                   A JUROR:  Not at all.

9                   THE COURT:  No?

10                  A JUROR:  No.

11                  THE COURT:  Okay.  Other things you answered

12      "yes" to?

13                  A JUROR:  You said substance abuse?

14                  THE COURT:  Yes.  Any familiarity with substance

15      abuse?

16                  A JUROR:  Cousin, an older cousin that lives in

17      Philadelphia and a brother-in-law.

18                  THE COURT:  Okay.  And if you know, what

19      substances did they have issues with?

20                  A JUROR:  Brother-in-law, I think it was

21      methamphetamine.  The cousin I don't know because I'm not

22      really that close to him.

23                  THE COURT:  Do you know, are those ongoing

24      situations for those two individual?

25                  A JUROR:  No, not at all.  Not any more.

```
 1                    THE COURT:  And do you think you could be fair
 2         and impartial in a trial that will involve evidence about
 3         drugs?
 4                    A JUROR:  Yeah, absolutely.
 5                    THE COURT:  Okay.  Other things you answered
 6         "yes" to?
 7                    A JUROR:  No.
 8                    THE COURT:  No.  All right.  Any questions?
 9                    A JUROR:  No.
10                    THE COURT:  Any questions, Ms. Chavar?
11                    MS. CHAVAR:  No, Your Honor.
12                    THE COURT:  Okay.  So we're going to need you
13         back here at 1:00 o'clock.  You are free until 1:00 o'clock
14         but please return to the third floor of the building at 1:00
15         o'clock.
16                    A JUROR:  Okay.  Thank you.
17                    THE COURT:  Thank you.
18                    (Juror left courtroom.)
19                         *    *    *
20                    (Juror entered juryroom.)
21                    THE COURT:  Good morning.  If you don't mind
22         coming forward through those doors.  Yes, you can come
23         forward through the doors there.
24                    A JUROR:  Okay.
25                    THE COURT:  Yes.  If you don't mind, so we can
```

1    make sure we can all hear each other.

2              Are you //////////?

3              A JUROR:  Yes.

4              THE COURT:  Do you mind taking your mask off?

5    Thank you.

6              Do you remember if you had any "yes" answers?

7              A JUROR:  The only other thing I did have on the

8    five days that could be an inconvenience for me because

9    this, the 22nd I have to have a procedure done on my neck.

10             THE COURT:  Okay.  That would be Wednesday, I

11   believe.

12             A JUROR:  That is correct, yes.

13             THE COURT:  Okay.  What time of day is that

14   scheduled for?

15             A JUROR:  That is for 8:30 in the morning.

16             THE COURT:  Okay.  And you live in Sussex

17   County.  Is that where the procedure is scheduled for?

18             A JUROR:  It's actually in Berlin, Maryland.

19             THE COURT:  Okay.  Is this the kind of thing

20   where you'd be available after that procedure or are you

21   going to be out of --

22             A JUROR:  I'm hoping I should be able to be out

23   of that.

24             THE COURT:  Okay.  So what time do you think you

25   could be here on Wednesday assuming all goes as it should

1      and you drive up here?

2              A JUROR:  My procedure is supposed to be at 8:45

3      in the morning, and it takes me two and-a-half hours to ride

4      there.

5              THE COURT:  And the procedure, any idea how long

6      that is supposed to be?

7              A JUROR:  It should only be about half hour.

8              THE COURT:  Okay.  Other than that, anything you

9      answered "yes" to?

10             A JUROR:  The only thing I have is sometimes

11     I have a -- I have to use the bathroom probably every

12     90 minutes.

13             THE COURT:  Okay.  If our breaks were not that

14     frequent and they could be that frequent, these seats are

15     where the jury sits.  If you would just raise your hand or

16     indicate otherwise you need a break, I would take a break

17     immediately.

18             A JUROR:  Okay.

19             THE COURT:  Do you think you would feel

20     comfortable doing that?

21             A JUROR:  Oh yeah.  Yes.  That's my only two

22     things I have.

23             THE COURT:  Okay.  So no other "yes" answers?

24             A JUROR:  No.

25             THE COURT:  Okay.  Any questions from the

1    government?

2                    MS. WELSH:  No questions.

3                    THE COURT:  Any questions from the defense?

4                    MS. CHAVAR:  No.

5                    THE COURT:  All right.  Let me have you wait

6    outside for a moment, please.

7                    A JUROR:  Okay.

8                    THE COURT:  If you wait outside for a moment,

9    please.  Thank you.

10                    (Juror left courtroom.)

11                    THE COURT:  It seems if we have this juror

12   who -- we would probably not be able to be together

13   Wednesday morning.  What does the government think about

14   that?

15                    MS. WELSH:  Your Honor, we may choose not to

16   have this juror through our peremptory process but I don't

17   think there is a real request for him to be excused for

18   hardship.

19                    THE COURT:  So no motion?

20                    MS. WELSH:  No motion, no.

21                    THE COURT:  And from the defense?

22                    MS. CHAVAR:  No motion.

23                    THE COURT:  All right.  Let's bring him back in.

24                    (Juror entered courtroom.)

25                    THE COURT:  ////////////, we're going to need you

1    back here at 1:00 o'clock today.

2                    A JUROR:  Okay.

3                    THE COURT:  So if you could report to the third

4    floor at 1:00 o'clock, that would be great but you are free

5    until 1:00, okay?

6                    A JUROR:  Okay.

7                    THE COURT:  Thanks very much.

8                    A JUROR:  Thank you.

9                    (Juror left courtroom.)

10                        *    *    *

11                    (Juror entered juryroom.)

12                    THE COURT:  Good afternoon.  If you don't mind

13    coming forward through those doors.

14                    Are you ///////////?

15                    A JUROR:  Yes, sir.

16                    THE COURT:  Okay.  Do you mind taking the mask

17    off for our conversation?

18                    A JUROR:  No.

19                    THE COURT:  And do you remember if you had any

20    "yes" answers?

21                    A JUROR:  I had questions about a couple of

22    them.  I don't know if it disqualifies me.

23                    THE COURT:  Sure.  Do you remember any of the

24    topics that you wanted to discuss?

25                    A JUROR:  You mentioned something about police

```
 1   officers.
 2              THE COURT:  Sure.  Do you --
 3              A JUROR:  I didn't know whether my being a
 4   volunteer fireman for 40 years makes a difference.
 5              THE COURT:  I don't know if it makes a
 6   difference but thank you for that, and it was something we
 7   wanted to hear about.
 8              Do you think -- you would hear from various law
 9   enforcement officers if you are on this jury.  Do you think
10   you could fairly and impartially evaluate testimony from law
11   enforcement officers?
12              A JUROR:  Of course, yes.
13              THE COURT:  You think you could?
14              A JUROR:  Yeah.
15              THE COURT:  Okay.
16              A JUROR:  I mean I know a lot of them, that's
17   why, through my association at the fire department.
18              THE COURT:  Right.  That's why I'm asking.
19   Because you interact with a lot of law enforcement, you
20   might hear testimony from a lot of law enforcement witnesses
21   at this trial.  Will you be able to evaluate this testimony
22   just as you would someone who is not in law enforcement?
23              A JUROR:  I think so.
24              THE COURT:  Okay.  All right.  What else if you
25   recall did you answer "yes" to?
```

1           A JUROR:  I honestly can't remember all the

2    questions.

3           THE COURT:  Okay.  I know it was a lot of

4    questions.

5           Do you remember just general topics?

6           A JUROR:  I don't really have any concerns

7    except for the hardship thing and the job and making money

8    and all that, a doctor appointment next week.  That sort of

9    thing.

10          THE COURT:  Okay.  Let's talk about those

11   things.

12          What kind of work do you do?

13          A JUROR:  I'm a sales rep.

14          THE COURT:  Okay.

15          A JUROR:  I work for -- and that's it.  I'm on

16   commission.  So when I'm here, I'm not making any money.

17          THE COURT:  Right.  And you would be planning to

18   be working and trying to make sales next week; correct?

19          A JUROR:  Oh, yes.

20          THE COURT:  Okay.  And you have a doctor

21   appointment next week?

22          A JUROR:  Well, that's the following week, but

23   next week I have an ultrasound that I have to go get on

24   Tuesday morning, early.

25          THE COURT:  Tuesday morning.

```
 1                    A JUROR:  Yeah.

 2                    THE COURT:  And what time --

 3                    A JUROR:  That's my only conflict really.

 4                    THE COURT:  Okay.  Do you know, is that here in

 5      Wilmington?

 6                    A JUROR:  Newark.

 7                    THE COURT:  Newark.  So if you are on the jury,

 8      what time do you think you might be able to get here after

 9      the ultrasound on Tuesday?

10                    A JUROR:  It usually goes pretty fast.  First

11      thing in the morning.  I'm usually out by 9:30, I guess.

12                    THE COURT:  You might be here by 10:00 or so.

13                    A JUROR:  Yeah.

14                    THE COURT:  All right.  Well, with not being

15      able to do your work next week, do you think you would be

16      able to nonetheless focus and give this case the attention

17      it requires?  Or would you be too worried about, you know,

18      I'm not making any money this week?

19                    A JUROR:  I could be objective, and you know, if

20      I'm here, but that's my -- that's just a concern I have.

21      That's all.

22                    THE COURT:  Understood.  Okay.  Do you think

23      there were other things that you answered "yes" to or had as

24      concerns?

25                    A JUROR:  I can't remember any.
```

```
 1                    THE COURT:  I listed a bunch of names.  Did you
 2      know any of those people?
 3                    A JUROR:  I know nobody involved in the trial or
 4      any of the ...
 5                    THE COURT:  I went through the rights that the
 6      defendant has under the Constitution.  Would you be able to
 7      follow my instructions about those rights?
 8                    A JUROR:  Yes.
 9                    THE COURT:  You might hear from some witnesses
10      that have been convicted of crimes or have a plea bargain.
11      Do you have any concerns about that?
12                    A JUROR:  No.
13                    THE COURT:  No.  Any concerns about the type
14      of prosecution from what I have told you, drug-related
15      prosecution?
16                    A JUROR:  No.
17                    THE COURT:  All right.  Any questions from the
18      government?
19                    MS. WELSH:  No, Your Honor.
20                    THE COURT:  Any questions from the defense?
21                    MS. CHAVAR:  Where did you serve as a volunteer
22      fireman?
23                    A JUROR:  I was with the Mill Creek Fire Company
24      out on Kirkwood Highway.
25                    MS. CHAVAR:  Is that New Castle County?
```

```
 1                      A JUROR:  Yes.

 2                      THE COURT REPORTER:  I'm sorry.  What was that

 3     question again?

 4                      MS. CHAVAR:  I asked where he served as a

 5     volunteer fireman.

 6                      THE COURT:  And she said, is that in New Castle

 7     County.

 8                      MS. CHAVAR:  And is that New Castle County?

 9                      THE COURT REPORTER:  Thank you.

10                      A JUROR:  Actually, I'm retired.  I don't know

11     if that makes a difference.

12                      THE COURT:  Thank you.

13                      MS. CHAVAR:  Well, thank you for doing that.

14     And can I ask you, I think you also said that in that

15     capacity, you, you came into contact with many police

16     officers or law enforcement.

17                      A JUROR:  Yeah.  But there is some that are

18     members.

19                      MS. CHAVAR:  I see.

20                      A JUROR:  There is a police captain that is a

21     member of the fire company.  I have known him for years.

22                      MS. CHAVAR:  You socialize with them or have you

23     socialized with them as well?

24                      A JUROR:  Not lately.

25                      MS. CHAVAR:  But you have?
```

```
 1                    A JUROR:  In the past, of course.
 2                    MS. CHAVAR:  Okay.  And you wouldn't be more
 3      likely -- or are you saying you would not be more likely to
 4      believe them?
 5                    A JUROR:  I tend to put weight behind an
 6      investigating officer.
 7                    MS. CHAVAR:  You do put weight behind that?
 8                    A JUROR:  Yes.  Yes.
 9                    MS. CHAVAR:  Yeah.  Okay.  And that weight would
10      be in their favor, like truthful?
11                    A JUROR:  Well, I'm not -- it's not to the point
12      where I would lie about something just because I know a
13      police officer, but I do tend to give a lot of weight to
14      their -- what they say.
15                    MS. CHAVAR:  Okay.  One moment, please.
16                    (Ms. Chavar confers.)
17                    MS. CHAVAR:  Thank you.
18                    THE COURT:  Mr. Hubbard, if I instruct you that
19      you are to try your best to evaluate the testimony of a law
20      enforcement officer just as you tried your best to evaluate
21      the testimony of a non-law enforcement officer, do you think
22      you could follow that instruction or are you concerned that
23      you might not be able to?
24                    A JUROR:  I think so.  Yes.
25                    THE COURT:  Okay.  All right.
```

1          A JUROR:  I'll do my best.

2          THE COURT:  Thank you.  All right.  Let me

3     have you wait outside for us.  We'll get up back here in a

4     moment.

5          (Juror left courtroom.)

6          THE COURT:  Any motion from the government?

7          MS. WELSH:  We don't have a motion, Your Honor.

8          THE COURT:  All right.  Ms. Chavar, any motion?

9          MS. CHAVAR:  One moment.

10         Your Honor, I think that this juror is very

11    similar to Juror No. 29, who you ultimately struck due to

12    the recent cough.  So I would move to strike for cause.  I

13    don't think he was definitive that he could be fair and

14    impartial.

15         THE COURT:  All right.  Thank you.

16         The government's position?

17         MS. WELSH:  Your Honor, this is indeed on the

18    line.  I think maybe the safest thing is for us not to

19    oppose this one.

20         THE COURT:  All right.  Well, given that it's

21    not opposed, I will grant the motion and we'll strike Juror

22    No. 33.  Let's bring him back, please.

23         (Juror entered courtroom.)

24         THE COURT:  //////////////, I'm excusing you

25    from serving on this jury.  Thank you very much for your

1    willingness to serve but you are free to go.  Thank you.

2                   A JUROR:  Thank you.

3                   THE COURT:  Okay.

4                   (Juror left courtroom.)

5                         *    *    *

6                   (Juror entered juryroom.)

7                   THE COURT:  Please come forward through the

8    doors there.

9                   Are you ///////////////?

10                  A JUROR:  I am.

11                  THE COURT:  Okay.  Do you mind taking the mask

12   off?

13                  A JUROR:  Yes.

14                  THE COURT:  Thank you.  Do you recall if you had

15   any "yes" answers to my questions?

16                  A JUROR:  Just to the one that if me or my

17   family member have a business.  My brother owns his own

18   business.

19                  THE COURT:  Okay.

20                  A JUROR:  But I don't have any relationship with

21   that.

22                  THE COURT:  Okay.  You haven't worked for that

23   business?

24                  A JUROR:  No.

25                  THE COURT:  And you don't own a part of it or

 1    anything?

 2                    A JUROR:  No.

 3                    THE COURT:  Is there anything else you answered

 4    "yes" to?

 5                    A JUROR:  No.

 6                    THE COURT:  Okay.  Any questions?

 7                    MS. WELSH:  No, Your Honor.

 8                    THE COURT:  Any questions?

 9                    MS. CHAVAR:  No, Your Honor.

10                    THE COURT:  Okay.  We'll need you back here a

11    1:00 o'clock.

12                    A JUROR:  Okay.

13                    THE COURT:  But please report to the third floor

14    at 1:00 o'clock, but you are free until then.

15                    A JUROR:  Okay.  Thank you.

16                    THE COURT:  Thank you.

17                    (Juror left courtroom.)

18                         *    *    *

19                    (Juror entered juryroom.)

20                    THE COURT:  Good afternoon.  You can come

21    forward through the doors there, and you can take your mask

22    off if you are okay with that.

23                    Do you recall -- you are Juror No. 35; correct?

24                    A JUROR:  That's correct, yup.

25                    THE COURT:  Do you have any "yes" answers if you

1    remember.

2              A JUROR:  Yes, I do.

3              THE COURT:  Do you remember what they were?

4              A JUROR:  Yeah, convictions.

5              THE COURT:  Convictions.

6              A JUROR:  In my family.

7              THE COURT:  Can you tell us who in your family?

8              A JUROR:  Deceased now.  It was my older

9    brother.

10             THE COURT:  Okay.  What kind of charge was it?

11             A JUROR:  Drugs.

12             THE COURT:  Okay.  Drug dealing?

13             A JUROR:  Pretty much, yes.

14             THE COURT:  Of course.  What kind of drugs, if

15   you know?

16             A JUROR:  Methamphetamine.

17             THE COURT:  About how long ago was all that.

18             A JUROR:  Probably nineties.

19             THE COURT:  Nineties?

20             A JUROR:  Yeah.

21             THE COURT:  Okay.  Did you have any feeling

22   about how your brother was treated by the criminal justice

23   system?

24             A JUROR:  Not really.  I mean, it is what it is.

25             THE COURT:  Do you think you could be a fair and

1    impartial juror in a case that alleges certain types of drug

2    dealing?

3              A JUROR:  That's kind of -- I don't know.

4              THE COURT:  Not sure.

5              A JUROR:  No.  Sorry about that.

6              THE COURT:  Do you have a sense as to what might

7    make you unfair or how you might be unfair?

8              A JUROR:  Just losing my brother, you know.

9              THE COURT:  Just --

10              A JUROR:  Just lost my brother, that's all.

11    Being convicted and him passing.  That's all.

12              THE COURT:  Okay.  Is there anything else you

13    answered "yes" to?

14              A JUROR:  (Shaking head no.)  No.

15              THE COURT:  No.  Okay.

16              Any questions from the government?

17              MS. WELSH:  No, Your Honor.

18              THE COURT:  Any questions from the defense?

19              MS. CHAVAR:  Just a few.

20              A JUROR:  Okay.

21              MS. CHAVAR:  You said you didn't think you could

22    be fair because of the situation with your brother?

23              A JUROR:  Yes.

24              MS. CHAVAR:  Do you mean fair as far as

25    prejudice against somebody accused?

```
 1                    A JUROR:  No, I don't know.  It's hard to ...

 2                    MS. CHAVAR:  Do you think your brother was

 3     treated fairly when he was accused and was going through the

 4     Court?

 5                    A JUROR:  The problem with him was he was set

 6     up.  He was set up.

 7                    MS. CHAVAR:  I see.

 8                    A JUROR:  That's all.

 9                    MS. CHAVAR:  Okay.  Thank you.

10                    A JUROR:  You're welcome.

11                    THE COURT:  Thank you.  Can I have you wait

12     outside?

13                    A JUROR:  No problem.

14                    THE COURT:  Thank you.

15                    (The juror left the courtroom.)

16                    THE COURT:  Does the government object to

17     striking this juror?

18                    MS. WELSH:  No, Your Honor.

19                    THE COURT:  Ms. Chavar, any objection to

20     striking this juror?

21                    MS. CHAVAR:  Your Honor, I don't -- I think

22     he's -- no objection.

23                    THE COURT:  All right.  I'm going to strike

24     Juror 35.  Honestly, I can't tell which way he might favor,

25     but I'm concerned.  He's having understandably an emotional
```

```
 1    reaction to our questions, too.
 2                MS. CHAVAR:  Right.
 3                THE COURT:  So I'm not sure that he can be fair
 4    and impartial, and so I'm going to strike Juror 35.  Let's
 5    bring him back for a second.
 6                (The juror entered the courtroom.)
 7                THE COURT:  ////////////, thank you for being
 8    willing to serve.  I'm excusing you from serving on the
 9    jury.
10                A JUROR:  All right.
11                THE COURT:  So you are free to go.
12                A JUROR:  Thank you.
13                THE COURT:  Thank you.
14                (The juror left the courtroom.)
15                        *  *  *
16                (The juror entered the courtroom.)
17                THE COURT:  Good morning.  If you could come
18    forward through those doors.
19                Are you ////////////?
20                A JUROR:  I am.
21                THE COURT:  Do you mind taking mask off?
22                A JUROR:  Not at all.
23                THE COURT:  You need to come forward so we can
24    make sure we can hear each other.  I know it has been a
25    while.
```

```
 1                  Do you remember if you had any "yes" answers to

 2    my questions?

 3                  A JUROR:  I did not.

 4                  THE COURT:  No "yes" answers?

 5                  A JUROR:  No.

 6                  THE COURT:  Any concerns about serving on this

 7    jury?

 8                  A JUROR:  No.

 9                  THE COURT:  Any questions from the government?

10                  MS. WELSH:  No.

11                  THE COURT:  Any questions from the defendant?

12                  MS. CHAVAR:  No, Your Honor.

13                  THE COURT:  We need you back here at

14    1:00 o'clock.  If you could come back to the third floor at

15    1:00 o'clock, we'll proceed from there.

16                  A JUROR:  Okay.

17                  THE COURT:  Thank you.

18                  (The juror left the courtroom.)

19                          *   *   *

20                  (The juror entered the courtroom.)

21                  THE COURT:  Good afternoon.  If you could come

22    forward through those doors.  Are you ///////////?

23                  A JUROR:  Yes.

24                  THE COURT:  Do you mind taking your mask off?

25    Thank you.
```

1              And do you remember if you had any "yes" answers

2     to my questions?

3              A JUROR:  Yes.

4              THE COURT:  Okay.  Do you remember what any of

5     them might be?

6              A JUROR:  I think it was a question referring to

7     are you self-employed or have you been self-employed.

8              THE COURT:  Okay.  Are you or have you been?

9              A JUROR:  I have been.

10             THE COURT:  All right.  What kind of business

11    was it?

12             A JUROR:  I owned a dental lab.

13             THE COURT:  All right.  About how long ago was

14    that?

15             A JUROR:  It was five years ago.

16             THE COURT:  Okay.  Is it still operational?

17             A JUROR:  I sold it.

18             THE COURT:  You sold it.  Okay.

19             Anything else you answered yes to?

20             A JUROR:  No.

21             THE COURT:  No.  Okay.  Any questions?

22             MS. WELSH:  No, Your Honor.

23             THE COURT:  Any questions?

24             MS. CHAVAR:  No, Your Honor.

25             THE COURT:  Okay.  We'll need you back here at

```
 1    1:00 o'clock.  If you could go to the third floor at

 2    1:00 o'clock, but you are free until 1:00.

 3              A JUROR:  All right.  Thank you.

 4              THE COURT:  Thank you.

 5              A JUROR:  Am I allowed to leave the building?

 6              THE COURT:  You're allowed to leave, yes.

 7              A JUROR:  Okay.

 8              THE COURT:  Please be back at 1:00 o'clock.

 9              A JUROR:  Yes.

10         (The juror left the courtroom.)

11                   *   *   *

12         (The juror entered the courtroom.)

13              THE COURT:  Good afternoon.  If you could come

14    through those doors.  Are you ////////?

15              A JUROR:  Yes, I am.

16              THE COURT:  Do you mind taking your mask off?

17              A JUROR:  Sure.

18              THE COURT:  Do you recall if you had any "yes"

19    answers to my questions?

20              A JUROR:  Yes.  You asked had I had any dealings

21    with the County Police.

22              THE COURT:  Yes.

23              A JUROR:  I'm a criminal defense attorney in

24    Delaware.  I work for the Public Defender's office.

25              I have a pending motion to suppress in a case
```

1   where the County Police have said things that aren't true

2   about my client that I have a video that shows that they do,

3   so I plan to go cross-examine them on that.

4          I probably had a hundred trials, maybe 25 jury

5   trials where I've had County Police.  I've had situations

6   where I've fought for my clients and proved that the County

7   Police were lying.

8          So my life experience is that I've found County

9   Police to lie.  I'm not sure if it's these officers that are

10  going to be here, if I would recognize them, but I don't

11  have a very good -- a positive view of what is in police

12  reports and what police do, particularly in drug cases.

13          THE COURT:  Thank you.

14          A JUROR:  I also have another positive answer if

15  you want to hear it.

16          THE COURT:  I think we might get there.

17          A JUROR:  Okay.

18          THE COURT:  But I did list some names.  I don't

19  think I associated the names with the particular police

20  force, but if you recognize any of them?

21          A JUROR:  I didn't recognize those names.

22          THE COURT:  Okay.  So in all of that, are you

23  saying that you couldn't be a fair and impartial juror?

24          A JUROR:  I think it would be great to be on a

25  jury, as a criminal defense attorney, to be able to be on a

1    jury, because I handle these exact same kind of cases, so I

2    think it would be an invaluable experience and I would do my

3    absolute best, but if I saw some inconsistencies in what

4    that police is saying from what I know from my experience, I

5    think that they cut corners, especially in drug cases.  I

6    think they fudge stuff.  Not I think -- I know for a fact

7    that they do and I've proven it in court.

8                 THE COURT:  Right.

9                 A JUROR:  I could actually bring a video in and

10   a police report.  I could bring it in Monday and show you

11   how a County Police officer is lying.

12                THE COURT:  No, that's fine.  But you know from

13   your experience that each case turns on the specific

14   evidence and facts?

15                A JUROR:  It does, it does.

16                THE COURT:  So I'm trying to understand, are you

17   telling me you would not be able to apply a fair and

18   impartial judgment to the specific facts presented to you in

19   this case or you would be able to do that?

20                A JUROR:  I would try, but now there's two

21   things here.  One is my conscious effort would be to try to

22   do that, but I also as a juror bring my life experience.  So

23   those experiences I've had, catching police officers lying,

24   have become ingrained in who I am.  A citizen who hasn't had

25   that privilege of doing that probably doesn't know.  I know

1    that police officers lie.

2              THE COURT:  What is the other yes answer?

3              A JUROR:  The other yes is I have a conviction.

4    I got a DUI in 1992.  I had to -- I couldn't get the first

5    offender program because I also had a marijuana charge.

6              I think that marijuana should not be illegal.  I

7    think that it's illegal federally because it's basically an

8    abuse of the commerce clause.

9              I also absolutely think that it's outrageous to

10   prosecute people and to criminally prosecute them for

11   marijuana.  My understanding, in fact, is that both

12   President Trump and President Biden have instructed the

13   federal prosecutor's, at least this is what I've read, not

14   to pursue these cases.  So I'm shocked that the federal

15   prosecution is here with a manufacturing of marijuana case.

16             So this guy allegedly grew some weed and my

17   federal tax dollars in today's -- there's even a bill to

18   make it, to legalize it I believe in the Senate and half the

19   states have legalized it.  So I am shocked at that.  And it

20   messed up my life and I just think that's totally unfair.

21             So it would be very difficult, but again I would

22   try to apply.  But I think that's absolutely outrageous that

23   they bring that prosecution.

24             THE COURT:  But that's again my question.

25   Notwithstanding your personal views and your personal

1    experience, you know I would instruct you that you need to

2    follow the law whether you agree with it or not.

3              A JUROR:  I know.

4              THE COURT:  Either you're follow that --

5              A JUROR:  I would try to follow it.  It would be

6    very, very difficult for me.

7              THE COURT:  Is there anything else you answered

8    yes to?

9              A JUROR:  No.

10             THE COURT:  Are there any questions from the

11   government?

12             MS. WELSH:  No.

13             THE COURT:  Are there any questions from the

14   defense?

15             MS. CHAVAR:  As a criminal defense lawyer, I

16   understand.  I'd love to sit on a jury as well.

17             I think that you have made it clear that it

18   would be difficult --

19             THE COURT:  Do you have a question?

20             MS. CHAVAR:  I'm sorry, Your Honor.  Never mind.

21   I'm good.

22             THE COURT:  No questions.

23             A JUROR:  It's difficult because you spend your

24   time digging at these cases and finding holes in them and

25   you get mad about it.  It gets you to the core.

```
 1              I'm mad about the police officer.  I have to go
 2    do a suppression motion because he's lying.  I have a video
 3    to show he's lying, County police officer.
 4              It makes me sick, you know.  I will try to
 5    contain that, but it's going to be hard.  That's who I am.
 6    I took a public defender defense job because of those
 7    marijuana laws.  I want to be a champion for people against
 8    prosecutions for marijuana.  I really do.
 9              THE COURT:  Okay.
10              A JUROR:  You know.  I feel very strongly, but I
11    will do my best.
12              THE COURT:  I see that.  I appreciate all of
13    that.  Let me have you wait outside for a moment for me.
14    Okay?  Thank you.
15              (The juror left the courtroom.)
16              THE COURT:  Any motion from the government?
17              MS. WELSH:  Yes, Your Honor.  It is hard to
18    imagine anyone being more biased than that potential
19    juror and want to be Evangelical about it, too.  We have a
20    motion.
21              THE COURT:  Ms. Chavar?
22              MS. CHAVAR:  I do not oppose the motion.
23              THE COURT:  I will strike ///////// for cause.
24    Let's bring him back.
25              (The juror entered the courtroom.)
```

```
 1              THE COURT:  All right.  ///////, you are not
 2    going to be surprised.  I'm striking you from the jury, but
 3    thank you very much for sharing your thoughts and I wish you
 4    luck going forward.  Thank you.
 5              A JUROR:  Thank you, Your Honor.  Thank you,
 6    everybody.
 7              THE COURT:  Bye-bye.
 8              (The juror left the courtroom.)
 9              THE COURT:  Okay.  So here's where we are.
10    We're certainly going to take at least a short break, but 20
11    folks by our count from that first group are still in the
12    pool and will be back in the building at 1:00 o'clock.
13              The next group is here.  They're assembling in
14    6A now.  They should be available to us in a few minutes.
15    Again, we need to take at least a short break.  I can make
16    it relatively short on my end, but once we get started with
17    the next group, I would like to try to move forward with
18    them as quickly as possible.  So if you want, this will be
19    long enough that you have a chance to eat.  I would say do
20    that as quickly as possible, but this would be our best
21    chance.
22              What's the government's request now that it's 20
23    after?
24              MS. WELSH:  Quarter of.
25              THE COURT:  What about for the defense?
```

```
 1                  MS. CHAVAR:  That's fine, Your Honor.
 2     Twenty minutes will work.
 3                  THE COURT:  Are the Marshals okay with
 4     20 minutes?
 5                  U.S. MARSHAL:  Yes, Your Honor.
 6                  THE COURT:  Okay.  So we'll be getting some
 7     updated information.  Let's just wait.
 8                  DEPUTY CLERK:  Juror 23 has an issue.
 9                  THE COURT:  23 from the new group or the first
10     group?
11                  DEPUTY CLERK:  First group.
12                  THE COURT:  And 23 is currently in our pool
13     and has come forward and wants to what?  See us, I guess?
14                  DEPUTY CLERK:  He has a work commitment on
15     Wednesday that he can't miss.
16                  THE COURT:  A work commitment on Wednesday that
17     he can't miss.
18                  Are we willing to accept that indirect
19     representation or shall we bring them in?
20                  MS. WELSH:  I think we need to bring him in,
21     Your Honor.
22                  THE COURT:  All right.  He's around, I take it?
23                  DEPUTY CLERK:  Yes.
24                  THE COURT:  All right.  Let's bring Juror 23 in.
25                  (Pause.)
```

```
 1              DEPUTY CLERK:  I'm told that he's not in the
 2    building.  He's not here.
 3              THE COURT:  All right.  Well, we will try to
 4    find him when he is here.  Ask them to keep a lookout for
 5    him and we'll bring him in when we can, but, all right.
 6    Let's try to reconvene in 20 minutes and we'll bring the
 7    second group in at that time.  Okay?
 8              All right.  We will be in recess.
 9              (Luncheon recess taken.)
10              *     *     *
11              Afternoon Session, 1:01 p.m.
12              THE COURT:  Good afternoon, everybody.  Thank
13    you all for being here.  I'm Judge Stark.  I'm a District
14    Judge on the United States District Court for the District
15    of Delaware.  Thank you, ladies and gentleman, for being
16    here and being willing to serve on this jury.
17              In a moment I'm going to turn to the start of
18    what is called the voir dire process, and I will read to you
19    a fairly lengthy document.  Before I do that, I want to make
20    a few preliminary comments.
21              First to thank you all for being here.  I know
22    we have taken you away from whatever else you might have
23    been doing or wanted to be doing today and I know, of
24    course, that we're still in the midst of a pandemic and you
25    may have some concerns about serving on a jury at this time.
```

1          I will address that more in the document that

2    I'm going to read to you but I want to make sure you all

3    know you will all have a chance to speak to me directly one

4    on one, if you wish, about any concerns you might have

5    serving on this jury including here in the time of COVID.

6          You will all realize that we're all wearing

7    masks.  The policy in our building is that you must have a

8    mask on pretty much at all times when you are in the

9    building and when you are in the courtroom.

10          You may, if you are on the jury, see a few

11    exceptions to that.

12          One, if the lawyers or witnesses are talking for

13    any significant length, I do let them remove their masks.

14          Second, when I bring you to be back in for a

15    one-on-one conversation, I will ask you if you don't mind

16    to remove your masks, so that we can all have a short

17    conversation about any concerns you might have.

18          And, third, if you are on the jury, you know,

19    when you are eating lunch or drinking water, whatever, you

20    can, of course, remove your mask for that.

21          So with that background, I'm going to actually

22    take my mask off because I'm going to turn to this document

23    called voir dire that will explain more about what we're

24    doing here today.  Okay?

25          It begins:  I am Judge Stark, the Trial Judge

1    in this case.  You have been called to this courtroom as a

2    panel of prospective jurors for the case of United States

3    versus Omar Morales Colon.  This is a criminal case in which

4    Mr. Colon is charged with Conspiracy to Distribute Cocaine,

5    Attempted Possession With Intent to Distribute Cocaine,

6    Manufacture of Marijuana, and Possession With Intent to

7    Distribute Marijuana.

8             From this panel, we will select the jurors who

9    will sit on the jury that will decide this case.  We will

10   also select alternative jurors who will be part of this

11   trial and available in the event that one of the regular

12   jurors is ill or is otherwise unable to continue on the

13   jury.

14            Under our system of justice, the role of the

15   jury is to find the facts of the case based on the evidence

16   presented at the trial.  That is from the evidence seen and

17   heard in court, the jury decides what the facts are, and

18   then applies to those facts the law that I will give in my

19   instructions to the jury.  My role as the Trial Judge is to

20   make whatever legal decisions that must be made during the

21   trial and to explain to the jury the legal principles that

22   will guide its decisions.

23            The ongoing COVID-19 pandemic has made for

24   difficult and trying times for all of us.  I expect you

25   may have questions and concerns about the possibility of

serving on a jury at this time.  We want you to know that

we are absolutely committed to the safety and well being of

our jurors.  We are closely monitoring and following the

guidance issued by the CDC and local health authorities and

have undertaken extensive efforts to make our spaces as safe

as possible.  We are also taking all possible precautions

throughout the process of jury selection, trial, and

deliberations to safeguard everyone's participation.

We recognize that you are all here at some

sacrifice, especially during this ongoing COVID-19 pandemic.

How we cannot excuse anyone merely because of personal

inconvenience, unless serving on this jury would be a

compelling hardship.  We have reviewed the COVID-19

questionnaires that you have filed in and submitted, and

we have carefully considered the answers that you have

provided to us.

Jurors perform a vital role in the American

system of justice.  We rely on juries to decide cases tried

in courts, so service on a jury is an important duty of

citizenship.  Jurors must conduct themselves with honesty,

integrity, and fairness.

In a few minutes, you will be sworn to answer

truthfully questions about your qualifications to sit as

jurors in this case.  This questioning process is called

voir dire.  I will conduct the questioning, and the lawyers

1    for the parties may also participate.  It is, of course,

2    essential that you answer these questions truthfully; a

3    deliberately untruthful answer could result in severe

4    penalties.

5            Questions will be asked to find out whether any

6    of you has any personal interest in this case or know of any

7    reason why you cannot render a fair and impartial verdict.

8    We want to know whether you are related to or personally

9    acquainted with any of the parties, their lawyers, or any

10   of the witnesses who may appear during the trial, and

11   whether you are already know anything about this case.

12   Other questions will be asked to determine whether any of

13   you has any beliefs, feelings, life experiences, or any

14   other reasons that might influence you in rendering a

15   verdict.

16           I am going to read the questions one by one.  As

17   I do, please listen closely and think to yourself whether

18   you have a "yes" answer to any of the questions.  If you do

19   have a "yes" answer, you do not need to do anything.  You do

20   not need to raise your hand.  You do not need to stand.

21   Just try to keep in mind if you have a "yes" answer.

22           It is not necessary for you to remember the

23   number of questions you answered "yes" to.  Instead, after I

24   have read all the questions, members of my staff will take

25   you back to the courtroom next to us, over here, and we will

1    use that courtroom as our jury room throughout the trial.

2    Please wear a mask and practice social distancing while are

3    you in that courtroom and whenever you are in and moving

4    about the courthouse.  You may talk in that other courtroom,

5    but do not talk about this case or about the voir dire

6    questions and answers.

7            We will then bring each of you back to this

8    courtroom one by one to discuss any "yes" answers you may

9    have had to any of my voir dire questions.  I will be joined

10   by the lawyers and the court reporter, and we will talk

11   about your concerns.  To help with that discussion, we will

12   ask you to please remove your mask and if you feel

13   uncomfortable doing that, we will provide you with a clear

14   face covering.  After we talk about your concerns, I will

15   give you further instructions on where to go next.  Those

16   instruction also may be that you are to return to the

17   courtroom later today for additional steps in the jury

18   selection process.

19           Once we have met with all members of the jury

20   pool one by one, we will bring some of you back into the

21   courtroom as a group.  Those of with you who remain in our

22   jury pool at that time will be joined by other potential

23   jurors we are meeting with at another time today.  Then both

24   the government and the defendant will have the opportunity

25   to exercise peremptory challenges; that is, they can strike

| | |
|---|---|
| 1 | potential jurors for no reason at all.  After each side uses |
| 2 | all of its peremptory challenges, we will be left with our |
| 3 | jury, which will consist of 12 jurors and 2 alternates. |
| 4 | Those 14 individuals will be required to return to court |
| 5 | each day until trial is concluded.  As I have explained, |
| 6 | after this process is completed, not all of you will be |
| 7 | chosen to sit on the jury for this case.  If you are not |
| 8 | chosen, you should not take it personally, and you should |
| 9 | not consider it a reflection on your ability or integrity. |
| 10 | I will have further instructions for you on the |
| 11 | schedule as we proceed through the selection process today. |
| 12 | Please be patient while we complete the process.  And at |
| 13 | this point, I'll ask my courtroom deputy to please |
| 14 | administer an oath to the jury pool. |
| 15 | (Prospective jurors placed under oath.) |
| 16 | THE COURT:  Thank you all.  You may be seated. |
| 17 | As I noted already, this case is captioned |
| 18 | United States vs. Omar Morales Colon.  The defendant is |
| 19 | charged with several controlled substance offenses.  The |
| 20 | defendant has pleaded not guilty to the charges.  The trial |
| 21 | in this case is expected to conclude by next Friday, |
| 22 | September 24th, and may conclude earlier. |
| 23 | With that background, I'm going to read to you |
| 24 | the voir dire questions.  There are 37 of them.  So just try |
| 25 | to keep in your mind whether or not you have a yes or no to |

1       any of these questions.

2               Question 1.  The government is represented by

3       assistant United States Attorney Jennifer Welsh and Whitney

4       Cloud.  They will also be joined by Drug Enforcement

5       Administration Special Agent Jeremy Smith, as well as United

6       States Attorney's Office Paralegal Stephania Roca.

7               Question 1 is:  Are you related to or personally

8       acquainted with any of these individuals?

9               Question 2.  Have you or any member of your

10      immediate family, or a close friend, had any dealings with

11      the United States Attorney's Office, the Drug Enforcement

12      Administration, Homeland Security Investigations, the Newark

13      Police Department, the New Castle County Police Department,

14      or Zemi Property Management?

15              Question 3.  The defendant is Omar Morales

16      Colon.  The defendant is represented by Attorney Dina

17      Chavar.  Do you or any member of your immediate family, or a

18      close friend, have any connection of any kind with these

19      individuals?

20              Question 4.  Members of the panel, I am now

21      going to read the names of persons who may appear as

22      witnesses in this trial and will then ask you if you know

23      any of these individuals:  Jeremy Smith, Anthony Salvemini,

24      Craig Maurer, Mark Lewis, James Kelly, Michelle Burrus,

25      Thomas Dillon Kashner, Gregory Simpler, Patrick M.

1    Campbell, James Skinner, Maolin Li, Mohamed Aviles Camberos,

2    Roque Valdez, John Cooper, Nilsa Martinez, and Elizabeth

3    Vargas Matos.

4              Question 4 is:  Are you related to, or

5    personally acquainted with, any of these individuals?

6              Question 5.  Members of the panel, I am now

7    going to read the names of other individuals who may be

8    discussed during this case and then I will ask whether you

9    know any of these individuals:

10             Shakira Martinez of Bear, Delaware.

11             William Brisco of Wilmington, Delaware.

12             Devin Hackett of Wilmington, Delaware.

13             Karina Colon of Bear, Delaware.

14             Marisol Quiles Rivera of Wilmington, Delaware.

15             Josue *Torres* of Wilmington, Delaware.

16             Elijah Barnett of Wilmington, Delaware.

17             Jose Molina-Martol of Aston, Pennsylvania.

18             Guadalupe Perez of Aston, Pennsylvania.

19             And Luis Alvarez of Aston Pennsylvania.

20             Question 5 is:  Are you related to, or

21   personally acquainted with, any of these individuals?

22             Question 6.  Have you read or heard anything in

23   the news media or on the Internet concerning this case or

24   about criminal charges being filed against Omar Morales

25   Colon?

1          Question 7.  Have you ever served as a juror in

2     a criminal case or a civil case or as a member of a grand

3     jury in either federal or state court?

4          Question 8.  Have you or any member of your

5     family ever been a witness to, victim of, or convicted of a

6     crime?

7          Question 9.  Have you or any member of your

8     family been employed by or investigated by any law

9     enforcement agency, including any local police, private

10    security, or federal agency?

11         Question 10.  Would you give more or less weight

12    to the testimony of a law enforcement agent or police

13    officer than you would to that of a civilian witness simply

14    because he or she is employed as a law enforcement agent or

15    police officer?

16         Question 11.  Would you tend to give the

17    testimony of a witness called by the prosecutor more weight

18    than the testimony of a witness called by a defendant?

19         Question 12.  Do you belong to any crime

20    prevention societies, including but not limited to a

21    neighborhood watch organization?

22         Question 13.  One or more of the witnesses in

23    this case may receive in the future lesser sentences in

24    exchange for cooperation with the government.  Such "plea

25    bargaining" is lawful and proper.  Do you believe that the

government should not offer reduced sentences in exchange for cooperation and testimony?

Question 14.  Do you have opinions about guilty plea agreements that would prevent you from being a fair and impartial juror in this case?

Question 15.  Would you refuse to believe such a witness simply because he or she has been convicted of a federal offense?

16.  Do you have any objections to law enforcement officers legally taping conversations of defendants and others related to a criminal investigation?

17.  Have you or anyone in your family ever been self-employed or owned their own business?

18.  The defendant is charged with conspiring to distribute cocaine and manufacturing marijuana, along with two possession with intent to distribute charges.  Do you hold any beliefs, feelings or prejudices against these types of prosecutions such that you could not sit as a fair and impartial juror in this case?

19.  Do you have any opinions about drug laws that would make you unable to decide this case on the evidence presented and the law as stated by the Court?

20.  Do you have such negative feelings about drugs that you would about unable to evaluate the evidence fairly as to the defendant?

21.   Have you or any member of your family, or a close friend, been addicted to drugs or placed in a drug treatment program?

22.   The possible punishment of the case is not for the jury to decide.  Will you have difficulty deciding this case without concerns for any potential punishment the defendant may or may not receive?

23.   Would you be unable to sit in judgment of another individual because of any personal beliefs?

24.   Do you believe that if the government charged someone with a crime, then that person is probably guilty of something?

25.   A fundamental principle of our legal system is that when a person is charged with a criminal offense, he is presumed to be innocent unless and until the government proves guilt beyond a reasonable doubt.  A defendant in a criminal case has no obligation to prove anything or to offer any evidence at all.  If you are selected as a juror in this case, will you have difficulty following this instruction?

26.   In a criminal case such as this, the prosecution must prove each and every element of the offenses charged beyond a reasonable doubt.  If the prosecution does not prove each and every element of the offenses charged beyond a reasonable doubt, then the jury is

1    required by law to acquit the defendant; that is, to return

2    a verdict of not guilty.  If you are selected as a juror in

3    this case, will you have difficulty following this

4    instruction?

5              27.  A defendant has a constitutional right to

6    remain silent throughout the trial and not testify, and that

7    decision cannot be held against him or her.

8              If you are selected as a juror in this case,

9    will you have difficulty following this instruction?

10             28.  In order to reach a verdict, all jurors

11   must reach the same conclusion.  In deliberations you must

12   consider the opinions and points of your fellow jurors, but

13   in the final analysis you must follow your own conscience

14   and be personally satisfied with the verdict.

15             Will you have difficulty expressing your own

16   opinions and thoughts about this case?

17             29.  Will you have any difficulty in respecting

18   the views of your fellow jurors even if they are different

19   from your own?

20             30.  Do you feel that you will tend to go along

21   with the majority of jurors even if you do not agree, just

22   because you are in the minority?

23             31.  If you are selected as a juror in this

24   case, you will take an oath to render a verdict based upon

25   the law as given to you by the Court.  You will be required

1    to accept the law as given to you by the Court without

2    regard to any personal opinion you may have as to what the

3    law is or should be.

4         Would you be unable to reach a verdict in

5    accordance with the law as given to you in the instructions

6    of the Court?

7         32.   Provided the government proves the

8    defendant's guilt beyond a reasonable doubt, would anything

9    you might learn about the defendant concerning such things

10   as his age, health, race, national origin, religious

11   affiliation, family circumstances, or economic circumstances

12   prevent you from finding him guilty?

13        33.   If you find, after considering the evidence

14   along with my instructions as to the law, that the defendant

15   is guilty of one or more of the counts in the indictment, it

16   will be my duty, as judge, to determine any punishment.  The

17   lieu does not permit you to consider the issue of

18   punishment.

19        Would you vote not guilty, no matter what the

20   evidence indicates, because of any possible punishment?

21        34.   This trial may last until Friday,

22   September 24th.  So, if selected for the jury, you may have

23   to be here each day next week.  Each day will begin at

24   9:00 a.m. and may run until as late as 5:00 p.m.  We will

25   have at least one morning break and one afternoon break each

```
 1    day.  Also, there will be a lunch break and we will provide
 2    you with lunch.
 3              Does this schedule impose a substantial hardship
 4    on you?
 5              35.  Do you have any medical condition, for
 6    instance, a visual hearing impairment, which might affect
 7    your ability to devote full attention to this proceeding?
 8              36.  In the time since you completed the
 9    questionnaire regarding COVID 19, have you or anyone in your
10    household tested positive for COVID 19 or experienced
11    COVID-like symptoms, such as cough, fever, shortness of
12    breath, or loss of the sense of taste or smell?
13              37.  Can you think of any other matter which you
14    should call to the Court's attention which may have some
15    bearing on your qualification as a juror, or which may
16    prevent you from rendering a fair and impartial verdict
17    based solely upon the evidence and my instructions as to the
18    law?
19              So, ladies and gentlemen, that completes the
20    voir dire questions.  As I said, we are going to send you
21    out into the courtroom next-door here and momentarily, after
22    we send you in there, we'll start bringing you back in one
23    by one to see if you have any questions that you answered
24    yes to or anything else you want to talk to me about.  So at
25    this point, we'll ask that the jury be taken out, please.
```

```
 1                    (The prospective jurors were excused to the

 2      alternate courtroom.)

 3                    THE COURT:  All right.  Before we start bringing

 4      the jurors in, a couple things.  I think six of the folks

 5      in the second group have provided COVID questionnaires

 6      today.

 7                    Have you had a chance to review them and are

 8      there any that we should be striking from the government?

 9                    MS. WELSH:  Well no, Your Honor.  I don't see

10      any.

11                    THE COURT:  None to strike?

12                    MS. WELSH:  Correct, Your Honor.

13                    THE COURT:  Do you agree, Ms. Chavar?

14                    MS. CHAVAR:  I agree.

15                    THE COURT:  All right.  We'll keep those six in

16      our pool for now.  So we have Juror No. 23 from this

17      morning's group waiting out there to talk to us.  This is

18      the one that I believe we got an indication that he may now

19      have some conflict, work-related conflict next week, so

20      we'll bring him in first.

21                    Juror No. 23 from this morning, we'll have him,

22      please.

23                    (The juror entered the courtroom.)

24                    THE COURT:  Okay.  Thank you.  Again, it's

25      //////////.  Right?
```

1              A JUROR:  Yes.

2              THE COURT:  And I understand you indicated after

3    we saw you, maybe you realized you had some sort of conflict

4    next week.  Is that right?

5              A JUROR:  Yes.  I have a closing.  I wasn't sure

6    if that was personal.  You said personal or a hardship.

7              THE COURT:  So you're a realtor.  Right?

8              A JUROR:  Yes.

9              THE COURT:  And so do you have a closing

10   scheduled for Wednesday?

11             A JUROR:  Yes.

12             THE COURT:  And if you're unable to be there,

13   could the closing go forward?

14             A JUROR:  Well, I talked to my mentor.  He said

15   that I had to be there at the closing, so I didn't know.  So

16   that's why I --

17             THE COURT:  Does he or she know that you may

18   be -- that you've been called for jury duty?

19             A JUROR:  No.

20             THE COURT:  And I would have thought -- I've

21   never been a realtor, but I would have thought that someone

22   else might be able to be there for you and you should, you

23   know, still get whatever credit for what sale or

24   acquisition, but is that not the case?

25             A JUROR:  No.  I think in this case, the only

1    ones that aren't -- that don't have to be there are the

2    sellers and the -- or the buyers.

3                    THE COURT:  What is your role in this

4    transaction?

5                    A JUROR:  I'm the listing agent.

6                    THE COURT:  You're the listing agent?

7                    A JUROR:  Yes.

8                    THE COURT:  And do you not have someone you're

9    working with on the seller's side that could be there if

10   you're not able to make it on Wednesday?

11                   A JUROR:  Like a buyer's agent?

12                   THE COURT:  No.  On the selling side.  I mean,

13   do you have people in your office that you work with?

14                   A JUROR:  Yes.

15                   THE COURT:  And could one of those people be

16   there for you in your absence?

17                   A JUROR:  I'm not -- this is my first closing,

18   so I'm not sure --

19                   THE COURT:  Okay.

20                   A JUROR:  -- how that works.  I can always ask

21   though.

22                   THE COURT:  Right.  Okay.  All right.  Do you

23   think that if you're here with us on Wednesday, that you

24   would be able to focus on the trial or would your mind be

25   thinking of, oh, I'm missing my first closing?

```
1               A JUROR:  Yes, I think I would be able to focus.

2               THE COURT:  You think you could?

3               A JUROR:  Yes.

4               THE COURT:  Are there any further questions from

5       the government?

6               MS. WELSH:  No, Your Honor.

7               THE COURT:  From the defense, any further

8       questions?

9               MS. CHAVAR:  No, Your Honor.

10              THE COURT:  No?  All right.  Let me have you

11      wait outside again.

12              A JUROR:  All right.

13              THE COURT:  Thank you.

14              (The juror left the courtroom.)

15              THE COURT:  Does the government have any motion

16      for this Juror No. 23?

17              MS. WELSH:  I don't have a motion, Your Honor,

18      no.

19              THE COURT:  Okay.  Does the defense?

20              MS. CHAVAR:  No, Your Honor.

21              THE COURT:  Okay.  Bear with me a second.

22              All right.  Let's bring him back in.  I'm going

23      to keep him in the pool.

24              (The juror entered the courtroom.)

25              THE COURT:  All right, /////////.  Thank you
```

1    again and thanks for sharing that information.

2    Congratulations on the sale.

3                    A JUROR:  Thank you.

4                    THE COURT:  But I'm going to need you to stick

5    around for the next process.

6                    A JUROR:  Okay.

7                    THE COURT:  If you could go next-door to

8    courtroom 6A and wait for there.

9                    A JUROR:  No problem.

10                   THE COURT:  Thank you.

11                   A JUROR:  Thank you.

12                   (The juror left the courtroom.)

13                   THE COURT:  So during the break I got

14   information that Juror No. 32 from this morning may have --

15   in fact, I think did see the defendant in the hallway at a

16   certain point, maybe at the lunch break, I'm not sure which,

17   but I believe he crossed paths in some fashion with the

18   defendant being escorted by the Marshals.  We want to let

19   you know that.

20                   Juror No. 32 is available to speak to us if you

21   wish.  I've had no interaction with Juror No. 32.

22                   What's the government's position on what, if

23   anything, we should do at this point?

24                   MS. WELSH:  Your Honor, I think you need to

25   bring him in and ask some questions.

1        THE COURT:  All right.  Ms. Chavar?

2        MS. CHAVAR:  Your Honor, I would like to ask him

3  a few questions.

4        THE COURT:  Okay.  I might just turn it over to

5  you to ask questions.  Any objection to that?

6        MS. CHAVAR:  No.

7        THE COURT:  All right.

8        MS. WELSH:  No.

9        THE COURT:  32 is out there.  Right?

10        DEPUTY CLERK:  Yes.

11        THE COURT:  All right.

12        (The juror entered the courtroom.)

13        THE COURT:  Welcome back, ////////////.  Right?

14        A JUROR:  That is correct.

15        THE COURT:  Thank you, sir, for coming forward.

16  We just had a few more questions for you from the lawyers, I

17  think.  The government.

18        MS. WELSH:  Thank you, Mr. Lynch.  Did you see

19  the defendant during the break when we were around the

20  hallway?  Did you run into the defendant?

21        A JUROR:  I was coming out -- I was coming out

22  of the restroom and one of the officers, he pulled me off

23  the side and said let him pass and then I proceeded to go

24  back downstairs.

25        MS. WELSH:  Okay.  Did you notice anything about

1   the defendant as he was walking, interacting with each

2   other?

3              A JUROR:  Other than he was in handcuffs.

4              MS. WELSH:  That's what I was going to get at.

5              A JUROR:  Which I had recognized him earlier

6   from him starting out here when we started to do that.  I

7   figured he was the person that was going to be on the jury

8   or trial.

9              MS. WELSH:  Okay.  Would you draw any

10  conclusions about the fact that the defendant was in

11  handcuffs?  Does that bring you to any conclusions about

12  whether he, you know, was guilty or not guilty before the

13  trial even starts?

14             A JUROR:  No.  I've been on jury duty several

15  times.  I live in Sussex County and I've seen people in

16  handcuffs before, so just because he's in handcuffs don't

17  mean he's -- he has a place to stay today.  I am going home.

18  Other than that...

19             THE COURT:  Anything else?

20             MS. WELSH:  No.  That's all I have.

21             THE COURT:  Ms. Chavar?

22             MS. CHAVAR:  Sir, I didn't understand your last

23  statement.  Would you clarify that?  He has somewhere to

24  stay I think you said?

25             A JUROR:  I've seen that he was in handcuffs and

1    I know he's going to have a place to stay tonight where I'm

2    going home.  That's all.  That don't mean he's guilty or

3    innocent or whatever.

4                MS. CHAVAR:  Right.  So by a place to stay, do

5    you mean that your assumption is that he's incarcerated?

6                A JUROR:  Yes, he's incarcerated.

7                MS. CHAVAR:  Okay.  And does that bring you --

8                A JUROR:  No.

9                MS. CHAVAR:  -- to any --

10                A JUROR:  That don't bother me.  As long as I

11   don't have my hands in handcuffs, I'm okay.

12                MS. CHAVAR:  Did you draw any conclusions as to

13   whether he is dangerous?

14                A JUROR:  No.  He's -- other cases that I've

15   been in Sussex County, when they're in the courtroom,

16   they've had them handcuffed and leg shackles.  So with

17   that, they're dangerous.  I say they're more dangerous or

18   violent.

19                MS. CHAVAR:  And those other jury trials that

20   you were involved in --

21                A JUROR:  Yes.

22                MS. CHAVAR:  -- they were violent crimes?

23                A JUROR:  Yes.  They were armed robbery and

24   attempted murder.

25                MS. CHAVAR:  And was the jury, were you able to

1    reach a verdict in those cases?

2              A JUROR:  I'm sorry?  My hearing.

3              MS. CHAVAR:  Were you able to reach a verdict in

4    those cases?

5              A JUROR:  We were.

6              MS. CHAVAR:  Okay.  And do you remember what the

7    verdict was?

8              A JUROR:  It was guilty.

9              MS. CHAVAR:  Okay.  Well, was there more than

10   one?

11             A JUROR:  Yes.  The other one was molestation of

12   a child and then the other one was with attempted rape.

13             MS. CHAVAR:  So there were three criminal trials

14   that you --

15             A JUROR:  That I've been on, yes.

16             MS. CHAVAR:  Okay.  And all three of those, the

17   jury reached a verdict and that was guilty?

18             A JUROR:  That's correct, yes.

19             MS. CHAVAR:  Okay.  Thank you.

20             THE COURT:  Thank you.  Mr. Lynch, have you

21   discussed with any other member of the jury pool what you

22   saw when you saw the defendant?

23             A JUROR:  No.

24             THE COURT:  Okay.  I would instruct you not to

25   discuss that or have any discussion with them.

1          A JUROR:  Okay.

2          THE COURT:  Let me have you go back out in the

3   hallway.

4          A JUROR:  Okay.

5          (Juror left courtroom.)

6          THE COURT:  Any motion from the government?

7          MS. WELSH:  No, Your Honor.

8          THE COURT:  Any motion from the defense?

9          MS. CHAVAR:  Yes, I would move to strike this

10  juror for cause, Your Honor.

11         THE COURT:  Okay.  What is the government's

12  position?

13         MS. WELSH:  If juror said he said he saw the

14  defendant in handcuffs, I think he made it clear that he did

15  not draw any conclusions from that, and he's not going to

16  tell anyone else what he saw.

17         THE COURT:  I assume that that is for cause;

18  right, Ms. Chavar?

19         MS. CHAVAR:  A little more than that, too.  I

20  thought his attitude was a little flippant with me.  He has

21  got a place to stay tonight; and he has sat on three juries

22  before.  They were all found guilty.  They were all

23  handcuffed.

24         I don't think he could be unbiased.

25         THE COURT:  Okay.  Anything further?

```
 1              MS. WELSH:  There has been no indication from
 2   him that he is going to be biased, so we object to him being
 3   struck.
 4              MS. CHAVAR:  I'm sorry.  Ms. Welsh, I cannot
 5   hear you.
 6              MS. WELSH:  I'm facing the wrong way, too.
 7              I don't think there's any indication from his
 8   answers that he is biased.  He may have made what he thought
 9   was a joke about where the defendant was going tonight, but
10   I, I didn't hear him say he would be biased, so we object to
11   him being stricken.
12              THE COURT:  Okay.  I'm going to deny the motion
13   to strike the juror for cause.  It did take me a moment to
14   understand what he was saying when he said the defendant
15   will have a place to stay.  It's not a comment I'm familiar
16   with, but there was follow-up and I now understand what he
17   means.
18              I got no indication that he meant he can't be
19   fair and impartial, nor for the reasons we brought him in
20   here that he saw the defendant in handcuffs.  It seemed to
21   me that he at least stated very confidently that that would
22   not affect his view of the evidence or whether the defendant
23   was, you know, going to be proven guilty or not.  So I'm
24   going to keep this juror in the pool.  I don't see cause to
25   strike him.
```

 1              Let's bring him back for a moment, please.

 2              (Juror entered courtroom.)

 3              THE COURT:  All right.  Thank you again.  I'm

 4    going need you to go into Courtroom 6A.  That's the

 5    courtroom just right next to us and wait there and we'll

 6    tell you what the further steps will be.  Thank you.

 7              A JUROR:  Thank you.

 8              (Juror left courtroom.)

 9              THE COURT:  Okay.  So we're now going to move to

10    the second batch of jurors and we'll bring them in in their

11    random numerical order.  We have 20 people in the pool and

12    as I understand, all 20 are here in the building.  So my

13    plan is once we get 12 more qualified jurors for a total of

14    32, at that point I plan to stop, excuse the others and

15    bring the 32 in here and have you do your peremptory strikes

16    from that group.

17              Any objections or questions about that from the

18    government?

19              MS. WELSH:  No.

20              (Government counsel confer.)

21              MS. WELSH:  No, Your Honor.

22              THE COURT:  And from the defense?

23              MS. CHAVAR:  No, Your Honor.

24              THE COURT:  All right.  Let's start with No. 1,

25    please.

```
 1                    (Juror entered courtroom.)

 2                    THE COURT:  Good afternoon.  If you don't mind

 3       coming forward through the doors there.

 4                    Are you ////////////?

 5                    A JUROR:  No, /////.

 6                    THE COURT:  /////.  All right.  What is your

 7       juror number?  Oop, I'm looking at the wrong list.  Forgive

 8       me.  One second.

 9                    A JUROR:  Um-hmm.

10                    THE COURT:  Okay.  Juror No. 39, ////////////.  My

11       apologies to you.

12                    A JUROR:  Um-hmm.

13                    THE COURT:  Do you mind taking the mask off for

14       our discussion?

15                    A JUROR:  No.

16                    THE COURT:  Okay.  Why don't you step back if

17       you could.  Right there would be great.

18                    Do you recall if you had any "yes" answers to my

19       questions?

20                    A JUROR:  No "yes" answers.

21                    THE COURT:  No "yes" answers.  Anything, any

22       concerns about serving on this jury?

23                    A JUROR:  None whatsoever.

24                    THE COURT:  Any questions from the government?

25                    MS. WELSH:  No, Your Honor.
```

```
 1                    THE COURT:  Any questions from the defense?

 2                    MS. CHAVAR:  No, Your Honor.

 3                    THE COURT:  All right.  You can go back into

 4      Courtroom 6A.  Thank you.

 5                    (Juror left courtroom.)

 6                         *    *    *

 7                    (Juror entered juryroom.)

 8                    THE COURT:  Good afternoon.  If you could come

 9      forward through those doors, please.

10                    Are you ////////?

11                    A JUROR:  Yes.

12                    THE COURT:  Do you mind taking the mask off for

13      our discussion?

14                    Thank you.

15                    Did you have any "yes" answers to my questions?

16                    A JUROR:  Yes.

17                    THE COURT:  Do you remember what it was?

18                    A JUROR:  Number 24.

19                    THE COURT:  24.  Bear with me.

20                    24 was do you believe that if the government

21      charged someone with a crime, that person is probably guilty

22      of something?

23                    A JUROR:  Yes.

24                    THE COURT:  So you answered "yes" to that?

25                    A JUROR:  Yes.
```

1           THE COURT:  Maybe you could come a little bit

2      closer.

3           What caused you to say "yes" to that?  Tell me

4      about that.

5           A JUROR:  I just agreed on there because it

6      makes more sense.  You know, if someone is charged with

7      something or arrested, then they're probably guilty of

8      something.

9           THE COURT:  Okay.  Do you understand my

10     instruction that in our system, someone is presumed to be

11     innocent and they're innocent until the government proves

12     them guilty?

13          A JUROR:  Yes.

14          THE COURT:  Do you think you could follow that

15     instruction?

16          A JUROR:  I could probably, yeah.

17          THE COURT:  You think you probably could?

18          A JUROR:  Yeah.

19          THE COURT:  Okay.  Did you answer "yes" to

20     anything else?

21          A JUROR:  No.

22          THE COURT:  No.  Any questions from the

23     government?

24          MS. WELSH:  Sir, you understand based on the

25     question and you will also receive these instructions if you

1    were a juror, it's the government's burden of proof that

2    somebody is guilty, basically the fact that they're arrested

3    doesn't mean anything in terms of their guilt?  I mean, is

4    that something you understand and agree with?

5                A JUROR:  I'm sorry.  What did you mean by that?

6                MS. WELSH:  Well, just the fact that somebody is

7    arrested doesn't mean that they're guilty.  The government

8    has to prove at trial that they are.  Is that something you

9    understand and if you were instructed that way, would you be

10   able to follow those instructions?

11               A JUROR:  Yes, I understand that.

12               THE COURT:  Okay.  Ms. Chavar, any questions?

13               MS. CHAVAR:  Yes.  So you understand the

14   proposition that someone is not guilty until proven?

15               A JUROR:  Yes.

16               MS. CHAVAR:  Okay.  But it's still your belief

17   though that if they're arrested, they're probably guilty?

18               A JUROR:  Yes.

19               MS. CHAVAR:  Okay.  So you, when you are hearing

20   the evidence, is it fair to say you are hearing it with an

21   ear towards probably guilty?

22               A JUROR:  Yes, probably.

23               MS. CHAVAR:  Thank you.

24               THE COURT:  You can step outside for a moment,

25   please.

```
 1                    (Juror left courtroom.)

 2                    THE COURT:  Ms. Chavar, do you move to strike?

 3                    MS. CHAVAR:  I am, Your Honor.

 4                    THE COURT:  What is the government's position?

 5                    MS. WELSH:  We don't, we don't object.

 6                    THE COURT:  Okay.  I will strike Juror No. 40

 7      for cause.  Let's bring him back, please.

 8                    (Juror entered courtroom.)

 9                    THE COURT:  ////////////, thank you very much for

10      being willing to serve.  I excuse you from jury service, so

11      you are free to go.  Thank you.

12                    A JUROR:  Thank you.

13                    THE COURT:  Thank you.

14                    (Juror left courtroom.)

15                         *     *     *

16                    (Juror entered juryroom.)

17                    THE COURT:  You can come forward through those

18      doors, please.

19                    Are you ////////////?

20                    A JUROR:  Yes.

21                    THE COURT:  Do you mind taking the mask off?

22      Thank you.  Do you remember if you had any "yes" answers to

23      my questions?

24                    A JUROR:  Yes, I did.

25                    THE COURT:  Okay.  Do you remember what any of
```

```
 1    them were?

 2              A JUROR:  It was to knowing someone that dealt

 3    with addiction.

 4              THE COURT:  I'm sorry about that.  Who would

 5    that be?

 6              A JUROR:  My best friend.  I don't want to go

 7    into too much detail.

 8              THE COURT:  You don't need to go into too much

 9    detail.  I'll just ask you a few questions.  But is your

10    best friend, is it an ongoing situation now?

11              A JUROR:  She is in recovery.  She is doing very

12    well now.

13              THE COURT:  Glad to hear that.  Do you know what

14    kind of substance it was she had an issue with?

15              A JUROR:  It was alcohol.

16              THE COURT:  Do you think you could be a fair and

17    impartial juror in a trial that involves allegations about

18    drugs?

19              A JUROR:  I think so.  Pretty good at keeping

20    personal separate from other stuff.

21              THE COURT:  Okay.  All right.  Other things that

22    answered "yes" to?

23              A JUROR:  No.  I mean I would say that it's not

24    the best time, but I'm sure it's never a good time for

25    something like this.
```

```
 1              THE COURT:  Okay.  I appreciate that attitude.
 2  So it would not be a substantial hardship for you to be with
 3  us next week?
 4              A JUROR:  No.  My husband has been having some
 5  health issues but he is fine right now.  So as long as that
 6  continues, no.
 7              THE COURT:  Of course.  I'm glad he is fine.
 8  You know if something unexpected happens to any of us,
 9  obviously you will let us know, right?
10              A JUROR:  Yes.
11              THE COURT:  All right.  Any questions from the
12  government?
13              MS. WELSH:  No.  No questions.
14              THE COURT:  And from the defense any questions?
15              MS. CHAVAR:  No, Your Honor.
16              THE COURT:  Okay.  I'm going to have you go back
17  to Courtroom 6A where you were before and we'll see you
18  again.
19              A JUROR:  Okay.
20              THE COURT:  Thank you.
21              (Juror left courtroom.)
22                   *    *    *
23              (Juror entered juryroom.)
24              THE COURT:  Good afternoon.  You can come
25  forward through there.  Thank you.
```

1          Are you /////////////////?

2          A JUROR:  Yes.

3          THE COURT:  Do you mind taking the mask off?

4          A JUROR:  No.

5          Do you want me to come up there?

6          THE COURT:  Right there is fine.

7          Do you recall having any "yes" answers?

8          A JUROR:  I did.  I actually used to work for

9    Johnson & Johnson when they owned the opioid contracts

10   with -- for Purdue, so I was involved in DEA.  I'm actually

11   a quality auditor so I was involved with DEA audits within

12   our facility of bulk API manufacturing.

13          My cousin died of a drug overdose.  I supported

14   my best friend and still do in recovery.

15          I am still an auditor working for Northrop

16   Grumman, now in aerospace defense, and I'm actually on a

17   business trip supporting an ISO as9100 audit in Palm Beach

18   Garden, Florida on Sunday and Monday.

19          THE COURT:  This coming Sunday and Monday?

20          A JUROR:  And I'll be back Tuesday.

21          THE COURT:  And so if we said you have to be on

22   this jury, you can't go to that, what kind of hardship does

23   that impose to your employer?

24          A JUROR:  I know it's, I know it's a financial

25   hardship because the audit needs to be rescheduled with BSI,

1    who is the ASI as9100 registrar for that requirement, which

2    is a contractual requirement with Lockheed, Boeing,

3    Raytheon.

4                THE COURT:  I assume it's too late to reschedule

5    that for the following week?

6                A JUROR:  Yes.

7                THE COURT:  All right.

8                A JUROR:  I mean, I can contact my manager and

9    he can do it alone, but he is a brand new manager, so he has

10   not done that yet.

11               THE COURT:  If you were here with us instead of

12   with him, I think you said there, would you be able to give

13   this trial the attention it deserves?

14               A JUROR:  Yes, sir.

15               THE COURT:  Any other things you answered "yes"

16   to?

17               A JUROR:  No, I don't believe so.

18               THE COURT:  No.  Okay.  I'm going to ask you to

19   wait out in the hallway for me, please.

20               A JUROR:  Okay.  Thank you.

21               (Juror left courtroom.)

22               THE COURT:  Does the government object to me

23   striking her for the work-related hardship?

24               MS. WELSH:  No, Your Honor.

25               THE COURT:  Does the defense object?

```
 1                    MS. CHAVAR:  No.

 2                    THE COURT:  I'm going to strike her based on the

 3          work issue.  Let's bring her in.

 4                    (Juror entered courtroom.)

 5                    THE COURT:  ////////////////, we're going let you

 6          take your trip for the audit, so you are excused from

 7          serving on this jury at this time.  Thank you for being

 8          willing to serve.

 9                    A JUROR:  Absolutely.

10                    THE COURT:  You are free to go.

11                    A JUROR:  Thank you, sir.

12                    (Juror left courtroom.)

13                         *    *    *

14                    (Juror entered juryroom.)

15                    THE COURT:  Good afternoon.

16          Are you /////////?

17                    A JUROR:  Yes.

18                    THE COURT:  Do you mind coming through the

19          doors?  And, yes, if you don't mind taking your mask off,

20          that's great.

21                    A JUROR:  Not at all.

22                    THE COURT:  Okay.

23                    A JUROR:  Hello.

24                    THE COURT:  Do you recall if you had any "yes"

25          answers?
```

```
 1                   A JUROR:  No.

 2                   THE COURT:  Were there no "yes" answers?

 3                   A JUROR:  No "yes" answers.

 4                   THE COURT:  No "yes" answers.  Bad question.

 5      Sorry about that.

 6                   A JUROR:  That's okay.

 7                   THE COURT:  Is there anything you wanted to

 8      discuss with us about possibly serving on this jury?

 9                   A JUROR:  No.

10                   THE COURT:  No.  Okay.  Any questions from the

11      government?

12                   MS. WELSH:  No, Your Honor.

13                   THE COURT:  From the defense?

14                   MS. CHAVAR:  No, Your Honor.

15                   THE COURT:  Okay.  We'll have you go back to

16      Courtroom 6A and we'll see you again in a bit.

17                   A JUROR:  Okay.

18                   (Juror left courtroom.)

19                   *    *    *

20                   (The juror entered the courtroom.)

21                   THE COURT:  Good afternoon.  Please come forward

22      through the doors.

23                   Are you //////////?

24                   A JUROR:  Yes.

25                   THE COURT:  Do you mind taking the mask off for
```

1    our discussion?

2              A JUROR:  Not at all.

3              THE COURT:  Do you remember if you had any "yes"

4    answers?

5              A JUROR:  I did.

6              THE COURT:  Do you remember what they were?

7              A JUROR:  I was self-employed back in my

8    twenties, yes.

9              THE COURT:  What kind of business was that?

10             A JUROR:  Lawn and landscape.

11             THE COURT:  Are you currently self-employed?

12             A JUROR:  No.

13             THE COURT:  Other things you answered yes to?

14             A JUROR:  It was something about the marijuana

15   and cocaine.  I'm for legalizing marijuana, not for cocaine,

16   but other than that.  Those are the only two things I

17   answered yes to.

18             THE COURT:  Right.  Okay.  So if you are on this

19   jury, you'll hear instructions from me about what the law

20   is, including law with respect to marijuana.

21             A JUROR:  Yes.

22             THE COURT:  Do you think you could follow that

23   law and those instructions even if you may not agree with

24   them?

25             A JUROR:  Sure.

```
 1                    THE COURT:  You think you could?

 2                    A JUROR:  Yeah.

 3                    THE COURT:  Okay.  Other things you answered yes

 4       to?

 5                    A JUROR:  I think that was it.

 6                    THE COURT:  Okay.

 7                    A JUROR:  That was it.

 8                    THE COURT:  Let's see if the lawyers have any

 9       questions for you.

10                    Any questions from the government?

11                    MS. WELSH:  Yes.  When you say that you are for

12       legalizing marijuana, are you talking about making it legal

13       for people to possess it and smoke it or of trafficking in

14       it, all kinds of marijuana uses?

15                    A JUROR:  No.  Recreational use.  Not

16       trafficking or anything like that.  I mean, I will be

17       honest.  I broke my leg four years ago.  A friend of mine

18       brought me over CBD and some other products.  It helped me

19       get off the opiates, stuff like that, get off the harder

20       stuff.  It really did help.  That's just where I stand on

21       it.

22                    THE COURT:  Okay.

23                    MS. WELSH:  I don't have any other questions.

24                    THE COURT:  Any questions from the defense?

25                    MS. CHAVAR:  So is it fair to say that you for
```

```
 1      the legalization of personal use of marijuana?

 2                  A JUROR:  Yes.

 3                  MS. CHAVAR:  But you're also for enforcing the

 4      laws that we have about marijuana as far as like

 5      trafficking?

 6                  A JUROR:  Yes.

 7                  MS. CHAVAR:  Illegal sales, things like that?

 8                  A JUROR:  Yes.

 9                  MS. CHAVAR:  You're for those laws?

10                  A JUROR:  I think everything should have laws,

11      the same as alcohol.

12                  MS. CHAVAR:  And you believe in the enforcement

13      of those laws?

14                  A JUROR:  Yes, I do.

15                  MS. CHAVAR:  Thank you.

16                  THE COURT:  Okay.  Can you wait out in the

17      hallway for us, please?

18                  A JUROR:  Absolutely.

19                  THE COURT:  Thank you.

20                  (The juror left the courtroom.)

21                  THE COURT:  Any position from the government?

22                  MS. WELSH:  No, Your Honor.

23                  THE COURT:  And the defense?

24                  MS. CHAVAR:  No, Your Honor.

25                  THE COURT:  Let's bring him back.
```

```
1                    (The juror entered the courtroom.)

2                    THE COURT:  ///////////, thank you.  We're going

3     to have you go back to the courtroom next-door.

4                    A JUROR:  All right.

5                    THE COURT:  And wait for further instructions.

6                    A JUROR:  Thank you, Your Honor.

7                    THE COURT:  Thank you.

8                    A JUROR:  Thank you.

9                    (The juror left the courtroom.)

10                          *  *  *

11                    (The juror entered the courtroom.)

12                    THE COURT:  Good afternoon.  If you would

13    come forward through those doors, please.

14                    Are you ///////////?

15                    A JUROR:  Yes.

16                    THE COURT:  Okay.  Do you mind removing the mask

17    for our discussion?

18                    A JUROR:  No, not at all.

19                    THE COURT:  Thank you.  Did you answer any of my

20    questions yes?

21                    A JUROR:  Yes.

22                    THE COURT:  Okay.  Do you remember what they

23    might be?

24                    A JUROR:  There was about five or six of them.

25                    THE COURT:  Okay.  Tell me what, if anything,
```

1    you remember.

2                A JUROR:  Police officers, police officers

3    telling the truth.  I come from a long history, long family

4    of police officers.

5                I've known every chief of police from every

6    department for the last 20 years, so when it came to would I

7    believe a police officer over somebody else, yes.

8                THE COURT:  So you would tend to believe law

9    enforcement or a police officer simply because they're law

10   in enforcement or a police officer.  Is that right?

11               A JUROR:  Yes, that's right.

12               THE COURT:  And if I instructed you that you are

13   to treat all witnesses the same and evaluate whether they're

14   telling the truth, whether they're law enforcement or not

15   law enforcement, do you think you could follow that

16   instruction?

17               A JUROR:  Yes.

18               THE COURT:  You could?

19               A JUROR:  Yes.  I believe I could.

20               THE COURT:  But you do think you're more likely

21   to believe a law enforcement officer?

22               A JUROR:  Yes, because to me, they would seem

23   coming from the world of conviction rather than from a world

24   of just who they are.  This is what they do.  This is what

25   they live by.

1    THE COURT:  Okay.  So that was at least one area

2    that you had "yes" answers for.  Do you remember any of the

3    other topics that you may have had a yes answer for?

4    A JUROR:  There are so many questions.

5    THE COURT:  Yes, I know.

6    A JUROR:  Sorry.  I can remind you of some of

7    them if that's helpful.  No. 9.  What was No. 9?  There was

8    2 and 9, I believe.

9    THE COURT:  I don't remember them.  No. 9 was

10   whether any of your family have been investigated by or

11   employed by law enforcement.

12   A JUROR:  Yes.  Everybody.

13   THE COURT:  That's what we're discussing.

14   Number two, right, had to do with anyone in

15   your family have dealings with, including New Castle County

16   Police and Newark Police Department.

17   A JUROR:  Yes.  I have -- once again, Delaware

18   is a small state.  I believe I've met everybody once in the

19   whole State of Delaware, but I do have friends I went to

20   grade school with, college, that were -- that are employed

21   as police officers.

22   THE COURT:  On those particular forces?

23   A JUROR:  Yes.  And I'm also a member of two

24   fraternal organizations that supports them.

25   THE COURT:  Supports the police?

```
 1                      A JUROR:  Yes.  So chances are I may know them
 2      or may have heard of them.
 3                      THE COURT:  Okay.  Do you think you may have had
 4      a yes to something other than just the general topic of law
 5      enforcement and your interactions with them?
 6                      A JUROR:  Yes.  It was the one about
 7      legalization of marijuana.
 8                      THE COURT:  Yes.
 9                      A JUROR:  I'm pro legalization of marijuana.
10                      THE COURT:  You would support legalization.  Is
11      that just personal use amounts or would you legalize buying,
12      selling, trafficking?
13                      A JUROR:  No, not something illegal, but for the
14      legal sale of marijuana, you know, not --
15                      THE COURT:  You would be for making the law such
16      that one could have a small quantity for their own personal
17      use?
18                      A JUROR:  Yes.
19                      THE COURT:  Do you remember any other questions
20      you had a yes for?
21                      A JUROR:  Not that I recall.
22                      THE COURT:  If you think of any while you are
23      still in here, let me know.
24                      Let me see if the lawyers have any questions.
25                      A JUROR:  Okay.
```

```
 1                     THE COURT:  First, from the government?
 2                     MS. WELSH:  Would you be able to follow the
 3      instructions that you were given by the Court about
 4      assessing the witness' credibility, law enforcement
 5      officer's credibility, things like that?
 6                     A JUROR:  Yes.
 7                     MS. WELSH:  That's all.
 8                     THE COURT:  Ms. Chavar, any questions?
 9                     MS. CHAVAR:  I do.  Good afternoon.  You come
10      from a long line, I think you said, of law enforcement?
11                     A JUROR:  Yes.
12                     MS. CHAVAR:  I didn't catch whether you ever
13      served on the force.
14                     A JUROR:  No, I have not.  My father,
15      grandfather, older brother, two uncles, a few nephews.
16                     THE COURT:  You're the black sheep.
17                     A JUROR:  That was the first thing I wanted to
18      do before I grew up and the last thing I wanted to do after
19      I grew up.  It's a tough job.
20                     MS. CHAVAR:  Indeed.  So I think you said you
21      were involved in two organizations?
22                     A JUROR:  Fraternal organizations.
23                     THE COURT:  Okay.  That support law enforcement?
24                     A JUROR:  Yes.
25                     MS. CHAVAR:  And I think you said earlier that
```

1    you would tend to think they are telling the truth because

2    that's who they are.  That's how they're built?

3                    A JUROR:  Yes.  It's just like why would police

4    lie?  The world that I grew up in, there's no reason for a

5    police officer to lie, a law enforcement officer to lie.

6    That's the world I grew up in.

7                    MS. CHAVAR:  I understand.  So when a police

8    officer or a law enforcement officer is testifying, you're

9    hearing that testimony from a place, right, that's tending

10   to believe it?

11                   A JUROR:  Yes.

12                   MS. CHAVAR:  Yes.  You are not doubting it after

13   hearing it?

14                   A JUROR:  That's correct.

15                   MS. CHAVAR:  So even though the Court says to

16   you, you know, you have to draw your own conclusions and

17   treat everybody fairly, you think you pretty much would

18   already have come to a conclusion that they were testifying

19   credibly?

20                   A JUROR:  Yes, or else why wouldn't they be

21   the --

22                   MS. CHAVAR:  I understand.  Okay.  Thank you.

23                   A JUROR:  Thank you.

24                   THE COURT:  I'm going to have you wait out in

25   the hallway.

```
 1                    A JUROR:  Thank you.

 2                    THE COURT:  Thank you.

 3                    (The juror left the courtroom.)

 4                    THE COURT:  Ms. Chavar, do you have a motion?

 5                    MS. CHAVAR:  I do, Your Honor, for cause.

 6                    THE COURT:  Is there any objection?

 7                    MS. WELSH:  We don't object, Your Honor.

 8                    THE COURT:  I will grant the motion and strike

 9     Juror 45 for cause.  Let's bring him back for a moment.

10                    (The juror entered the courtroom.)

11                    THE COURT:  ////////////, thank you for your

12     willingness to serve.  I'm excusing you from serving on this

13     jury, so you are free to go.  Thanks very much.

14                    A JUROR:  Thank you.

15                    THE COURT:  Bye-bye.

16                    (The juror left the courtroom.)

17                    THE COURT:  Good afternoon.  Please come forward

18     through those doors.

19                    Are you ///////////////?

20                    A JUROR:  Yes.

21                    THE COURT:  And do you mind removing the mask

22     for our discussion?

23                    A JUROR:  No, I do not.

24                    THE COURT:  Thank you so much.  Do you recall if

25     you had any "yes" answers to my questions?
```

1          A JUROR:  Yes.

2          THE COURT:  And did you?

3          A JUROR:  Yes.

4          THE COURT:  And do you remember what they might

5     be?

6          A JUROR:  Well, one of them is I'm

7     self-employed, so coming up here and -- it will be a

8     financial burden for me and my spouse.  We also take care of

9     his parents, so that be would, you know, really a financial

10    burden.

11         THE COURT:  What kind of business do you have?

12         A JUROR:  We do fireplaces.  Actually, gas

13    fireplaces, so we have to go to homeowners in different

14    places, set up.

15         THE COURT:  Okay.

16         A JUROR:  And if we are not working, there's no

17    income.

18         THE COURT:  And do you have some appointments

19    set up for next week already?

20         A JUROR:  Yes.  Pretty much, you know, we get

21    the work from a company that gives it to us, you know, and

22    they already have me set up on schedule.

23         THE COURT:  Okay.

24         A JUROR:  So ...

25         THE COURT:  If you are not able to keep those

1    appointments yourself next week, is there anyone else that

2    could take your place?

3              A JUROR:  They have to move them out.

4              THE COURT:  I'm sorry?

5              A JUROR:  They have to move them out.

6              THE COURT:  Would you be getting paid or not

7    paid?

8              A JUROR:  No.  There's no income.  If I'm not

9    doing the work, there's no income.

10             THE COURT:  And you are in Sussex County.

11   Right?

12             A JUROR:  Yes, sir.

13             THE COURT:  And that is a bit of a drive, of

14   course.

15             A JUROR:  About eighty-something miles, Your

16   Honor.

17             THE COURT:  Okay.  Now, we could put you up in a

18   hotel, but I take it the responsibility you have I guess to

19   your in-laws?

20             A JUROR:  Yes.

21             THE COURT:  Would that be helpful for you to be

22   able to stay up here or would that not be helpful?

23             A JUROR:  No, that would not be helpful.

24             THE COURT:  All right.  Anything else you

25   answered yes to?

```
 1                    A JUROR:  There was some question concerning

 2    police officers.  I was in an abusive relationship with a

 3    police officer a while back and I'm a little biased, I will

 4    be honest.

 5                    THE COURT:  I'm sorry to hear all of that.

 6                    All right.  I'm going to excuse you from serving

 7    on our jury, but thank you for being here and being willing

 8    to serve.

 9                    A JUROR:  Thank you, Your Honor.

10                    THE COURT:  Safe travels.

11                    A JUROR:  You have a good day.

12                    (The juror left the courtroom.)

13                    THE COURT:  For the record, I struck her for the

14    hardship and for the law enforcement issue.

15                    (The juror entered the courtroom.)

16                    THE COURT:  Good afternoon.  If you don't mind

17    coming forward through those doors.

18                    Are you //////////////?

19                    A JUROR:  Yes.

20                    THE COURT:  Okay.  And do you mind taking the

21    mask off for our discussion?

22                    A JUROR:  No.

23                    THE COURT:  Thank you.  Did you have any "yes"

24    answers to my questions?

25                    A JUROR:  Yes.
```

1          THE COURT:  Okay.  Do you remember what any of

2   them were?

3          A JUROR:  There's one something about being a

4   federal employee.  I worked for the post office.  I don't

5   know if that counts.

6          THE COURT:  That counts in my book.  So you did

7   or do work for the post office?

8          A JUROR:  I'm retired from the post office.

9          THE COURT:  What did you do?

10          A JUROR:  I was a carrier.

11          THE COURT:  Okay.  And how long ago did you

12   retire?

13          A JUROR:  About four-and-a-half years ago.

14          THE COURT:  Okay.  All right.  Any other "yes"

15   answers?

16          A JUROR:  There's one.  Something about a family

17   member had a business.

18          THE COURT:  Yes.  Do you remember the business?

19          A JUROR:  Yes.  My sister-in-law has a business.

20          THE COURT:  What kind of business?

21          A JUROR:  Embroidery.

22          THE COURT:  What is it?  Sorry.

23          A JUROR:  Embroidery for, like, schools.

24          THE COURT:  Sure.  Have you ever worked with her

25   business?

```
 1                    A JUROR:  Yes.

 2                    THE COURT:  And do you own a part of the

 3    business?

 4                    A JUROR:  No.

 5                    THE COURT:  Generally, what did you do for the

 6    business?

 7                    A JUROR:  Occasionally, if she got backed up, I

 8    would go in and help her a day or two running machines.

 9                    THE COURT:  Okay.  Anything else you think you

10    answered yes to?

11                    A JUROR:  There was a question about --

12    something about rehab.

13                    THE COURT:  Yes.  If anybody you know --

14                    A JUROR:  I didn't personally know.  I have

15    friends who have children who have been in rehab.

16                    THE COURT:  Okay.

17                    A JUROR:  But no one in my family or not any

18    person that I -- I really wasn't friends with their

19    children.

20                    THE COURT:  Right.  But you saw it through your

21    friends?

22                    A JUROR:  Yes.

23                    THE COURT:  What their children maybe dealt

24    with?

25                    A JUROR:  Yes.
```

```
 1                THE COURT:  Anything else?

 2                A JUROR:  That was it.

 3                THE COURT:  Any questions from the government?

 4                MS. WELSH:  No, nothing.

 5                THE COURT:  From the defense?

 6                MS. CHAVAR:  No, Your Honor.

 7                THE COURT:  Okay.  We'll just have you go back

 8    in the courtroom next-door and wait there for us.

 9                A JUROR:  Thank you, Your Honor.

10                (The juror left the courtroom.)

11                          *  *  *

12                (The juror entered the courtroom.)

13                THE COURT:  Good afternoon.  If you could come

14    forward through the door.

15                Are you //////////////?

16                A JUROR:  Yes, I am.

17                THE COURT:  Would you mind taking the mask off

18    for our discussion?  Thank you.

19                Did you have any "yes" answers to my questions?

20                A JUROR:  No, no, not really.

21                THE COURT:  No?

22                A JUROR:  I'm just -- I'm one of Jehovah's

23    witnesses and I don't know if any of the questions pertain

24    to that.

25                THE COURT:  Well, as a Jehovah's witness, do you
```

1      have a personal belief that makes it difficult for you to

2      sit in judgment on other people?

3                      A JUROR:  I just believe that judgment is not

4      mine.

5                      THE COURT:  So would it be difficult for you if

6      I put you on this jury and I tell you your job is to

7      essentially judge the facts and decide whether a particular

8      individual is guilty of a crime?

9                      You're shaking your head.  That would be

10     difficult.  Right?

11                     A JUROR:  I believe so.

12                     THE COURT:  Okay.  All right.  I'm going to

13     excuse you from serving on this jury, so you are free to go.

14     Thank you very much.

15                     A JUROR:  Thank you.

16                     (Juror left courtroom.)

17                          *    *    *

18                     (Juror entered juryroom.)

19                     THE COURT:  Good afternoon.  Come through the

20     doors there.

21                     Are you ////////////?

22                     A JUROR:  Yes, I'm ////////////.

23                     THE COURT:  Do you mind taking the mask off just

24     for our discussion?

25                     A JUROR:  Not a problem.

1          THE COURT:  Did you have any "yes" answers to my

2    questions?

3          A JUROR:  I had one.  The juror, I've been a

4    juror before.

5          THE COURT:  Okay.  Was that in this court or

6    state court.

7          A JUROR:  No, it was down the road.

8          THE COURT:  All right.  Probably state court.

9    Do you know about how long ago that was?

10          A JUROR:  15 years, maybe more.

11          THE COURT:  Okay.  Do you remember anything

12    about it?  Was it a criminal or civil case?

13          A JUROR:  It was criminal.

14          THE COURT:  Criminal.  Do you remember anything

15    about what kind of charges?

16          A JUROR:  It actually had to do with assault.

17          THE COURT:  Okay.  Did the jury reach a verdict?

18          A JUROR:  Well, we had to do a few different

19    charges.  We found guilty on maybe one or two and not guilty

20    on one or two.  I don't specifically remember.

21          THE COURT:  Okay.  Other things you answered

22    "yes" to?

23          A JUROR:  I don't think so.

24          THE COURT:  You don't think so.  Okay.  Any

25    questions from the government?

1              MS. WELSH:  No.

2              THE COURT:  From the defense?

3              MS. CHAVAR:  No, Your Honor.

4              THE COURT:  Okay.  We're going to have you go

5    back to the courtroom next door.  Thank you very much.

6              (Juror left courtroom.)

7                    *    *    *

8              (Juror entered juryroom.)

9              THE COURT:  Good afternoon.  If you could come

10   forward through the doors, please.

11             Are you //////////////?

12             A JUROR:  Yes.

13             THE COURT:  Do you mind coming closer to us so

14   we can be sure to hear each other?  Thank you.

15             Do you mind taking of mask off for our

16   discussion?

17             A JUROR:  Oh, sure.

18             THE COURT:  Thank you.  Do you remember, did you

19   have any "yes" answers to my questions?

20             A JUROR:  Pardon?

21             THE COURT:  Did you have any "yes" answers to my

22   questions?

23             A JUROR:  No.

24             THE COURT:  No.  Okay.

25             A JUROR:  The only thing I might bring up is I

1    have a problem hearing out of this ear --

2              THE COURT:  Okay.

3              A JUROR:  -- due to I have a growth in there.

4              THE COURT:  Okay.

5              A JUROR:  Kind of makes it like it's plugged up

6    all the time.

7              THE COURT:  I'm sorry to hear that.  Do you

8    think you heard what I was saying when I was reading those

9    questions?

10             A JUROR:  Most of it.

11             THE COURT:  Most of it.

12             A JUROR:  Yeah.

13             THE COURT:  But you might have missed some of

14   it.

15             A JUROR:  Pardon?

16             THE COURT:  I said you might have missed some of

17   it, huh?

18             A JUROR:  There was probably a couple.

19             THE COURT:  Okay.  You're standing next to our

20   jury box.

21             You're standing next to our jury seats, those

22   red seats.

23             A JUROR:  Uh-huh.

24             THE COURT:  The witness stand is going to be

25   behind you about where those doors are that you walked

1    through.  And you can see where the lawyers are going to

2    speak from.  We have a microphone system.  It's on now.  How

3    confident are you that in sitting in one of these seats for

4    a week are you going to hear, you know, the things that

5    we're all saying?

6              A JUROR:  Probably if I was in the front, I

7    could probably do okay, but if I was towards the back, I

8    probably would catch like every other word.

9              THE COURT:  Right.  Okay.  All right.  Is there

10   anything else that you wanted to raise with us?

11             A JUROR:  No.  That's it.

12             THE COURT:  Okay.  All right.  Any questions?

13             MS. WELSH:  No questions.

14             THE COURT:  Any questions?

15             MS. CHAVAR:  No, Your Honor.

16             THE COURT:  I'm going to have you just wait

17   outside.

18             A JUROR:  Thank you, Your Honor.

19             THE COURT:  Thank you.

20             (Juror left courtroom.)

21             THE COURT:  He seems like he wasn't hearing me

22   all the time, so I think I probably would be better to

23   strike him.

24             Does the government have any objection to that?

25             MS. WELSH:  No, Your Honor.

```
 1                    THE COURT:  Does the defense?
 2                    MS. CHAVAR:  No, Your Honor.
 3                    THE COURT:  So we'll strike -- that was Juror
 4    No. 50.  Let's bring him back, please.
 5                    (Juror entered courtroom.)
 6                    THE COURT:  //////////////, can you hear me?
 7                    A JUROR:  Excuse me?
 8                    THE COURT:  Come up here.  Sorry about that.
 9    Can you hear me?
10                    A JUROR:  A little bit, yeah.
11                    THE COURT:  Okay.  Come closer.
12                    I'm going to excuse you from serving on this
13    jury so your obligation to us is done.  Thank you very
14    much for being willing to serve.  Okay?  And you are free
15    to go.
16                    A JUROR:  Okay.  Thank you.
17                    THE COURT:  Thank you.
18                    A JUROR:  Thank you (indicating to the
19    attorneys).
20                    (Juror left courtroom.)
21                         *    *    *
22                    (Juror entered juryroom.)
23                    THE COURT:  Good afternoon.
24                    A JUROR:  Hello.
25                    THE COURT:  Please come through the doors.
```

```
 1      Thank you.  Are you /////////?

 2                  A JUROR:  Yes, I am.

 3                  THE COURT:  Do you mind taking your mask off?

 4                  A JUROR:  No.

 5                  THE COURT:  Thanks so much.  Do you recall if

 6      you had any "yes" answers?

 7                  A JUROR:  No.

 8                  THE COURT:  There were no "yes" answers?

 9                  A JUROR:  There was none.

10                  THE COURT:  Anything you wanted to talk to us

11      about about serving on this jury?

12                  A JUROR:  I used to work for the prison back in

13      2010 but down in Sussex County.

14                  THE COURT:  You worked for -- were you a

15      correctional office?

16                  A JUROR:  No, I was one of the nurses there.

17                  THE COURT:  And that stopped about 10-plus years

18      ago?

19                  A JUROR:  Five years ago.

20                  THE COURT:  Five, oh.

21                  A JUROR:  Yeah.

22                  THE COURT:  All right.  Anything else that you

23      wanted to share with us?

24                  A JUROR:  No.

25                  THE COURT:  Any questions from the government?
```

```
 1                    MS. WELSH:  No.

 2                    THE COURT:  From the defense?

 3                    MS. CHAVAR:  No, Your Honor.

 4                    THE COURT:  All right.  We're going to have you

 5      wait back in the courtroom next door.  Thank you.

 6                    A JUROR:  Thank you.

 7                    (Juror left courtroom.)

 8                        *    *    *

 9                    (Juror entered juryroom.)

10                    THE COURT:  Good afternoon.  If you could come

11      forward through the doors, please.

12                    Are you ////////////?

13                    A JUROR:  Yes.

14                    THE COURT:  Okay.  And do you mind taking the

15      mask off for our discussion?  Thank you.

16                    Did you have any "yes" answers to my questions?

17                    A JUROR:  I did.

18                    THE COURT:  Okay.  Do you remember what any of

19      them were?

20                    A JUROR:  I remember one of them about a family

21      member owning a business or being self-employed.

22                    THE COURT:  Okay.

23                    A JUROR:  My brother owned his own bar for a

24      little bit.

25                    THE COURT:  A bar.
```

1                    A JUROR:  Um-hmm.

2                    THE COURT:  He doesn't any longer?

3                    A JUROR:  No, not anymore.

4                    THE COURT:  Did you ever work there, yourself?

5                    A JUROR:  I did not.

6                    THE COURT:  You think you had others "yes"

7      answers?

8                    A JUROR:  I think I did around some of the drug

9      questions.  I don't remember all of the specifics.

10                    THE COURT:  That's fine, of course.

11                    Anybody that you have been close to that has had

12     a substance abuse issue?

13                    A JUROR:  No.  I have several family members who

14     use recreationally.

15                    THE COURT:  But no one as far as, you know, that

16     was addicted or needed to go to rehab or anything?

17                    A JUROR:  No.

18                    THE COURT:  Okay.  Do you have any strong views

19     about whether drugs should be legal or illegal?

20                    A JUROR:  I do not.

21                    THE COURT:  Okay.  Do you remember any other

22     topics you might have had a "yes" answer to?

23                    A JUROR:  I think that was it.

24                    THE COURT:  You think that was it?  Okay.  Any

25     other concerns you wanted to raise?

1           A JUROR:  I think you said it was expected to

2     end by the 24th?

3           THE COURT:  By next Friday, yes.

4           A JUROR:  Okay.

5           THE COURT:  Which is the 24, yes.

6           A JUROR:  So I'm expecting to start a new job on

7     October 4th, the follow Monday.  So that would be the only

8     thing.

9           THE COURT:  I think there was a whole another

10    week after that.

11          A JUROR:  Oh, yes.  Yes.

12          THE COURT:  Hopefully.

13          Any questions from the government?

14          MS. WELSH:  No, no questions.

15          THE COURT:  From the defense?

16          MS. CHAVAR:  No, Your Honor.

17          THE COURT:  Okay.  I'm going to have you wait in

18    the other courtroom for us next door.  Okay?

19          A JUROR:  Okay.  Thank you.

20          (Juror left courtroom.)

21                  *    *    *

22          (Juror entered juryroom.)

23          THE COURT:  Good afternoon.  If you could come

24    through the doors, please.

25          Are you ////////?

```
 1                    A JUROR:  Yes, I am.

 2                    THE COURT:  Do you mind removing the mask for

 3       our discussion?

 4                    Okay.  Thank you.

 5                    Did you have any "yes" answers to my questions?

 6                    A JUROR:  Just the one regarding family drug

 7       issues.

 8                    THE COURT:  Okay.  I'm sorry, I have to ask you,

 9       but who in your family has or had an issue?

10                    A JUROR:  When I was 14, my brother was 16,

11       somebody laced one of his cigarettes with LSD and he had a

12       chemical imbalance in his brain ever since so.  I don't have

13       a great affinity for illegal drugs.

14                    THE COURT:  Okay.  I'm sorry about that.

15                    Do you think that you could be a fair

16       and impartial juror in a trial that will have evidence

17       related to drugs and alleged drug dealing?

18                    A JUROR:  I would like to think I could, but I

19       can't honestly 100 percent tell you I might not lean one way

20       or the other.

21                    THE COURT:  Okay.  You would like to think you

22       could serve on the jury like this, but you are not sure?

23                    A JUROR:  That's correct.

24                    THE COURT:  Okay.  Were there other things you

25       answered "yes" to or other concerns you wanted to raise?
```

```
 1                    A JUROR:  No, that's it.

 2                    THE COURT:  Any questions from the government?

 3                    MS. WELSH:  No.

 4                    THE COURT:  From the defense?

 5                    MS. CHAVAR:  No, Your Honor.

 6                    THE COURT:  All right.  I'm going to have you

 7       wait in the hallway for me, please.

 8                    A JUROR:  Thank you.

 9                    (Juror left courtroom.)

10                    THE COURT:  Any motion from the government?

11                    MS. WELSH:  Yes, Your Honor, we don't have a

12       motion.  But if the defense has a motion, I don't think

13       we're going to stand in the way of it.

14                    THE COURT:  Okay.

15                    MS. WELSH:  Yes.

16                    THE COURT:  What do you think, Ms. Chavar?

17                    MS. CHAVAR:  I would move to strike.  I think he

18       was very honest with us.  I think it would be difficult for

19       him and he probably would not be fair and impartial.

20                    THE COURT:  No objection.

21                    MS. WELSH:  No objection.

22                    THE COURT:  All right.  I will go ahead and

23       strike Juror No. 53.  Let's bring him back, please.

24                    (Juror entered courtroom.)

25                    THE COURT:  //////////, thanks for your
```

```
 1    willingness to serve but I'm going to excuse you from

 2    serving on this jury.  So thanks for being here.  You are

 3    free to go.

 4                    A JUROR:  Thank you.

 5                    THE COURT:  Thank you.

 6                    (Juror left courtroom.)

 7                         *    *    *

 8                    (Juror entered juryroom.)

 9                    THE COURT:  Good afternoon.  Yes, if you don't

10    mind coming forward through the doors there.

11                    Are you //////////////?

12                    A JUROR:  Yes.

13                    THE COURT:  Okay.  And do you mind taking the

14    mask off for our discussion?

15                    Thank you very much.

16                    Did you have any "yes" answers to my questions?

17                    A JUROR:  13.

18                    THE COURT:  No. 13.  Bear with me.

19                    Plea bargaining?  That was -- No. 13 was:  One

20    or more witnesses have receive future lesser sentences in

21    exchange for cooperating with the government.

22                    Was that it or something else?

23                    A JUROR:  No, that wasn't it.  I thought.

24                    THE COURT:  Let me have you come closer to so I

25    can be sure to hear you.
```

```
 1                      A JUROR:  I thought that was it, but that wasn't
 2     it.
 3                      THE COURT:  Do you remember what the topic was?
 4                      A JUROR:  Uh-uh, I just remember the numbers
 5     because you were going down.
 6                      THE COURT:  Yes, there was a lot of them.  Let
 7     me -- did you know any of the names of the possible
 8     witnesses?
 9                      A JUROR:  No.
10                      THE COURT:  You don't know the lawyers or any
11     involved in the trial here?
12                      A JUROR:  No.
13                      THE COURT:  Have you ever been on a jury before?
14                      A JUROR:  Yes.
15                      THE COURT:  You have been on a jury before?
16                      A JUROR:  Yes.
17                      THE COURT:  Okay.  About when was that?
18                      A JUROR:  About 15 years ago.
19                      THE COURT:  Was that here in Delaware?
20                      A JUROR:  Yes.
21                      THE COURT:  Federal court or state court, do you
22     know?  Was it here?
23                      A JUROR:  No, state.
24                      THE COURT:  Do you remember what kind of case,
25     civil or criminal?
```

```
 1                    A JUROR:  Criminal.

 2                    THE COURT:  Sorry, I interrupted you.  Criminal.

 3       Do you remember what the charges were?

 4                    A JUROR:  Theft.

 5                    THE COURT:  And was there a verdict?

 6                    A JUROR:  Yes.

 7                    THE COURT:  What was it?

 8                    A JUROR:  Guilty.

 9                    THE COURT:  Is that the only time you have been

10       on a jury?

11                    A JUROR:  Yes.

12                    THE COURT:  Do you or anyone in your family work

13       for or interact with law enforcement?

14                    A JUROR:  No.

15                    THE COURT:  No.  Doing to any crime prevention

16       societies?

17                    A JUROR:  No.

18                    THE COURT:  You don't have a concern about plea

19       bargaining, I guess?  That was not your answer?

20                    A JUROR:  No.

21                    THE COURT:  Okay.  Do you have any strong views

22       about drug laws or drug prosecutions?

23                    A JUROR:  No.

24                    THE COURT:  Anybody close to you has substance

25       abuse problems or been in the drug treatment program?
```

1          A JUROR:  No.

2          THE COURT:  I went through a number of

3   constitutional rights that the defendant has a right to be

4   silent, not have to testify, and the burden of proof is

5   beyond a reasonable doubt, all on the government.  The

6   defense doesn't have to present any evidence.

7          Do you have any concerns about any of that?

8          A JUROR:  No.

9          THE COURT:  The verdict is going to have to be

10  unanimous.  You will have to respect the views of other

11  jurors, but also, you know, be comfortable with the verdict

12  yourself.

13         Do you have any concerns about that?

14         A JUROR:  No.

15         THE COURT:  The schedule, we're going to need

16  you, until perhaps the end of next week, probably the 24th.

17         Does that pose a substantial hardship for you?

18         A JUROR:  No, it doesn't.

19         THE COURT:  Any COVID-related concerns?

20         A JUROR:  No.

21         THE COURT:  No.  Okay.  Do you think -- were

22  there any other topics you wanted to talk to us about?

23         A JUROR:  No.

24         THE COURT:  No.

25         A JUROR:  No.

```
 1                    THE COURT:  Any questions from the government?

 2                    MS. WELSH:  No questions.

 3                    THE COURT:  From the defense.

 4                    MS. CHAVAR:  Your Honor, I didn't know -- I

 5      don't think I heard questions with respect to law

 6      enforcement.

 7                    THE COURT:  I think I raised that, but if I

 8      didn't let me ask again.

 9                    So do you think you would tend to give testimony

10      from a law enforcement witness greater or lesser weight

11      simply because he or she is a law enforcement witness.

12                    A JUROR:  No.

13                    THE COURT:  No.

14                    A JUROR:  Uh-uh.

15                    THE COURT:  No.  Any questions?

16                    MS. CHAVAR:  No question.

17                    THE COURT:  All right.  ////////////, we're

18      going to ask you to wait in the court next to us.  Thank you

19      very much.

20                    A JUROR:  Okay.

21                    (Juror left courtroom.)

22                    MS. CHAVAR:  We're getting close to 12.

23                    THE COURT:  I think we're close.

24                    (Juror entered courtroom.)

25                    THE COURT:  Good afternoon.  If you could come
```

```
 1   forward.
 2                   ////////////, is that right?
 3              A JUROR:  That's correct.
 4              THE COURT:  Do you mind taking your mask off for
 5   our discussion?
 6              Thank you.
 7              Do you remember, did you have any "yes" answers
 8   to my questions.
 9              A JUROR:  Yes, I did.  I had a father that was a
10   felon.
11              THE COURT:  Okay.  Go ahead.
12              A JUROR:  And I have a son who is an addict and
13   his wife -- ex-wife.  And now I'm raising my grandkids for
14   ten years now.  Very strong drug conviction against drugs.
15   He stole from me and everything else.
16              THE COURT:  Okay.  Let me ask you a few
17   questions about that.  Your father you say was a felon.  He
18   was convicted, I take it?
19              A JUROR:  Yes.  At 80.  At age of 80.
20              THE COURT:  At age of 80.  Okay.  And what kind
21   of trial?  Sorry about that.
22              A JUROR:  It was sexual.
23              THE COURT:  Okay.  And did he go to prison?
24              A JUROR:  No.  He was monitored, home monitor.
25              THE COURT:  Okay.  And how did you feel about
```

```
 1    how he was treated by the criminal justice system?  Do you

 2    think he was treated fairly?

 3                A JUROR:  Well, the sexual conviction was

 4    against my granddaughter, so I really had strong feelings.

 5                THE COURT:  Okay.

 6                A JUROR:  Against the whole thing.

 7                THE COURT:  All right.  And you say your son has

 8    had substance abuse addiction?

 9                A JUROR:  Him and his wife, ex-wife now, but,

10    yes.

11                THE COURT:  All right.

12                A JUROR:  And I'm raising their kids for ten

13    years.

14                THE COURT:  Okay.  Do you think that you could

15    be a fair and impartial juror on a case that involved

16    allegations of drug dealing?

17                A JUROR:  Not really.

18                THE COURT:  No?  And how is it that you think

19    you would be unfair?  Do you think you would be biased

20    towards the government or biased --

21                A JUROR:  I would probably be biased towards the

22    government, yes.

23                THE COURT:  Okay.  All right.  Well, I'm going

24    to excuse you from serving on this jury.

25                A JUROR:  All right.
```

```
 1                    THE COURT:  Thank you for sharing that with
 2      us.  Thank you for being willing to serve, but you're free
 3      to go.
 4                    A JUROR:  All right.  Thank you.
 5                    THE COURT:  Thank you.
 6                    (The juror left the courtroom.)
 7                              *  *  *
 8                    (The juror entered the courtroom.)
 9                    THE COURT:  Good afternoon.  If you don't mind
10      coming through those doors.
11                    A JUROR:  Okay.
12                    THE COURT:  Are you ///////////?
13                    A JUROR:  Yes, sir.
14                    THE COURT:  Great.  Do you mind taking the mask
15      off for our discussion?
16                    A JUROR:  Okay.
17                    THE COURT:  Thank you.
18                    Do you remember if you had any "yes" answers to
19      my questions?
20                    A JUROR:  I did.
21                    THE COURT:  You did have some?  Do you remember
22      what they are?
23                    A JUROR:  I think you asked if I had anyone that
24      owned a business.
25                    THE COURT:  Yes.
```

```
 1                   A JUROR:  I had a general contracting business

 2      for, like, five years.

 3                   THE COURT:  Okay.

 4                   A JUROR:  It was 2000 I think 8 -- '07 to '12.

 5                   THE COURT:  Okay.

 6                   A JUROR:  I think there was another one you

 7      had asked about someone being, a family member being in

 8      rehab.

 9                   THE COURT:  Yes.

10                   A JUROR:  I had a stepson.  My stepson was in

11      rehab.

12                   THE COURT:  Okay.

13                   A JUROR:  For probably a couple times, two or

14      three times.

15                   THE COURT:  Okay.

16                   A JUROR:  Plus he spent some time incarcerated.

17                   THE COURT:  The same stepson?

18                   A JUROR:  Yes, sir.

19                   THE COURT:  Okay.

20                   A JUROR:  I think that's it.

21                   THE COURT:  Was that drug related?

22                   A JUROR:  Yes, drug-related.

23                   THE COURT:  Do you -- I'm sorry I have to ask,

24      but do you know what substance he was addicted to or had

25      issues with?
```

```
 1                    A JUROR:  Opiates, and he was -- I believe he

 2      got on heroin.

 3                    THE COURT:  Do you think that you could be a

 4      fair and impartial juror in a case that has the allegations

 5      related to drug dealing?

 6                    A JUROR:  I think so, yes.

 7                    THE COURT:  Okay.  Do you think there were other

 8      areas you had "yes" answers to?

 9                    A JUROR:  No.  I think that was the only two I

10      believe I had "yes" answers to.

11                    THE COURT:  All right.  Any questions from the

12      government?

13                    MS. WELSH:  No questions.

14                    THE COURT:  From the defendant, any questions?

15                    MS. CHAVAR:  No questions.

16                    THE COURT:  All right.  I'm going to have you

17      wait in the courtroom next-door.

18                    A JUROR:  Okay.

19                    THE COURT:  Thanks very much.

20                    A JUROR:  Mm-hmm.

21                    (The juror left the courtroom.)

22                    THE COURT:  Good afternoon.  If you could come

23      forward through the doors.  Thank you.

24                    /////////////; is that right?

25                    A JUROR:  Yes.
```

```
 1                    THE COURT:  Okay.  You can come forward.
 2                    A JUROR:  Okay.
 3                    THE COURT:  Do you mind taking the mask off?
 4                    A JUROR:  No.
 5                    THE COURT:  Thank you.
 6                    A JUROR:  Mm-hmm.
 7                    THE COURT:  Do you recall if you had any "yes"
 8      answers to my questions?
 9                    A JUROR:  Yes, I had two.
10                    THE COURT:  Okay.  Do you remember what they
11      were?
12                    A JUROR:  One I believe was having personal,
13      like a personal business with the family.  Yes.  My father,
14      he owned his own veterinary business, and my stepmother, she
15      has her own like jams and jellies.  She makes her own
16      candies.
17                    THE COURT:  Have you, yourself, worked for
18      either of those businesses?
19                    A JUROR:  Yes, both of them.  I have and still
20      am.
21                    THE COURT:  Okay.  All right.  What generally do
22      you do for the veterinary practice?
23                    A JUROR:  I'm a receptionist, so I work up
24      front, help with phone calls, check them in.
25                    THE COURT:  And for the jam and jelly business?
```

```
 1              A JUROR:  Basically, I'm like her right-hand
 2   person, like helping her with anything I need to do,
 3   preparing it or helping her get done the canning process.
 4              THE COURT:  Great.  Okay.  And I think there was
 5   another question?
 6              A JUROR:  Yes.  I believe it was the one with
 7   the question that asked if there's, like, a problem
 8   attending to the next week.
 9              THE COURT:  Yes.
10              A JUROR:  I do work three jobs and all of them
11   are very low on staff because of COVID 19, unfortunately, so
12   it will be troublesome for me, but if I have to, I will try
13   to contact all of my bosses and try to figure it out.
14              THE COURT:  Do the three jobs include the two
15   that we just talked about?
16              A JUROR:  One of them is the veterinary
17   practice, yes.  One of them is a substitute, which is a
18   part-time job.  And the third one is I work at a fast food
19   restaurant.  I've been promoted to kind of like a manager.
20   I'm always there like almost seven days a week.
21              THE COURT:  Okay.  And so the jams and jellies
22   on top of that?
23              A JUROR:  Yes, whenever that comes around.
24              THE COURT:  All right.  Are you scheduled or
25   expect to work at some or all of these jobs next week?
```

```
1                    A JUROR:  Yes, I am working.

2                    THE COURT:  And if you are not there, would you

3       get paid?

4                    A JUROR:  No, I will not be paid if I'm not

5       there.

6                    THE COURT:  Okay.  All right.  Any questions

7       from the government?

8                    MS. WELSH:  No, nothing.

9                    THE COURT:  Any questions from the defense?

10                   MS. CHAVAR:  No, Your Honor.

11                   THE COURT:  All right.  I will have you wait

12      outside.

13                   A JUROR:  All right.

14                   THE COURT:  Thank you.

15                   (The juror left the courtroom.)

16                   THE COURT:  Any objection to striking her for

17      financial hardship?

18                   MS. WELSH:  No, Your Honor.

19                   THE COURT:  Any objection?

20                   MS. CHAVAR:  No, Your Honor.

21                   THE COURT:  Okay.  I will strike her for the

22      hardship given the three of the four jobs she has.  Let's

23      bring her back.

24                   (The juror entered the courtroom.)

25                   THE COURT:  /////////////, thank you very much.
```

```
 1        I'm going to excuse you from serving on this jury.

 2               A JUROR:  Okay.

 3               THE COURT:  So you are free to go.  Thank you

 4   very much.

 5               A JUROR:  Thank you.

 6               THE COURT:  Bye-bye.

 7               (The juror entered the courtroom.)

 8               THE COURT:  If you could come through the door

 9   for me, please.  And you are Juror No. 58?

10               A JUROR:  Yes.

11               THE COURT:  Okay.  Do you mind taking your mask

12   off?  Thank you so much.

13               A JUROR:  Do I stand here?

14               THE COURT:  Right there is great.  Can you hear

15   me?

16               A JUROR:  Yes.

17               THE COURT:  Okay.  Did you have any "yes"

18   answers to my questions?

19               A JUROR:  Not that I can remember.

20               THE COURT:  No?  Do you have any concerns about

21   serving on this jury?

22               A JUROR:  No.

23               THE COURT:  No?

24               A JUROR:  No.

25               THE COURT:  Okay.  Anything you wanted to raise
```

```
 1     with me?

 2              A JUROR:  No.

 3              THE COURT:  No?  Any questions from the

 4     government?

 5              MS. WELSH:  No questions.

 6              THE COURT:  From the defense?

 7              MS. CHAVAR:  No.

 8              THE COURT:  Okay.  We're going to have you wait

 9     in the courtroom next-door.  Okay?

10              A JUROR:  All right.

11              THE COURT:  We'll see you shortly.

12              (The juror left the courtroom.)

13                        *  *  *

14              (The juror entered the courtroom.)

15              THE COURT:  Good afternoon.  If you would come

16     forward through the door, please.  Are you /////////?

17              A JUROR:  Yes.

18              THE COURT:  Okay.  Do you mind taking the mask

19     off?  Thank you very much.

20         Did you have any "yes" answers to my questions?

21              A JUROR:  No.

22              THE COURT:  None at all?

23              A JUROR:  No.

24              THE COURT:  Any concerns?

25              A JUROR:  No.
```

```
 1              THE COURT:  Okay.  Any questions.
 2              MS. WELSH:  No.
 3              THE COURT:  Any questions from the defense?
 4              MS. CHAVAR:  No, Your Honor.
 5              THE COURT:  Okay.  All right.  You can go back
 6    to the other courtroom.  Thanks very much.
 7              (The juror left the courtroom.)
 8              THE COURT:  I think we've reached 32, but let me
 9    just double-check.
10              Do you know if the members of the first group
11    are next-door or if they are still downstairs?
12              DEPUTY CLERK:  I don't know.  I will check.
13              THE COURT:  Please check.
14              So we do believe we have 32.  I think what I
15    should do is have my deputy read off the juror numbers of
16    the 32, and then if we're all in agreement, we'll work on
17    getting them here and bringing them in.
18              DEPUTY CLERK:  Juror No. 1, Juror No. 2, 3, 6,
19    9, 11, 12, 15, 17, 21, 22, 23, 24, 27, 30, 31, 32, 34, 36,
20    37, 39, 41, 43, 44, 47, 49, 51, 52, 54, 56, 58 and 59.
21              THE COURT:  Are they in there?
22              DEPUTY CLERK:  They are.
23              THE COURT:  Thank you.  Does the government
24    agree that those are the jurors that are in our pool?
25              MS. WELSH:  Yes, Your Honor.
```

1          THE COURT:  Okay.  And, Ms. Chavar, does the

2    defense agree?

3          MS. CHAVAR:  Yes, Your Honor.

4          THE COURT:  All right.  So that's 32.  Since we

5    know they're all in the building and we need 12 jurors plus

6    two alternates, the government gets seven peremptory strikes

7    and the defense gets 11.  When you add all of that up, you

8    get to 32.

9          I think we can go ahead and excuse the remaining

10   jurors, the Jurors No. 60 through 77.

11         Does the government have any objection to me

12   striking 60 through 77?

13         MS. WELSH:  Other than a generalized fear of

14   losing someone and having a problem, if that's what the

15   Court typically does?

16         THE COURT:  This is my only second time doing it

17   this way, you know, with COVID.  I don't want to keep 17

18   people around just on the off chance something unexpected

19   happens in the next half-hour with the peremptories.

20         What we could do is bring in a couple more now,

21   you know, get a couple extra qualified and then go forward

22   with 34 or 35 and then excuse the remainder.

23         The reason why we want to excuse the remainder,

24   not just for convenience to them and health, but

25   mathematically, there's no way we can get to them being on

1    the jury and they've ended up in the 60 to 77 just randomly.

2    But, again, I'm happy to pick a couple more, but I would do

3    it through the process that we've been following at this

4    point.

5            MS. WELSH:  Your Honor, this may be overly

6    cautious, but if we could just try to do two more.

7            THE COURT:  That's fine.  Ms. Chavar, I'm going

8    to do at least two more, but what is your position at this

9    point?

10           MS. CHAVAR:  I'm okay with the 32.  If you want

11   to do a few more, though, I'm okay with that as well.

12           THE COURT:  Let's try to get to 34.  Let's bring

13   them in.  I think we're up to Juror No. 60.

14           DEPUTY CLERK:  Judge, No. 30 from this morning

15   has something to say.

16           THE COURT:  Number 30 from this morning?  All

17   right.  And -- hold on.  Is he or she available now?

18           DEPUTY CLERK:  She's bringing them over.

19           THE COURT:  Okay.  And we're working on getting

20   60, 61, 62 ready?

21           DEPUTY CLERK:  Yes.  30 and 60 are ready.

22           THE COURT:  Thank you.

23           (The juror entered the courtroom.)

24           A JUROR:  Hi.

25           THE COURT:  Good afternoon.  Please come forward

```
 1    again.
 2                    You're our Juror No. 30?
 3                    A JUROR:  Yes.
 4                    THE COURT:  Is that right?  Is there something
 5    more you want to tell us?
 6                    A JUROR:  Do the security officers matter for
 7    the law enforcement?
 8                    THE COURT:  I'm sorry.  Can you take your mask
 9    off?
10                    A JUROR:  I'm sorry.
11                    THE COURT:  Do security officers?
12                    A JUROR:  Matter for the first question?
13                    THE COURT:  Sure.  Like you know some security
14    officer?
15                    A JUROR:  My uncle and my dad.  My dad is in New
16    York.  He does security out there and then my uncle, he does
17    security in Georgetown, Delaware.
18                    THE COURT:  Okay.  Well, thank you for sharing
19    that with us.
20                    Do you think that that is going to make you
21    treat law enforcement witnesses any differently than other
22    witnesses?
23                    A JUROR:  Yes.
24                    THE COURT:  You do think so?
25                    A JUROR:  Yes.
```

```
1                  THE COURT:  How so?

2                  A JUROR:  Well, I'm nervous.

3                  THE COURT:  That's okay.  Take your time.

4                  A JUROR:  I really don't know what to say.

5                  THE COURT:  You don't know what to say.  I mean,

6      so part of this trial, a number of people are going to come

7      in and testify and tell you things and it will be up to you

8      to decide if you believe what they are saying.  Some of

9      those are going to be law enforcement witnesses.

10                 A JUROR:  Okay.

11                 THE COURT:  So they work for police agencies or,

12     you know, drug enforcement administration.  Okay?

13                 A JUROR:  All right.

14                 THE COURT:  You're going to have to decide if

15     you believe what they are saying.

16                 A JUROR:  Okay.

17                 THE COURT:  Do you think that you can do that

18     fairly and impartially?

19                 A JUROR:  Yes, I can.

20                 THE COURT:  And the fact that you have these

21     close family members that do security work, do you think

22     that's going to make you more likely to think that the law

23     enforcement witnesses I'm talking about are telling the

24     truth?

25                 A JUROR:  Yes.
```

```
 1                    THE COURT:  You do think so based on the

 2   experience of your family security?

 3                    A JUROR:  Right.

 4                    THE COURT:  So if I instruct you that you're to

 5   treat everyone the same and evaluate their testimony the

 6   same if they're law enforcement or not, could you follow

 7   that instruction?

 8                    A JUROR:  Yes.

 9                    THE COURT:  Yes?

10                    A JUROR:  And then another thing.  Other than

11   Kent County, I live in Magnolia, Delaware, so, like, driving

12   from -- back and forth.

13                    THE COURT:  It's a hardship?

14                    A JUROR:  Yes.

15                    THE COURT:  If we put you up in a hotel all of

16   next week, would that help or would that not help?

17                    A JUROR:  It could help.

18                    THE COURT:  It could?

19                    A JUROR:  Yeah, it could help, yeah.

20                    THE COURT:  Okay.  I'm going to have you wait

21   out in the hall.

22                    A JUROR:  Okay.  Thank you.

23                    THE COURT:  Okay.  Thank you.

24                    (The juror left the courtroom.)

25                    THE COURT:  So Juror No. 30 did appear very
```

1    nervous to me and it seemed to me like he would like to not

2    be on this jury.  I think I probably should strike him, but

3    is there any objection to striking him?

4                    MS. WELSH:  No objection, Your Honor.

5                    THE COURT:  All right.  How about from the

6    defense?

7                    MS. CHAVAR:  No objection, Your Honor.

8                    THE COURT:  All right.  So we'll strike Juror

9    30, which means we're going to try to find three more

10   that qualify.  But let's bring 30 back in for a moment,

11   please.

12                    (The juror entered the courtroom.)

13                    THE COURT:  Mr. Powers, thank you again.  Thanks

14   for sharing that extra information with us.  I've decided

15   I'm going to excuse you from serving on the jury, so you're

16   free to go at this point.

17                    A JUROR:  Thank you.

18                    THE COURT:  Bye-bye.

19                    A JUROR:  Thanks so much.

20                    (The juror left the courtroom.)

21                            *  *  *

22                    (The juror entered the courtroom.)

23                    THE COURT:  Good afternoon.  Would you come

24   forward through those doors, please.  Are you Ms. Guerrero?

25                    A JUROR:  Yes.

```
 1                    THE COURT:  Okay.  And do you mind taking the
 2      mask off?  Thank you.
 3                    Do you remember at this point if you had any
 4      "yes" answers to my questions?
 5                    A JUROR:  No.
 6                    THE COURT:  Meaning you had no "yes" answers?
 7                    A JUROR:  No, I didn't have any.  I don't think
 8      so.
 9                    THE COURT:  Okay.  Do you have any concerns
10      about serving on this jury that you want to talk to us
11      about?
12                    A JUROR:  As far as coming back, because I can't
13      come back.  I actually don't have a car or a phone.
14                    THE COURT:  Come a little bit closer.  So you
15      don't have a car?
16                    A JUROR:  Yeah, or a phone, so I mean I don't
17      know how I'm going to get home today.
18                    THE COURT:  Oh, no.  How did you get here
19      today?
20                    A JUROR:  Well, my mother dropped me off, but as
21      far as getting back, I don't know.
22                    THE COURT:  She's not picking you up?
23                    A JUROR:  She is.  I don't have a phone.  I
24      don't know if you guys provide a phone to call back.
25                    THE COURT:  I'm sure we can help you out with
```

1    that to make a phone call.  So if we needed to have you here

2    next week, you don't know how you would get here?

3                    A JUROR:  No.

4                    THE COURT:  Okay.  Anything else you wanted to

5    raise with us?

6                    A JUROR:  No.

7                    THE COURT:  No?  Okay.  Any questions?

8                    MS. WELSH:  No questions.

9                    THE COURT:  Any questions?

10                   MS. CHAVAR:  Good afternoon.  Hi.

11                   A JUROR:  Hi.

12                   MS. CHAVAR:  Do you use public transportation at

13   all?

14                   A JUROR:  No.

15                   MS. CHAVAR:  You don't.  Thank you.

16                   THE COURT:  Okay.  You can wait out in the hall

17   there, please.

18                   (The juror left the courtroom.)

19                   THE COURT:  I think I should strike her.  It

20   sounds like it would be a hardship to get here and to get

21   home every day next week.  I didn't want to press much

22   further, but any objection to striking her?

23                   MS. WELSH:  I don't see how we can't under the

24   circumstances.

25                   THE COURT:  Ms. Chavar, any objection?  The

```
 1    government had no objection.

 2                  MS. CHAVAR:  No objection.

 3                  THE COURT:  All right.  //////////, are we able

 4    to offer her a phone to call her mom?

 5                  DEPUTY CLERK:  I think so.

 6                  THE COURT:  All right.  Could someone do that

 7    after you bring her back in and I excuse her?

 8                  (The juror entered the courtroom.)

 9                  THE COURT:  Come on forward.  Are you //////////?

10                  A JUROR:  Yes.

11                  THE COURT:  Juror No. 61.  Right?

12                  A JUROR:  Yes.

13                  THE COURT:  Did you -- do you mind taking your

14    mask off?

15                  A JUROR:  Sure.

16                  THE COURT:  Thank you.

17                  A JUROR:  I can breathe.

18                  THE COURT:  Did you have any "yes" answers to my

19    questions?

20                  A JUROR:  Just the one about being related to

21    police officers.

22                  THE COURT:  And are you related to police

23    officers?

24                  A JUROR:  My dad was a Delaware State trooper

25    for 20 years.
```

1              THE COURT:  Okay.  Do you think that you could

2     be fair and impartial in evaluating the testimony of other

3     law enforcement officers?

4              A JUROR:  Say that again.

5              THE COURT:  Do you think that you could be fair

6     and impartial in evaluating the testimony of law enforcement

7     officers?

8              A JUROR:  I believe them.  I would believe them.

9              THE COURT:  You believe them?

10             A JUROR:  The police officers.

11             THE COURT:  You would believe them?

12             A JUROR:  Mm-hmm.

13             THE COURT:  Based on your experience with your

14    dad?

15             A JUROR:  I always grew up thinking the police,

16    if they arrested you, you had to be guilty.

17             THE COURT:  Okay.  All right.  I'm going to

18    excuse you from serving on the jury.  Thank you very much.

19             A JUROR:  Thank you.

20             THE COURT:  You're free to go.

21             A JUROR:  Thanks.

22             (The juror left the courtroom.)

23             THE COURT:  What about Juror No. 60?

24             DEPUTY CLERK:  Deb is going to help her make a

25    phone call.

1                    THE COURT:  I didn't get a chance to tell her

2      she was stricken.  You can tell her.

3                    (The juror entered the courtroom.)

4                    THE COURT:  Good afternoon.

5                    A JUROR:  Hi.

6                    THE COURT:  You can come through the doors

7      there.  Are you //////////////?

8                    A JUROR:  Yes.

9                    THE COURT:  Do you mind taking your mask off?

10                    A JUROR:  No.

11                    THE COURT:  Great.  Thank you.

12                    Did you have any "yes" answers to my questions?

13                    A JUROR:  I did not.

14                    THE COURT:  You did not?

15                    A JUROR:  No.

16                    THE COURT:  Any concerns about serving on this

17     jury?

18                    A JUROR:  No.

19                    THE COURT:  Okay.  Any questions from the

20     government?

21                    MS. WELSH:  No.

22                    THE COURT:  From the defense?

23                    MS. CHAVAR:  Excuse me one moment.

24                    THE COURT:  Sure.

25                    MS. CHAVAR:  Just a quick question.

```
1                    THE COURT:  Sure.

2                    MS. CHAVAR:  Hi.

3                    A JUROR:  Hi.

4                    MS. CHAVAR:  I note that you are employed in

5     anti-money laundering analysis?

6                    A JUROR:  Yes.

7                    MS. CHAVAR:  Could you tell me just a little bit

8     about that and where you're employed?

9                    A JUROR:  Sure.  I work in -- I'm an

10    investigator for Capital One.  I work in transaction

11    monitoring, so my job is simply to, like, review alerts that

12    come in for potential money laundering and escalate if there

13    are any concerns.

14                    MS. CHAVAR:  Okay.  Can I ask you, like, what

15    your red flags would be for money laundering activity?

16                    A JUROR:  We look for, like, structuring or lots

17    of money moving in and out quickly with people with -- like

18    where there are no relationships between the customer and an

19    individual that we can't identify.  If we find information

20    about the customer, like negative news, that could be a

21    concern.

22                    MS. CHAVAR:  Okay.  So is your training that

23    when you see movement or some of the circumstances that you

24    just explained --

25                    A JUROR:  Sure.
```

1          MS. CHAVAR:  -- to assume that there's money

2    laundering and to look into it?

3          A JUROR:  No.  I'm definitely not assuming

4    that's money laundering.  I basically try to take all the

5    information that I have available to me, information that I

6    find on the customer, either within our records or through

7    external databases and just make a judgment on the activity,

8    whether or not that is unusual.

9          MS. CHAVAR:  Okay.

10          A JUROR:  But, like, at no point do I say

11    there's definitely money laundering happening.  I just

12    am basically making an assessment whether there is

13    potentially.

14          MS. CHAVAR:  Okay.

15          A JUROR:  And I -- oh, no.

16          MS. CHAVAR:  Go ahead.

17          A JUROR:  I really do my best in my job to make

18    the best decision that I possibly can with information that

19    I have.

20          MS. CHAVAR:  So every time you have looked

21    into -- any time there was a circumstance that required you

22    to look into further, did you always find money laundering

23    in those circumstances?

24          A JUROR:  No, not always.

25          MS. CHAVAR:  Okay.  Thank you.

```
1                    A JUROR:  You're welcome.

2                    THE COURT:  In your work, do you deal directly

3      with law enforcement?

4                    A JUROR:  I don't deal directly with law

5      enforcement because I did notice that question.  So I would

6      be -- I might file a suspicious activity report and then --

7      well, maybe I guess.  It goes to Fin Sen, but that's the

8      extent of my contact.

9                    THE COURT:  Okay.

10                   A JUROR:  I never have any idea what happens

11     after that.

12                   THE COURT:  Okay.

13                   A JUROR:  So I just submit concerns.

14                   THE COURT:  All right.

15                   A JUROR:  That's the end of my involvement.

16                   THE COURT:  Right.  Okay.  Thank you.

17                   MS. CHAVAR:  All right.

18                   THE COURT:  I'm going to have you wait out in

19     the hallway for a minute, please.

20                   A JUROR:  Thanks.

21                   (Juror left courtroom.)

22                   THE COURT:  Any motion from the government?

23                   MS. WELSH:  No, Your Honor.

24                   THE COURT:  From the defense?

25                   MS. CHAVAR:  No, Your Honor.
```

```
 1                    THE COURT:  Okay.  Bring her back.

 2                    (Juror entered courtroom.)

 3                    THE COURT:  /////////////, thank you.  I'll have

 4   you go back into the courtroom and wait for further

 5   instructions.

 6                    A JUROR:  Okay.  Thanks.

 7                    (Juror left courtroom.)

 8                         *    *    *

 9                    (Juror entered juryroom.)

10                    THE COURT:  Good afternoon.  If you could come

11   through the doors there, please.

12                    Are you /////////////?

13                    A JUROR:  /////////.

14                    THE COURT:  /////////.

15                    A JUROR:  Where am I going?

16                    THE COURT:  Right there is good if you can you

17   hear me.

18                    Do you mind taking the mask off?

19                    Did you have any "yes" answers to my questions?

20                    A JUROR:  I did have a couple.

21                    THE COURT:  Do you remember what they were?

22                    A JUROR:  Yeah.  I think one thing was:  Has

23   anybody in your family been convicted of some type of crime.

24   Now, my husband was convicted of something when he was 19.

25                    I'm also getting fitted for a hearing aid at the
```

1    end of the month.

2                    THE COURT:  Okay.

3                    A JUROR:  And I just wanted to let you know, I

4    did report to Superior Court jury duty in August.  Didn't

5    realize that the two were connected, like that if I reported

6    there that I didn't -- might not somewhere to report here.

7                    THE COURT:  Oh, I'm not sure if that's correct.

8                    A JUROR:  I don't know if it is either.  Which

9    is why I didn't do anything about it.

10                   And the only other thing I think I answered

11   "yes" to was my husband at one point in time was

12   self-employed.

13                   THE COURT:  Okay.  All right.  Let me ask you

14   just a few questions about that.

15                   So do you know what your husband was convicted

16   of when he was a teenager?

17                   A JUROR:  I think it was some kind of

18   conspiracy --

19                   THE COURT:  Okay.

20                   A JUROR:  -- with like some other people he was

21   with.

22                   THE COURT:  Do you have any feelings about the

23   criminal justice system, either from his experience or any

24   thing else?

25                   A JUROR:  I didn't know him at the time.

1          THE COURT:  Right.  Do you have any reason to

2     think he was treated unfairly or anything like that?

3          A JUROR:  No.

4          THE COURT:  No.  And you were on jury duty just

5     this summer, I guess.

6          A JUROR:  Well, I didn't go on to jury duty.  I

7     was --

8          THE COURT:  You were called.

9          A JUROR:  I reported, right.

10         THE COURT:  Okay.

11         A JUROR:  Yes.

12         THE COURT:  Have you ever actually served on a

13    jury?

14         A JUROR:  No.

15         THE COURT:  Okay.  And did you say was it your

16    husband who used to be self-employed?

17         A JUROR:  Yes.

18         THE COURT:  Okay.  And what did he -- what kind

19    of business?

20         A JUROR:  Concrete.

21         THE COURT:  Concrete.  Okay.  Does he still do

22    that?

23         A JUROR:  Well, he just retired a couple years

24    ago.

25         THE COURT:  Okay.

```
 1              A JUROR:  I mean, but he hadn't his own business

 2     for a long time.

 3              THE COURT:  Okay.  And in terms of the hearing,

 4     have you been able to hear me okay throughout this process?

 5              A JUROR:  Most of the time.  I mean, its usually

 6     like if someone has like a low voice, it just kind of sound

 7     like mumbly to me.

 8              THE COURT:  Okay.  But I think you heard what I

 9     was saying when I was reading those questions?

10              A JUROR:  I think most of it, yeah.

11              THE COURT:  So these chairs over here, this is

12     where the jury is going to sit next week.

13              A JUROR:  That's where I was sitting.

14              THE COURT:  Okay.  In the back row?

15              A JUROR:  Um-hmm.

16              THE COURT:  Okay.  So the witnesses are going to

17     be speaking from behind where you are standing.  And the

18     lawyers are going to be speaking from over there.

19              A JUROR:  Right.

20              THE COURT:  We have a microphone system which is

21     on rights now.

22              How confident are you that you will hear what

23     we're all saying?

24              A JUROR:  50/50.  And I only say that because I

25     know like when I attend work meetings, it depends on the
```

1    person who is speaking.  If they speak with a loud voice

2    like I do, then I can usually hear them.  If they speak with

3    a softer tone, then it's harder for me to really understand

4    what they're saying.

5                    THE COURT:  All right.  I'm going to ask you to

6    go wait in the hallway for us.  Thank you.

7                    A JUROR:  All right.  Thank you.

8                    (Juror left courtroom.)

9                    THE COURT:  Unlike the earlier individual, she

10   seems to hear me fine, but 50/50 doesn't sound like great

11   odds.  So any objection to striking her?

12                   MS. WELSH:  No objection, Your Honor.

13                   THE COURT:  Any objection?

14                   MS. CHAVAR:  No objection, Your Honor.

15                   THE COURT:  All right.  Let's bring her back in,

16   please.

17                   (Juror entered courtroom.)

18                   THE COURT:  Can you hear me?

19                   A JUROR:  (Nodding yes.)  Yes.

20                   THE COURT:  Come closer.  Come closer.  I'm

21   going to tell you that you are being excused from serving on

22   the jury.  Thank you for being here and being willing to

23   serve, but you are excused so...

24                   A JUROR:  Next, next time I come, I'll have my

25   hearing aid.

1          THE COURT:  Okay.

2          A JUROR:  Thank you.

3          THE COURT:  Good luck with that.  Bye-bye.

4          (Juror left courtroom.)

5                   *    *    *

6          (Juror entered juryroom.)

7          THE COURT:  You can come forward.  Through the

8     door, yep.

9          A JUROR:  Through the door?

10         THE COURT:  Through the door, yes.  Thank you.

11         Are you ////////////////?

12         A JUROR:  That's me.

13         THE COURT:  Do you mind taking the mask off for

14    our discussion?  Thank you.

15         Did you have any "yes" answers to my questions?

16         A JUROR:  I did.

17         THE COURT:  Do you remember what they were?

18         A JUROR:  The one that stuck out was having a

19    family member that dealt with rehabilitation due to

20    substance abuse.

21         THE COURT:  Okay.  I'm sorry to have to ask, but

22    who in your family?

23         A JUROR:  My brother.  I have a pair of brothers

24    that had addiction problems.

25         THE COURT:  Both of them?

1                      A JUROR:  Yes.

2                      THE COURT:  Okay.  And is that an ongoing

3     situation?

4                      A JUROR:  No, not anymore.  I mean, it was.  I

5     just felt that I needed to say "yes" to the answer.

6                      THE COURT:  Yes.  Of course.  Thank you.  Do you

7     know what substance it was?

8                      A JUROR:  Yeah, heroin.

9                      THE COURT:  Do you think that you could be a

10    fair and impartial juror in a trial which you will hear

11    evidence related to drugs?

12                     A JUROR:  I do.

13                     THE COURT:  Okay.  Other things that you

14    answered "yes" to?

15                     A JUROR:  Not to -- not that I can recall.

16                     THE COURT:  Any other concerns you wanted to

17    raise about possibly being on this jury?

18                     A JUROR:  No.

19                     THE COURT:  No.  Okay.

20                     Any questions?

21                     MS. WELSH:  No, Your Honor.

22                     THE COURT:  Any questions?

23                     MS. CHAVAR:  No, Your Honor.

24                     THE COURT:  Okay.  You can go wait in the

25    courtroom next door.  Thanks.

```
 1                    (Juror left courtroom.)

 2                         *    *    *

 3                    (Juror entered juryroom.)

 4              THE COURT:  Good afternoon.  If you could come

 5      through the doors.

 6              Are you /////////////////?

 7              A JUROR:  Yes, sir.

 8              THE COURT:  Do you mind removing the mask for

 9      our discussion?

10              A JUROR:  Sure.

11              THE COURT:  Thank you.

12              Did you have any "yes" answers to my questions?

13              A JUROR:  No, sir.

14              THE COURT:  Any concerns you want raised with

15      me?

16              A JUROR:  No.

17              THE COURT:  Any questions from the government?

18              MS. WELSH:  No, Your Honor.

19              THE COURT:  From the defense?

20              MS. CHAVAR:  No, Your Honor.

21              THE COURT:  All right.  You can go back to the

22      courtroom next door.  Thanks.

23              A JUROR:  Thank you.

24                    (Juror left courtroom.)

25              THE COURT:  I believe that that gets us to 34.
```

1    I struck the one and we added three at the end.  Why don't

2    we at least make clear for the record, again, the number of

3    the ones that we struck and the three that we have added

4    since we last read the list.

5              THE DEPUTY CLERK:  Juror No. 3 was struck, and

6    62, 64, and 65 were added.

7              THE COURT:  Any objection?  Is that correct?

8              MS. WELSH:  That's correct.

9              THE COURT:  Ms. Chavar, you agree that is

10    correct?

11              MS. CHAVAR:  I do.

12              THE COURT:  So here is what is going to happen

13    next.  Well, I guess at this point, any objection to any

14    striking 66 through 77?

15              MS. WELSH:  No, Your Honor.

16              THE COURT:  And --

17              MS. CHAVAR:  No, Your Honor.

18              THE COURT:  So the first thing I'm going to do

19    is have 66 through 77 brought in here.  I'm going to thank

20    them and excuse them as a group.

21              Then I'm going to take a short break while we

22    line up and bring in the 34 that are still in the pool and

23    they're going to be seated in order.

24              I forget, are they going to be seated all on the

25    benches?  Yes, so they'll be seated on the benches.  We'll

1    make sure that you know who is 1 through whoever is our top

2    number is.

3              Once they're all seated, I'll come back in.

4    I'll say a few things to them and then we'll start

5    immediately with the preemptory process with the silent

6    passing of the clipboard back and forth.

7              After you are done with that, I'll ask you if

8    there are any objections to the striking process.  And if

9    there aren't, we'll excuse the 18 that you have stricken.

10   We will -- I think then go ahead and seat the 14 here in

11   the jury box just so you have a chance to see them all

12   as a jury.  We'll give them their oath and then we'll

13   send them home until Monday, and then I can finish up for

14   today.

15             Any questions about any of that?

16             MS. WELSH:  No, Your Honor.

17             THE COURT:  Any questions?

18             MS. CHAVAR:  No, Your Honor.

19             THE COURT:  Okay.  Can we try and get 66 through

20   77, please?

21             (Excused jurors enter courtroom.)

22             THE COURT:  Find a seat anywhere back there,

23   please.

24             Ladies and gentlemen, thank you for being here

25   today and for your willingness to serve.  I have now

1    excused all of you from any further obligation to serve on

2    this jury.  But it was important that you be here and I

3    appreciate that you were here.  You are all free to go at

4    this point.  So thank you again, and you are excused.

5    Bye-bye.

6                    (Excused jurors leave courtroom.)

7                    THE COURT:  I'm going to take a short break and

8    we'll bring the 34 remaining jurors in and have them seated

9    here, and we'll get started as soon as we're ready.

10                   We'll be in a short recess.

11                   (Brief recess taken.)

12                   *      *      *

13                   (Proceedings reconvened after recess.)

14                   THE COURT:  Have a seat, please.  Ladies and

15   gentlemen of the jury pool, thank you for your patience

16   today.  We're about to begin the last step of the jury

17   selection process.  These are called peremptory strikes.

18                   You may have heard me mention it before, but

19   both sides have the right to strike 18 of you for no reason

20   at all.  The way we do that is we silently pass a clipboard

21   back and forth between the two sides, so we'll ask for your

22   continued patience as we do that.  After they finish the

23   strikes, we'll tell you who are the 14 jurors and we'll be

24   able to excuse the rest of you.

25                   So let's distribute the clipboard, please.

1              (The clipboard was handed to Ms. Welsh.)

2              ((Silent striking process takes place.)

3              THE COURT:  Counsel, are there any objections to

4    the striking process?

5              MS. WELSH:  No, Your Honor.

6              MS. CHAVAR:  No, Your Honor.

7              THE COURT:  Okay.  All right.  I'll have my

8    deputy read out the numbers and/or names of the 14 jurors

9    who will then be asked to find a seat, here, in our jury

10   box.

11             THE DEPUTY CLERK:  Juror No. 1, please come

12   forward and have a seat right here.

13             Juror No. 2, please come forward.

14             Juror No. 3, please come forward.

15             Juror No. 12, please come forward.

16             Juror No. 21, please come forward.

17             Juror No. 22, please come forward.

18             Juror No. 27, please come forward.

19             Juror No. 31, please come forward.

20             Juror No. 41, please come forward.

21             Juror No. 43, please come forward.

22             Juror No. 43 please come forward -- I'm sorry.

23   Juror No. 47.

24             Juror No. 49, please come forward.

25             Juror No. 58, please come forward.

1              And Juror No. 59, please take the last chair.

2              THE COURT:  Are there any issues from the

3     government?

4              MS. WELSH:  No, Your Honor.

5              THE COURT:  Okay.  Any issues from the defense?

6              MS. CHAVAR:  No, Your Honor.

7              THE COURT:  Okay.  Thank you.  Ladies and

8     gentlemen in the jury box, bear with me.  I'll have some

9     more words for you in just a moment.  But to those of you

10    who are not in the jury box, all of you in the benches

11    back there, you are not on this jury.  Thank you very

12    much for spending most of the day with us.  We appreciate

13    your willingness to serve.  You are all free to go at this

14    time.

15             (Unselected jurors excused.)

16             THE COURT:  Ladies and gentlemen of the jury,

17    the deputy will pass you some Bibles.  You will have to

18    share them.

19             Okay.  We're going to stand and administer the

20    oath.

21             (Jurors placed under oath.)

22             THE COURT:  Thank you very much.  We'll collect

23    the bibles.  You can have a seat.

24             Just a few words from me, ladies and gentlemen.

25    As I think you know, the trial is going to start on Monday.

1    So what remains to happen today is my deputies are going to

2    take you into our jury room, which is the courtroom next

3    door to here that you spent some time in today.  But they're

4    going to show you through our private hallways back here

5    behind me.  They're going to show you how to get in and out

6    on Monday and next week when you are with us because we have

7    a separate entrance for you to use as jurors, so they're

8    going to explain all of this to you before we let you go

9    today.

10          But we will start the jury proper on Monday

11   morning.  We want to start at 9:00 o'clock.

12          As you may have heard me say, we're going to

13   provide lunch for you.  What that means is we're going to

14   have some menus waiting for you when you come in, and you

15   will need a few minutes to look at the menus and tell us

16   what you want.  So if you could plan to get here a little

17   bit ahead of 9:00 o'clock, that will help us move things

18   along.

19          But we'll start Monday morning 9:00 o'clock.

20   I'll read to you what are called preliminary instructions.

21   And then the parties will have a chance to make opening

22   statements if they want and they'll start calling witnesses

23   and presenting evidence to you.

24          We will finish each day no later than 5:00

25   o'clock.  And there will be a morning break and afternoon

1    break and a lunch break.  And I'll have more information

2    about all of that for you in those preliminary instructions

3    that I will read to you on Monday morning.

4            While you are away from us over the weekend, and

5    I will remind you of this throughout the trial, you are not

6    to talk about this case.  You don't know very much yet, but

7    even as we start presenting evidence to you, it's important

8    that you keep an open mind and that you not talk to even one

9    another or to anybody else about this case.

10           You can tell folks that you have been selected

11   for a jury and that you have to be back here for a trial

12   next week.  But you are not to talk to them about the case

13   or what you know and increasingly over the next week will

14   know before the case.  It is important that you are not

15   influenced by anybody or anything in deciding this case

16   other than what you hear presented as evidence in the trial.

17   And I'll explain that further on Monday as well.

18           Don't do any research about this case or about

19   anyone involved in it.  Again, you are just going to decide

20   the case based on the evidence presented.

21           One other thought.  The temperature has been

22   pretty okay, I think, in the courtroom today.  But it tends

23   to fluctuate and sometimes it's too cold and sometimes it's

24   too hot.  I apologize in advance.  I don't control the

25   temperature.  But the best strategy tends to be to bring

1    layers with you.  And you can leave things in our jury

2    courtroom or you can have them in the courtroom with you and

3    put things on and take things off during the course of the

4    day if you need to.

5                So that's it for today.  Again, my deputy will

6    take you out.  They have some more information for you about

7    the jury room and about how to come and go.  Once are you

8    done with that, you will be free to go and hope you enjoy

9    the weekend.  And we'll see you all back here Monday

10   morning.  Have a great weekend.

11                (Jury left courtroom.)

12                THE COURT:  All right.  Have a seat.  I have a

13   few matters I wanted to go over with counsel before we break

14   and see if you have any other issues.

15                But there was, Ms. Chavar, one motion in limine,

16   the issue of the codewords.  And you were going to have some

17   further meet and confer.  We didn't hear from you that there

18   was any remaining issues.  So I assume that there is not,

19   but can you update me on that?

20                MS. CHAVAR:  One moment, Your Honor.

21                THE COURT:  Sure.

22                MS. CHAVAR:  May I speak with Ms. Welsh?

23                THE COURT:  Sure.

24                MS. CHAVAR:  Thank you, Your Honor.

25                (Defense counsel and government counsel confer.)

1                MS. CHAVAR:  Your Honor, Ms. Welsh and I have

2      agreed that they will only have the agent define two

3      codewords and that's "fish" and "papers".

4                THE COURT:  That's the agreement?

5                MS. WELSH:  That's the agreement, Your Honor.

6                THE COURT:  Okay.  Can you get me an order on

7      Monday that I can sign consistent with all the other ones

8      that indicate that that is what we're going to do?

9                MS. WELSH:  I surely can.

10               THE COURT:  All right.  Thank you for that.

11               MS. CHAVAR:  Thank you, Your Honor.

12               THE COURT:  In terms of witnesses who are

13     detained, do we still anticipate calling one or more such

14     witnesses?

15               MS. WELSH:  We do, Your Honor.

16               THE COURT:  And is it one or is it more?

17               MS. WELSH:  It's one.

18               THE COURT:  It's one.  Do we know -- do you have

19     a target day or time in mind?

20               MS. WELSH:  And we have been in communication

21     with the U.S. Marshal service about that, I think that's

22     fine otherwise, we're on the same page as the marshal

23     service about that.

24               THE COURT:  Well, let's make sure we're on the

25     same page, because I spoke to them, maybe, yesterday at this

1    point.

2              The concern, as I understood it, was, as you

3    know, the witness stand is going to be constructed for

4    Monday back in what is normally the public area.  And they

5    were concerned about the security issues if we have the

6    public in the courtroom, kind of, behind the detained

7    witness.  Is that -- was that part of your discussions with

8    the marshal?

9              MS. WELSH:  That was not part of our

10   discussions.

11             THE COURT:  Okay.  That was the issue I need to

12   talk to you about.  So given staffing issues and the number

13   of things going on in the building, their request for

14   security reasons is that -- eliminate that situation.  And

15   there is two ways of doing that:

16             One being we just all simply agree or I order

17   that we're going to close the courtroom for the testimony of

18   the detained witness, meaning no member of the public will

19   be sitting behind the detained witness.  That would

20   materially reduce the number of CSOs and marshals that would

21   need to be here because their concern, I think, is about

22   protecting the door behind them that is open.  And people

23   could be coming and going while they're also, you know,

24   protecting everything else.  So we could simply just, you

25   know, close the courtroom for that testimony.

1              Or alternatively, or relatedly, I suppose I

2     should say, we could let the public be in the overflow

3     courtroom.  And we could work with IT and get this camera/TV

4     thing over here to project just that portion of the

5     testimony to another courtroom.  So again, the doors would

6     be sealed and the public would not be in here, but they

7     could watch nonetheless in the overflow courtroom.

8              Does the government have a view on this?

9              MS. WELSH:  Yes, Your Honor.  So we -- closing

10    the courtroom and not permitting public view would create

11    substantial concerns.  And so at the very least we would

12    say, yes, let's have streaming to another area.  I guess

13    my question is, I don't mean to overstep, is there a

14    possibility of having just that one witness be up in the

15    actual witness box, or is that an impossibility at this

16    point?

17             THE COURT:  We did discuss that and bear with me

18    a second.

19             (The Court and Law Clerk confer.)

20             THE COURT:  I think it is, it is possible.  Of

21    course, given the way we have reconfigured the jury box, I

22    guess they're not any closer than they would normally be,

23    but with the bunting and everything, there are kind of two

24    halves to the courtroom.  So I think it could be done.  We

25    probably would need to bring the witness in through the door

1    near the witness stand, and we would have to talk about --

2    and I, of course, want to know the defendant's view -- about

3    what do we do in front of the jury or if the witness is just

4    suddenly there, that sort of choreography question.

5                 MS. WELSH:  So, Your Honor, it's going to be

6    very clear to the jury that this witness is detained.  It's

7    going to be part of our presentation.  And so while we don't

8    necessarily want to have him paraded around in shackles if

9    we can avoid it, it's not going to be a great secret that

10   he's in custody.

11                THE COURT:  So from the government's

12   perspective, we need not make any efforts to make this

13   witness look like all the other witnesses?

14                MS. WELSH:  That's right.  Yes, that's right,

15   Your Honor.

16                THE COURT:  Okay.  Ms. Chavar, do you have any

17   thoughts about this, what the government is proposing,

18   arguably requesting, is we would probably during a break

19   outside the jury's presence bring this witness in just

20   because he has to be brought in, you know, through a

21   different door and all that, but that there would be no

22   secret about kind of why he is testifying from a different

23   spot than everyone else.

24                MS. CHAVAR:  As far as he would be in his prison

25   clothes?

1          THE COURT:  Well, I don't know.  Is that true?

2          MS. WELSH:  Your Honor, I think that, yeah,

3    that's right.  Yes.

4          THE COURT:  Okay.  So he would be in his prison

5    clothes and he will have a deputy marshal or someone sitting

6    near him.  And I think I have to say, I need to confirm with

7    the marshals if they're okay with this arrangement.  I think

8    that they are based, on my prior discussion, but ...

9          MS. CHAVAR:  And these are the cooperating

10   witnesses you are talking about, so they would have the plea

11   agreement and the evidence anyway?

12         MS. WELSH:  (Nodding yes.)

13         MS. CHAVAR:  Okay.

14         THE COURT:  You think that is all right?  So

15   we'll confirm this with you by Tuesday.

16         You said you thought the witness --

17         MS. WELSH:  Yes, I would say first witness on

18   Tuesday.

19         THE COURT:  All right.  So we'll confirm this

20   all on Monday.

21         All right.  That I have an ex parte matter to

22   discuss with Ms. Chavar which relates to budget questions,

23   and we'll excuse the government for that, but before that,

24   anything else that the government wants to raise while we're

25   all together?

1          MS. WELSH:  Your Honor, I do have two questions.

2    First of all, if members of the public or members of my

3    office wish to come, we actually had a couple of folks who I

4    don't know but who are doing like the Delaware bar, you

5    know --

6          THE COURT:  Checklist requirements.

7          MS. WELSH:  -- asking to see the opening.  If

8    that were the case, are people going to be seated in here or

9    are they going to be seated in the overflow room?  What's

10   the position?

11         THE COURT:  So putting aside for the moment

12   the issue about the detained witness, unless I resolve that

13   with an overflow courtroom, there will be no overflow

14   courtroom and this jury -- this trial is open to the public.

15   We have a limited, more limited capacity given social

16   distancing requirements but pretty much most of those green

17   check spots can be filled before we'll have an issue, so

18   it's fine.

19         MS. WELSH:  All right.  And then when we're

20   giving -- I just don't know because of COVID restrictions,

21   when we're giving opening statements, what is the Court's

22   preference in terms of ability to be kind of in this region

23   (indicating in front of podium) or are we meant to be behind

24   the podium?

25         THE COURT:  So I'm sticking still to the sort of

1    arm's-length rule, so you could be in front of the podium,

2    but I would want you basically not much further than where,

3    if you had to, you could touch the podium.  So if you want

4    to do that, you know, obviously if you, unless you have a

5    body mike or something, you will have to make sure you speak

6    loudly enough but otherwise that is fine.

7                THE COURT:  MS. WELSH:  Great.  Thank you.

8                THE COURT:  All right.  Ms. Chavar, any issues

9    you want to talk about while we have the government here?

10               MS. CHAVAR:  No, Your Honor.

11               THE COURT:  No.  Okay.  All right.  Then I'll

12   give the AUSAs a chance to collect their things and leave us

13   for the day, that is for the weekend.  We do want you here

14   by 8:30 in the morning Monday morning, if in case there are

15   issues to discuss.

16               MS. CLOUD:  Thank you, Your Honor.

17               MS. WELSH:  I'm sorry, I didn't hear that.  What

18   was that?

19               MS. CLOUD:  He wants us to leave.

20               MS. WELSH:  Okay.  I apologize.

21               THE COURT:  Have a nice weekend, and be here at

22   8:30.

23               MS. WELSH:  Thank you.

24               (Defense counsel and government counsel confer.)

25               MS. CHAVAR:  Your Honor?

1          THE COURT:  Yes.

2          MS. CHAVAR:  Would you like for Ms. Rossman to

3     stay as well during the budget discussion?

4          THE COURT:  Sure.

5          Bye-bye.

6          MS. CHAVAR:  Thank you.  See you guys.

7          (Government counsel leave courtroom.  Unsealed

8     proceedings end at 3:56 p.m.)

9

10         I hereby certify the foregoing is a true and accurate
    transcript from my stenographic notes in the proceeding.

11

12                          /s/ Brian P. Gaffigan
                          Official Court Reporter
13                          U.S. District Court

14

15

16

17

18

19

20

21

22

23

24

25