739

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

UNITED STATES OF AMERICA,            :      CRIMINAL ACTION
                                     :
              Plaintiff,             :
v                                    :
                                     :
OMAR MORALES COLON,                  :
                                     :
              Defendant.             :      NO. 17-47-LPS-1

- - -

Wilmington, Delaware
Wednesday, September 22, 2021
*Jury Trial - Volume D*

- - -

BEFORE:   HONORABLE LEONARD P. STARK, U.S.D.C.J., and a jury

- - -

APPEARANCES:


          UNITED STATES ATTORNEY'S OFFICE
          BY:  WHITNEY CLOUD, ESQ.,
          And, JENNIFER K. WELSH, ESQ.
          Assistant United States Attorneys

                    Counsel for Government


          LAW OFFICE OF DINA CHAVAR
          BY:  DINA CHAVAR, ESQ.

                    Counsel for Omar Morales Colon


Valerie J. Gunning                 Brian P. Gaffigan
Official Court Reporter            Official Court Reporter

- oOo -

P R O C E E D I N G S

(REPORTER'S NOTE:  The following jury trial was held in open court, beginning at 10:50 a.m.)

THE COURT:  Good morning.

(The attorneys respond, "Good morning, Your Honor.")

THE COURT:  Have a seat.

So essentially, most likely by printing and documenting all the e-mails that we have exchanged since we last saw each other in court at 5:00 p.m. yesterday, I will update the records, but right now I'm mostly focused on where are we right now and how should we proceed.

Ms. Chavar, do you want to start and tell us what you know and what you and perhaps your client think we should be doing at this point?

MS. CHAVAR:  Thank you, Your Honor.

So the most I could learn this morning was that there is a CLE shortage, but I haven't gotten any information back as to what that was.  I don't believe that I am short of CLE credits.  I went online, and what I see online is that I have no CLE for 2019, 2020, or 2021.  Like nothing, which makes no sense.

THE COURT:  You know that you did some CLE.

MS. CHAVAR:  Of course I did.  And I have my

attorney license from '20 through July of '21, which wouldn't have been given to me if I had no CLE.

I have it from 2019 through 2020, which wouldn't be given to me if I had no CLE.

I -- what I remember is that I pretty much had most of the coming year fulfilled.  So I'm still waiting to hear back from them as to where that is.

I do have certificates and so forth in my paperwork, which is in my Pocono office that I will be forwarding to them.

THE COURT:  All right.  So what do you propose that we do at this point?

MS. CHAVAR:  You know, Your Honor.  I have nothing.  I didn't know anything about this until I received a phone call from Ms. Welsh.  I was not able to get any information last night.

I'm operating on what I learned at 9:00 o'clock this morning.  I quite frankly don't know what to do.

THE COURT:  All right.  All right.

MS. CHAVAR:  It's a situation that I never expected to happen --

THE COURT:  Understood.

MS. CHAVAR:  -- and it completely surprised me, so ...

THE COURT:  Let's see if the government has any

thoughts on what I should be doing and what we should be doing at this point.

Good morning.

MS. CLOUD:  Good morning, Your Honor.  Whitney Cloud for the United States.

We have taken a look at this issue more from the legal side.  We're not sure about the on-the-ground facts of the CLE but just assuming that there is an administrative suspension in operation, we -- and has been throughout the duration of the appointment, we think there are several potential issues to be examined.

These issues relate to this court's Local Rules, the Model Rules of Professional Conduct and then the Sixth Amendment right to counsel.

With respect to Local Rules, Rule 83.5(f)(1) says that attorneys who are in good standing with their bar may act as an attorney in our court.

If it is the case that Ms. Chavar is not in good standing, we turn to Rule 83.6(b), which governs in position of discipline reciprocal to that imposed by another court.

This Court can make a determination whether or not it wants to impose reciprocal discipline.  I believe the Court has in fact examined that in a different matter last year and chose not to impose reciprocal discipline.

The timing of that process I think normally is

a little bit less expedited.  That's what the rules anticipate.  So whether or not a determination may be expedited is a little bit unclear under the rules that -- but that determination appears to be a threshold issue for the Court if Ms. Chavar is suspended.

Should the Court find good cause to proceed with Ms. Chavar's standing in this court, there is a related issue whether such representation poses a conflict of interest under the Model Rules, and specifically Model Rule 1.7.  And if such a conflict exists, whether it could be waived.

My office cannot take a position on that, Your Honor.

Finally, if these determinations are resolved in favor of continued representation, the issue of Sixth Amendment right to counsel appears.

This -- actually through the case law we found, and I'm happy to hand up to the Court, we did forward it to Ms. Chavar and Ms. Rossman.  This actually appears in the most straightforward.  Although there is not an on-point case in our Circuit, there are several other Circuits that have examined this issue and have concluded that situations like this are not, per se, constitutional ineffectiveness.

So that's the -- that's what we have been able to deduce under the legal standards.  And I can answer any

questions the Court has.

THE COURT:  That's very helpful.

Why don't you pass up the Sixth Amendment cases --

MS. CLOUD:  Yes, Your Honor.  I will.

THE COURT:  -- you have.

And so I take it, I can say I'm very familiar with the Local Rules here.  And on the Sixth Amendment, Ms. Cloud, do I understand you correctly that the government's position is from what you know now, and I assume and understand you know no more than what is in the e-mails plus what Ms. Chavar has told us this morning; correct?

MS. CLOUD:  Correct, Your Honor.  The only other thing we do know is that through, just through some Google research, it appears that the administrative suspension was active as of March 2021.

THE COURT:  We saw something that indicated that might have been the first notice and then it was effective 30 days later.

MS. CLOUD:  Okay.

THE COURT:  That may be what you are referring to.

MS. CLOUD:  Yes, Your Honor.

THE COURT:  But you know nothing more than that.

MS. CLOUD:  No, Your Honor.

THE COURT:  So I think I can resolve the Local

Rule issue.

The government has no position on the Model Rule issue.

On the Sixth Amendment, it sounds like you think if the first two issues are resolved, the government does not believe, based on what you know to be the facts at this point, that there is an ineffective assistance of counsel issue and you'd be prepared to proceed if that was the case.

MS. CLOUD:  Right, Your Honor.  We would, we would argue that there is not a, per se, ineffective assistance of counsel and a lot of these cases have found that there wasn't -- addressing this exact conflict generally after the fact, they found it wasn't ineffective assistance of counsel.

THE COURT:  Okay.  Thank you.

MS. CLOUD:  Thank you.

THE COURT:  Ms. Chavar, why don't you come back --

MS. CHAVAR:  Just quickly.

THE COURT:  -- and add anything you would like.

MS. CHAVAR:  So I don't know what the August 2020 notice is, but that would have come from the office, the registration office that confirmed for me.  They did not put me on suspension or notice me.  However --

THE COURT:  Hold on a second.  Did you mention August 2020?

MS. CHAVAR:  Yes.

MS. CLOUD:  I thought I mentioned March 2021.

MS. CHAVAR:  Oh, I thought you said both. Right.  So March 2021.  But it would not -- it would have been a notice, and it would have gone into effect probably May?

THE COURT:  Just to be clear --

MS. CHAVAR:  Yes.

THE COURT:  -- that what I saw and what I think Ms. Cloud is referring to, if you do some Google search on the Internet, you can find a list of Pennsylvania attorneys, some dated March of 2021, indicating you've got CLE related issues.  Your name is on there somewhere, and it says you've got 30 days to clear this up.  So that's why I assume the suspension went into effect some time in late April.

MS. CHAVAR:  I received no certified mail from PA CLE or, or the Office of Attorney Registration.  I have received no Federal Express mail.  I received no mail that you would think would be served on me to provide notice.  I have received no email.  I went back through everything and looked.

I didn't receive any notice of this.  And I, I do not believe that I'm not in compliance, but I am looking into that.

Thank you.

THE COURT:  A few other questions for you, Ms. Chavar.

We're talking about your Pennsylvania admission. Are you barred in any other states?

MS. CHAVAR:  No, I am not.

THE COURT:  Okay.  And do you agree that the legal framework I should be applying requires an analysis of this Court's Local Rules of the Model Rules of Professional Conduct and that of the Sixth Amendment?

MS. CHAVAR:  I do.

THE COURT:  With respect to our Local Rules, the rules that Ms. Cloud referenced indicate, in substance, if the Court gets notice, and I think that puts an obligation on members of our bar to give us notice when you get notice of some type of disciplinary action, there is essentially a presumption that we will impose the same, i.e., reciprocal discipline, but there is a process by which the attorney can ask us to not impose the reciprocal discipline and then that process typically does take many months for us to work out if we're going to impose reciprocal discipline.

If it turns out you are administratively suspended in Pennsylvania, we would clearly have notice of that at that point.

Do you anticipate that you might ask us not to impose the same discipline on you as a member of this

court's bar?

MS. CHAVAR:  I would, Your Honor.

THE COURT:  Okay.  And have you discussed all of this with your attorney -- your attorney, sorry -- with your client?  Have you had it a chance to do that yet?

MS. CHAVAR:  No, I have not.  I was unsure as to whether or not it would be appropriate.

THE COURT:  All right.  Okay.

Ms. Cloud, do you believe from your research that the defendant's own views, whatever they may be, would have any bearing on the issues the Court would have to decide?

(Government counsel confer.)

MS. CLOUD:  If it's a conflict, Your Honor, I think the next question would be is it a waivable conflict.

THE COURT:  But only -- so that's the second of the three legal regimes you suggested I need to apply.

MS. CLOUD:  Yes, Your Honor.

THE COURT:  How about with respect to the Local Rules here?  Do you think the defendant's views have anything to do with that analysis?

MS. CLOUD:  No, I don't.

THE COURT:  How about the Sixth Amendment?

MS. CLOUD:  Not under my reading.

THE COURT:  How about the Sixth Amendment?

MS. CLOUD:  I think that's a matter that the defendant can and/or would raise post-trial.  Certainly if he wants to be heard on that issue, we wouldn't object to that, but on the first one, squarely no.  On the third one, the Court can make -- we could have opportunity for him to be heard, but I think that is more of a post-trial issue.

THE COURT:  Okay.  Thank you.

And, Ms. Chavar, in light of all the events, have you had the time that you had requested to speak with Mr. Colon about other issues related to the trial, assuming we proceed with the trial, or do you need more time for that as well?

MS. CHAVAR:  I need time.  I need more time.

THE COURT:  Right.  Okay.

MS. CHAVAR:  Could you repeat the question, please?

THE COURT:  Sure.  So we were starting late today at your request because of the point at which we are in this case.  We anticipate the government is going to be resting some time soon, and so we would be turning to you and you had asked for some time to confer with Mr. Colon about how he might like to proceed.

I'm just assuming in light of everything that happened since last night, you have not had that time to speak to him about how he would like to proceed, and I just

wanted to confirm that.  Is that right?

MS. CHAVAR:  That's correct, Your Honor.

THE COURT:  And do you have any indication from this Pennsylvania disciplinary board how soon you may get some more clarity from them?

MS. CHAVAR:  I believe by midday.  And it would -- I believe by midday today.

THE COURT:  All right.  And how long -- if I tell you, and I am going to take a break and look at these cases and think about this a little bit more, but if I ultimately decide we're going forward today, how much time would you need to be ready to proceed with trial?  It's 11:00 o'clock now, so rather than how much time, what is the time would you be able to proceed with trial in light of everything that has occurred?

MS. CHAVAR:  I just, I'm not sure right now.

THE COURT:  Okay.

MS. CHAVAR:  I haven't really been able to think anything but about getting this resolved.

THE COURT:  Okay.

MS. CHAVAR:  I'm sorry.  I don't have a direct answer.

THE COURT:  Why don't you think about it a little bit more.  We'll take a recess and I'll come back in a little bit and we'll figure out what we're going to do

next.

MS. CHAVAR:  Thank you.

THE COURT:  We will be in recess.

(Brief recess taken.)

*       *       *

(Proceedings reconvened after recess.)

THE COURT:  Have a seat.  Here is how I propose to proceed.  I'll certainly welcome your views.

The jury is here.  They've been here since a little before 10:00.  I propose that we continue trial until tomorrow morning, but that we meet to discuss further these issues, which may include possibly having to continue the trial further.  I don't know.  I will talk more about the substantive issues in a moment, but my initial concern is 13 jurors that are sitting there and expecting to have lunch shortly whether we have not ordered lunch for them, not knowing what was going to happen.

So I propose first to bring them in, just tell them that they are excused for the day, that I have matters that came up that I have to attend to and that they are to be back here in time to start at 9:00 o'clock tomorrow.  If I do that, then I would stick around and talk to you all a little bit.

I have some initial thoughts on the legal issues, but my further thought would be that we convene

again at maybe 2:30 this afternoon, see what, if anything, additional fact wise Ms. Chavar has been able to learn.

I would ask, Ms. Chavar, that in the interim you talk to Mr. Colon, because I would be interested in his views on all of this.  It may be pertinent to how we proceed, but that we just figure out at 2:30 kind of where we are and how, if at all, we can proceed.

But the first issue is any objection from the government to me excusing the jury for the day?  Again, I will say something to the effect of I had some other matters come up that I need to attend to and come back tomorrow, please?

MS. CLOUD:  No objection at all, Your Honor.

THE COURT:  Okay.  Ms. Chavar, what do you think of that?

MS. CHAVAR:  No objection at all.

THE COURT:  All right.  So let's go get the jury and we'll defer any further conversations.

(The jury entered the courtroom.)

THE COURT:  Good morning, ladies and gentlemen of the jury.  Nice to see you all.  Sorry to keep you waiting.

I've had some other matters come up that I had needed to attend to and I've determined I'm going to need to attend to for the rest of the day, so I'm going to be

sending you home for today.  We will need you back here tomorrow.  We're going to plan to start tomorrow at 9:00 o'clock and hopefully have a full day, so please be here in time to get started at nine.

We have your lunch orders for today.  We did not process them yet.  When you come in tomorrow, we'll ask you do you want what you ordered yesterday or if you are in a different mood and want to order something new, that is fine, but please be here in time to figure out your lunch order and get started at 9:00.

While you're away from us, no talking about the case, no research or reading about the case.  Thank you again for being here, but you are excused for the rest of the day.  I hope you enjoy the rest of the day.  We'll see you tomorrow morning.

(The jury was excused.)

THE COURT:  All right.  Have a seat.

So I still need to do a little bit more work on this, the legal issues that were outlined.  I think if there are no material changes in the facts, I think it's likely I will decide that, Ms. Chavar, they will proceed and that this case can go forward, but that's very much a tentative decision.  I need to do a little bit more work on my end.

We don't know what we're going to learn between now and this afternoon and I have not had a chance to hear

or reflect on whatever Mr. Colon's views may be.  But I wanted you to know that because whatever preparations have been done for today will now have to be done for tomorrow, you should be planning to do, because there is definitely a chance that we're going forward at 9:00 o'clock tomorrow morning and we'll be finished the trial as soon as we can. But my plan now is to give you whatever that is, three hours maybe, and meet back around 2:30.

Are there questions about that or anything else we should talk about from the government's perspective?

MS. CLOUD:  No, Your Honor.

MS. CHAVAR:  Excuse me, Your Honor.

THE COURT:  Sure.  Ms. Chavar?

MS. CHAVAR:  May I?

THE COURT:  Yes, please.

MS. CHAVAR:  I did have a conversation with Mr. Colon, and --

THE COURT:  Can you take the mask off if you don't mind?

MS. CHAVAR:  Yes, sorry.  I did have a conversation with Mr. Colon and it is his feeling that he does not want to go forward with me.  He thinks that I have not been effective and essentially because I have not called witnesses on his behalf as of yet and for other reasons that

we had disagreed on with strategy.

So just to let Your Honor know that that is his position thus far and he is not willing to speak with me or work with me further.

THE COURT:  Okay.  Well, we may have to discuss that further later, but do what you can in terms of finding more facts about your situation.

MS. CHAVAR:  Yes.

THE COURT:  Between now and 2:30 and do what you can to see if your client will talk to you.

Given again that there is a likelihood we're going forward with this trial tomorrow, and as I understand it, there's a likelihood the government is going to rest its case, and therefore there's merely a certainty as we go forward, I'm going to call on you and say what's next.

MS. CHAVAR:  Okay.

THE COURT:  Okay.

MS. CHAVAR:  Very well.  I understand.  Thank you.

THE COURT:  Okay.  Well, we'll be in recess until 2:30.  If anybody learns something between now and then and you want to let us know, that's fine.  We don't mind not being surprised.  Okay?

MS. CHAVAR:  I will certainly let the Court know as soon as I hear anything.

THE COURT:  Thank you.

MS. CHAVAR:  As well as the prosecutors.

THE COURT:  We'll be in recess.

(Recess taken.)

*   *   *

Afternoon Session, 2:40 p.m.

THE COURT:  Good afternoon.  So, Ms. Chavar, we got your e-mail about the further information that you learned and some efforts to take some more sealing, I guess.

Is there anything that you want to add subsequent to that?  I think the last e-mail was maybe 90 minutes or so ago.

MS. CHAVAR:  Thank you.  May I?

THE COURT:  Yes, please.

MS. CHAVAR:  So I addressed the Court earlier this morning and the discrepancy is a half of a credit in ethics, which I'm still not sure, but I will just take an ethics course online and can resolve that later with them.

And they've also been able to give me more information with respect to CLE.  I had enough substantive credits to carry over to the 21-22 period, which is how I thought it was as well, and I can get further information from the gentleman assigned to work through this with me tomorrow and he is available to speak on the phone.

I also had the opportunity to consult with the Federal Defender for the District of Delaware and I advised her of -- of everything that has happened, including the half credit deficit, the CLE and the basis for the administrative suspension.

I also advised her how emotional I was this morning, not having information and not having this happen before and how humiliating it is to be here and her thoughts were that she didn't -- she didn't see any reason why I could not go forward with the representation.  She's available to speak to Your Honor at your convenience if you choose to do so.

I think that might bring the Court up to speed on all I've learned since we met earlier.

THE COURT:  Do you know in Pennsylvania, in the State Courts, would you be permitted to appear right now under those circumstances?

MS. CHAVAR:  I don't practice in State Court, so I don't know that.  I can certainly find that out.

THE COURT:  What about in Federal Court?  Let's say you had a hearing scheduled next Monday in the Eastern District of Pennsylvania.  Do you believe you can appear there?

MS. CHAVAR:  I'm not entirely sure.  I was still trying to work out what I needed to do to resolve it and I

put a lot of questions out to this person that I've been dealing with and I've gotten a lot of answers, but not all of the answers.  I can find that out by the end of the day, hopefully.

THE COURT:  All right.  Okay.  Thank you.

MS. CHAVAR:  Thank you.

THE COURT:  I may have some more questions for you.  Let me turn now to the government though.

In light of the additional information, any additional thoughts or anything from the government?

MS. WELSH:  Your Honor, we don't have any new thoughts.

THE COURT:  All right.  Ms. Chavar, I have some other questions for you.

Do you believe that you have any conflict of interest that may limit your ability to represent Mr. Colon?

MS. CHAVAR:  I want to make sure I understand the conflict here because over the last couple hours I've tried to absorb a lot and I think the conflict rests in whether my going forward would be to please the Court as opposed to making the decision surely on the basis of how I could represent the client or that would take priority to please the Court over my representation of the client.

Am I close on that?  Is that basically the

conflict then?

THE COURT:  I am not suggesting there is a conflict.  I'm asking if you believe there is a conflict.

MS. CHAVAR:  I don't believe there is a conflict.  As I understand the conflict here, I have to -- my understanding of the conflict at issue at this time, I don't think that there is.

THE COURT:  Do you feel that there is any risk in light of what has happened today that your representation of Mr. Colon will be materially limited?

MS. CHAVAR:  I think he will not communicate with me.  And I think that would affect the representation going forward, though.  I think that might go more toward what his thoughts are.

THE COURT:  Okay.

MS. CHAVAR:  But he did make it clear to me that he is not going to talk to me.

THE COURT:  Okay.  But anything about, you know, what we have all learned since 5:00 p.m. yesterday about CLE credits and administrative suspension, anything about that that you think would materially limit your representation of Mr. Colon?

MS. CHAVAR:  From his, from his perspective I don't think that there is an understanding of the distinction between disciplinary suspension and an administrative one.

From what I picked up from him, he believes I have been ineffective, and I don't -- that's all I can say, really.

THE COURT:  So in this recess, have you tried to communicate with Mr. Colon?

MS. CHAVAR:  I haven't had that opportunity, unfortunately.

THE COURT:  Your belief is that he is not going to communicate with you?

MS. CHAVAR:  That is my belief.  If I'm wrong, he is right here.  We can ask him.

THE COURT:  Sure.  And do you think you would be prepared to continue with your representation if we go forward tomorrow?

MS. CHAVAR:  I think I would.

THE COURT:  Okay.  All right.  Thank you.

Let me turn to the government again in light of that series of questions and responses.

Any thoughts about where we are or how I should proceed?

MS. WELSH:  Thank you, Your Honor.

I do think that Mr. Colon's thoughts on this matter have to be put into the record.  I believe before we broke, the Court intended to seek Mr. Colon's thoughts, I don't know whether through counsel or on his own, but I think it is important to get his position on the record.

Again, as we said this morning, in terms of the conflict, we don't take a position on that.  That's really a question for Ms. Chavar and for the Court and to hear the defendant's position.

But procedurally I think the next step would be to probably ask Mr. Colon his thoughts on the matter and try to parse out what the grievance is.

THE COURT:  Okay.

MS. WELSH:  Because as the Court has already likely thought of, if Mr. Colon's grievances are not related to this sort of CLE matter, we're having a different sort of conversation.

THE COURT:  Right.  Okay.  Well, thank you for that then.

Mr. Colon, is there anything that you want to tell me about any of these issues?

THE DEFENDANT:  (Nodding yes.)

THE COURT:  All right.  Then if you would like, come to the podium.  Keep in mind the government is here, so sometimes we have had ex parte conversations, as you know, without the government here.  Right now, they're here, but I would like to understand whatever it is you might like me to know.

THE DEFENDANT:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

THE DEFENDANT:  There is actually a conflict of interest now.

I was advised by Ms. Chavar that the person who give the notification was my wife, to the Court, I guess.

THE COURT:  The person what?  Say that again.

THE DEFENDANT:  About the suspension.

THE COURT:  The person who notified the Court was your wife?  Is that what you are saying?

THE DEFENDANT:  Yeah.

THE COURT:  Okay.

THE DEFENDANT:  As the Court knows --

THE COURT:  We learned from the government.  We got an email from the government at the end of last night.

THE DEFENDANT:  So as the Court knows, Shakira Martinez is a codefendant in this case also.  We -- this situation has make an embarrassment of Ms. Chavar.  We don't know if this is going to become personal at the end of the day or if -- I just, I just trust -- my feeling is that after this situation, based on Ms. Martinez and my codefendant, and sometimes she have decide to testify on my behalf, so there is a conflict of interest.

Another conflict of interest is that if Ms. Chavar cannot at some point, you know, be aware of her actual duties as an attorney and her licensing, how can she actually do that duty for me in this court?

The last few days, I think Ms. Chavar has been acting erratically and she is forgetful.  We've been trying to assist her, trying to help her, as Your Honor know, it's been argument back and forth here, trying to help her with the discovery because she forgets, she don't know, I guess.

Ms. Chavar and I have no communication, Your Honor.  Ms. Chavar grabbed this case.  She -- we came here to court one day, and I think it was for in-person status hearing, and that day, Your Honor stated that in 14 days, the government, it was supposed to submit a status report to you stating everything that it was gonna be, but also if I was willing to accept Ms. Chavar's representation or if I want to go pro se in that time.

Well, that never happened, Ms. Chavar never contacted me.  The report was sent to the government.  Then from the government, it was submitted to the Court.

It says that Ms. Chavar have been in contact with me and with my family, and I was in agreement with Ms. Chavar.

And that was false.  That was totally false.  My daughter emailed her, had an exchange, and my daughter, and my daughter wrote to the Court also.

But Ms. Chavar came to see me with, she is a specialist, a mediation specialist.  She came, she came in there that day.  We had a discussion, and she actually said

that my daughter threatened in an email.  My daughter sent the email, there was nothing threatening about it.  But what my daughter said to her, she was misrepresenting me, misrepresenting me and says Ms. Chavar is supposed to be representing me.  She not supposed to be stating things that I never confided to her.

Ms. Chavar said to me that the government did a self-serving out there her, but then I confronted with Ms. Chavar and say how did the government know you are communicating with my daughter?

As you know, I'm 53 months incarcerated pending this trial.

That is actually not a conflict because my daughter is the one who helps me out, sending information to Ms. Chavar and everything.

We have had no communication, but Ms. Chavar never showed me my Jencks material.  We never went over anything that has to do with discovery.  I went -- I start seeing my Jencks material here on Monday while trial is going on.  She pulled her laptop up and start watching Jencks material as the government is asking questions and doing X, Y, whatever they do here.

I started asking questions and ask her where is this in the Jencks?  That way, we can ask.  We even came into a conversation here where yesterday, she ended up

cussing and everything, so that's, I don't find that proper. But at the end, I also feel that her behavior, erratical behavior have to do with something is substance abuses.

So, you know, if this don't start -- if this don't show to the Court that is a conflict of interest of Ms. Chavar, then I don't know.

Also my wife make an allegation, I started making allegations, and we making this allegation, you know, I don't think Ms. Chavar is going to be in a position to really fairly defend me and do what she has to do to me.

THE COURT:  You said something about you believe there is erratic behavior.  And did you say why you think there is erratic behavior?

THE DEFENDANT:  Well, I think, I think everybody in the court has seen that.  She forgets what she is doing, she goes back and forth.  She is calling for objections late and then trying to figure out what happened and trying to confer and then come back and forget what she was doing. We can see that yesterday when Ms. Chavar was crossing Mr. Valdez.

Ms. Chavez forgot a ton of things to ask Mr. Valdez, and I had to assist the other attorney in trying to find this transcript because she lost the transcript in her computer, but we never had that transcript on the table, not -- after we came out of recess, we had the transcript on

the table, but I was the one looking for the transcript because nobody -- we couldn't find what she was trying to explain.  And that shows that she is not really prepared.  She was never prepared to do this case.

As Your Honor knows, she sent a letter to this Court telling Your Honor that she had personal problems and that she needed more time and she had a big caseload.  We came in here the other day and she said the same thing.  It wasn't more my, my position.  She wasn't ready, and she knew she wasn't ready.  She told the Court I said, but I said it too.  I said to her, yes, you should ask for more time.

And she said that to Your Honor again that day.  She said can you give us 30 days.  I don't -- I -- she said that her caseload was big, that she was going through personal problems.  She stated that to this -- to Your Honor that day, that Friday here, while we were doing the jury selection, I think.

So if those are not enough excuses, Your Honor, and, you know, I really don't want her representation.  If she don't, you know, she cannot take her personal business and her legal, her actual licensing business.  This is her, the bread, what she eat.  How can she even defend me and prove to me that she can be a good advocate for me?

THE COURT:  All right.  Thank you --

THE DEFENDANT:  Thank you, Your Honor.

THE COURT: -- very much.

Ms. Chavar, we'll have you speak but just give me one second.

(The Court and Law Clerk confer.)

THE COURT: All right. Ms. Chavar, what would you like to add?

MS. CHAVAR: Your Honor, I don't agree with most of what Mr. Colon just said, but I do think that in light of his statements that I can't move forward with representing him. I apologize but I just don't think that I can at this point.

I also think it's important for him to have confidence in his attorney and he is obviously saying that he does not.

THE COURT: Anything else?

MS. CHAVAR: No.

THE COURT: All right. Let's hear from the government.

MS. CLOUD: Can we have a moment, Your Honor?

THE COURT: Certainly.

(Government counsel confer.)

MS. CLOUD: Your Honor, can we have just two minutes to confer?

THE COURT: You can have as long as you like.

MS. CLOUD: Maybe five minutes.

THE COURT:  We'll take a recess.

(Brief recess taken.)

*      *      *

(Proceedings reconvened after recess.)

THE COURT:  Have a seat.

Ms. Welsh, what's the government's thoughts at the moment?

MS. WELSH:  Thank you, Your Honor, and I thank you for giving me a few moments to get my thoughts together given the stakes.

This defendant has an established pattern of creating conflicts with his attorneys.  We have said it time and time again in a number of filings.  Part of his effort includes attempts to demean and humiliate them and Ms. Chavar is not the first person that he has done that with, and the goal, of course, is to delay the jury's verdict for as long as humanly possible and so far it has been a very effective strategy.

Had Mr. Colon just brought the issues he brought up to Your Honor, had he brought them up at the end of trial yesterday before we all learned of this, you know, half credit CLE deficiency, we would have listened and then we would have summarily decided, I believe, that they did not have merit and they did not constitute good cause to replace Ms. Chavar.  The difference, of course, is that we

have learned about the administrative suspension.  The
analysis for that issue remains the framework that we've
laid out this morning and whether or not the defendant is
pleased with Ms. Chavar's representation in other respects
is irrelevant to the analysis that was laid out this
morning.

What he is raising now is a different issue.  It
is a Fifth Amendment issue.  It is an effectiveness issue
and this is where his pattern comes in.  In order to relieve
Ms. Chavar from representation and replace her with a new
attorney, which would inevitably, I'm certain the Court
knows, delay justice in this case significantly longer, the
Court would need to find that there is good cause to do
that.

We have argued before that good cause does not
exist in circumstances very similar to what the defendant
just articulated.  Allegations that he doesn't have access
to his discovery, which, of course, is belied by our
multiple productions of almost the full file of discovery
to the Federal Detention Center for him to go through,
and issues about differences in strategy, which, of course,
the Court knows are largely decisions for an attorney to
make.

So in many ways the defendant's arguments are
on all fours arguments he has made about prior attorneys

and there is only one way in which it is really fundamentally different, which is the CLE issue that arose yesterday.

The stakes here are monumentally high for obviously the jury, the Court, the cooperator who testified yesterday morning and has been waiting to do so for four years, really.  I mean, you know, probably more like three.

And so if there were any way to save this case and bring it to a verdict here, we would, of course, be in favor of doing that, and we're on the cusp, of course, of potentially ending four-and-a-half years of trial prep.

The defendant is not now and never has been entitled to counsel of his choosing, to counsel that will call every witness that he wants to call, that will let him lay eyes on every page of discovery, even materials that are protected.  That is not the standard.  The standard is that he needs a constitutionally effective attorney, and whether there is good cause to relieve Ms. Chavar of her representation at this point either on her motion or on the defendant's request is a question for the Court, and I just wanted to make certain that the record was clear that our position is that this is a further attempt to delay justice in this case.

THE COURT:  So your position is there has not

been good cause shown.  Correct?

MS. WELSH:  Your Honor, the only part that could potentially be good cause here really are things that have arisen since we learned of the suspension issue yesterday I would say.  I mean, I really do believe had we heard that narrative from the defendant at the end of the day yesterday, we would have certainly been articulating that there was not good cause to dismiss Ms. Chavar and I don't know what the Court would have said, but I don't believe that these concerns, had they been raised at the end of the day yesterday, would have constituted good cause.  I think the question is whether this new information that we learned at the end of the day yesterday is part of the good cause analysis.

THE COURT:  Okay.

MS. WELSH:  Or whether it raises a conflict, as mentioned this morning.

THE COURT:  Despite the many issues that have been put in front of me, does the government have any suggestion or request as to what I do?

MS. WELSH:  I wish I had a creative suggestion beyond I think this is really kind of a -- I believe this is kind of a binary path, Your Honor.  Either the Court finds that there is not good cause and we proceed or we need to be looking for a new attorney on the list of the many attorneys

that this defendant has had and we need to just start over again.

THE COURT:  Thank you very much.

Ms. Chavar, do you have anything else you would like to say?

MS. CHAVAR:  I think --

THE COURT:  I'm sorry.  Let's take the mask off so I can hear you.

MS. CHAVAR:  Yes.  I think there is an irreconcilable conflict between me and Mr. Colon and I don't feel that I can go forward with him and I apologize to the Court.

THE COURT:  All right.  I guess any thoughts on this?  Counsel has now twice been very clear she doesn't feel she can go forward.

It's the government's view that I need to find if this case is going to go forward, that the defendant has waived the conduct, his right to be represented by counsel?

MS. WELSH:  Your Honor, I don't think we have the record to make a finding of waiver by conduct here based on our extensive research the last time this happened, so, no, that's not a request that we're making now.

I guess the question is does everything that was articulated thus far by the defendant and Ms. Chavar constitute good cause to be replaced.

THE COURT:  Okay.  Let's say I agree with you, that it doesn't constitute good cause.  Then what?

MS. WELSH:  Actually --

THE COURT:  I ask Ms. Chavar to go forward?

MS. WELSH:  I'm slightly more comfortable in this space because we dealt with this issue the last time. We had some briefing on this issue.  I suppose we had a little bit of time if we wanted to refresh that briefing, but there are certain docket entries on the docket that we could point the Court to, not off the top of my head, that there can be a situation where counsel is made to stay in a case where there is not good cause even if there is a troubling relationship between the attorney and the client. There is precedent for that.

I would feel, you know, if the Court would like some additional research on that, I would be happy to freshen that up or point the Court toward the docket items because I am working off the top of my head here, but my recollection is at least with respect to the last attorney until the defendant created an additional conflict in that situation, we were intending to argue, and I believe did argue to the Court that she should remain in the case even though her relationship with the defendant has evolved significantly.

THE COURT:  Ms. Cloud, do you think you have

that there?

MS. CLOUD:  I think I might, Your Honor.  The Getty case, Your Honor, was one we cited before I think both in July 2020 as well as January 2021, we freshened.  It is the case that we were pointing to for when the -- there is an alleged conflict or belief that the counsel cannot go forward, certainly by the defendant, and the Court insists that the counsel remain in the case.

MS. WELSH:  Yes.  I can give you the citations to that case.

THE COURT:  Thank you.

MS. WELSH:  That's 384 F3d. 140.  And I cannot recall the facts of that case off the top of my head, Your Honor, and obviously, this situation is going to be different than anything else we faced in the case, so I would be happy to go read it and give an update on my position unless the Court is prepared to rule now.

THE COURT:  Thank you very much for that.

Ms. Chavar, you've had a difficult day already, but if I don't find good cause, I assume that you were prepared, or close to be prepared for today.  I know you may have lost last evening and now today due to these issues, but can I assume and understand that if I don't find good cause, then I can go forward with this trial tomorrow notwithstanding what you have said and what your preference

is, which I totally understand, that you'll be here and you'll be able to continue to effectively represent your client tomorrow?

MS. CHAVAR:  Your Honor, I still need to determine what online course I would have to do to lift that suspension between now and tomorrow.

THE COURT:  Yes.  Put that aside.  I don't think that's going to be an issue.  I recognize I have not ruled on it yet, so put that aside for the moment.

MS. CHAVAR:  I would have to question my effectiveness, so if you want me to go forward tomorrow, there has been -- seriously, the statements he has made, allegations he has made, there's no basis in reality.  I don't trust him.  I don't trust his family and I don't know how I'm going to work with him.

I wish I could stand here and say anything but that.  I've never, ever -- I've never made that representation.  I just -- this is a situation that's just completely new to me and it's upsetting.

I don't know.  I think it would be distracting to try to focus on what I need to do with witnesses and pull together a closing with him complaining constantly beside me because that's how it's going to be.

That's the best I could answer your question.

THE COURT:  Okay.  Thank you for that.

I would like, I guess, to be refreshed by the government why if I make a finding that the issues that arose from last night makes no difference and that this is not good cause because there is no conflict of interest here other than conflicts that the defendant himself created. But you have heard what Ms. Chavar has said.

Your belief is I cannot find on this record, given the totality of how we got here, that the defendant has forfeited and/or waived or waived by conduct his right to be represented by counsel.  Is that the government's view I cannot make that finding?

MS. WELSH:  Your Honor, I apologize for doing this again, but is there --

THE COURT:  We can take a break.

MS. WELSH:  We keep kind of going into new territory that we haven't really thought through.

THE COURT:  These are not easy questions or issues that any of us are super on top of at the moment, so do you want some time?

MS. WELSH:  I would love some time.

THE COURT:  Let's take some time.  We will be in recess.

(Brief recess taken.)

*       *       *

(Proceedings reconvened after recess.)

THE COURT:  Have a seat.

Ms. Welsh.

MS. WELSH:  Again, Your Honor, thank you for the break.

Having discussed this a lot and read our prior filings and poked around in the case law, our position is that the defendant is using this, you know, bar suspension issue as essentially an excuse to get a new lawyer again.

At the beginning of our afternoon session, Ms. Chavar represented to the Court that she could be ready to try the case tomorrow morning.  She had not indicated at any point before the defendant got up and aired his grievances.  She had not, before that, said that she would not be ready for trial or she could not be effective.  It was only after the defendant got up and made allegations against her, most of which had nothing to do with this issue about her CLE compliance.  That was the point at which she said in light of his statements that she cannot proceed as counsel.

And given the pattern in this case and the history, we believe that the law supports the Court making a finding that the defendant has waived his right to counsel by conduct.

Now, admittedly, Your Honor, there is quite a lot of case law about waiver by conduct, about the idea

that -- and I'm sure I'm reminding the Court -- but we talked about this before, that there is forfeiture, you know, by bad conduct that occurs without a warning first.

We are in waiver by conduct land, which is that less significant conduct by the defendant can result in waiver by conduct because there has been warnings.

The defendant has been told multiple times that continued attempts to create conflicts with his counsel, which is what he is doing, and to delay may result in him ending up pro se.  And having been warned, that is what he has done today.

He was obviously given a chance to speak to the Court for a legitimate reason, which is that we wanted to get his perspective on the bar issue, and instead discussed his grievances over the last several days with counsel's trial performance, which is not relevant to the bar issue.

So essentially he used this as an opportunity to complain about things that were not relative to the Court's analysis and in so doing, now counsel perceives herself as having a conflict, and we understand that, that conclusion.

So we would support a finding by the Court that the defendant has at this point waived the right to counsel by conduct.  He has been warned that further dilatory conduct or creating conflict would put him into this place, and this is the place that he decided to go.

THE COURT:  Okay.  Thank you for that.

Ms. Chavar, is there anything you want to say at this point?

MS. CHAVAR:  No, Your Honor.

THE COURT:  Mr. Colon, do you want to speak?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Then just briefly.  Come on back.

THE DEFENDANT:  Your Honor, I want to elaborate on what the government is saying.

When I left here at 12:00 o'clock yesterday, I didn't know anything about this.  When I came in this morning, they told me my attorney was late.  They didn't say anything about that.  I found out about this when she came in and she told me what was happening.  She started speaking.

But even though as the government said that I try or that I'm doing, I'm not doing a tactical issue.  She has her license suspended for whatever reason and she didn't take that.  That was one of my reasons that I gave this Court.

The other reasons are things that I am seeing in the trial.  I'm not seeking to change an attorney, but I think that if it's a situation that can cause an appellate issue or if I find that is something that is not being fair

for me, then I have that right to address the Court and explain to the Court how I see it.

And I'm not trying to change attorneys, but if my attorney cannot handle her own business, well, how bad is it for me.

The government keeps saying that I somehow some way manipulated the Court.

I want to bring back the Court back to what happened with Mr. Alva.  Mr. Alva left my case because I could not afford Mr. Alva.

Mr. Ortiz and I keep addressing to this Court it was a conflict of interest.  He defended one of the CIs that the government used in this affidavit for wiretap here.

Although Your Honor didn't go into that, I wrote a letter, extensive letter to the judge, and I gave case and I showed documents to the judge why Mr. Ortiz did not forget about Mr. Tauber had to leave the case because he was offered a case, and in that day, Mr. Ortiz came to this Court and he lied to this Court, and then Mr. Tauber had to come and address the Court and explain the reason why he was leaving the case.

Ms. Cinquanto came into this court, into this case.  There was no issues from Ms. Cinquanto.  That Mr. Cinquanto didn't want to do certain things that they were by law to be done, motions that I gave.  And as I've

said, Your Honor, you made a memorandum about why, but it was my duty as a defendant to file a complaint against Ms. Cinquanto.  Ms. Cinquanto wasn't doing her job, and if I feel -- the bar association sent me a letter saying that my argument wasn't ineffective assistance of counsel's argument.

At this stage, I know there cannot be an ineffective assistance of counsel argument because the record is not full and the Court has precedential Supreme Court cases.  But it is your power.  That if you see an attorney that is not doing what is proper, it is in your power to stop because it is unfair to me.

And if this Court cannot recognize today that her behavior was erratic, is being erratic, is forgetful, and the situation where her license is not license.  Everybody saying this is not a bad situation.  Yeah, it is a bad situation.  She was suspended.  I found out that now.

But how can you not have your priorities straight with your own license?  This is how you eat.  And you have problems with me?

She said she was ready.  When did she get me ready?  I'm not complaining about discovery, but do you think it is proper for me to sit at this table the day that trial start and then start viewing at Jencks material on her laptop?

I'm supposed to be here, she is supposed to assist me, so if I'm watching and I'm seeing, I'm supposed to assist and I'm watching Jencks.  So if I ask you for a example -- I'm going give you a good example.  The government is here.

Devin Hackett was arrested?  There is nothing in that Jencks material that says that.  So that is the thing that is missing in the Jencks material.

Things that I can use for this jury to use, and it's not in the Jencks material.  And if it's not there and if it's there, why can't she be ready.  She can't be ready because she is running the trial.

But then when we leave at 5:00 o'clock, who speaks to me?  I get rushed down there, I get changed, and I get shipped to FDC.  By the time I get there, she cannot talk to me.  That is what she told the court yesterday, to please start the case at 10:00 o'clock this morning.  That way, she can speak to me and speak about my strategy.

When I came in this morning, I was told that I was going.  And I kept asking the marshal:  I haven't talked to my attorney.  I haven't talk to my attorney.  I haven't talked to my attorney.

You can ask the marshals.  They bring me up here, and I found this out.

Do I capitalize on it?  I'm not capitalizing on

it.  I'm calling it as it is.

Thank you, Your Honor.

THE COURT:  Thank you very much.

Ms. Welsh or Ms. Cloud, is there anything you want to add?

MS. WELSH:  Your Honor, we went through our position as to the prior attorneys in a prior filing and I won't belabor the point.

We filed a letter in July of 2020 -- let me get the docket number; Document 286 -- and it lays out our position as to the law on waiver by conduct, but also our position as to the prior attorneys.

And so I won't get into the specifics here.  The specifics are in the letter unless the Court has questions about the prior attorneys.

THE COURT:  Why don't you just summarize and refresh my recollection about how we got here to the fifth attorney.

MS. WELSH:  Yes, Your Honor.  So the first attorney in this case was Daniel-Paul Alva.  He got into the case.  He took the case through a motion to compel that was -- my memory was something like 40 pages long.  And when he, and when he was -- which was denied because he did not meet and confer with us as moot.

But that was obviously, according to a later

motion to withdraw, with how he spent the defendant's money really that had been paid to him.

And in his motion to withdraw, he indicated that the defendant wanted him to file that motion to compel because he was very focused on discovery issues.

So, you know, we start with him losing an attorney because, you know, because of a lengthy filing that was essentially asking for discovery that we had either already produced or were willing to produce if someone just asked us, and instead resulted in a lengthy motion to compel because the attorney was apparently instructed to do that by the defendant.

On to Mr. Ortiz, who I can't remember all of the details about what the grievances were. There were many over the course of their representation.

Their relationship essentially devolved. The defendant continued to assert that Mr. Ortiz had a conflict. Mr. Ortiz continued to say none existed. We have never even revealed the existence of any of our informants on that wiretap, and, and so Mr. Ortiz continued to say that there was no conflict, and yet there became a personality conflict because of this continued, you know, these continued arguments between them that I believe were heated, increasingly so.

At some moment, Mr. Ortiz concluded that the two

of them really could not work together anymore because the defendant was getting increasingly argumentative with him and he withdrew.

At which point, Ms. Cinquanto came into the case. And, you know, the Court knows our position on Ms. Cinquanto's representation, it was the subject of a lot of briefing, but we believed throughout that she was providing effective representation and there was no good cause for her to be removed.

Nonetheless, the defendant continued to insist that she file various motions that potentially she did not believe were meritorious, you know, and engaged -- the Court is much more aware of what he asked her to do than we are because a lot of that was ex parte.

And certainly at the time, that Ms. Cinquanto, her final days in the case, she was willing to represent the defendant, she continued to assert that she could do so zealously. She continued to engage with us, she continued to file documents with the Court and to prepare herself for trial, and then, you know, then she was subjected to a bar complaint, and then she decided that her conflict was impossible for her to continue to represent the defendant.

At that point, he was told, as, by the way, he was told before, that the specter of being pro se if he continued to engage in dilatory conduct was out there. He

was at one point read the *Faretta* colloquy and told that continued delays might land him here.

So that's our position, Your Honor, is that he was, he was not without fault in any of those.

Certainly, he mentioned Alan Tauber.  I believe that that was different.  He was somebody who was counsel at the same time as Mr. Ortiz, and he was in sort of a writing capacity, and he got out because of a career opportunity, I think.  So that one was not the defendant's fault, but the rest of them, certainly the defendant had varying degrees of culpability.

THE COURT:  All right.  Thank you.

Let me address this CLE issue that has arisen, and then we'll talk further about where we are.  But I do think I need to do some legal analysis and make some findings on the CLE issue.

And my discussion now is really just with respect to the CLE issue.  I recognize that our last several hours have really departed from that issue.  And there will be more I need to say and decide with respect to that, but the CLE issue, I've done the three legal analyses that the parties told me I need to do and I find as a result that it does not create, in my view, any conflict or any reason that Ms. Chavar could not continue with this representation.

Now, again, I'm just focused on the CLE issue

right now.  The issue, of course, at this point we now understand that the Disciplinary Board of Pennsylvania believes Ms. Chavar is I think a half credit short, an ethics credit for I think 2020, 2021.  She has taken immediate action to rectify the situation.  It's not a situation that she knew about prior to last evening, including by I think making efforts even today to attend a CLE presumably online.  And based on the record before me, this is at most a de minimis defect in her state bar defect.  It does not for any reason I can discern prevent her from representing Mr. Colon or prevent me from proceeding with our ongoing trial.

I've conducted the three legal analyses.  Let me go through them.

First, I looked closely at our district local Delaware rules, which I think are implicated as Ms. Chavar is a member of our bar.  She's currently a member of our bar in good standing.  She's also a member of our CJA panel.  That's how she came to be appointed here.

I think local Rule 83.6(b)(1) applies, which means that we automatically impose the identical reciprocal discipline that in this instance the Pennsylvania Bar has imposed unless until we order something else.

Typically, this provision is triggered by a lawyer telling us of some discipline, but here that hasn't

happened because presumably since Ms. Chavar didn't know that she had been administratively suspended in Pennsylvania, but our Rule 83.6(b)(3) does say that the automatic reciprocal discipline becomes effective "upon becoming informed of such a judgment or order," and I believe on behalf of the Court, I now being informed of the suspension, means that as a formal matter, Ms. Chavar is administratively suspended here.

Notably, while Ms. Chavar has been administratively suspended in Pennsylvania since April of 2021, the automatic disposition of the same discipline here only happened today.  I mean, arguably last night when we got the e-mail from the government, but our Court only became informed of that suspension last night.  But that does not mean to me that Ms. Chavar cannot continue to represent Mr. Colon in this case or could not continue to go forward with this trial.  Instead it means under our rules in due course, forthwith, according to the Rule 83.6(b)(3), the Court will issue a notice to Ms. Chavar and give her 30 days to show cause why the imposition of the identical discipline by the Court would be unwarranted.  I believe I would have discretion to allow her to continue in this representation during those proceedings.

I should also say I thought parenthetically it's not clear to me that Ms. Chavar, while administratively

suspended from the Pennsylvania Bar, would not be permitted to appear in Pennsylvania courts, so to the extent she could continue to appear in Pennsylvania courts, our identical reciprocal discipline would let her appear in this court at the same time.

But, in any event, Ms. Chavar has indicated that if and when she receives a notice and an order to show cause from the Court, she will explain to the Court the reasons why she should not be administratively suspended here.  I think I would have discretion to undertake that process right now, and if I did, among the grounds that she might cite, given that we are in the middle of a trial, would be that the imposition of the same discipline by this Court would result in a grave injustice.  She could cite Rule 83.6(b)(5)(C) for that.  And I believe she would have a very strong argument if she didn't.

I would also add that our local rules are only effective to the extent they're not inconsistent with the Federal Rules of Civil Procedure.  Rule 1 of the Federal Rules of Civil Procedure require that all civil rules be construed and then interpreted by the Court and the parties to secure the just, speedy and inexpensive determination of every action and proceeding.

A finding under the circumstances here that Ms. Chavar is not permitted to continue with representing

Mr. Colon in this case at this time and this trial would at a minimum I think flout Rule 1 goal that we all share of a just, speedy and inexpensive resolution of proceedings.

So for all of those reasons, I don't think that the global rules here pose an impediment to going forward. I've also considered the model rules of professional responsibility, conflict of interest, current clients.

Nothing about this de minimis CLE deficiency in Pennsylvania gives rise to a conflict of interest.  The Rule 1.7(a)(2) provides as pertinent here, I've excluded some irrelevant language, "A lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if there is a significant risk that the representation of the client will be materially limited by a personal interest of the lawyer."

On the record before me I find with respect to the CLE issue no risk, a non-significant risk, of course, that Ms. Chavar's representation of Mr. Colon will be at all limited, and certainly not materially limited by any personal interest she might have, including the personal interest that her administrative suspension be lifted, corrected or clarified.

So, and nothing about the CLE issue places Ms. Chavar in an adversarial position relative to Mr. Colon.  At

bottom, I think there's nothing about this CLE issue or how she came to learn of it or how the Court handled it that I think creates a conflict of interest.

And, finally, I've considered the Fifth Amendment with respect to the CLE issue and I find that her administrative suspension does not render her constitutionally ineffective for the Sixth Amendment.  The government cited various cases, all of which establish that there's no per se Rule when an attorney who has a defect in their state bar status must be found to have provided or be provided ineffective assistance of Federal Court proceedings.  In particular, I cite the *Hoffman* and *Mouzin* decisions from the Ninth Circuit and the *Stevens* decision from the Tenth Circuit.  These cases, which I think have all applied I think to disbarred attorneys and were far from disbarment, were a de minimis administrative defect it seems.

These cases all set out that the test for constitutional ineffectiveness remains even again when the attorney is disbarred whether the attorney engaged in specific conduct which prejudiced, specific conduct which prejudiced the defendant, and that's almost always litigated after trial.

I'm unaware here of any specific conduct relating to the CLE issue that Ms. Chavar undertook that

prejudiced Mr. Colon.  Nothing about her bar status is conduct that would in my view prejudice Mr. Colon.

So I think where we are is, as the government suggested, if we didn't have this CLE issue and lose this whole day and Mr. Colon said the things he said yesterday or this morning, I don't think there would have been an issue. I think I would have, to the extent he was requesting new counsel or a mistrial, I think I would have said, no, I'm not persuaded.

Because the CLE issue arose because I therefore, with the government's support, reached out to Mr. Colon and asked him to say what he had to say, we got to hear a whole lot of things in open court, not even ex parte that evidently have caused Ms. Chavar to move from, as the government says at the beginning of the afternoon, saying she was prepared and saw no impediment about going forward with the representation to saying a couple times quite the contrary, that she didn't think she should or could go forward.

So I recognize I need to make a further decision about what's going to happen next.  With apologies to everyone for the late hour, I'm going to take another short recess and collect my thoughts further on that and then come back and have some more to say.  We'll be in recess.

(Short recess taken.)

                         *   *   *

          (Proceedings resumed after the short recess.)

          THE COURT:  All right.  Have a seat.  I'm going to be brief.

          I with I had occasion from the bench or in writing to say more about all of this, but what I wanted to tell you now is that I think the trial needs to go forward. I do expect I will have to explain more.  I may do that tomorrow.

          As far as I can tell, Mr. Colon has two choices. He can continue to be represented by Ms. Chavar as we complete this trial or he can represent himself.

          I am going to inform the jury that they're not needed tomorrow.  I'm going to continue this trial until Friday morning, so we'll let the jury know to report back here in time to get started at 9:00 a.m. on Friday.

          I want the defendant brought here tomorrow as if it is a trial day, and, Ms. Chavar, you need to be here as well.  And you all need to meet.  We're going to have a status conference at noon tomorrow with the defendant present, required.

          Tomorrow is a day for the defense to prepare however it is they're going to proceed.  Mr. Colon's choices, as I say, are to proceed with Ms. Chavar.  And, Mr. Colon, if you choose to proceed with counsel, that will

be Ms. Chavar, and you will need to cooperate with her. You'll need to communicate with her or, alternatively, you can choose to proceed pro se. But if you do want counsel and you don't cooperate, I may well find that you have waived your right to counsel, waived by conduct.

I've warned you before that I might find that your conduct has led to waiver of the right to counsel by conduct. The government is of the view that I already can make such a finding. I'm not making a finding today. We're going to see what happens tomorrow and we'll have a status conference at noon and I expect I will hear more about how it is Mr. Colon wishes to proceed, but the choices are to proceed with Ms. Chavar as counsel or Mr. Colon represent himself.

Ms. Chavar, I know this is not the outcome that you have requested. I know it has been a difficult day, but we will see what happens tomorrow.

Ms. Welsh?

MS. WELSH: Sorry. I didn't want to interrupt, but we do have one issue with the scheduling of missing tomorrow and going on Friday. Our chemist is testifying in a different proceeding on Friday and would be unable to come to court that day.

THE COURT: I don't see what I can do about that. You'll have to see if you can get them here.

MS. WELSH:  Okay.

THE COURT:  I'm not going to be able to have trial tomorrow for the reasons that I've just set out.

MS. WELSH:  Okay.

THE COURT:  I do need the government to prepare an exhibit.  You can do this after trial if you want, but the various e-mails that have been exchanged, which have been helpful and been an efficient way to work through these issues I think need to be in the record, but I will leave it to the government concurrent with Ms. Chavar to put together an exhibit and get that filed at some point on our docket so that this record is clear, particularly if it's to get reviewed at any point later.

I'm sorry for the government, but I don't see how I can go forward tomorrow in light of everything that has happened today.  It's now almost 5:30.  I need to give Mr. Colon time to figure out how he wants to proceed in light of his choices and I need to give Ms. Chavar time to be prepared to continue to effectively represent the defendant if that's the direction things go.

Ms. Chavar, any questions or anything further to discuss?

MS. CHAVAR:  No, Your Honor.

THE COURT:  All right.  Ms. Welsh or Ms. Cloud, anything further?

MS. WELSH:  No, Your Honor.  Of course, I understand the need to give the defendant time.  I guess my only thought was whether there was any chance of potentially convening the jury in the late afternoon for a few hours just to get that, maybe just one hour to get that out of the way, but I understand the issues.

THE COURT:  I just don't think that that is a practical option.  It's regrettable the prejudice that that may have to the government, but as you yourself recognize, it's far from an ideal situation.

I'm balancing a lot of competing interests and I don't feel comfortable on top of needing to give the defense their time, I don't feel comfortable calling the jury in for an hour or two in the late afternoon.  It's just much easier, more practical for us to call them and say you're excused tomorrow.  Get back here at 9:00 a.m. on Friday.

MS. WELSH:  I understand, Your Honor.  As Your Honor noted, we can't call anybody else to do that work instead.  It sounds like maybe a surveillance observation.  There were two people present, we withheld the other one, so we'll just have to work through that.

THE COURT:  I think you said, forgive me if I misunderstood, this witness is in another trial.

MS. WELSH:  Is in another trial on Friday.

THE COURT:  And where is that, if you know?  I

mean I'll be happy to reach out to another judge, see if you have any flexibility there.  We can start with this witness 9:00 a.m. Friday, get them out of here as quickly as possible, whatever.

MS. WELSH:  That would be great, Your Honor. And, of course, I understand we're just trying to work through this.

THE COURT:  I understand.  And you didn't know that I was going say this, so I understand.  But let us know if there is something you want me to do to try to help ameliorate that prejudice.

MS. WELSH:  Thank you, Your Honor.

THE COURT:  Is there anything else?

MS. WELSH:  No, Your Honor.

THE COURT:  Mr. Colon, do you want to say something?

THE DEFENDANT:  Yes, I have a question.

If I choose to defend myself tomorrow, how am I going to get in contact with my, with my witnesses?

THE COURT:  Yes.  You are going to talk to Ms. Chavar tomorrow.

THE DEFENDANT:  I don't -- I don't feel that I have to talk to Ms. Chavar.  Because you said I have to make the decision.  That's what you said to me today, to make the decision.

THE COURT:  I'm not --

THE DEFENDANT:  So if I've got to make -- excuse you, Your Honor -- this decision --

THE COURT:  No, excuse me.  I'm not requiring you to make the decision right now.  That's what tomorrow is for.  As I have advised you before, it's not a good idea to try to represent yourself but you do have that right.  We're not going to go through that colloquy now.  We'll talk further at noon.

We will be in recess.

THE DEFENDANT:  I understand, Your Honor.

(Proceedings adjourn at 5:26 p.m.)


        I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.


                        /s/ Brian P. Gaffigan
                        Official Court Reporter
                        U.S. District Court