IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

UNITED STATES OF AMERICA,        :      CRIMINAL ACTION
                                 :
          Plaintiff,             :
v                                :
                                 :
ROQUES VALDEZ,                   :
                                 :
          Defendant.             :      NO. 17-47-LPS-2

- - -

Wilmington, Delaware
Monday, October 18, 2021
*Change of Plea Hearing*

- - -

BEFORE:        HONORABLE LEONARD A. STARK, U.S.D.C.J.

- - -

APPEARANCES:


            UNITED STATES ATTORNEY'S OFFICE
            BY:  JENNIFER WELSH, ESQ.,
            And, WHITNEY CLOUD, ESQ.
            Assistant United States Attorneys

                  Counsel for Government


            LAW OFFICE OF JAMES BROSE
            BY:  JAMES BROSE, ESQ.

                  Counsel for Roque Valdez


                              Brian P. Gaffigan
                              Official Court Reporter

- oOo -

P R O C E E D I N G S

(REPORTER'S NOTE:  The following change of plea hearing was held in open court, beginning at 1:21 p.m.)

THE COURT:  Good afternoon everyone.

THE ATTORNEYS:  Good afternoon, Your Honor.

THE COURT:  If you are vaccinated and want to take your mask off, you can.  Have a seat.

MS WELSH:  Good afternoon, Your Honor.  Jennifer Welsh for the Government.

Now is the time that the Court has set for a sentencing hearing in the matter of United States versus Roques Valdez, which is Criminal Action No. 17-47 defendant 2, and the defendant is present with his counsel Mr. Brose and the Government is ready to proceed.

THE COURT:  Thank you very much.

Good afternoon, Mr. Brose.

MR. BROSE:  Good afternoon.

THE COURT:  Are you prepared to proceed as well?

MR. BROSE:  I am, Your Honor.

THE COURT:  Good afternoon, Mr. Valdez.

THE DEFENDANT:  Good afternoon, Your Honor.

THE COURT:  First, is there any request we do this portion of this sentencing under seal, Mr. Brose?

MR. BROSE:  Yes, Your Honor.  I would request

that we do a portion of the sentencing under seal.

THE COURT:  All right.  I'm sure the government does not disagree with that then; correct?

MS. WELSH:  Your Honor, I think at least before the change in protocol for Coronavirus, I think that was always the protocol there would be a Attachment A discussion.

THE COURT:  All right.  We will do that when we get there, which will be very shortly.

All right.  Let me start by noting for the record that I have carefully reviewed everything that was submitted in connection with the sentencing, including the presentence report, a sentencing memorandum on behalf of the defendant, which had attached to it various letters from family and friends and some FDC related materials and certificates and indications of other activities, positive activities that the defendant was involved with.

A sentencing memorandum from the government and various motions.  And as I understand it, there is really a joint request here for a sentence of time served.

There is also as always a sealed Attachment A. Before we discuss that, let me ask Mr. Valdez, have you reviewed the presentence report and discussed it with your attorney?

THE DEFENDANT:  I have.  Yes, Your Honor.

THE COURT:  And Mr. Brose, there are no

objections to the PSR; correct?

MR. BROSE:  Nothing.  Nothing is outstanding, Your Honor.

THE COURT:  Nothing from the government; correct?

MS. WELSH:  That's right, Your Honor.

THE COURT:  All right.  Then let's just be sure we all agree here that the Offense Level is 29, Criminal History Category is I, the Advisory Guideline Range is 87 to 108 months before I deal with any motions.

Do you agree with that calculation, Mr. Brose?

MR. BROSE:  Yes, Your Honor.

THE COURT:  And Ms. Welsh, do you agree?

MS. WELSH:  Yes, Your Honor.

THE COURT:  All right.  Let me see counsel at sidebar to discuss the sealed Attachment A, please.

(Following portion ordered sealed by the Court, bound separately.)

THE COURT:  We are back in open session, and this portion of our proceeding is not under seal.

We have reached a point where the issue comes before me as to what is the appropriate sentence for Mr. Valdez in Count 1 of the Indictment to which he has pled guilty.  That was the charge of Conspiracy to Distribute Five Kilograms Or More of a Substance Containing Cocaine, a violation of Title 21, United States Code, Section

841(a)(1), (b)(1) and 846.

We will hear the defense presentation first, please.

MR. BROSE:  Thank you, Your Honor.

As the government has alluded to, this is an unusual case.  In the length of time, I have never had anything like it in my experience.

I met Mr. Valdez almost four-and-a-half years ago or maybe more than four-and-a-half years ago.  It was May of 2017, I guess.  And I, I've just never had to deal, I never had to deal with a defendant in a situation like this, and we have gone through this together for a long time.

He has been nothing but respectful to me, kind to me, understanding.  He has had periods of doubt.  He has had times where he has written me letters saying:  I can't do this anymore, get me out.

And every time we had another conversation about it, he reset himself.  He was resolved, he was resilient.  And I think the reason I'm saying these things is because I feel as though these are good characteristic traits for his success once he is released.

I feel as though Mr. Valdez is someone who is resilient, he is kind, he has got a good heart.  I have been with him through the death of both of his parents while he was incarcerated.  I have talked to several of his family

members over the course of this period of time, all of whom seem like good productive people who care.  They all care about each other.  They understand and acknowledge that what Rocky did was wrong.  They don't try to enable him or argue with me that, you know, that this is all unfair and it never should have happened.  We don't have any of that here.

We have somebody who has taken responsibility from the get-go.  Someone who essentially told the police from the time that he was arrested where the cocaine was.  They didn't know it was inside these canisters when they first arrested him and told them where the drop-off was and gave them the roadmap for prosecuting this case.

And then -- and I was here for his testimony at trial.  It was clear, it was coherent, it was persuasive.  And I think again, as the Court has acknowledged, a significant part of the Government's success in terms of prosecuting the codefendant in this case.

So for these reasons, and I really can't say more forcefully as a defense attorney, you know, that I'm confident Mr. Valdez can be a productive member of society upon his release.  And we ask that he be released today on a sentence of time served.  It falls within the guideline range that the Court has just set forth subsequent to the departure.

There is also a departure motion or departure

applicable due to the safety valve involved in this case. This did reduce his guideline range below where it was but also got him underneath the mandatory minimum that would have been potentially applicable had he not cooperated.  So he has both of these departures.

He has done everything that he could in prison. It's not an easy place to be.  I guess that's the last thing I want to talk about.  That facility is not built, as the Court knows, to house somebody waiting for sentencing.  There is no programming there.  And obviously, I mean everyone in the prison had to know he was there to testify against somebody, to have to sit there for four-and-a-half years.

So while the Court indicated there is no outward or overt risk involved or threats made to Mr. Valdez, he had to live in that circumstance for a long time, and I don't imagine that is an easy circumstance to live in, and nor is being incarcerated in general under these circumstance, so there is not much difference, but I do think there is some difference where he is in this facility that is not set up for him to participate as a convict but rather as somebody who is supposed to be waiting to be convicted.

So for those reasons, Your Honor, we ask that the Court sentence Mr. Valdez to a period of time served.  I have no concerns with regards to the length of supervised release.  I'll leave that up to the Probation Department's

discretion and the Court's discretion.  I'm confident that Mr. Valdez will succeed upon his release.

I do know that he wants to move to the state of Arizona.  He has a brother there who is ready to welcome him.  His ex-wife and son in sort of a nice twist of fate are living very close to where he is going to be moving to with his brother.  So that will put him back in connection with his family.  He has got a lot of family ties there. And so we want to do everything we can, and I want to do everything I can to have Mr. Valdez rejoin with his family and back on the street and starting to do his tile work and do some productive business out in the world and take care of his kid and enjoy the joys that life has to offer outside of incarceration.

THE COURT:  Thank you very much.

Mr. Valdez, if you wish to speak, you don't have to.  If you wish, you can come to the podium.

THE DEFENDANT:  Yes, Your Honor.  I want to express how sorry I am.

MR. BROSE:  Here.

THE COURT:  Yes, why don't you come over here so we can all hear you.

THE DEFENDANT:  Thank you, Your Honor.  I want to express how sorry I am for putting my whole family through this.  It's been a long time coming.

I've, I've become a better man being that I have been incarcerated for so long.  I've met some really bad people but I met some really good people along the way, too, that guided me and helped me get through this.

I don't have anybody of my family here, they're pretty much back in Arizona and California, but I can assure you that they're right behind me as far as my support team, my support system.  They're waiting for me right now.

That's it.  Thank you.

THE COURT:  Thank you very much.

Does the government wish to speak?

MS. WELSH:  Yes, Your Honor.  There is not much more to say outside of what we put in our memorandum and what has already been said.  The Court knows how serious this conduct was.

You know, we're going to be making arguments ultimately at a sentencing for Mr. Colon asking for really substantial time for participating in this same exact cocaine conspiracy.  This was really, really serious criminal conduct that Mr. Valdez was engaged in.  And interestingly, it was kind of his first brush with, first brush with this sort of thing.  And I think he got involved in this conspiracy by his own admission because he needed money.  He was going through a rough time.  That's what he testified to.

He didn't think he was going to get caught. He was wrong about that. And I hope the lesson he takes away from that that this isn't actually the easy money, it's not the easy path. It's a very, very hard path. So for, you know, four trips that he made, you know, he ended up spending just as many years in jail.

But he has had four-and-a-half years to think about that. He didn't have a significant history or, you know, nothing like what the Court is used to seeing in terms of drug defendants.

And he has a supportive family. He has a son he wants to be reunited with. There is a lot of weighing in his favor, and he has already paid a really substantial price for his mistakes.

It is a good point that Mr. Brose made that in this four-and-a-half year period, this has not been easy for him. He has been incarcerated during a pandemic, as many have been, and all the while I'm certain that there were at least suspicions, if not more than that, among people who he was living with that he was going to be testifying at a trial someday or that he was cooperating, that is why he was in jail for all that time, and he persevered and he pushed through without making bad choices.

And that bodes well for him making better choices when he gets out. Hopefully, he has learned that

the path he was taking wasn't the easy one.  It turned out to be the hardest one of all.  Only he can say.  But based on his post-arrest conduct, the government feels confident enough that the Court can give him a second chance, he has earned it, and so the government is seeking a time served sentence.

THE COURT:  Thank you very much.

Mr. Brose, anything you want to add?

MR. BROSE:  Judge, the only thing I want to add, and I hasten -- I did note in the presentence report that Mr. Valdez had a couple of incidents of conduct inside the prison.  I spoke with Mr. Valdez about those to find out exactly what was going on.  They all seemed legitimately like wrong place/wrong time type of things.  This is, I think one of them involved a co-cellmate who had put something, something unlawful in the cell and they both got busted for it.

Another were that he was telling me he was fixing radios for people and he wasn't supposed to do that kind of thing inside the prison.  There was some electronic hardware, something like that, that he wasn't supposed to have in his cell and he got in trouble for that.

So I wanted to address those issues so the Court knows at least from our perspective, they're somewhat explainable, and they certainly don't characterize the bulk

of his behavior subsequent to his arrest.

THE COURT:  All right.  I appreciate you indicating that.

Ms. Aranda, do I have to sentence to a minimum of five years supervised release?

U.S. PROBATION OFFICER ARANDA:  Your Honor, it's my understanding that because he is safety valve eligible, in believe, Your Honor can go below that.

THE COURT:  Does anybody else have a view on that?  Does the government know?

MS. WELSH:  Your Honor, I believe that to be the case.  Yes.

THE COURT:  Mr. Brose, do you have any view?

MR. BROSE:  My research, I thought it revealed three years.  That's what I thought but I could be wrong on that.

THE COURT:  Right.  I think it would otherwise have been five.

MR. BROSE:  Yes.

THE COURT:  So it may very well be three, but I don't believe it's five given all the factors here.

Okay.  Well, thank you.  Thank you both, both sides for the helpful argument.

Thank you, Mr. Valdez, for speaking directly to me.

Let me start by saying I have considered the relevant factors the law requires me to consider.  They're set out in the statute, Title 18, United States Code, Section 3553(a).  They begin with the sentencing guidelines which here recommend a sentence of 51 to 63 months.

I must, as the law also requires, make an individualized assessment of the sentence based on the facts presented.

And ultimately, I must impose a sentence that is sufficient but not any greater than necessary to achieve the purposes of sentencing.

And this is an unusual but an unusually positive sentencing today.

Normally, it's normally just about everything about sentencing is in dispute, the parties come in with their different views of the record, they ask for different amounts of time, I have my doubts about whether I can be confident in the defendant and the things he tells me, and a lot of factors usually point in competing directions.

In this case, we really don't have that.  And I have joined the parties in saying this is unusual and in a good way that reflects well on Mr. Valdez.

I am accepting the joint recommendation of the parties, and I am going to be imposing a sentence of time served to be followed by the three years of supervised

release.

This is a guideline sentence, and I think it is totally warranted for the reasons I am going to explain in more detail, but I wanted you to know that, Mr. Valdez, that your time of being detained is going to end.  I don't know the details of exactly what time today that ends but this will be it for your detention.

Let me tell you how I reached that conclusion.

And I do have to first talk about the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

So while this is a happy day and I join everyone in the well wishing Mr. Valdez, we can't ignore the fact that you did, by your own choice, participate in what is a very, very serious drug conspiracy, drug offense.

You were an active participant for approximately six months, in 2016, 2017 in what was by any measure a very large scale conspiracy to bring enormous quantities of cocaine here into our community in Delaware.

We heard you testify about your role and again procuring the vehicle and getting registration and all that, and then on the four occasions driving what turned out to be approximately 77 kilograms of cocaine from California to

Delaware and returning large amounts of cash back to California.

We'll never know exactly the damage and who it damaged if those 77 kilograms had I suppose ended up out on the street.  But we know it did no good, we know it did tremendous amounts of harm, and you needed to be punished for that.

The fact that you have adequately been punished given all the circumstances as of today cannot blind us to the facts that what you did was very serious and merited that punishment.

It's pretty remarkable in my experience that someone with almost no criminal history who essentially dived in at the very deep end of the drug trade.  Normally, there would be a series of smaller quantities and transactions, but you went, you went in again right at the deep end, and had you not done the right thing, and I think the record makes clear that from essentially the moment you were arrested, you went from doing this really terrible thing to doing the right thing.  Had you not made that decision and done the right thing and persisted in doing the right thing, we would be having a very different sentencing hearing with a very different discussion.

So that is where the law requires me to start, and has started.

But when I turn to the other factors, they all lead again in a positive way to the decision I may sentence you to time served.

I need to consider the needs of deterrence, that is, to specifically deter you from ever being tempted to commit criminal acts again, to protect the public, and to hopefully general deter others from thinking this is an easy way to make money.

It is to your credit that you have almost no criminal history.  You have an old 2006 DUI, and you are safety valve eligible.

There was some testimony from yourself about some other criminal acts that you may have participated in. I think we only know about those through your own candor, but in any event they're not in your criminal history.  But I hope and I believe that you will take from this experience and sentence to time served that the path of criminal acts is not the one you want to be on.

It seems to me you clearly regret your mistakes and recognize that as terrible mistakes and the ones that you have paid for and recognize your family paid for as well.

Your cooperation gives me some confidence again in your rehabilitation.  You have taken responsibility really from the start as your attorney put it.

And you have so much to live for.  Particularly, your family, your son, your brother and, you know, your friends as well.

So fundamentally I believe that the sentence I am imposing is sufficient to specifically deter you and hopefully persuade others as well that this is not the easy path that it might otherwise appear.

I have considered your other personal characteristics.  I think you are 42 years old now.

It is very sad that both of your parents have passed away while you have been detained.  I mentioned you have a son whose life you were closely involved with prior to your detention, and you are going to be living with your brother near your now ex-wife and your son, and you are fortunate to have that kind of support system.

It has been a long time to get to this point with the constant delays we've had with the trial and you're lucky not only that you have that support system years ago but that evidently stopped with you, and I hope you will let them continue to help you as you reintegrate into society.

You have skills, construction skills particularly with tiling.  And I understand you owned and operated your own businesses in that field before and intend to do that again, and so that is all good signs for you.

The law requires that I consider that my

sentence not impose any unwarranted sentencing disparities, and I'm aware of none.  And I don't believe that anyone else that would be sentencing that may have had a connection with the conspiracy will retroactively create any unwarranted sentence that I am giving today.  It is absolutely fully supportable by the record in front of me in connection with Mr. Valdez.

I've considered the needs of rehabilitation.

As always, I've considered the sealed Attachment A, the discussion that we had at sidebar.

I do share your attorney's confidence in you.  I hope and trust that the well wishes from all of us in the courtroom will stay with you and that you will have strength to stay on the positive path that you have been on since your arrest and that you stuck with, despite the many, many delays and that you have told us you are committed to following in the future.  That's what we all hope for you.

I think you understand, but if it, if it were to be otherwise and you were to get involved in the drug trade again, you do have again a very serious federal criminal conviction on your record.  You will not be treated safety valve eligible.  You will not be treated as someone with no criminal history.  And that's just not a conversation you want to have to have with another defense lawyer in the future.

Let me formally announce the sentence that I

intend to impose.  It is this:

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Roques Valdez is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a period of time served.

The Court has considered all the factors set forth under 18 U.S.C., Section 3553(a) and finds this sentence to be reasonable and appropriate.

Upon release from imprisonment, you shall be placed on supervised release for a term of three years.

Within 72 hours of release from the custody of the Bureau of Prisons, you shall report in person to the Probation Office in the District to which you are released.

While on supervised release, you shall not commit another federal, State, or local crime.  You shall comply with the standard conditions that have been adopted by this court.  And you shall comply with the mandatory and special conditions that have been in paragraph 106 of the presentence investigation report.

It is further ordered that you shall pay to the United States a special assessment of $100 which shall be due immediately.

The Court finds that you do not have the ability to pay a fine.  The Court will waive the fine in this case.

Counsel, do you have any reason other than those

already stated why sentence should not be imposed as announced?

MS. WELSH:  I don't, Your Honor.

MR. BROSE:  Judge, the only thing you mentioned was 72 hours reporting to supervised release.  I know he is planning on meeting with Ms. Aranda right after we meet today.  Are you talking about this District or are you talking about the Arizona District?  And I just want to make that clear.

THE COURT:  I will ask for clarification, although I believe that requirement will be satisfied by meeting today in our District, but is that what you had in mind.

US PROBATION OFFICER ARANDA:  Correct, Your Honor.

THE COURT:  All right.  And you do now, pursuant to the three years of supervised release, you are going to have to do what the Probation Office in Delaware tells you to do, including about how to get to a residence in Arizona, I believe it is.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  It is then the Order of the this Court that sentence be imposed as stated.

The Clerk's Office shall prepare the judgment. My Deputy Clerk shall enter the judgment of conviction.

Mr. Valdez, ordinarily you would have the right to appeal the sentence that I impose.  Your appellate rights are limited, if not eliminated by the appellate waiver provision in your plea agreement.  Nevertheless, you should discuss with your attorney whether you have any rights to take an appeal.

Any appeal would have to be filed within 14 days of when I enter the written judgment of conviction.

If you do choose to file an appeal and can't afford the cost of that appeal, you can ask for permission to file that appeal without paying costs.

Ms. Welsh, anything further in this matter?

MS. WELSH:  No, Your Honor.

THE COURT:  Mr. Brose?

MR. BROSE:  No, Your Honor.

THE COURT:  Again, Mr. Valdez, good luck to you and your family.  May you stay on the right path from here on out.

We will be in recess.

(Sentencing hearing ends at 2:02 p.m.)


I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.


/s/ Brian P. Gaffigan
Official Court Reporter
U.S. District Court