IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No.   17-47-SB-4 |
| | ) | |
| SHAKIRA MARTINEZ, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES'S RESPONSE TO DEFENDANT SHAKIRA MARTINEZ'S
SENTENCING MEMORANDUM**

Over the course of eight years, Shakira Martinez (the "Defendant") worked with her long-time partner, Omar Morales Colon, to conceal more than a million dollars in drug proceeds.   Between 2009 and 2017, the Defendant served as the face of their money laundering operation — opening bank accounts, depositing dirty money, and ultimately using drug proceeds to purchase 17 properties in the name of Zemi Property Management.   And although her primary role was to launder drug money, Defendant Martinez was also directly involved in the underlying drug conspiracy — bringing money to a drug deal involving 10 kilograms of cocaine, picking up drug proceeds from a subdistributor, and renting a truck for Colon's suppliers.   Together, Colon and Martinez each played an important role in building a drug empire and are responsible for distributing vast amounts of cocaine from California as well as marijuana grown in their own home.

The Defendant's serious and pervasive criminal conduct warrants a significant sentence. Nevertheless, the United States' recommendation is tempered by the Defendant's history and characteristics and her limited role in the underlying drug offense.   Accordingly, the government submits that a sentence below the anticipated guidelines range of 235-293 months would be appropriate.   Because any expert report may bear on the appropriate sentence in this case, the government reserves its ultimate sentencing recommendation until it has had an opportunity to review

any such report and requests and opportunity to supplement this Sentencing Memorandum at the appropriate time.[1]

## I.    PROCEDURAL HISTORY

On July 25, 2022, following a twelve-day jury trial, Defendants Martinez and Colon were convicted of multiple counts in connection with their eight-year scheme to launder drug proceeds. With respect to Defendant Martinez, the jury returned a guilty verdict related to twelve counts in the Second Superseding Indictment, which charged Defendant Martinez with one count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) (Count V), seven counts of Concealment Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts VI-VIII, XI-XIII, and XV), one count of Spending Money Laundering in violation of 18 U.S.C. § 1957 (Count IX), and three counts Structuring to Evade Reporting requirements in violation of 31 U.S.C. §§ 5324(a)(3) and (d)(2) (Counts X, XIV, and XVI).   The jury also returned a special verdict finding that thirteen properties were involved in the money laundering scheme and subject to criminal forfeiture.

At the Court's direction, the United States Probation Office prepared a draft presentence investigation report ("PSR"), which was disclosed to the parties on October 4, 2022.  D.I. 636.  A revised draft PSR was subsequently disclosed on November 11, 2022.  D.I. 644.  On November 7, 2022, Defendant Martinez filed a sentencing memorandum outlining her objections to the guidelines calculation and requesting a downward variance.  D.I. 649.  The following day, the Court granted

---

[1] The government understands that the Defendant intends to retain an expert whose opinion may bear on the 3553(a) factors.  The government would request an opportunity to review any such report before making its final sentencing recommendation and to supplement its Sentencing Memorandum at the appropriate time.   In addition, as in all cases, the government has filed an Attachment A under seal for the Court's review.

Defendant's motion to retain an expert and continue sentencing.   D.I. 648.   A hearing to resolve all sentencing issues unrelated to Defendant's expert has been set for November 21, 2022.   *Id.*

## II.    GUIDELINES CALCULATION

The Defendant makes two principal objections to the Guidelines as calculated in the Draft Presentence Investigation Report ("Draft PSR").   *See* D.I. 644.   *First*, Defendant Martinez contends that her guidelines should not be calculated under U.S.S.G. §2S1.1(a)(1) because (i) she did not commit the underlying offense and is not otherwise accountable for the offense under the principles of relevant conduct; and (ii) the underlying offense level cannot be determined.   *Second*, the Defendant contends that she is entitled to a minor role adjustment under §3B1.2.   *See generally*, D.I. 649 (hereinafter "Def.'s Sentencing Memo").   For the reasons set forth below, Defendant's objections should be overruled.   Moreover, based on the drug evidence presented at trial, the underlying base offense level should be 36.   Taking into account a two-level increase under §2S1.1(b)(2)(B) (conviction under 18 U.S.C. §1956) for a total offense level of 38 and criminal history Category I, Defendant Martinez's applicable guidelines range should be 235-293 months.[2]

> A.    U.S.S.G. §2S1.1(a)(1) Is the Applicable Guideline for Determining Defendant Martinez's Base Offense Level.

Section 2S1.1 — *i.e.*, the money laundering guideline — provides two alternative methods for determining a defendant's base offense level.   Under Section 2S1.1(a)(1), the base offense level should be determined by cross-reference to "the underlying offense from which the laundered funds

---

[2] The current Draft Presentence Investigation Report (D.I. 644, hereinafter "Draft PSR") reflects a base offense level of 34 and guidelines range of 188-235 months.   *See* Draft PSR at ¶¶ 47, 95. Although the government did not formally object to the guidelines calculation, its response to Defendant's objections supports a drug weight calculation in excess of 30,000 KG of converted drug weight, for a base offense level of 36 pursuant to 2D1.1(c)(2).   *See* Draft PSR at 28 n.2.   The government has contacted the United States Probation Office and counsel for the Defendant to clarify its position regarding the appropriate base offense level and corresponding guidelines calculation.

were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of §1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined." U.S.S.G. §2S1.1(a)(1). By contrast, under Section 2S1.1(a)(2), the base offense level is determined based on the "value of the laundered funds." U.S.S.G. §2S1.1(a)(2). These provisions are meant to distinguish between direct money launders and third-party launderers, respectively. *See United States v. Blackmon*, 557 3d. 113, 119 (3d. Cir. 2009). Because Defendant Martinez participated in or, at the very least, aided and abetted the underlying drug conspiracy *and* the offense level can be determined, Section 2S1.1(a)(1) is the applicable guideline.

1.    Defendant Martinez Is Accountable for the Underlying Offense.

Defendant Martinez's primary role in the drug trafficking enterprise was to conduct banking and real estate transactions to conceal drug proceeds. Nevertheless, the evidence at trial established that Defendant Martinez was also directly involved in the underlying drug conspiracy. She brought money to a drug deal with Ivan Prieto as payment for the 10 kilograms of cocaine laid bare on the kitchen counter. Trial Tr. July 8, 2022 at 21:22-23:22. She picked up drug proceeds from subdistributor Devin Hackett on behalf of Defendant Colon. Trial Tr. July 8, 2022 at 141:4-146:4, 201:3-203:11; Trial Tr. July 11, 2022 at 83:14-89:23. And when the California suppliers were in town to deliver 20 kilograms of cocaine to Defendant Colon, she rented the truck they used to transport the oxygen tanks filled with cocaine. Trial Tr. July 7, 2022 at 79:11-81:9.

Unlike other members of the conspiracy who came and went over time, Defendant Martinez's participation remained constant. She was a regular and trusted member of the conspiracy. *See United States v. Gibbs*, 190 F. 3d 188, 198 (describing factors that support conspiracy membership including "length of affiliation" and "demonstrated level of mutual trust"). The fact that she was not

routinely involved in drug transactions makes her no less of a coconspirator.  *Id.* (holding that "even an occasional supplier . . . can be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that she or he was part of a larger operation").   Indeed, Defendant Martinez not only knew of the conspiracy's goals but had a personal stake in its continued success.  *See United States v. Bailey*, 840 F.3d 99, 111 (3d Cir. 2016) (stake in drug organization and acts in furtherance sufficient to support conspiracy membership).   "Although a conspirator's stake in the venture is not an essential element of the crime of conspiracy, the existence of such a stake is relevant to the question of deliberate participation."   *United States v. McKee*, 506 F.3d 225, 242 (3d Cir. 2007). Accordingly, based on the preponderance of the evidence, Defendant Martinez was a member of the underlying drug conspiracy:   she worked together with her husband, Defendant Colon, to further his drug trafficking activities and shared in their collective goal of distributing drugs for profit.[3]

Even if the evidence is insufficient to establish coconspirator liability, Defendant Martinez is still accountable for the underlying offense based on the principles of relevant conduct.   Under the applicable relevant conduct provision referenced in Section 2S1.1(a)(1), a defendant is accountable for the underlying offense based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant."   *See* U.S.S.G. § 1B1.3(a)(1)(A).   At the very least, the evidence demonstrates that Defendant Martinez aided and abetted the distribution of drugs from which the laundered funds were derived.[4]

Defendant appears to concede that she committed "isolated acts" related to the drug offense, but contends that she lacked the requisite knowledge that she was aiding and abetting the commission of a crime.  Def.'s Objections at 2.   Such a claim simply defies common sense.   Defendant Martinez

---

[3]  *See* 3d Cir. Model Crim. Jury Instr., § 6.21.846B (Controlled Substances – Conspiracy).

[4]  *See* 3d Cir. Model Crim. Jury Instr., § 7.02 (Accomplice Liability: Aiding and Abetting).

knew that her husband was a drug dealer. And while there is no evidence that Defendant Martinez personally sold any drugs, she knowingly engaged in conduct that furthered the underlying drug conspiracy. In addition to her involvement in the transactions described above, she assisted Colon in his drug trafficking enterprise in a myriad of ways. She helped him recover drug proceeds by lying under oath in Florida in June 2009. She allowed her home to be used to manufacture and store marijuana. She routinely conducted financial transactions to launder drug proceeds. And she purchased and managed properties that were used in the course of drug trafficking.[5] All of these acts — illegal or otherwise — were knowingly committed for the purpose of assisting Colon in his drug trafficking enterprise.[6]

Moreover, contrary to Defendant's suggestion, the frequency with which Defendant Martinez committed these acts has no bearing on the analysis. As the Supreme Court recognized in *Rosemond v. United States*, 572 U.S. 65 (2014), aiding and abetting liability applies to "a person (possessing the requisite intent) who facilitated any part – even though not every part – of a criminal venture." *Id.* at 72. The amount of aid or assistance is immaterial. It is enough that the accomplice aided or otherwise helped bring about only one or some part, or phase, or element of the offense committed

---

[5] The evidence at trial revealed that the properties were pivotal to the operation and success of the drug conspiracy. Not only were they used to conceal the true source of the funds, but also served as a safe harbor for drug transactions and a place to manufacture and store drugs and drug proceeds. *See e.g.*, Trial Tr. July 8, 2022 at 19:9-21:18 (Prieto's testimony regarding drug transactions at Linkwood Avenue); Trial Tr. July 7, 2022 at 77:3-20 (Valdez's testimony regarding drug transactions at rental properties on Marshall Street); Trial Tr. July 12, 2022 at 63:17-73:15 (testimony regarding firearm, oxygen tank, and $355,000 in cash found at Rodgers Avenue); Trial Tr. July 6, 2022 at 71:13-93:8 (testimony regarding underground marijuana grow operation at 4010 Kirkwood Saint Georges Road).

[6] *See e.g., United States v. Sifuentes*, 945 F.3d 865 (5th Cir. 2019) (finding accomplice liability sufficient to support 2S1.1(a)(1) where defendant "repeatedly communicated with and moved money for higher ranking members in a broad drug and money laundering conspiracy").

by the principal.  *Id.* at 73.  While the government's evidence of Defendant Martinez's *direct* involvement in the day-to-day operations of the underlying drug offense may be limited, the evidence plainly shows that she performed these acts with the purpose of facilitating Defendant Colon's drug trafficking activities.    Accordingly, she is accountable for the underlying offense under §2S1.1(a)(1)(A).

<div align="center">2.    <u>The Drug Weight for the Underlying Offense Can Be Determined.</u></div>

At the July 2022 trial, the government presented substantial evidence of the specified unlawful activity underlying the money laundering scheme — namely, the conspiracy to manufacture and distribute marijuana and cocaine.   The evidence of drug activity spanned from 2009 up until the date of Defendant Colon's arrest on May 6, 2017.   Two cooperators testified to their prior drug dealings with Defendant Colon.   Ivan Prieto testified that between roughly 2009 through 2012 he delivered approximately 80-100 kilograms of cocaine (CDW 16,000 – 20,000 kilograms) to Defendant Colon (Trial Tr. July 8, 2022 at 13, 38, 42), and on one occasion sold him two pounds of methamphetamine (CDW 1,792 kilograms) (Trial Tr. July 8, 2022 at 37).   Roque Valdez testified about the four times — between December 2016 and May 2017 — that Valdez and Mohamed Aviles Camberos drove from California to Delaware to deliver a total of 77 kilograms of cocaine (CDW 15,400 kilograms) to Defendant Colon.   Draft PSR at ¶ 37.   In addition, law enforcement officers testified about marijuana seized from various Colon-related premises in May 2017, totaling approximately 17.5 kilograms (CDW 17.5 kilograms).   Draft PSR at ¶ 37.   Taken together, the total drug weight attributable to the underlying offense is a Converted Drug Weight of 33,209.5 kilograms.   Thus, the total underlying offense level is 36, pursuant to 2D1.1(c)(2).[7]

---

[7] The government submits that the Draft PSR should be amended to include a conservative 80 kilograms of cocaine and two pounds of methamphetamine, based on Ivan Prieto's testimony.   The 80 kilograms of cocaine are direct evidence of the cocaine conspiracy underlying the money

Notwithstanding the overwhelming and quantifiable drug evidence presented at trial, Defendant Martinez contends that the drug weight for the underlying offense cannot be determined. Def.'s Sentencing Memo at 2. In particular, Defendant contends that it is "impossible to determine an offense level *pegged to the proceeds of the conspiracy to distribute cocaine* before December, 2016" because "virtually all of the properties alleged to be the proceeds of the specified criminal activity were purchased by Zemi Property Management before December, 2016." *Id.* (emphasis added). Such an argument improperly conflates the two methods of determining a base offense level under §2S1.1 and ignores the intent behind the money laundering guideline. As the Third Circuit explained in *Blackmon*, the guideline is "intended to tie offense levels for money laundering more closely to the underlying conduct that was the source of the criminally derived funds." 557 F.3d at 119 (cleaned up). Like the defendant in *Blackmon*, Defendant Martinez "mistakenly focuses on the laundered funds, which is the method subsection (a)(2) uses to calculate the base level by determining the 'value of the laundered funds,' rather than on the nature of the offense, which is the method subsection (a)(1) uses to calculate the base offense level by considering the 'underlying offense.'" *Id.* at 121. Notably, the *Blackmon* Court's calculation for the underlying drug offense incorporated drug weight from a "sting transaction," the proceeds of which were never ultimately laundered. *Id.* at 124. Accordingly, Defendant's argument that the drug offense level must be "pegged to the proceeds of the conspiracy" used to purchase properties must be rejected.

---

laundering scheme. And the two pounds of methamphetamine are attributable to the underlying drug offense because it is part of the same course of conduct or common scheme or plan. *See United States v. Blackmon*, 557 F.3d 113, 120-25 (3d Cir. 2009) (holding that "relevant conduct . . . is a relevant consideration for sentencing judges when calculating the base offense level for direct money launderers under §2S1.1(a)(1)"). Even if the Court declines to include the methamphetamine as part of the total drug weight for the underlying offense, the total converted drug weight would still be in excess of 30,000 kilograms for a base offense level of 36.

8

B.    Defendant Martinez Is Not Eligible for a Minor Role Adjustment Under §3B1.2 Based
on Her Involvement in the Underlying Drug Offense.

Defendant argues that she should receive a "minor participant" adjustment pursuant to

U.S.S.G. §3B1.2 based on her role in the underlying drug offense.    Def.'s Sentencing Memo at 5.

While the government agrees that Defendant Martinez would likely be deemed a minor participant in

the drug offense, the minor role adjustment does not apply here.    As the commentary to the guidelines

make clear, "in cases in which subsection (a)(1) applies, application of any Chapter Three adjustment

***shall be determined based on the offense covered by this guideline*** (i.e., the laundering of criminally

derived funds) and ***not on the underlying offense from which the laundered funds were derived***."

U.S.S.G. §2S1.1 n.2(c)[8] (emphasis added).    In *United States v. Capps*, the Third Circuit confirmed

that Chapter Three adjustments should be applied based on money laundering behavior and not the

underlying offense.    977 F.3d 250, 255 n.7 (3d Cir. 2020) (citing cases); *see also United States v.

Arellanes-Portillo*, 34 F.4th 1132, 1140 (10th Cir. 2022) (application of aggravating role adjustment

based on underlying offense constituted plain error); *United States v. Salgado*, 745 F.3d 1135 (11th

Cir. 2014) (role enhancement based on underlying drug conspiracy not applicable under 2S1.1);

*United States v. Anderson*, 526 F.3d 319, 328 (6th Cir. 2008) (role adjustment based on her minimal

role in the underlying drug conspiracy constituted error).    Because any Chapter Three adjustment

must be determined based on Defendant Martinez's involvement in the money laundering scheme —

which was by no means minor — Defendant's objection must be overruled.[9]

---

[8] Generally, except as otherwise expressly provided, where an offense level is determined by reference to another guideline, the Chapter Three adjustments are also determined with respect to the referenced guideline.    *See* U.S.S.G. 1B1.5(c).    Note 2(c) of the commentary to §2S1.1 provides such an express exception.

[9] Although Defendant Martinez is plainly not eligible for a role reduction under U.S.S.G. §3B1.2, the government is aware of at least one authority supporting the adjustment of a defendant's underlying offense level based on the Chapter Three adjustment the defendant *would have* received.

### III.    THE UNITED STATES' SENTENCING RECOMMENDATION

The government submits that Defendant Martinez's applicable guideline range is 235-293 months' imprisonment.  The Court must consider several statutory factors when sentencing any defendant.  *See* 18 U.S.C. § 3553(a).  Here, a substantial sentence is necessary to account for the nature and seriousness of the offense and promote respect for the law.  Nevertheless, the nature and characteristics of the Defendant and her limited role in the underlying drug offense weigh in favor of some downward variance.  Because the Defendant intends to retain an expert that may bear on the 3553(a) factors — including the appropriate extent of any downward variance — the government reserves the right to submit supplemental briefing as to its ultimate sentencing recommendation at the appropriate time.

<div style="margin-left: 50%;">

Respectfully submitted,

DAVID C. WEISS
United States Attorney

BY: */s/ Meredith C. Ruggles*
Meredith C. Ruggles
Jennifer K. Welsh
Assistant United States Attorneys

</div>

Dated:    November 14, 2022

---

Specifically, in *United States v. Anderson*, the Sixth Circuit found that the defendant was entitled to a two-level reduction under § 2D1.1(a)(3) — or what is now § 2D1.1(a)(5) — which provides for offense level reductions for a defendant who receives role adjustments under § 3B1.2.  The court reasoned that "the reduction . . . should apply if the defendant played a mitigating role in the drug conspiracy, . . . even if [the defendant] did not actually receive [a] reduction under § 3B1.2 because she did not play a mitigating role in the money laundering offense."  526 F.3d at 329 n.5.  At present, the government is not aware of any other authorities, in the Third Circuit or elsewhere, that similarly consider a hypothetical Chapter 3 adjustment when calculating a defendant's underlying offense level.