IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No.   17-47-SB-4 |
| | ) | |
| SHAKIRA MARTINEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## THE UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM

NOW COMES the United States of America, by and through its attorneys, David C. Weiss,

United States Attorney for the District of Delaware, and Meredith C. Ruggles and Jennifer K. Welsh,

Assistant United States Attorneys for the District of Delaware, and hereby submits this Supplemental

Sentencing Memorandum.[1]   For the reasons set forth below, the government recommends a sentence

of 120 months, at the top of the applicable guidelines range.[2]

### A.     Martinez's Serious and Pervasive Conduct Warrants a Substantial Sentence

Defendant Martinez concealed nearly a million dollars in drug proceeds over eight years.   In

doing so, she helped create a drug empire led by her long-time partner Omar Colon.   Indeed, the

success of Colon's drug empire would not have been possible without Martinez's money laundering

and structuring crimes.   Prior to the conspiracy, Martinez helped lay the foundation for their scheme,

going so far as to lie under oath about Zemi Property Management ("Zemi") and its business

operations before it came into existence.   Government Exhibit ("GX") 515.   Martinez continued to

---

[1] The government filed an initial Sentencing Memorandum on November 14, 2022.   D.I. 654.   In that submission, the government indicated that a sentence below the anticipated guidelines range of 235-293 months would be appropriate but withheld its final sentencing recommendation until such time that it had an opportunity to review additional materials submitted by the Defendant.   Those materials have now been submitted and reviewed, and the government has factored that information into the recommendation detailed herein.

[2] In further support of this Supplemental Sentencing Memorandum, the government has filed an Attachment A under seal for the Court's review.

serve as the face of Zemi over the course of several years, lending credibility to the entity responsible for laundering Colon's drug money.  *See* D.I. 702, Second Amended Presentence Investigation Report dated Jan. 26, 2023 ("PSR") ¶¶ 22-24.  During this time, Colon imported well over 100 kilograms of cocaine into Delaware achieving drug weights unsurpassed by other significant drug traffickers sentenced by this Court.  *See* D.I. 653 at 1-2.  Colon's drug sales generated hundreds of thousands of dollars in drug proceeds that he could not spend without raising law enforcement's suspicion.  By funneling Colon's drug money into Zemi — converting cash to cashier's checks for the purchase of property — Martinez kept Colon's drug activities from law enforcement and undoubtedly contributed to the distribution of dangerous drugs into the community for nearly a decade.

Defendant Martinez was involved in nearly every aspect of the money laundering operation. Between 2009 and 2017, Defendant Martinez opened and controlled at least 8 bank accounts at 4 different financial institutions to conduct business on behalf of Zemi.  She deposited dirty money in those accounts, making cash deposits in excess of $300,000.  GX 1750p.  And she was personally involved in the purchase of many of Zemi's properties.  GX 600, 601, 602, 1750x.  Review of banking and real estate records admitted at trial underscores the pervasiveness of Defendant Martinez's criminal conduct.  She invested significant time and energy into the "management" of Zemi, at times even conducting multiple transactions a day at different banks.  She was responsible for collecting rent and mortgage payments from Zemi's tenants and mortgagees.  Based on trial evidence, she was also the primary interface between Zemi and its tax return preparer, providing the preparer with the information he needed to attempt to legitimize the company and assisting Colon in concealing the true nature of Zemi's income.  She knew how Zemi functioned, how it spent its money, and most importantly, where that money came from.  And, despite being separated from

2

Colon for several years, Martinez's criminal conduct persisted.  *Compare* PSR ¶¶ 79-80 *with* PSR ¶¶ 22-24.

Although Martinez's primary role in the drug trafficking enterprise was to launder drug proceeds, her direct knowledge of the underlying drug conspiracy and stake in its success counsel in favor of a sentence at the high-end of the guidelines.[3]  In particular, Martinez understood that the properties were not just a vehicle for laundering money.  Rather, they were pivotal to the operation and success of the drug conspiracy.  *See e.g.*, Trial Tr. July 8, 2022 at 19:9-21:18 (Prieto's testimony regarding drug transactions at Linkwood Avenue involving Martinez); Trial Tr. July 6, 2022 at 71:13-93:8 (testimony regarding underground marijuana grow operation at 4010 Kirkwood Saint Georges Road).  Over the course of the conspiracy, Martinez also engaged in specific acts relating to Colon's drug activities — bringing money to a drug deal, picking up drug proceeds, and renting a truck to transport kilograms of cocaine.  And she even involved her mother and young daughter in the "family business."  Colon stored drugs in a storage unit rented in Martinez's mother's name, and their college-aged daughter conducted banking transactions and real estate transactions funded by drug proceeds.

Martinez also had a personal stake in the overall success and the drug enterprise.  Indeed, a growing and prosperous drug empire would enable Martinez to ensure that her children's upbringing

---

[3] At the hearing on November 21, 2022, this Court sustained Defendant's objection to the reliance on 2S1.1(a)(1) in determining Defendant's base offense level.  As the government argued, based on that provision, Defendant Martinez's would have been held accountable for the underlying drug conduct resulting in a total guidelines range of 235-293 months.  Stating that it was a "close call," the Court ultimately found that Defendant Martinez's applicable guideline range was properly calculated under 2S1.1(a)(2).  Sentencing Tr. Nov. 21, 2022 at 14:22-23.  Nevertheless, as described herein, Defendant Martinez's conduct was inconstant with a typical third-party money launderer who has "no involvement in the underlying offense and only launder[s] the money generated from that offense."  *See United States v. Blackmon*, 557 F. 3d 113, 119 (3d Cir. 2009).  This militates in favor of a sentence at the high-end of the applicable guidelines range of 97-121 months.

stood in stark contrast to her own.   In particular, it meant an escape from poverty in favor of a lifestyle filled with creature comforts.   Martinez used drug proceeds to purchase their family home at 4010 Kirkwood Saint Georges Road — a 2,800 square foot, three bedroom, two and a half bath home, replete with backyard swimming pool and an underground bunker.   Over the course of the conspiracy, Martinez also purchased multiple high-value vehicles, including a brand-new Jeep Grand Cherokee and later an Infiniti QX80.   Trial Tr. July 8, 2022 at 24:13-20.   Moreover, as the manager of Zemi, Martinez was able to obtain the respect of various professionals — lawyers, real estate agents, a tax preparer — with whom she worked year in and year out.   The ability to provide for her children, live a comfortable lifestyle, and achieve a sense of personal and professional accomplishment were all important motivating factors for Martinez's criminal activity.

**B.    The History and Characteristics of Defendant Martinez Support the United States' Recommended Sentence**

There is no question that Defendant Martinez had a difficult and tumultuous upbringing. During Martinez's early childhood, her parents struggled financially and were unable to provide for her basic needs.   PSR ¶ 71.   She experienced difficulties in school due to the language barrier.   PSR ¶ 68.   And she was experienced horrible abuse from adults who she should have been able to trust. PSR ¶¶ 70, 88.   Martinez's transition to early adulthood was similarly rife with difficulty.   By the age of 16, Martinez had moved out of her parents' home and was pregnant with her first child fathered by Colon.   PSR ¶¶ 73, 74.   And four years later, Martinez and Colon would have their second child. PSR ¶ 79.   What's more, Colon proved to be an unreliable and abusive partner.   PSR ¶¶ 75-78.

Nevertheless, Defendant Martinez's criminal conduct cannot be explained away as the product of a misdirected youth.   In spite of the personal hardship and trauma of her youth, Martinez demonstrated resilience.   She worked from the time she was a teenager to provide for her children. PSR ¶ 81.   Moreover, she did not allow teen pregnancy to derail or limit her education.   At the age

4

of 20, Defendant Martinez obtained her high school diploma from James H. Groves Adult High School.  PSR ¶ 95.  And at 27, while Colon was serving a five-year prison sentence for cocaine trafficking, Martinez pursued a paralegal certificate from the University of Delaware.  PSR ¶ 95.

Nor can it be said that Martinez's criminal conduct was the sole product of her relationship with Colon.  Colon's 2003 incarceration provided Martinez with physical and emotional distance from Colon.  Although they resumed their relationship for a brief time after Colon was released from prison in 2007, by 2009 Martinez was fed up with being Colon's "side-chick" and ended the relationship.  PSR ¶ 80.  From 2009 until 2014, Martinez remained estranged from Colon.  *Id.* Despite their separation, Defendant Martinez made a deliberate choice to launder Colon's drug money.  Though Martinez and Colon may have made a terrible love match, they were ideal partners in crime.  All told, over the course of their eight-year money laundering scheme, Martinez facilitated the purchase of 11 of 18 properties in the five-year time-period that she and Colon were living apart.

Martinez is an intelligent person with the ability to make choices that differed from Colon's — including throughout the conspiracy and the pendency of this case.  She had the choice to separate her fate from Colon's, and she chose instead to stand behind him.  This decision was not made exclusively out of an emotional dependency, but also because standing behind Colon benefited her and her family financially.  Defendant Martinez's difficult upbringing and relationship with Colon, when balanced against her deliberate choice to commit numerous crimes over several years, weigh in favor of the recommended sentence.

### C.    The Remaining Sentencing Factors Support the Recommended Sentence

The government's recommended sentence is further supported by the remaining sentencing factors.  Such a sentence is necessary to promote respect for the law, deter Defendant Martinez from criminal conduct, and protect the public.  In this case, Defendant Martinez's lack of criminal history

points do not speak to her otherwise lawful conduct. Quite the contrary, Defendant Martinez spent much of her adult life engaged in serious criminal conduct. As demonstrated at trial, her involvement in criminality was not discretely compartmentalized, but rather permeated nearly every aspect of her life. She picked up drug money from Devin Hackett on the way to the park with her baby boy (GX 402a); she went on a family beach outing with drug traffickers (Trial Tr. July 8, 2022 at 31:21-32:11); and she used her law firm email account to conduct money laundering activities in the name of Zemi (GX 600, 601, 602). And in 2017, when their criminal enterprise was threatened by the suspected cooperation of Josue Torres, Defendant Martinez expressed her disdain for those who would seek to help law enforcement stating: *"Fucker don't snitch, take it like a man shit!"* Trial Tr. July 11, 2022 at 56:8-59:19; GX 429a.

Lastly, the need for general deterrence necessitates a substantial prison sentence. Money is the lifeblood of drug trafficking. The significant role that money launderers play in the success of drug trafficking and distribution cannot be overstated. Those who launder drug proceeds directly contribute to the ongoing drug crisis. The recommended sentence would send a clear message to those engaged in money laundering that their serious crimes will be met with serious punishment.

///

**D.**     <u>**Conclusion**</u>

Taking into account all of the sentencing factors, and for the reasons stated above and incorporated herein, the government respectfully requests a sentence of 120 months of imprisonment.

Respectfully submitted,

DAVID C. WEISS
United States Attorney

BY: <u>*/s/ Meredith C. Ruggles*</u>
Meredith C. Ruggles
Jennifer K. Welsh
Assistant United States Attorneys

Dated:     February 15, 2023