UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

OMAR MORALES COLON,

Movant

v.

UNITED STATES OF AMERICA,

Respondent

Criminal No. 17-CR-47-1(LPS)

Civil No._____



RECEIVED
MAR 16 2026
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

---

MOVANTS PRO SE MEMORANDUM OF LAW AND BRIEF
IN SUPPORT OF 2255 MOTION

COMES NOW, Omar Morales Colon, the PRO SE movant in the above-styled 2255, and would submit this memorandum of Law and Brief in Support of his Motion 2255. (Movant would invoke liberal construction as established by the Supreme Court Haines v. Kerner, 404 UX 519, 1972). This pleading is sworn to under penalty of perjury. 28 U.S.C. 1746.

## I. TRUNCATE PROCEDURAL HISTORY

The exhibits attached to this Procedural History, these exhibits are the same that were used in Movant's direct appeal. See Appx - Exhibits attached to this motion.

In May 2017, law enforcement arrested Mr Colon in Newark Delaware, (Appx 0012). Where government first charged Mr, Colon by criminal complaint. In June 2017, a grand jury in the District of Delaware returned an indictment charging Mr. Colon with four counts of drug trafficking (Appx0118-24). Two superseding indictments were subsequently returned.

The second filed in August 2018, charged Mr. Colon with four counts of drug trafficking and nine counts of money laundering. (Appx0152-73). The second superseding indictment also charged Mr. Colon's wife, Shakira Martinez, with twelve money laundering counts. (Id). In November 2020, the district court ordered that the drug trafficking counts would be bifurcated from the money laundering counts for the purpose of trial (Appx0078)

The first trial, on the drug trafficking counts, began in September 2021 against Mr. Colon (Appx0078-89). Leading up to the trial, Mr. Colon was represented by four different attorneys (He retained the first attorney, and the district court appointed the subsequent three attorneys). As the government neared the close of this case in chief, Ms. Martinez learned that Mr. Colon's third appointed attorney, Ms. Chavar, was administratively suspended from the bar of Pennsylvania. (Appx1013-24; Appx1072-110; Appx1123-24). Mr. Colon's daughter, Ms. Karina Colon subsequently filed a disciplinary complaint against Ms. Chavar. (Appx1072). The district court concluded that Ms. Chavar's administrative suspension did not present a conflict, (Appx1059-65), and told Mr. Colon he could either proceed with Ms. Chavar or proceed pro se (Appx1066-67). The district court informed the jury it was not needed the next day, instructed Ms. Chavar and Mr. Colon to meet the next morning to discuss the decision, and scheduled a status conference for noon for Mr. Colon to share his choice. (Appx1066-67)

The next day, Ms. Chavar represented that she and Mr. Colon would proceed together (1113). The district court adjourned for the day to allow Ms. Chavar and Mr. Colon the afternoon to prepare for trial. (Appx113-114). But immediately after recessing, Ms. Chavar read an email from the Pennsylvania Disciplinary Board, received while she was in court, informing her a complaint was filed against her (Appx1118-20) Ms. Chavar went to speak with Mr. Colon, then forwarded the email to the district court and the government. (Id.). An hour later, when the parties reconvened, the district court found that Mr. Colon had waived by conduct, his Sixth Amendment right to counsel, granted Ms. Chavar's motion to withdraw, and forced Mr. Colon to continue the trial pro se. (Appx 1143-58). The district court appointed the Office of the Federal Public Defender for the District of Delaware as standby counsel for Mr. Colon. (Appx1143). The jury acquitted Mr. Colon on two counts of drug trafficking, and convicted

1.

him on two others. (Appx0088)

In January 2022, Mr. Colon filed a motion for appointment of counsel, asking the district court to reconsider its previous decision that he had waived by conduct his right to counsel. (Appx1220-23). The government responded, (Appx1224-30), and Mr. Colon replied. (Appx1231-35). The District court denied the motion by written memorandum order. (Appx1236-42)

The second trial, on the money laundering counts, began in July 2022 against Mr. Colon and Ms. Martinez. (Appx0101-3). Mr. Colon and Ms. Martinez were convicted on all counts. (Appx0102-3).

In July 2022, Mr Colon requested that the district court appoint counsel for sentencing. (Appx0103). The government did not oppose Mr. Colon's request, and the district court granted it. (Appx0105-6). The district court appointed the Office of the Federal Public Defender for the District of Delaware, which served as standby counsel during Mr. Colon's second trial, as counsel for sentencing proceedings. (Appx0106).

On December 8, 2022, the district court imposed a 540 month sentence, followed by five years of supervised release. (Appx0002-8). Mr. Colon timely appealed. (Appx0001). The Third Circuit Court of Appeals denied Mr. Colon's direct appeal on April 16, 2025.

## II. JURISDICTION

This court has jurisdiction under 28 U.S.C. 2255(a) to make a decision in Mr. Colon's motion 2255. See 28 U.S.C. 2255(a).

## III. TIMELINESS

Movant Omar Morales Colon acting pro se files this motion within one year of the final judgement becoming final on April 20, 2025. This 2255 motion is timely under 2255(f)(1).

## IV. LEGAL FRAMEWORK

To prevail on a 2255 motion for ineffective assistance of appellate counsel, a defendant must satisfy the two-prong test of Strickland v. Washington, 466 US 668 (1984): (1) Deficient performance counsel's representation fell below an objective standard of reasonableness. (2) Prejudice: There is a reasonable probability that , but for counsel's errors, the result of the appeal would have been different.

## V. GROUNDS FOR RELIEF

The Movant files this pro se motion to Vacate, under 28 USC 2255(a), for the ineffective assistance of appellate counsel in violation of Mr. Omar Morales Colon's Fifth and Sixth Amendment rights. The appellate counsel failed to challenge the conviction and sentence on the following grounds for relief:

GROUND - 1

A. APPELLATE COUNSEL FAILED TO CHALLENGE THE CONVICTION ON THE GROUNDS, THAT THE GOVERNMENT DID NOT PROVE BEYOND A REASONABLE DOUBT THE SPECIFIC INTENT (MENS REA) ELEMENT REQUIRED TO SUSTAIN A CONVICTION UNDER 846, WHICH INCORPORATES THE ELEMENTS OF 841(A)(1), INCLUDING KNOWLEDGE OF THE NATURE AND PURPOSE OF THE CONSPIRACY.

B. APPELLATE COUNSEL FAILED TO RAISE IN DIRECT APPEAL, THAT THE DISTRICT COURT CONSTRUCTIVELY AMENDED THE SECOND SUPERCEDING INDICTMENT, IN VIOLATION OF THE SIXTH AMENDMENT GRAND JURY CLAUSE, INSTRUCTING THE JURY USING LANGUAGE TAKEN VERBATUM FROM THE TRIAL TRANSCRIPT THAT THE DEFENDAND "DID KNOWINGLY, INTENTIONALLY, AND UNLAWFULLY CONSPIRE TO DISTRIBUTE COCAINE: WHEN THE GRAND JURY CHARGED ONLY THAT THE DEFENDANT ACTED KNOWINGLY AND INTENTIONALLY, THEREBY ALTERING THE MENS REA ELEMENT AND BROADENING THE BASIS FOR CONVICTION.

C. APPELLATE COUNSEL FAILED TO ADDRESS THE INSTRUCTIONAL ERROR CONCERNING THE "OVERT ACT" APPLIED BY THE DISTRICT COURT INSTRUCTING THE JURY THAT TO CONVICT THE DEFENDANT IN THIS CASE BEYOND A REASONABLE DOUBT BY UNANIMOUS DECISION IN COUNT ONE CONSPIRACY TO DISTRIBUTE COCAINE THE JURY NEEDED TO FIND THAT ONE OF THE OVERT ACTS TOOK PLACE IN THE DISTRICT OF DELAWARE.

D. APPELLATE COUNSEL FAILED TO RAISE THE CHALLENGE SENTENCING UNDER U.S.S.G. AMENDMENT 826 (ACQUITTED CONDUCT) AMENDMENT 826 EFFECTIVE NOV. 1, 2024.

E. APPELLATE COUNSEL FAILED TO RAISE IN DIRECT APPEAL, THE PATTERN JURY INSTRUCTION CHANGED IN THE THIRD CIRCUIT AFTER MOVANT'S CONVICTION UNDER 846 BUT BEFORE MOVANT APPEALED TO THE THIRD CIRCUIT COURT OF APPEALS.

F. APPELLATE COUNSEL WAS INEFFECTIVE FAILING TO ARGUE THAT SENTENCING ENHANCEMENTS BASED ON DRUG TYPE AND QUANTITY REQUIRE JURY FINDING BEYOND A REASONABLE DOUBT UNDER UNITED STATES v. APPRENDI, 530 U.S. 66(2000) AND UNITED STATES v. ALLEYNE 570 U.S. 99(2013).

G. INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL FOR FAILURE TO CHALLENGE CONSTITUTIONALLY DEFECTIVE VENUE AND ERRONEOUS VENUE INSTRUCTION UNDER 846 COCAINE CONSPIRACY.

GROUND - 2

A. TRIAL AND APPELLATE COUNSEL WERE INEFFECTIVE, IN VIOLATION OF MR. COLON'S FIFTH AND SIXTH AMENDMENT RIGHT TO FAILURE TO ARGUE THE FOLLOWING ISSUES:

1. TO REQUEST A FOR JURY INSTRUCTION UNDER THE STATUTORY DEFINITION OF MARIJUANA AND HEMP, AND FAILURE TO REQUEST AN AFFIRMATIVE DEFENSE JURY INSTRUCTION UNDER AGRICULTURE IMPROVEMENT ACT (AIR) OF 2019 NAD U.S.C. 855(a)(1).

2. TO EXCLUDE OR OBJECT IN MOTION IN LIMINE THAT: THE PLANT MATERIAL AS MARIJUANA, TO OBJECT TO THE EXPERT TESTIMONY AS TO MARIJUANA, DEA LAB REPORT, NOTE UNDER FED. R. EVID. 702 AND DAUBERT v. MERELL DOW PHARMACEUTICALS INC. 509 US 579 (1993) TO REQUEST DISCOVERY, AND EXPERT, AND TO INVESTIGATE.

3. THAT THE TRIAL COURT WHEN INSTRUCTION THE JURY AS TO THE DEFINITION OF KNOWINGLY OR INTENTIONALLY DILUTED THE BURDEN OF PROOF THAT THE GOVERNMENT MUST PROVE IN ORDER TO FIND THE MOVANT GUILT ON COUNT IV.

4. THAT AFTER UNITED STATES V. RUAN, 597 US ( 2022) THE SUPREME COURT CLARIFIED THAT FOR A CONVICTION UNDER 21 U.S.C 841 (a)(1) THE DEFENDANT CAN NOT SUBJECTIVELY BELIEVE TO KNOWINGLY OR INTENTIONALLY HE WAS DISTRIBUTING WAS MARIJUANA. AND THAT 21 U.S.C. 841's KNOWINGLY OR INTENTIONALLY MENS REA APPLIED TO EXCEPT AS AUTHORIZED" CLAUSE AND THIS MEANS THAT IN 841 PROSECUTIONS IN WHICH DEFENDANT MET HIS BURDEN OF PRODUCTION UNDER 21 U.S.C. 855, THE GOVERNMENT HAS TO PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT KNOWIMGLY OR IN TENTIONALLY ACTED IN AN UNAUTHORIZED MANNER.

GROUND - 3

A. TRIAL COUNSEL WAS INEFFECTIVE FOR THE ACCUMULATION OF THE ERRORS COMMITTED IN MOVANT'S TRIAL.

GROUND - 4

A. APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT ARGUING IN DIRECT APPEAL THE CONSTITUTIONAL INVALIDITY OF MONEY LAUNDERING CONVICTIONS 18 U.S.C. 1956, 1957.

ARGUMENT SUPPORTING RELIEF ON GROUND - 1

A. Movant argues that his appellate counsel rendered ineffective assistance failing to raise that that government failed to prove beyond a reasonable doubt the mens rea (criminal intent) required to sustain a conviction for conspiracy to distribute cocaine under 21 U.S.C. 846, which incorporates the elements of the underlying offense under 841(a)(1) and (b)(1)(A).

Mens rea is a required element of conspiracy under 846. The government must prove that the defendant knowingly or intentionally joined an agreement to commit a drug distribution offense under 841(a)(1). This includes proving the intent to commit the substantive crime. See United States v. Feola, 420 US 671 (1975) (A defendant cannot be convicted of conspiracy

3.

unless he intended to commit the underlying offense). Also see United States v. Collazo, 984 F. 3d 1308 (9th Cir. 2021)(mens rea for 846 requires the same intent as for 841(a)(1) knowledge that the object of the conspiracy involves a controlled substance and intent to distribute.). (en banc review).

In 2022 the Supreme Court decided United States v. Ruan 597 US 190 (2022). The Supreme Court reinforces that mens rea is required in drug cases involving 841(a); the government must prove the defendant knowingly acted in an unauthorized manner. The Eleventh Circuit in United States v. Colston, 4 F. 4th 1179 (11th Cir. 2021) held that an 846 conspiracy requires proof that the defendant knew the object was a violation of 841.

Here the jury acquitted the defendant on the substantive 841 charge. This indicating that it did not find proof of actual intent or knowledge regarding possession with intent to distribute cocaine. This inconsistency raises serious questions about whether the government met its burden of proving mens rea for the conspiracy count.

Appellate counsel was ineffective for failing to challenge the conviction based on lack of mens rea. Appellate counsel failed to argue that the conviction for conspiracy under 846 could not stand where the jury found the defendant not guilty of the underlying 841 offense, and where evidence of specific intent to distribute was insufficient. Under Strickland this failure constitutes deficient performance, especially given:

- The centrality of mens rea in all the cited cases
- The acquittal of the 841 charge
- The lack of evidence showing the defendant knew the object of the conspiracy involved cocaine in an amount triggering 841 (b)(1)(A)

Also the examination of the record in this case disclosed that while the trial judge charged the jury as to the elements of the conspiracy, he did not instruct them as to the elements of the substantive offense involved in the conspiracy, requiring reversal of the conviction. See United States v. Yasbin 159 F. 2d 705 (3rd. Cir 1947).

Failure to raise this issue prejudiced the defendant, as a successful argument on appeal could have vacated the conspiracy conviction and reduced the sentence. All these cases; Feola, Collazo, Colston, and Ruan were decided during Movant's trial, before he appealed to the Third Circuit Court of Appeals.

B. The Movant argues that his appellate counsel was ineffective for failing to raise in direct appeal that the district court constructively amended the second superseding indictment.

The district court constructively amended the second superseding indictment in violation of the Fifth Amendment Grand Jury Clause by instructing the jury using language taken verbatim from the trial transcript that the defendant "did knowingly, intentionally and unlawfully conspire" to distribute cocaine, when the grand jury charged only that the defendant acted "knowingly and intentionally" thereby altering the mens rea element and broadening the bases for conviction.

The second superseding indictment charged that:

"Beginning on or about December 14, 2016, and continuing to on or about May 6, 2017, in the District of Delaware and elsewhere, the defendant, OMAR MORALES COLON, knowingly and intentionally combined, conspired, confederated, and agreed with others to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A), all in violation of Title 21, United States Code, Section 846."

The indictment did not allege that the defendant acted "unlawfully" as a distinct element.

See second superseding indictment in the Appendix section and compare with the district court jury instruction language in Appendix section.

During the final charge conference and jury instructions, the district court instructed the jury as follows:

"Count One of the Second Superseding Indictment charges that from on or about December 14, 2016 to on or about May 6, 2017, the defendant Omar Morales Colon did knowingly intentionally, and unlawfully conspire with one of more persons, both known and unknown to the Grand Jury, to distribute five kilograms or more of a mixture and substances containing a detectable amount of cocaine."

(See trial final jury instructions pg. 38, and trial transcript September 27, 2021 pg 1165:5-16 Exhibit A)

The court then instructed the jury that to convict the government must prove beyond a reasonable doubt five elements, incorporating the above language as part of the offense definition.

4.

The jury returned a guilty verdict on Count One following these instructions. The district court violated Movant's Fifth Amendment and Constructive Amendment. The Fifth Amendment requires that a defendant be tried only on charges returned by the grand jury. A constructive amendment occurs when the trial evidence or jury instructions modify an essential element of the offense charged in the indictment, such that the defendant may have been convicted on a ground not charged by the grand jury.

In the Third Circuit, a constructive amendment is a per se reversible error and is not subject to harmless-error review. See United States v. Miller 527 F. 3d 54 (3rd Cir. 2008); also see United States v. Daraio, 445 F. 3d 253 (3rd Cir. 2006) and United States v. Syme, 276 F 3d 131 (3rd Cir. 2002)

To convict the Movant in in this case under 846, the government must prove beyond a reasonable doubt:

- An agreement to distribute a controlled substance
- The movant knowingly and intentionally joined the agreement
- The Movant shared the conspiratorial objective

No overt act is required under 846.

The statute does not list "unlawfully" as an independent mens rea element; the required mental state is knowledge and intent. The district court constructively amended the mens rea element. (Fifth Amendment).

As instructed, the jury was told that defendant "did knowingly, intentionally, and unlawfully conspire" to distribute cocaine. The Second Superseding Indictment, however, charged only that the defendant acted "knowingly and intentionally." By incorporating "unlawfully" into the offense definition and elements, the district court altered the mens rea framework returned by the grand jury.

In conspiracy cases, mens rea is critical. section 846 requires proof that the defendant knowingly and intentionally entered an agreement to violate the drug laws. Introducing "unlawfully" risks permitting conviction based on generalized criminality or illegality rather than proof of a specific conspiratorial agreement and intent.

Under the Third Circuit precedent, this alteration constitutes a constructive amendment because it "effectively modified an essential element of the offense charged" United States v. Miller 527 F. 3d 54, 66 (3rd Cir. 2008)

Cause exists because trial and appellate counsel failed to object to, or challenge on direct appeal, the jury instructions that altered the mens rea element of the offense.

Counsel's performance was objectively unreasonable because:

- Third Circuit law clearly establishes that constructive amendment is per se reversible error

The discrepancy between the indictment and the jury instruction was apparent on the face of the record. Competent counsel should have preserved the issue.

This failure satisfies the Cause prong under Murray v. Carrier and Strickland v. Washington.

Prejudice Structural Error

Prejudice is presumed, under Third Circuit precedent, constructive amendment constitutes structural error, requiring automatic reversal. "A constructive amendment of an indictment is per se a violation of the Fifth Amendment" United States v. Syme, 276 F.3d 131, 155 (3rd Cir 2002)

C. Movant argues that appellate counsel failed to raise instructional error concerning the "overt act" applied by the district court instructing the jury.

Under 846 "overt act" is not required to convict Omar Morales Colon, the Movant in this case.

The government's theory and presentation emphasized overt acts as proof of guilt under the conspiracy 846. The government erred to charge Mr. Colon in the conspiracy 846 with overt acts to support a conviction under that statute (See: Superseding indictment pg. 3-4, Exhibit C)

NO OVERT ACT REQUIREMENT. As to the lack of an overt act element under 21U.S.C. 846, the Supreme Court explained in United States v. Shabani, 513 US 10, 13-14 (1994) (see 6.21.846 New Jersey instructions Revised on 1/2024. See Exhibit A):

The language of [21 U.S.C. 846 does not] require that an overt act be committed to further the conspiracy, and we have not inferred such a requirement from congressional silence in other conspiracy statutes... Nash [v. United States, 229 US 373 (1913)] and Singer [v. United States, 323 US338 (1945)] follow this settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms.  See Molzof v. United States, 502 US 301, 307-308, 112 S. Ct. 711, 715-716, 116 L. Ed. 2d 731 (1992).  We have consistently held that the common law understanding of conspiracy "does not make the doing of any act other than the act of conspiring a condition of liability."  Nash, supra, 229 US at 378, 33S. Ct. at 782; see also Colling v. Hardyman, 341 US 651, 659, 71 S. Ct. 937, 941, 95 L. Ed. 1253 (1951); Bannon v. United States, 156 US 464, 468, 15 S. Ct. 467, 469, 39 L. Ed. (1985) ("At common law it was neither necessary to aver nor prove an overt act in furtherance of the conspiracy...")

[W]e find it instructive that the general conspiracy statute, 18 U.S.C. 371 contains an explicit requirement that a conspirator "do any act to effect the object of the conspiracy."  In light of this additional element in general conspiracy statute, Congress' silence in 846 speaks volumes.  After all, the general conspiracy statute precedent and presumably provided the framework for the more specific drug conspiracy statute.  "Mash and Singer give Congress a formulary by choosing a text modeled on the Sherman Act, 15 U.S.C. 1, it dispenses with such a requirement." Unite States v. Sassi, 966 F, Ed, 283, 284 (CA7 1992). Congress appears to have made the choice quite deliberately with respect to 846.  See also United States v. Rodriguez, 726 Fed Appx, 136 (3rd Cir 2018)

The appellate counsel was ineffective because the district court emphasizing overt acts risked confusing jurors into believing that proof of the act alone rather than proof of agreement and intent suffices for conviction.  This error compounded together with the constructive amendment by further diluting agreement requirement of 846.

In January 2024, the Third Circuit Court of Appeals clarified that "No overt act is required to support conspiracy to distribute cocaine under 846" See 6.21.846B  See Exhibit A.  Appellate counsel should have known that in January 2024 the Third Circuit Court of Appeals clarified that "No Overt Act" requirement is necessary to convict a defendant under conspiracy 846.

Because "No Overt Act" is necessary to convict Mr. Colon under the conspiracy to distribute cocaine on Count One, the appellate counsel was ineffective to not argue this claim in Mr. Colon's direct appeal. In this argument this court need consider the constructive amendment to the indictment, because the overt acts were used by the government to take jurisdictional venue in Delaware, when in the reality the jurisdiction avenue to proceed this case was in California.

D. Appellate counsel failed to raise the challenge at sentencing under U.S.S.G. Amendment 826 (acquitted conduct).  This amendment was made effective on November 1, 224.

The appellate counsel's failure to argue that to convict the defendant of conspiracy under 846, the government not only must prove beyond a reasonable doubt that the defendant agreed with another person that some member of the conspiracy would commit the relevant underlying offense of 21 U.S.C. 841(a)(1). It must also prove that the defendant has the requisite mental state intent necessary for the substantive offense for an 841(a)(1) conviction.

That conviction under 846 does not require proof of a level of criminal intent less than that is required for the underlying offense merely because it is a conspiracy.  That to obtain a conviction and particular sentence for conspiracy to distribute cocaine under 846, the government must prove that the defendant had the mental state was the same as the substantive offense in Count 2. The failure to challenge movant's sentence under Amendment 826 acquitted conduct under relevant conduct was ineffective counsel because counsel should have known that Amendment 326 was in effect when Mr. Colon appealed to the Court of Appeals.

The reason for the Amendment 826 was to implement to revise 1B1.13 (Relevant Conduct (factors that determine the Guideline range)) to exclude acquitted conduct from the scope of relevant conduct used in calculating a sentence range under the federal guidelines.  Acquitted conduct is unique, and this amendment does not comment on the use of uncharged, dismissed or other relevant conduct as defined in 1B1.13 for purposes of calculating the guideline range.

The amendment revises 1B1.13 by adding new subsection (c), which provides that "[r]el-vant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court unless such conduct also establishes, in whole or in part, the instant offense of conviction".  This rule seeks to promote respect for the law, which is a statutory obligation of the Commission.  See 28 U.S.C. 994 (a)(2), id 991 (b)(1)(A), (B), 18 U.S.C. 3552(a)(2).  See Exhibit D.

E. Appellate counsel was ineffective because the failure to argue that the pattern jury instruction changed in the Third Circuit Court of Appeals right after Movant was convicted, violated his constitutional right.

Movant argues that the appellate counsel's failure to argue in his direct appeal, that the pattern jury instruction under conspiracy charge in violation of 846 in violation of 841(a)(1) was amended after Movant was found guilty by the jury, but before his direct appeal. so the appellate counsel should have known that the following changes were made:

6.

1. On January 2024, the Third Circuit Court of Appeals amended the jury instruction under federal statute 846 in violation of 841(a)(1) See: 6.21.846B, See: Exhibit A

2. The court clarified and defined controlled substance-Distribute. The court took the notes to O'Malley et al[.] supra, 64.04 state:

"This instruction is based, in part, upon 21 U.S.C.A. 802(8) and 802(11) Section 802(8) defines 'deliver' or 'delivery' to mean the 'actual constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship' Section 802(11) defines 'distribute' to mean 'to deliver (other than by administering or dispensing) a controlled substance'. A 'distributor' is one 'who so delivers a controlled substance' 21 U.S.C.A. 802(11).

Distribution simply involves an unlawful transfer -- sale or exchange of money or other 'commercial' item is not required. See United States v. Workopich, 479 F 2d 1142, 1147 (5th Cir 1973); United States v. Ramirez, 608 F 2d. 1261, 1264 (9th Cir 1979` See also United States v. Figueroa, 729 F. 3d 267, 273 (3rd Cir, 2013);  United States v. Semler, 858 Fed Appx 553 (3rd Cir. 2021)(non-[precedential](discussing whether the definition of "distribute" includes individuals who jointly and simultaneously acquire possession of a small amount of a controlled substance for personal use) See: 6.21.841-2 Controlled Substance - Distribute defined Revised on 1/2024.  See Exhibit E

3. No Overt Act is required. The Third Circuit Court of Appeals clarified that no overt act element is necessary as element under 21 U.S.C. 846, the Supreme Court explained in Us v. Shabani, 513 US 10, 13-14 (1994).  The language of [21 U.S.C. 846 does not] require that an overt act be committed to further the conspiracy, and we have not inferred such a requirement from congressional silence in other conspiracy statute.

4. The Third Circuit Court of Appeals also changed the  "Jury Verdict Form" to require "Special Interrogatories" to the jury find beyond a reasonable doubt not only the maximum sentence under Apprendi, but also the minimum sentence under Alleyne. The Court made clear that the jury need "unanimously find that the government proved beyond a reasonable doubt the weight of the mixture or substance involved.  See 6.21.846B and 6.21.841C New Jury Instructions Revised 1/2024 See: Exhibit E

Because changes were made by the Third Circuit Court of Appeals clarifying the jury instruction and other changes before the movant's direct appeal, the appellate counsel violated his Sixth and Fifth Amendment Rights.

F.  Appellate counsel was ineffective failing to argue that sentencing enhancement under 841(b)(1)(A) was unconstitutionally imposed under the Supreme Court case law United States v. Apprendi, 530 US 466 (2000) and United States v. Alleyne, 570 US 90 (2013).

In this case the district court instructed the jury that, to convict, it must find that the total amount of cocaine involved in the conspiracy was five kilograms or more.  However, the instructions failed to require the jury to find that the defendant knowingly or intentionally agreed to distribute that threshold quantity.

Under Apprendi and Alleyne, any facts that increase the statutory minimum or maximum penalty must be submitted to the jury and proven beyond a reasonable doubt.  In drug conspiracy cases, the Third Circuit requires that the jury determine the quantity attributable to the defendant and within the scope of his agreement.

By omitting a mens rea requirement tied to the five-kilogram threshold, the court permitted the jury to convict based on quantities attributable to others, thereby lowering the government's burden of proof and violating the Fifth and Sixth amendments.

The jury verdict form did not ask for special interrogatories tied to Apprendi and Alleyne.  The verdict form only asked the jury as follows:

"As to Count One, charging the defendant with conspiracy to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, we the jury find the defendant"

_____NOT GUILTY _____GUILTY

Based on the jury verdict form, the district court did not follow the Supreme Courts new constitutional law.  The Third Circuit updated to require new VERDICT FORM with SPECIAL INTERROGATORIES.  See: Exhibit F and Exhibit E

Because the district court imposed 540 months imprisonment on Count One in violation under Apprendi and Alleyne, the sentence was imposed unconstitutionally contrary to the Supreme Court's new rule of the Constitution.

G.  Movant argues that his trial and appellate counsel were ineffective for failure to challenge constitutionally defective venue and erroneous venue instruction for the conspiracy 846 involving cocaine.

The Sixth Amendment and Article III, Subsection 2 of the United States Constitution guarantees a criminal defendant the right to be tried only in the district where the offense was committed. Venue is not a technicality, it is a constitutional element that must be proven by the government beyond a reasonable doubt and submitted to the jury. United States v. Perez 280 F. 3d 145, 155 (3rd. Cir. 2009)

The indictment alleged a cocaine conspiracy under 21 U.S.C. 846, asserting venue in the District of Delaware based on alleged "overt acts". The government's theory at trial was that the cocaine conspiracy originated in California, with drugs allegedly transported toward the East Coast. The jury acquitted Mr. Colon of attempt to possess with intent to distribute cocaine, and

manufacturing marijuana. The jury convicted Mr. Colon of cocaine conspiracy (846), possession with intent to distribute marihuana, and money laundering. The only Delaware-based conduct identified by the government consisted of alleged acts that did not involve cocaine, did not involve possession, and did not advance the charged cocaine conspiracy. During the charge conference, the court instructed the jury that it could convict if it found that either the agreement or an overt act occurred in Delaware.

Deficint Performance occured in this case, when counsels failed to challenge venue based on lack of evidence of an act in furtherance of the conspiracy. Trial counsel rendered constitutionally deficient performance by failing to move for acquittaland failing to object to venue where:

* The government presented no evidence that any act occurring in Delaware furthered the charged cocaine conspiracy.
* The alleged Delaware conduct relates, at most,. to other offenses (marijuana and money laundering), not the cocaine conspiracy charged in Count One.

While 846 does not require proof of an overt act for guilt, venue does require proof of an act in furtherance when the agreement was formed elsewhere. Root, 585 F. 3d at 155. Counsel's failure to recognize and litigate this distinction fell below an objective standard of reasonableness.

Counsel failed to object to legally erroneous venue instruction.

The court instructed the jury that it could convict if it found that "the agreement or an overt act occurred in Delaware"

This instruction was misleading and constitutionally defective because:

* It failed to clarify that any act relied upon for venue must further the charged cocaine conspiracy, not merely occur in Delaware.
* It permitted the jury to find venue based on conduct unrelated to the cocaine conspiracy
* It allowed conviction without proof of venue a reasonable doubt

Third Circuit law requires that venue instructions accurately limit the jury's consideration to acts in furtherance of the charged offense. Perez 280 F.3d at 329.

Trial counsel's failure to object constitutes deficient performance. Appellate counsel was ineffective for failing to raise the Venue Error. Appellate counsel compounded trial counsel's errors by failing to raise:

Insufficient venue evidence, and erroneous venue instructions on direct appeal, despite a complete trial record establishing the issue. To establish prejudice, Mr. Colon need only show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694 (1984)

Venue was not proven beyond a reasonable doubt. Had counsel properly objected, the court would have been required to assess whether any Delaware conduct furthered the cocaine conspiracy. The record shows:

* No cocaine was possessed in Delaware
* No negotiation, agreements, payments, or coordination regarding cocaine occurred in Delaware
* The jury's acquittal on the cocaine attempt count confirms the absence of Delaware-based cocaine conduct. absent venue, Count One could not lawfully proceed in the District of Delaware.

The erroneous instructions lowered the government's burden. The jury instruction permitted conviction based on geography alone, not conspiratorial advancement. There is a reasonable probability that a properly instructed jury would have found venue unproven and acquitted on Count One.

8.

Venue error is structural or, at minimum, outcome-determinative. Improper venue affects the fundamental fairness of the proceeding and the defendant's constitutional right to be tried in the proper district. Se United States v. Cabrales, 524 US 1 (1998). The confidence in the verdict is undermined. See Trial transcripts September 24, 2021 pg. 1131: 11-25 pg. 1132: 1-18, Jury Instructions from trial pg 13. See Exhibit G

ARGUMENT SUPPORTING RELIEF GROUNDS 2

A. TRIAL AND APPELLATE COUNSEL WERE INEFFECTIVE IN VIOLATION OF MR. COLON'S FIFTH AND SIXTS

AMENDMENT RIGHTS TO FAIL TO ARGUE THE FOLLOWING ISSUES:

1. To request a jury instruction under the statutory definition of marijuana and hemp, and failure to request an affirmative defense jury instruction under Agriculture Improvement Act (AIR) of 2018 and 21 U.S.C. 855(a)(1).

2. To exclude or object in motion in limine that :
A- The plant material was marijuana
B- To object to the expert testimony as to marijuana, DEA Lab. Report, note under Fed. R. Evid. 702 and Daubert v. Merell Dow Pharmaceuticals Inc. 509 U.S. 579 (1993)
C- To request Discovery, an expert, and to investigate

3. That the trial court when instructing the jury as to the definition of knowingly or intentionally dilute the burden of proof that the government must prove in order to find the movant guilty on Count IV.

4. That after United States v. Ruan, 597 U.S. 450 (2022) the Supreme Court clarified that for a conviction under 21 U.S.C. 841 (a)(1), the defendant can not subjectively believe to knowingly or intentionally know that what he was distributing was marijuana. And that 21 USC 841's knowingly or intentionally mens rea applied to "Expert as Authorized" clause, and this means that in 841 prosecution in which the defendant met his burden of production under 21 U.S.C. 855, the government has to prove beyond reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner.

Based under these issues enumerated by the Movant in this case, he argues that after he wrote to the court concerning Ms. Chavar's representation Ms. Chavar visited the movant at FDC Philadelphia. At this meeting the movant stated to Ms. Chavar that the discovery was lacking.

The movant observed, that the laboratory report did not have measurement of uncertainty. The GCMS test graphs did not have a margin of error, the government's Rule 16 disclosure did not have the master validation report. Without this information it was going to be a problem assessing the soundness of the government expert forensic chemist testimony. Therefore the defendant requested Ms. Chavar for a forensic chemist expert for his defense.

On September 9, 2021, at the for motion in limine defense counsel did not object to the forensic chemist expert testimony regarding marijuana under Fed. R. Evid. 702. See: Hearing for motion in limine. pg. 18: 7-14 See Exhibit 1 of Ground 2

On September 27, 2021 movant was convicted on Count IV, possession with intent to distribute marijuana, in violation of 21 USC 841(a)(1) and 841 (b)(1)(C).

In trial, in order to prove Count IV, the government relied heavily on forensic chemist Mr. Li's testimony, to which he testified that the substance was identified as marijuana by 4-AP color test, microscopic examination, and gas chromatography/Mass spectrometry, but ultimately testifying that in order for the seized plant material to qualify as marijuana it had to be over one percent threshold of THC.

However, without the evidence from Count III which movant was found not guilty, the testimony of Mr. Li and the Lab. Report which did not include any measurement of uncertainty, the THC concentration was estimated, it did not disclose any margin of error in the testing equipment or potential error rate on the identification procedure. The failure to disclose the THC concentration value after the one percent threshold and the government failure to disclose the master validation report, the government did not prove that the defendant knowingly or intentionally possessed with the intent to distribute marijuana beyond a reasonable doubt.

Under Daubert v. Merrell Dow Pharmaceutical Inc., 509 US 579 (1993) and Fed. R. Evidence 702, expert testimony must be based on reliable scientific methods and principles. The proponent of the expert evidence bears the burden of establishing that the expert's methods are scientifically valid and properly applied to the facts of the case. In the context of forensic drug analysis, reliability requires adequate documentation of testing methodology, calibration and measurement uncertainty, Kumho Line v. Carmichael, 526 US 137, 141 (1999).

9.

At trial in this case the government ultimately stated that for the plant material to be deemed marijuana it had to be over one percent THC threshold. See 9/24/2021 trial trans. pg. 911: 18-20, See: Exhibit 2-A. Making the THC concentration an element of the offense.

The DEA's testing methods for seized plant material are qualitative which merely detect the presence of THC in a substance contrary to the agriculture improvement act of 2018 that requires a quantitative testing method. See 7C.F.R.990. See Exhibit 2

Following the AIA, Congress made THC concentration, not mere presence, the distinguishing element between lawful THC concentration and unlawful THC concentration. As per the AIA is 3% THC, applying the measurement uncertainty. See 7 C.F.R. 990/ 25(c), See Exhibit 2-C, and as per DEA standards it has to be over one percent THC, anything in between and it will be deemed inconclusive per DEA standards.

In this trial the government did not prove that the substance was marijuana. At trial Mr. Li was asked if over one percent of THC is needed to determine if the substance is marijuana, to which he stated that it is one of the requirements. See trial trans. pg. 933: 16-17.

Then Mr. Li was asked if hemp is the same as marijuana, to which he stated: "It's not applicable in this analysis". See trial trans. pg 933: 19-23. See Exhibit 2-D

As the statute stated, hemp and marijuana come from the same plant and have the same characteristics, what makes them different is the THC concentration. Mr. Li stated that the plant material had over one percent THC concentration. When in fact this was an estimation. See pg. 934: 3. The following statement occurred in trial court.
Q: How much percent of THC does marijuana have?
A: We estimate the purity of the THC, but we didn't test the exact purity of the THC.

See pg. 937: 12-15 the following occurred:

Q: You did an assessment, you said.
A: That' the estimation
Q: But you don't know how much THC you have
A: No

See Exhibit 2-D

An estimation is insufficient and more so when that estimation doesn't account for the measurement of uncertainty and more so when Mr. Li failed to do an estimation value of the THC concentration after the over one percent threshold required by DEA standards.

Mr. Li was asked if hemp has THC. See pg. 937: 18-19, the following occurred

Q: Does hemp have THC?
A: It should

In fact Mr. Li never tested hemp See pg. 937: 25

Q: And you have never done a testing on hemp before? (pg 938:1)
A: I don't recall.

The DEA testing and lab report were scientifically incomplete, because it failed to include (MU) required under 150/1EC17025 and SWDRUG standards and the DEA's office of forensic sciences laboratories, operate under accreditation by the National Accreditation Board to the 150/1EC 17025: 207 standard, section 7.6, which requires accredited laboratories to determine and apply (MU) for all quantitative results and to understand its effect on qualitative identifications.

The qualitative testing and Mr. Li's testimony merely identified the THC concentration in the Plant Material and it was incapable of proving he controlled status of cannabis beyond a reasonable doubt.

An affirmative defense under the AIA would have undermined the reliability and accuracy of the performed test on the alleged marijuana since the government never introduced into evidence how much over the one percent threshold the substance was and the use of quantitative testing instead of qualitative testing that only estimates subjective THC values.

Under United States v. Rivera 74 F. 4th 134 (2022)

10.

The Third Circuit held that the Agriculture Improvement Act carved out an exception to marijuana offenses under 21 USC 885(a)(1) (Exhibit E) which codified the principle that the government did not have to negate an exception to a criminal offense, and that it is the defendant who has to put the exception at issue. Creation of an affirmative defense to marijuana offenses. Rivera also clarified that the government has to prove that the substance is marijuana. The government can prove that the substance is marijuana by using expert testimony and circumstantial evidence. But the government must prove beyond a reasonable doubt that the defendant knew that he possessed with intent to distribute marijuana.

The problem in this case is that the court improperly instructed the jury and diluted the burden of proving that the substance was marijuana in Count IV. Permitting a conviction based on generalized criminality or illegality rather than specific proof.

At trial during the final jury instructions the district court instructed the jury as follows. See Trial trans. 9/24/21 pg. 1147: 3-25 See Exhibit 2-E

The phrase knowingly or intentionally, as used in the offenses charged requires the government to prove beyond a reasonable doubt that the defendant knew that what he manufactured or possessed with intent to distribute was a controlled substance.

"In addition to Count 2 and 3 the government must also prove the identity of the controlled substance (cocaine and marijuana) respectively and the weight of the controlled substance (over 5 kilograms and over 100 plants respectively)"

By the court stating that only on Count 2 and 3 the jury had to find the respective controlled substance and not addressing Count IV may have confused the jury but also violated the Supreme Court precedent in United States v. McFadden, 135 S. Ct. 2298 (2015). The Supreme Court made clear that it is not enough that the government prove that the defendant believed he was dealing with an illegal regulated substance "under some law" rather the government must prove "that a defendant knew he was dealing with a controlled substance" 'Marijuana'.

The evidence to prove Count IV was extricated from the evidence to prove Count III for which the defendant was found not guilty, now creating a problem with the burden of proof that the government must meet. Because the governments theory in this case was that the alleged marijuana that the defendant possessed with intent to distribute was harvested marihuana linking it to Count III.

In Ruan v. United States, 597 U.S. 450 (2022) the Supreme Court clarified the required mens rea for a conviction under 21 U.S.C. 841(a)(1), with regards to knowingly and intentionally, it also clarified that the men's rea apply to the except as authorized, that once the defendant produces such evidence the government must prove that the defendant produces such evidence, the government must prove that the except authorized exception does not apply. 597 US 456, that is the government that bears the burden to prove that the defendant did not subjectively believe the distribution was authorized, thus, the jury instructions as a whole must clearly require the government to prove that the defendant knowingly or intentionally acted in an unauthorized manner. See also: 7 C.F.R. 990.29. See Exhibit 2-F 6.21.841-4 Controlled Substance offenses - knowingly or intentionally defined.

The government's case relied on expert testimony and a DEA marijuana lab report. Confirmation that the seized material was marijuana in violation of 21 U.S.C. 841(a)(1). Without scientifically reliable identification the prosecution could not prove the essential element of the offense that the substance was a controlled substance as defined under federal law.

Counsel rendered ineffective assistance by failing to object to the admission of the DEA lab report which lacked a scientifically required "measurement of uncertainty" and failed to state the estimation value of THC beyond the 1% mark. The omission of these critical data points rendered the testimony and lab report unreliable under Daubert v. Merrell Dow Pharm., 509 US 579 (1993), and inadmissible under Fed. R. Evid. 702.

And the failure to raise the affirmative defense under AIA and the failure to request the jury instructions on the statutory definition of marijuana and hemp prejudice.

Had the appellate counsel raised these issues there is a reasonable probability that the Third Circuit would have reversed on remand for new trial on Count IV. The omitted arguments were stronger than those presented and directly addressed essential elements of the offense. The jury may have acquitted has it been properly instructed on the hemp exclusion and the mens rea standard

11.

The Movant's sentence imposed for possession with intent to distribute marijuana on Count Four of his indictment was imposed in violation of the Fifth and Sixth Amendments because appellate counsel rendered ineffective assistance by failing to challenge the district court's reliance, and sentencing, on facts necessarily rejected by the jury's acquittal.

The jury acquitted the movant of manufacturing marijuana, the sentencing court nevertheless punished him for possession with intent to distribute based on the same marijuana, effectively contradicting the jury's factual determination.

Movant was charged in a multi-count indictment, including:

Count Three:  Manufacturing 100 or more marijuana plants, in violation of 21 U.S.C. 841(a)(1), (b)(1)(B)
Count Four:  Possession with intent to distribute marihuana, in violation of 21 U.S.C. 841(a)(1), (b)(1)(C)

Both counts were alleged to have occurred on or about May 6, 2017, in the District of Delaware and were based on the same marijuana.

After trial, the jury:

- Acquitted movant on Count Three (Manufacturing)
- Convicted him on Count Four (possession with intent)

The district court sentenced movant on Count Four while relying on the same marijuana that formed the basis of the acquitted manufacturing charge.  Appellate counsel did not raise any claim arguing that the sentence violated due process or collateral-estoppel principles.  To establish ineffective assistance, a movant must show: Deficient performance, and Prejudice.  Strickland v. Washington, 466 US 668 (1984).

Appellate counsel is ineffective where he omits a clearly stronger issue that has a reasonable probability of success.  See United States v. Robbins 528 US 259, 288 (2000) also see United States v. Mannino, 212 F. 3d 835, 840 (3d Cir. 2000)

Counsel's performance was constitutionally deficient. The jury was instructed that 'manufacture' meant production, planting, cultivation, growing, or harvesting marijuana. The jury then acquitted movant on Count Three.

Despite this, the  district court sentenced movant on Count Four using the same marijuana, without distinguishing it from the conduct the jury had rejected.

Appellate counsel failed to argue that:

- The acquittal had preclusive effect
- The sentence violated due process OR
- The court impermissibly relied on facts necessarily rejected by the jury.

This was not a mere 'inconsistent verdict' claim barred by United States v. Powell, 469 US 57 (1984).  It was a constitutional sentencing claim grounded in Ashe v. Swenson, 397 US 436 (1970).  Omitting this claim fell below professional norms.  This was prejudice to the movant's sentence.  There is a reasonable probability of a different outcome.

The Third Circuit recognizes that when a jury necessarily decides an issue of fact in a defendant's favor, that determination cannot be relegated.  See United States v. Rigas, 605 F. 3d 194, 217 (3d Cir. 2010), see also Unites States v. Pelullo, 14 F. 3d 881, 889 (3d Cir 1994)

Had appellate counsel raised the issue, there is a reasonable probability that the Court of Appeals would have vacated the sentence, and remanded for resentencing without reliance on the acquitted conduct.  This satisfies Strickland's prejudice requirement.

The anticipated government arguments and rebuttal.  The government may argue 'inconsistent verdicts are permissible'.  The Movant's rebuttal is this claim does not challenge the validity of the verdicts.  It challenges sentencing fact-finding that contradicted facts necessarily decided by the jury.  Powell does not govern sentencing.

Government may also argue that 'acquitted conduct may be considered at sentencing'.  Movant's rebuttal that even under United States v. Watts, 519 US 148 (1997), acquitted conduct may not be used where the jury necessarily rejected the factual predicate.  The Third Circuit applies collateral estoppel where an acquittal resolves a factual issue.  Rigas, Pellulo.

The last anticipated government argument is that 'possession and manufacturing are separate offenses'.  Movant rebuts that the issue is not statutory separateness but identity.  The indictment, proof, and verdict establish that both counts were based on the same marijuana on the same date.

12.

The government may argue that 'no prejudice' happened in this case. The movant rebuts that where a sentence rests on constitutionally permissible facts, prejudice is presumed where correction would reduce sentencing exposure. Strickland, 466 US 694. Movant's sentence was unconstitutionally imposed under the record in this case.

ARGUMENT SUPPORT RELIEF ON GROUND - 3

A.  TRIAL COUNSEL WAS INEFFECTIVE FOR THE ACCUMULATION OF THE ERRORS COMMITTED IN MOVANTS TRIAL

Trial counsel was ineffective for failure to impeach key government witnesses to secure and subpoena exculpatory or impeachment records (criminal histories, Cellebrite cellphone reports, chain-of-custody anomalies, and altered UTC, Incorrect MEI) (includes failure to preserve and introduce impeachment evidence Giglio/Brady issues),  Also, the trial counsel was administratively suspended and rendered deficient representation (failed to communicate, never reviewed discover with defendant, admitted she didn't obtain records due to personal problems)(Performance prong: Counsel's admitted non-preparation, Prejudice: Trial outcomes where those records/witness would have mattered)

The trial counsel's failure to move to exclude proffer/plea statements (Rule 410/Rule 11 f).  Law Rule 410 and Rule 11(f) bar use of statements made in plea negotiations (and statements in proceeding under Rule 11 against a defendant except in limited circumstances; the Supreme Court has held that a defendant may waive Rule 41 protection but one by clear, voluntary waiver (see Mezanatto).  If the government cannot produce a signed proffer offer or plea agreement, and the government disclaimed having one (or said it was misplaced), trial counsel's duty is to move to exclude those statements in limine and, if they were admitted, to object and seek a curative instruction or mistrial.  The Third Circuit has recognized the Rule 410 protection and the proffer statement are often inadmissible absent waiver.

If the prosecutor attempted to use proffer statements (or the proffer session) to impeach or to tell the jury about admissions, counsel had a duty to move to exclude under Rule 410 and Rule 11(f).  Failure to move in limine or to object when statements were used is objectively unreasonable. Prejudice follows if the statements were material to the counts on which the jury convicted (eg. Count 1 conspiracy or Count 4 possession with intent).  Argue that a motion in limine or immediate objection would have kept the statements from the jury or at least a preserved record for appeal. See Fed. R. Evid. 410; Fed. r. Crim. P. 11(f); Mezanatto (waiver principle), Third Circuit Rile 410 discussions.  Tr Trans 9/24/24 pg 1041-2, 863-68.  See Exhibit 1 of Ground-3-A

Trial attorney Dina Chavar rendered ineffective assistance of council for failure to suppress or request to exclude alleged statements made during an alleged proffer session in violation of Fed. R. Evid. 740 and Fed. R. Crim. P. 11(f).

- Statements made in pleas discussions are inadmissible unless a valid waiver exists

The government alleged that shortly after my arrest and following the retaining of counsel David Paul-Alva, the government interviewed the defendant on May 11, 2021 and as a result of this meeting a proffer agreement was signed.

On August 19, 2021.  Trial Memorandum and Motion in Limine were filed. The government in their motion requested the court to be allowed to use alleged proffer statement made by the defendant to impeach his testimony on cross-examination or in rebuttal in the even that the defendant testified on his own behalf at trial and the defendant's testimony was different from the proffer agreement.  See: August 19, 2021, Trial Memorandum and Motion in Limine, section J Impeachment Evidence pg. 36-39.

On Sept. 9, 2021.  The hearing for Motion in Limine was conducted. At the hearing the defendant objected.  See: pg 21, sec. 14-20.

Then the government entered into an agreement as to the defendant reserving his right to oppose the motion. See: pg. 22, sec. 22-24.

At trial on 9/24/2021.  The government asked the Court to revisit the issue, in which the defendant objected.

When the defendant was asked if he was ging to testify on his own behalf, the defendant objected, satating that the proffer statement on which the government wanted to rely was self-serving.  The Court , without a hearing , rule in the government's favor and allowed the statements for impeachmentpurpose. See: trial transcript september 9, 2021.

A Proffer Agreement is a written contract between a defendant and the government.  It allows the person to speak openly , often in hope of a plea deal, while limiting the government's ability to use that information against the defendant, but only under specific conditions, as in this case for impeachment purpose.  Fed. R. Evid. 410 and Fed. R. Crim. P. 11(f).

A proffer agreement must typically be in writing, signed by the defendant, defense counsel, and the prosecution.  It shall clearly define the use limits and be explicit in what the defendant must do.

13.

In this case the government did not have an agreement, or a signed agreement by the defendant waiving his rights. See: Trial Memorandum and Motions in Limine August 19, 2021; footnote on pg. 37. Likewise on Motion in Limine for the second part of defendant trial die to Bifurcation of the case. Motion in Limine.

Agreements are analyzed under contract law, and any ambiguities or doubts as to the argument are held against the government. No analytical distinction between Fed R. Evid 410 application to impeachment waiver and case in Chief, is the same reasoning, United States v. Mitchell, 633 F3d 991 (10th Cir. 2011)

In this case the government did not have an agreement, neither express or signed by the defendant, and it's the government's duty to require as a condition for holding a proffer meeting, that the defendant agree that their statements may be used for impeachment. United States v. Mezzanato, 513 US 196, and that the defendant knowingly and voluntarily waived his right. United States v. Hardwick, 544 F. 3d 565 (3rd Cir. 2008)

Without the government showing any proof that the defendant actually entered into an agreement or proved that the defendant indeed waived his right. It's the government, after the defendant objects, that bears the burden of proof to show by a preponderance of the evidence that a defendant knowingly and voluntarily waived his right, Colorado v. Connelly, 479 US 157. The Court allowed the government to use the alleged statements in their case in Chief.

The Court generally requires clear proof of the existence and terms of a proffer agreement to enforce it. United States v. Baird, 218 F. 3d 221 (3d Cir.. 2000), and a proffer agreement must be express and the burden is on the government to prove it. Unites States v. Seeright, 978 F. 2d 842 (4th Cir. 1992)

The government and the defendant had agreed to the defendant reserving his right to oppose the motion. See Motion in Limine transcript pg. 22, sec. 22-24, and more that by the time of trial and the issue had come about, the defendant had control of his defense by acting pro-se and without a hearing to exact the government to show that the defendant did waive his right. United States v. Orn Hieng, 679 F.3d 1311 (9th Cir 2011)

The court sided with the government, depriving the defendant of testifying and introducing evidence on his own behalf that could have changed the outcome of the trial.

Had the defendant been allowed to testify without the threat of a proffer that the government did not have, he could have introduced evidence and testimony that could have changed the outcome of the trial.

Trial attorney should have objected and filed a motion as the defendant did on the second part of the trial. See Motion in Limine, and the Court granted defendant motion See Exhibit 1 of Ground 3-A

The last issue in this Ground 3 is the failure to investigate/impeach government witnesses; failure to subpoena records; Cellbrite report errors created a cumulative errors in Movant's trial. Prosecutorial disclosure obligations (Brady/Giglio/Kyles) requires production of exculpatory and impeachment material, defense counsel had the duty to investigate and use impeach with known prior crimes, inconsistent statements, or altered forensic reports can establish the first Strickland prong. Prejudice exists if the evidence is material to an element or to establish credibility of a key witness. (Governing authorities: Brady v. Maryland, Giglio v. United States, Kyles v. Whitley; ineffective case law applying these standards.)

The trial counsel failed to pursue:

- Criminal history of a government witness (false, undisclosed)
- Failed to subpoena a witness
- Failure to exclude a Cellbrite report with the wrong IMEI and manually altered UTC times
(See trial trans. 9-24-21 pg 590, 7-7-22 pg 121. See Exhibit 2 of Ground 3-B)

These are classic impeachment/chain-of-custody/certainty issues. If counsel did not attempt to obtain the master Cellebrite export, did not challenge the incorrect IMEI, and did not point out the altered UTC timestamps, that is squarely within deficient performance. Prejudice follows where the Cellebrite evidence or the witness's testimony was important to the government's theory (eg. distribution, intent). Also, if the government had material impeachment information and failed to disclose it, that gives rise to a Brady/Giglio claim (and the investigative failure by counsel compounds harm).

Counsel was administratively suspended; admitted no prepared; failed to review discovery and communicate. An attorney's admitted inability to prepare admission to the court that records were not obtained due to personal problems, and failure to communicate non-preparation deprived the defendant of meaningful representation. Under Strickland, the question of whether counsel's failures were so serious that the fell below a standard of reasonably effective assistance. Prejudice is evaluated by showing a reasonable probability of a different outcome had counsel performed. See Declaration Table of Contents, Items 8, 9, 10 and Trial trans September 17, 2021 pg. 1-24, See Exhibit 3 of Ground 3-C

14.

ARGUMENT SUPPORTING RELIEF ON GROUND 4

A. APPELLATE COUNSEL WSA INEFFECTIVE FOR NOT ARGUING IN DIRECT APPAL THE CONSTITUTIONAL INVALIDITY OF MONEY LAUNDERING CONVICTIONS 18 U.S.C. 1956, 1957

The money laundering convictions in this care are constitutionally invalid because they rest on a legally nonexistent predicate offense. The government's sole theory of 'specified unlawful activity' (SUA) was that the defendant participated in a conspiracy to distribute cocaine and a conspiracy to manufacture marijuana. However, the jury expressly rejected those predicate offenses by acquitting the defendant on Count Two (attempt to possess with intent to distribute cocaine) and Count Three (manufacture of marijuana). Because the jury rejected the only criminal conduct alleged to generate unlawful proceeds, the laundering counts lack a lawful foundation and must be vacated under the Fifth and Sixth Amendment and the Due Process Clause.

Money laundering is a derivative offense. Without a valid predicate crime, there can not be laundering. The government's theory collapsed with the jury's acquittals, leaving no legally cognizable 'specified unlawful activity' to support the convictions.

The legal standard is that to sustain a conviction under 18U.S.C. 1856 OR 1957, the government must prove beyond a reasonable doubt:

1. The existence of proceeds from a 'specified unlawful activity' (SUA)

2. That the defendant knew the properly represented proceeds of unlawful activity
3. That the defendant conducted a financial transaction involving those proceeds with the required unlawful purpose.

See United States v. Yusuf 536 F.3d 178, 185 (3rd Cir. 2008)(money laundering require proof of criminal proceeds derived from specified unlawful activity).

Money laundering is not an independent crime untethered from predicate illegality; it is a derivative offense that collapses if the underlying criminal activity fails. See United States v. Santos 553 US 507, 516 (2008)

PREDICATE OFFENSE FAILURE INVALIDATES LAUNDERING CONVICTIONS

The Third Circuit has recognized that money laundering cannot exist without a predicate offense:

"Without proceeds of specified unlawful activity, there can be no money laundering offense". See United States v. Omoruyi, 260 F. 3d 291, 295 (3d Cir, 2001). Here the governments only SUA theory presented to the jury was: Conspiracy to distribute cocaine, and conspiracy to manufacture marijuana. The jury rejected both theories through acquittals on the corresponding counts. This leaves the laundering convictions without any legally recognized SUA.

Other circuits uniformly agree:

Second Circuit: "Money laundering require proof of underlying crime that produced" United States v. Piervinanzi, 23 F. 3d 670 (2d Cir. 1994)

Fifth Circuit: "If the predicate offense fails, the laundering convictions must also fail." United States v. Brown, 186 F. 3d 661, 670 (5th Cir. 1999)

Seventh Circuit: "The existence of criminal proceeds is an element of the offense, not a sentencing factor" United States v. Mandarious, 151 F. 3d 694, 706 (7th Cir. 1998)

Ninth Circuit: "Where the jury rejects the alleged unlawful activity, a laundering can not stand." United States v. Lazarenko, 564 F. 3d 1026, 1042 (9th Cir 2009)

Eleventh Circuit: "Money laundering is dependent upon proof of the underlying criminal offense." United States v. Martinelli, 454 F. 3d 1300, 1314 (11th Cir. 2006)

ACQUITTED CONDUCT CANNOT SUPPLY AN ELEMENT OF THE OFFENSE

This case in not a sentencing issue involving acquitted conduct; it is a conviction-stage defect. The Constitution forbids using acquitted conduct to establish elements of crime.

15.

The Supreme Court has made clear that ever element of an offense must be found by the jury beyond a reasonable doubt. See In re Winship, 397 US 358, 364 (1970)

Here the government;s laundering theory required proof that drug conspiracies existed. The jury rejected that factual premise Therefore:

- No unlawful source exists
- No criminal proceeds exist
- No laundering knowledge element exists

This creates a Jackson v. Virginia violation:

No rational juror could find the essential elements of money laundering when the predicate criminal activity was rejected. Jackson v. Virginia, 443 US 307, 319 (1979)

## MENS REA COLLAPSE

Money laundering requires proof that the defendant knew the funds were criminal proceeds.  See United States v. Wert-Ruiz, 228 F.3d 250, 254 (3d Cir 2000).  Because the jury found the defendant not guilty of the drug offenses, the government

necessarily failed to prove:

- Knowledge of illegal source
- Knowledge of criminal origin
- Intent to promote unlawful activity

If the predicate mens rea fails, laundering mens rea fails.  This is a derivative mental-state structure.  Other circuits agree:

Fourth Circuit: "Knowledge of illegal source is indispensable to laundering liability." United States v. Heaps, 39 f.3d 479, 484 (4th Cir. 1994)

Sixth Circuit: "Absent proof of knowing criminal source, money laundering cannot stand"

## CONSTRUCTIVE AMENDMENT OF THE INDICTMENT

If the indictment alleged specific SUA's, but the jury was permitted to convict laundering without SUA's being proven, a constructive amendment occurred.  Constructive amendment is structural error:

"A constructive amendment violates the Fifth Amendment Grand Jury Clause and requires automatic reversal." United States v. Miller, 471 U.S. 130, 140 (1985)

"A conviction must be reversed if the indictment is ineffectively altered by the evidence or jury instructions." United States v. Darario, 445 F. 3d 253, 259 (3d Cir 2006)

## UNCONSTITUTIONAL VENUE

The Sixth Amendment and Article III, subsection 2 of the United States Constitution guarantees a criminal defendant the right to be tried only in this district where the offense was committed.  Venue is not a technicality, it is a constitutional element that must be proven by the government beyond a reasonable doubt and submitted to the jury.  Perez v. United States, 280 F. 3d 145, 155 (3d Cir. 2009)

Because the unconstitutional venue applied in this case by the government was created under the money laundering charges.

The appellate counsel was ineffective for not arguing this claim to the Third Circuit Court of Appeals in direct appeal.  The appellate counsel was ineffective for failing to raise:

- Predicate-offense collapse
- SUA failure
- Constructive amendment
- Insufficient evidence
- Mens rea defects
- Acquitted conduct usage
- Due process violations
- Unconstitutional venue

16.

This satisfies Strikland v. washington, 466 US 668 (1984):

Deficient Performance: Failure to raise dispositive constitutional claims
Prejudice: Defendant stands convicted of a legally nonexistent offense

Constitutional Conclusion

Because the trial and appellate councel failed to represent the movant in this case this violates:

Due Process Clause
Sixth Amendment jury trial right
Fifth Amendment Grant jury guarantee
Proof-beyond-a-reasonable-doubt standard

RELIEF REQUESTED

The movant requests that this court:

Vacate count One, Count Four and all counts for money laundering, or an evidentiary hearing is necessary under the record in this case, alternatively a new trial.

Date March 10, 2026.

Respectfully Submitted,

Omar, Colon
Reg # : 08929-015
FCI Ray Brook
P.O.Box 900
Ray Brook, NY. 12977.

17.