Ground - 3



EXHIBIT - 3 - A

863

courtroom but she can't testify.

THE COURT: Okay. So witnesses are going to be sequestered certainly from here on out. So if Ms. Figueroa or anyone else is in the courtroom during the evidentiary portion of the government completing its case, I'm not going to permit them to testify. I'm going to enforce the sequestration.

What is the next issue, if any, from the government?

MR. COLON: Your Honor.

THE COURT: What, Mr. Colon?

MR. COLON: I just wants to put on the record that I'm objecting to that.

THE COURT: Okay. Understood.

MR. COLON: That I'm objecting because I feel that is prejudicial. My attorney can talk to the witnesses and bring it out and an investigator can do, the government can do, and I cannot do that. So that is in preparation of me trying to figure out if I really have some material, if she will be material to me. So I just put in that objection for Your Honor.

THE COURT: The objection is on the record. Thank you.

Ms. Welsh.

MS. WELSH: Your Honor, this is a little bit

864

longer, so shall I step to the podium?

THE COURT:  Sure.

MS. WELSH:  So this is slightly premature, but this may be a necessary time, given, you know, the trajectory of the case, for us to talk about an issue that we tabled of the defendant's proffer.  The proffer interview he gave and the idea that if he chooses to testify that he would be opening the door to the government introducing evidence of his -- functionally his confession that he gave during his proffer interview.

And we would also seek to question him about his prior cocaine trafficking conviction.

THE COURT:  This is an issue that was briefed?

MS. WELSH:  Yes.

THE COURT:  I don't recall offhand.  Did we argue it or did we all just agree we would wait?

MS. WELSH:  We agreed that we would wait, Your Honor.  And I think at that point that was a smart decision because where we were at the time, but I think now, given that standby counsel is new to the case, that this is a really important issue.  I wanted to get it in front of the court at my earliest convenience.  And --

THE COURT:  Well, just remind me.  I think you wanted to use proffer statement consistent with the proffer agreement if, but only if, the defendant takes the stand and

865

testifies; correct?

MS. WELSH:  That's right, Your Honor.

THE COURT:  And the same --

MS. WELSH:  And testifying is the condition precedent to our using the proffer.

THE COURT:  And the same condition precedent about his prior conviction, that is, you only wish to get it in if he testifies?

MS. WELSH:  Yes, Your Honor.

THE COURT:  Okay.  I don't need argument on it. I remember the briefing.  I was prepared to rule for the government at that time.  I agreed to defer it based on joint request that we wait until trial, which seemed efficient.

But I grant the government's motion.  If the defendant takes the stand and testifies, then pursuant to the proffer agreement, the proffer statement can be used, as well as the defendant's conviction.  Okay?

MS. WELSH:  Yes.  Thank you, Your Honor.

THE COURT:  What is the next, Mr. Colon?

MR. COLON:  Your Honor, I want to also put an objection that -- I want to say that --

THE COURT:  You can come back.

MR. COLON:  -- that this, so many of the statements that the government said I said in my proffer,

866

they were self-serving.  Mr. Alva, which we try to contact right now can testify that some of those release notes, that some of those notes, that some of those statements were self-serving by the person who did the -- typed up whatever from the proffer.  We're trying to contact Mr. Alva, another witness that I'm trying to bring because this is a situation that happened at that proffer that right now is depriving me of giving testimony.  So I am objecting to that.

THE COURT:  The objection is noted.  Thank you.

What is the next issue, Ms. Welsh?

MS. WELSH:  That's all that we have, Your Honor.

THE COURT:  All right.  Let me go over my issues and then, Mr. Colon, we'll see if you have other issues.

So I'll note on the record it is after 9:00, maybe 9:17.  You know, the jury is here after we gave them two days off.  We need to move forward.  We need to move forward soon.

What is that?

MR. COLON:  I have one more thing in regards to the issue about my previous conviction.

THE COURT:  All right.  Just briefly if you would like.

MR. COLON:  I also want to make a note, Your Honor, that a motion has been in the court, Superior Court, for two years for postconviction for this previous

867

conviction that I have.  So when I -- I want to be able to also, if the government decides to use that, and tell the jury that there is a motion in process being in Superior Court for postconviction, and I got a copy of the motion right here to send to the Superior Court.  Your Honor can check if you want.

THE COURT:  I accept your representation that there is a motion pending.

What is the government's position?

MS. WELSH:  Your Honor, when cross-examined, if the defendant wants to tell the jury there is postconviction release motion pending, that's fine.

THE COURT:  Okay.  So you can mention that. This only comes in if you choose to take the stand and testify.  So the government is not going to be able to put your prior conviction or the proffer statement into evidence before the jury unless you choose to exercise your right, which you have the complete right to do, to get under oath -- take the witness stand and testify in your own defense.

Do you understand?

MR. COLON:  Yes.

THE COURT:  We found a model jury instruction from the Third Circuit about what to tell the jury when it happens that a defendant is no longer represented by counsel

868

and that that transition happens during the trial.  So when I bring the jury in, as I will do shortly, after welcoming them back, I plan to read this instruction to them.

I will also indicate that I have appointed Ms. Bateman as standby counsel and maybe just ask Ms. Bateman if you would just stand for a second so they can see you.

Any questions about that from the government?

MS. WELSH:  No, Your Honor.

THE COURT:  No.

Mr. Colon, do you any questions about that?

MR. COLON:  I'm sorry, Your Honor.  I'm not --

THE COURT:  Sure.  When I bring the jury in, there is a model instruction I'm going to read to them that indicates that you were represented by a lawyer when the trial began, but you will be representing yourself going forward.  I'm going to introduce Ms. Bateman and indicate she is your standby counsel.

MR. COLON:  Yes.

THE COURT:  Okay.  And I will indicate that Ms. Chavar and Ms. Rossman are no longer associated with this case.

MR. COLON:  Before we move forward, Your Honor.

THE COURT:  Yes.

MR. COLON:  I have another issue is that as the

1041

whether or not you have been proven guilty beyond a reasonable doubt.

Are you -- have you made a decision? Are you prepared to tell us yet?

MR. COLON: (Clearing throat.)

Sorry, Your Honor. Well, my decision would be, was going to be based, I was represented the day that I did this, so I was trying to contact Mr. Alva to try to figure out because as I said earlier, there is statements in there that was self-serving for whoever did this.

Mr. Alva got his notes. Ms. Chavar yesterday was going to contact Mr. Alva to see if he can get the notes. He could have got the notes. That was one of the things that I wanted to cooperate with the Court. If there was a way to even contact Ms. Chavar, she could have brought the notes or if she contacted Mr. Alva. I understand what the government says that I had an opportunity to call from FDC.

THE COURT: We're not, we're not talking about that now.

MR. COLON: Yes.

THE COURT: Just have you made a decision about whether you are going to exercise your right to testify or exercise your right not to testify?

MR. COLON: Your Honor, I can't make that

1042

decision because I haven't seen the notes of Mr. Alva and I want him here to testify. That way, I can make that decision. Because although I have my attorney, and although what the Court and the prosecutor and everybody about what happened and how the conflict started or whatever, I think I have the right, but I can't exercise the right because it is an impediment right now for me.

THE COURT: I'm not going to force you to decide right just now, but the time is coming and it may well be very soon you are going to have to decide.

But what is going to happen most immediately is I'm going to bring the jury in and call on the government. They're going to rest their case. I'm going to turn to you and you can call your witnesses. It appears the only witness you can call right now is the agent, and that's fine. And once we're done with him, we'll see what's next.

And at some point this afternoon, shortly, but we're trying to get through this testimony, I'll have to inquire of the jury perhaps, perhaps it will be at the next break, I'll ask them to put together a note or something on whether they're available to come back Monday.

MR. COLON: I want to remind the Court that when we were doing the, the jury selection, one of the questions was asked that this case could probably go to Monday.

THE COURT: We did tell them that?

12-cr-162, 2014 WL 3735585 at *2 (W.D. Pa. July 28, 2014) (permitting recall of certain law enforcement witnesses so the government may present its evidence chronologically).

Consistent with the above authorities, the District of Delaware regularly permits this practice in other lengthy and/or complex trials in order to benefit jury comprehension. See, e.g., United States v. William Cook, 16-cr-50-CFC (Jan. 2019) (allowing recall of Postal Service agent throughout trial); United States v. Brian Wilson, 16-cr-93-LPS (Sept. 2018) (allowing recall of FBI case agent throughout trial); United States v. Gibson, 15-23-RGA (Mar. 2018) (allowing recall of FBI case agents throughout trial). Here, as in the above examples, the government will exercise this practice judiciously.

Accordingly, the Court should permit the government to recall agents to the stand during its case-in-chief.

### J.   Impeachment Evidence

The government does not anticipate presenting Colon's prior cocaine trafficking conviction, or his proffer statement, in its case-in-chief. However, the government believes these sources are legitimate for cross-examination of the defendant or rebuttal.

Briefly, the defendant was convicted in 2003 (and served until December 2007) by the State of Delaware for trafficking cocaine. His conviction falls within the ten year period contemplated by Federal Rule of Evidence 609 if the court measures the time period by the date of indictment, rather than the start of trial.[14] Even accepting a stronger burden under 609(b) of

---

[14] The Rule does not dictate whether the ten-year period should be assessed from the date of trial or from the earliest date of offense. As in United States v. Thomas, __ F. App'x __, 2020 WL 3074030, at *3 (3d Cir. 2020) (unpublished), here, Colon's December 2007 release is over ten years old by the time of trial, but within the timeframe of when the cocaine conspiracy began in December 2016. For this reason, this Court should join the District Court's decision in Thomas in admitting the conviction under Rule 609(b) as within ten years. The Third Circuit upheld that

36

oving substantial probative value, if Colon disclaims knowledge of the contents of Valdez's truck or what Valdez and Aviles Camberos were doing in Delaware (and at his homes) on prior occasions, the government submits that this prior conviction is highly probative of mens rea and not unduly prejudicial on cross-examination. See United States v. Givan, 320 F.3d 452, 461 (3d Cir. 2003) ("Knowledge, intent, and lack of mistake or accident are well-established non-propensity purposes for admitting evidence of prior crimes or acts."); United States v. Boone, 279 F.3d 163, 187 (3d Cir. 2002) (holding prior drug conviction admissible to dispute contention that defendant was ignorant "go-fer" unaware of contents of what he delivered); United States v. Cruz, 326 F.3d 392, 395 (3d Cir. 2003) ("A defendant's parole status has been held to be probative of why a defendant would take extra steps to hide his criminal activity.").

Introducing the proffer statements (for purposes of cross-examination or rebuttal) stands on even firmer ground. Shortly after his arrest and following the appointment of prior counsel Daniel Paul-Alva, the members of the Delaware Attorney General's Office and the U.S. Attorney's Office interviewed Colon on May 11, 2017. The terms of the federal government's proffer with Colon were set forth in a proffer agreement, a contemporaneous draft version of which the government has sent to prior defense counsel and can produce at the pretrial hearing as necessary.[15]

---

decision on other grounds while casting doubt on the justifications for calculating the rule thus.

But particularly where the resulting trial delay is almost entirely of the defendant's making, the Court should find that this conviction is admissible regardless of how the Court may calculate the ten-year period under Rule 609(b).

[15] The government is prepared to present a draft proffer letter that was sent by the prosecutor to a case agent for printing on the day of the proffer and ultimately utilized during the meeting. The agreement is identical to other agreements used in the case that same week. The government has diligently searched its files and requested all prior defense counsel to search their files but has been unable to locate the signed copy of the proffer letter. However, as the government could demonstrate at a hearing if necessary, the defendant and his counsel signed the draft proffer agreement, just as they signed the state's proffer agreement, and therefore the government wishes

37

Paragraph 3 of the Agreement states:

> The Government may use any statements made or information provided by your client, or on his behalf, during the interview to cross-examine your client at trial or any other legal proceeding, and during rebuttal at trial or any other legal proceeding if your client testifies.

If Colon testifies, the government should be permitted to utilize Colon's proffer statements to impeach his testimony on cross-examination or in rebuttal. That use is consistent with the terms of the proffer agreement and consistent with governing case law.

Federal Rule of Evidence 410(a)(4) and Federal Rule of Criminal Procedure 11(f) generally bar the admissibility of statements made in connection with plea negotiations. However, a defendant may knowingly and voluntarily waive the rights set forth in those Rules. See United States v. Mezzanatto, 513 U.S. 196, 210 (1995) (noting that an agreement to waive the rights embodied in Rule 410 is enforceable absent evidence it was made "unknowingly or involuntarily"). As the Court observed in Mezzanatto, "The admission of plea statements for impeachment purposes *enhances* the truth-seeking function of trials and will result in more accurate verdicts." Id. at 204.

The Third Circuit has since endorsed an expansive view of enforcing the terms of proffer agreements and extended some such agreements to allow introduction of evidence in the case-in-chief. See, e.g., United States v. Hardwick, 544 F.3d 565, 569 (3d Cir. 2008); see also United States v. Raisley, 466 F. App'x 125, 130 (3d Cir. 2012) (non-precedential opinion); United States

---

to enforce the terms of the proffer agreement.

Dales, 425 F. App'x 178, 180 (3d Cir. 2011) (non-precedential opinion); United States v. Vella, 414 F. App'x 400 (3d Cir. 2011) (non-precedential opinion).

As these cases recognize, Colon was on specific notice about the terms of the agreement when he and his defense counsel signed it on May 11, 2017, and he should be held to those terms. Should Colon testify at trial or affirmatively offer evidence directly contrary to his own statements made in the proffer session, the government will seek to offer rebuttal or impeachment evidence.

### K.     Bifurcated Forfeiture Proceeding

The government is preparing jury instructions for the four counts of conviction, and anticipating that defendant will want the jury to consider the forfeiture of the three noticed properties – 4010 Kirkwood St. Georges Road, 916 Marshall Street, and 614 Rogers Ave. – if the jury convicts on any of the drug counts. See Fed. R. Cr. P. 32.2(b)(5). The government is amenable to presenting forfeiture post-conviction to either the Court or the jury, and is proposing a special verdict form in its jury instructions.

The government anticipates that it will rely on much of the evidence discussed above, along with the Rogers Ave. evidence discussed in the next section, and may present evidence on Colon's links to Zemi Property Management (the owner of two of the three properties) to lay the foundation for extinguishing Colon's interests should the fact-finder find the properties connected to the drug activities of conviction.

### L.     Rogers Ave. Evidence Admissible During Forfeiture Proceeding

The final portion of the trial for which the government seeks to introduce evidence concerns the searches of 614 Rogers Ave. in Aston, Pennsylvania on May 6, 2017 and May 8, 2017. The government uncovered evidence which strongly linked unlisted resident Guadalupe

39

| | | | |
|---|---|---|---|
| | | | register trap and trace prior to May 25, 2016, is GRANTED. His other requests are DENIED. The Court's reasoning for these decisions was stated at the pretrial conference. Signed by Judge Stephanos Bibas on 6/23/2022.(etg) (Entered: 06/23/2022) |
| | /2022 | 569 | ORAL ORDER as to Omar Morales Colon, Shakira Martinez: The Government's Motions in Limine (D.I. 541) is GRANTED IN PART and DENIED IN PART. The following are ADMITTED: cooperator plea agreements, lay witness testimony by Investigative Research Specialist Campbell, expert testimony by Maolin Li, expert testimony by Ryan Talbot, wiretap call recordings, transcripts of wiretap calls, and summary charts and transcripts. The Government's request to allow law enforcement at counsel table and to recall case agents is GRANTED. The Government's request to admit evidence of Mr. Colon's refusal to provide a handwriting sample is GRANTED, and its request that the Court instruct the jury as provided in D.I. 564 is GRANTED. The Government's request to exclude the verdict results from Mr. Colon's 2021 trial is GRANTED. The Government's request to admit Mr. Colon's arrest record and previous convictions is GRANTED; but the Government shall not introduce this evidence to show that Mr. Colon has a propensity to act in a certain way. The Government's request to admit Mr. Colon's proffer statements is DENIED. The Government's motion to admit business records is CONDITIONALLY GRANTED; the Government shall identify the specific records for the Court prior to admission. The Government's motion to admit co-conspirator statements is CONDITIONALLY GRANTED; the Government shall make the necessary showings for co-conspirator statements at trial. The Government's motion to admit expert testimony by Joshua Romig is CONDITIONALLY GRANTED; Mr. Romig may discuss drug trafficking operations, but he may discuss counter-surveillance operations only if the Government shows that counter-surveillance occurred. The Government's motion to cross-examine defense witnesses about their convictions and certain drug arrests is GRANTED IN PART; the Government may cross-examine about convictions within the requirements of Rule 609, but the Court withholds ruling on whether the Government may cross-examine regarding certain drug arrests. The Court withholds ruling on the Governments motion to admit the Cellebrite reports. The Court's reasoning for these decisions was stated at the pretrial conference. Signed by Judge Stephanos Bibas on 6/23/2022. (etg) (Entered: 06/23/2022) |
| | 6/24/2022 | 570 | Letter to The Honorable Stephanos Bibas from Janet Bateman regarding Colon Letter to Court. (Bateman, Janet) (Entered: 06/24/2022) |
| | 6/24/2022 | 571 | Letter to The Honorable Stephanos Bibas from Omar Colon regarding Pretrial Conference. (Bateman, Janet) (Entered: 06/24/2022) |
| | 6/24/2022 | 572 | ORAL ORDER as to Omar Morales Colon, Shakira Martinez -- The Government's sealed ex parte motion (D.I. 566) is GRANTED. Signed by Judge Stephanos Bibas on 6/24/22. (ntl) (Entered: 06/24/2022) |
| | 6/24/2022 | 573 | ORAL ORDER as to Omar Morales Colon, Shakira Martinez -- The Government's Motion in Limine to Preclude Photographs (D.I. 563) is CONDITIONALLY GRANTED. Defendant Omar Morales Colon may not introduce or discuss the photographs identified by the Government in its motion. But if the testimony of the Government's witness contradicts the content of the photographs, the Court may permit them to be admitted for impeachment purposes. Signed by Judge Stephanos Bibas on 6/24/22. (ntl) (Entered: 06/24/2022) |
| | 06/27/2022 | 574 | Letter to The Honorable Stephanos Bibas from Assistant United States Attorney Jennifer K. Welsh regarding Response to D.I. 571. (Welsh, Jennifer) (Entered: 06/27/2022) |
| | 06/30/2022 | 575 | MOTION for Disclosure of Tax Returns by USA as to Omar Morales Colon, Shakira Martinez. (Welsh, Jennifer) (Entered: 06/30/2022) |

Ground -3

EXHIBIT -3- B

Valdez - cross                                                          590

truck that you owned; correct?

A.    Correct.

Q.    Long before you were approached to drive across country?

A.    Right.

Q.    I see?

A.    See --

Q.    That's okay.  I don't need an explanation.

Excuse me for one moment.  I think I'm done.

THE COURT:  Sure.

(Defendant and his counsel confer.)

BY MS. CHAVAR:

Q.    All right.  Now, you have never been arrested before this incident; isn't that correct?

A.    No, I have.  I have.

Q.    You have been arrested?

A.    I have.

Q.    You don't have any prior convictions, though, do you?

A.    A DUI back in 2006.

Q.    I see.  I see.

A.    Yes.

Q.    But you have friends or you have known of people who have been arrested and in federal custody?

MS. WELSH:  Objection.

BY MS. CHAVAR:

Valdez - cross

590

truck that you owned; correct?

A.    Correct.

Q.    Long before you were approached to drive across country?

A.    Right.

Q.    I see?

A.    See --

Q.    That's okay.  I don't need an explanation.

Excuse me for one moment.  I think I'm done.

THE COURT:  Sure.

(Defendant and his counsel confer.)

BY MS. CHAVAR:

Q.    All right.  Now, you have never been arrested before this incident; isn't that correct?

A.    No, I have.  I have.

Q.    You have been arrested?

A.    I have.

Q.    You don't have any prior convictions, though, do you?

A.    A DUI back in 2006.

Q.    I see.  I see.

A.    Yes.

Q.    But you have friends or you have known of people who have been arrested and in federal custody?

MS. WELSH:  Objection.

BY MS. CHAVAR:

Page 121

THE COURT: He's allowed to impeach the witness based on prior crimes, so if it's true, answer yes. If it's not, say no.

BY DEFENDANT COLON:

Q. You never committed any crimes?

A. Any crimes? No.

Q. No? You didn't have a charge for falsifying a check?

A. Yes, when I was 18. Yes.

Q. That's not a crime; right? Is that a crime?

A. I think that was for a year.

Q. Did you have previous DUI?

A. I did, yes.

Q. When was your latest DUI before this happened?

MS. WELSH: Objection, Your Honor.

THE COURT: I think he is allowed to try to impeach him.

THE WITNESS: 2003, 2005, I don't remember. It's been a long time.

BY DEFENDANT COLON:

Q. How about driving while suspended in

Page 122

2016 while in California for the DUI previous that you got?

A.    For the DUI previous?

Q.    You had a previous DUI in California?

A.    Right.

Q.    And then you got caught driving while suspended in 2016.

A.    Okay.

Q.    Is that correct?

A.    Yes.

Q.    So you didn't have no license in California at that time because -- right?

A.    Correct.

Q.    So you stated that Aviles Camberos somehow asked you to -- asked you to do this drive because he need -- he needed somebody that had a driver's license?

A.    Well, he needed somebody that could buy a vehicle.

Q.    That wasn't the question.

Did he needed somebody -- did he ever told you that he needed somebody with a driver license to drive?

A.    Yes.

Ground 3

EXHIBIT - 3-C

1

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

UNITED STATES OF AMERICA,          :          CRIMINAL ACTION
                                   :
          Plaintiff,               :
v                                  :
                                   :
OMAR MORALES COLON,                :
                                   :
          Defendant.               :          NO. 17-47-LPS-1

- - -

Wilmington, Delaware
Friday, September 17, 2021
*Jury Trial - Volume A*

- - -

BEFORE:   HONORABLE LEONARD P. STARK, U.S.D.C.J., and a jury

- - -

APPEARANCES:


          UNITED STATES ATTORNEY'S OFFICE
          BY:  WHITNEY CLOUD, ESQ.,
          And, JENNIFER K. WELSH, ESQ.
          Assistant United States Attorneys

                    Counsel for Government


          LAW OFFICE OF DINA CHAVAR
          BY:  DINA CHAVAR, ESQ.

                    Counsel for Omar Morales Colon


Valerie J. Gunning                 Brian P. Gaffigan
Official Court Reporter            Official Court Reporter

2

- oOo -

P R O C E E D I N G S

(REPORTER'S NOTE:  The following jury trial was held in open court, beginning at 8:30 p.m.)

THE COURT:  Good morning, everyone.

(The attorneys respond, "Good morning, Your Honor.")

THE COURT:  I'll have the government introduce the case, please.

MS. WELSH:  Yes, Your Honor.  I'm sorry.  I'm a little rusty.

THE COURT:  Okay.

MS. WELSH:  Your Honor, Jennifer Welsh for the government with Whitney Cloud, co-counsel in the case. And we're here in the matter of United States versus Omar Morales Colon.

Can I remove my mask?

THE COURT:  You may while we're speaking, yes.

MS. WELSH:  And it's Criminal Action No. 17-47. The defendant is present with counsel.  And the government is ready to proceed.

THE COURT:  Okay.  Thank you very much.

Good morning, Ms. Chavar.

MS. CHAVAR:  Good morning, Your Honor.

THE COURT:  You are ready to proceed as well;

3

correct?  Ms. Chavar, are you ready to proceed?

MS. CHAVAR:  I am.  And may I introduce you to Marisa Rossman, an attorney who will be assisting me during the jury selection?

THE COURT:  Good morning, Ms. Rossman. Welcome.

MS. ROSSMAN:  Good morning.  Thank you.

THE COURT:  Good morning, Mr. Colon.

So let's start with this continuance request we got late in the date yesterday.

Ms. Chavar, why don't you come to the podium. There is really not much in here, and as best I can tell, you don't indicate you are not prepared for trial but if I misunderstand, let me know.  And you can take your mask off while speaking if you want to.

MS. CHAVAR:  I do.  And I thank you.

Your Honor, there is not much in that motion because I think it's pretty simple.  What I wanted to bring to the Court's attention is that there are certain tasks that Mr. Colon has asked me to do, and they can be put in two groups.  One of them would be to locate witnesses and the other would be to subpoena certain records, and which, because they would go to the defense, I'm reluctant to name those records.  I'm happy to let Your Honor know at sidebar, but ...

4

THE COURT:  Sure.  I'm not looking for specifics.

MS. CHAVAR:  Thank you.

THE COURT:  Really mostly I want to know what is your view because I read this motion as Mr. Colon would like certain things, but I'm ready for trial.

MS. CHAVAR:  My view is this:  I have an investigator looking for those witnesses.  I don't know how many he will find before Monday.

As for the records, and I pondered this yesterday afternoon for awhile after I was through meeting with Mr. Colon.  How -- I don't know how can I say, I don't know what is in them, whether I am fully prepared for trial.

I looked back at some of my notes and notes that I had with prior counsel.  It has been a consistent request.  It's not something new.  I looked at that first, or later in the day, rather.

We met, Your Honor, Mr. Colon and I.  I'll just get right to the point.  I did as much as I could as far as focusing on the case, learning the case, reviewing the evidence because it's, it's a lot.  To that end, I have working knowledge of the case.

And now we have this.  And it was one of those things where, in the last month, it was on my list.  I had difficulties trying to get an investigator onboard.  A lot

couple more questions.

MS. CHAVAR:  Yes.

THE COURT:  It sound like what you are saying is some or all of what Mr. Colon is asking you to do, he has asked for some time; that is, these witnesses and these records, he didn't ask you just for the first time yesterday to locate them or subpoena them.  Is that right?

MS. CHAVAR:  That is correct, Your Honor.  And I apologize for that.  I think it came -- well, I know it came up briefly in our first meeting and then he raised it again at end of our meeting in July, after we went through a lot of other.

THE COURT:  Was any of this new to you yesterday or did you know all of it was something he wanted by July?

MS. CHAVAR:  I knew it was something he wanted by July and I lost track of that.

THE COURT:  And the subpoenaed record, the records he wants subpoenaed, you have subpoenaed them but you just haven't gotten them returned yet; is that right?

MS. CHAVAR:  I have not subpoenaed them yet. When he brought it up yesterday, it was like I remembered from the week before or whenever we finished pretrial motions.  And I spoke to him and I said, okay, we're going to turn our direction to that now and then I got caught up in getting an investigator, getting that going.  I just --

5

of difficulties with that.

And before you know it, then time goes by, and at our meeting yesterday, Mr. Colon said to me, at the end of the meeting, do you think that we're going to get these records in time?

It usually takes 21 days.  It says on their notice 21 days, so I don't know.  I don't know how they would respond to a court order with a specific date to produce, which I would make the 20th.  And that's where it's at.  He has asked for a modest continuance, very modest, 30 days.  He made that clear to me, like could we just get 30 days, no more.

I, in my paper, extended that because that would be the end of October to a date in November because of scheduling difficulties I have in October.

Your Honor, in a case like this, where I was appointed maybe four months ago, I'm ready for a trial as far as knowing the case and understanding the government's theory and formulating a strategy for defense.  But it's kind of, I don't know that I could stand here, that any attorney should stand here and say I am fully prepared, there is no need to do anything further when Mr. Colon has brought this to my attention and had a reasonable discussion about it.

THE COURT:  All right.  Let me ask you just a

THE COURT:  All right.

MS. CHAVAR:  And I apologize, Your Honor.

THE COURT:  Thank you.  Let me see what the government wants to say about this.

MS. WELSH:  Your Honor, I'm going say with slightly more urgency than the things we said before because we are coming to another trial date as close as we have ever come and here we are with another continuance request.

Here we stand four years and four months since the defendant was arrested.  By the way, also four years and four months since potential testifying cooperators were arrested.  A jury is here to be impaneled, and the night before jury selection, the defendant reiterates his request for witnesses and documents that he claims are going to change the trajectory of this case.

They will not.  There are no magic witnesses here.  There are no magic documents that are going to explain away why the defendant showed up to the parking lot of a hotel with almost $400,000 to meet with somebody who had 17 kilograms of cocaine and why he had a secret underground marijuana bunker.

His goal as always is not to, you know, come up with documents or witnesses that are going materially impact the case.  It's to run out the clock so that our cooperators will decide it is not worth their while to continue to wait

7

THE COURT:  Okay.  And then your motion does say there were factors that arose that were beyond your control which delayed the completion of certain tasks requested by Mr. Colon.  I take it is one of them the difficulty you had finding an investigator?

MS. CHAVAR:  Yes, as well as complications only other cases.

THE COURT:  Is there anything else that was unforeseen that you feel comfortable saying to me in open court?  If there is anything.

MS. CHAVAR:  Yes, I would just say difficulties with three other cases that was unforeseen and required my immediate attention in the month of August.  One in the very beginning of August.

THE COURT:  I don't --

MS. CHAVAR:  I'm sorry.

THE COURT:  Okay.  I really am looking for, I'm making a list of the things that were unforeseen.  I understand difficulty finding an investigator, complications with other cases.  Is there anything else on that list, not more detail but other items that would have been unforeseen to you that you feel comfortable talking about?

MS. CHAVAR:  Well, in the week that the pretrial motions were due, I had a personal issue that prevented me from working at full speed that week.

10

get this case in a good trajectory to trial on time, and because of that, and because of discovery, the defendant knows now who is going to be testifying, who the cooperators are, and giving him any additional time is giving him additional time to attempt to obstruct the administration of justice, which even just the delay has done that, but he can get even more bold in that regard.

Prior counsel was apparently asked, I believe, to undertake some of these tasks and chose not to do so.

If this were some sort of an alibi witness, by the way, we would have expected to receive that information before, since we made a reciprocal discovery request, but if it was a game changing witness, someone would expect that prior counsel or that counsel would have known to go talk to those people. What we suspect is they are folks that have information potentially about, you know, the defendant's larger activities.

But again this trial is pretty limited. It's about the six month cocaine conspiracy that ended in the parking lot of the hotel that day with the money exchanged for the kilos, and it's about the underground marijuana bunker. And we are unaware of any witnesses who could come save the day here. And that is after a long investigation and a post-arrest interview with the defendant, a proffer interview with the defendant at which he laid out, you know,

to be sentenced.

And to some extent, his strategy has worked. The government's case has changed and evolved over the case of four years, and we have fewer witnesses starting Monday than we would had this case gone to trial a couple of years ago. Some important witnesses. Our case is still strong, we've evolved, but we have lost witnesses and we would continue to lose witnesses even if there were a short continuance, potentially.

You know, it seems on its face like a reasonable request to just move -- if you don't know the whole history of this case, to just move by 30 days, but given the circumstances, the logistics here, the jury is here. Our witnesses are prepared to testify, some of whom have moved on by the way because of the passage of time, retired, have to travel. Everybody is prepared to come for trial next week.

If the defendant has witnesses that he would like to have here, he's got until the middle of next week to get them here. And my guess is that they're people that he knows and knows where to find them.

Giving him additional time -- I would also note, Your Honor, that the government filed its trial brief in this case on August 18th, which was before defense motions were due. We did that on purpose to sort of help, you know,

11

his potential defense.  We don't expect that there are any sort of magic witnesses here.

We don't know for sure, but that's our expectation.  And as for the records that the defendant seeks now, the defendant, I'm sure the Court has noticed this as well, but I will just say he has certain issues, certain facts that he is very focused on.  In the motion to suppress the wiretap, those became clear in the subsequent motions, renewed motions to suppress the wiretap.  For example, there are some phone records that he thought would be really, really critically important to his case.  I don't know if those are the documents he's looking to subpoena here.  You know, he has sort of issues that he believes the government is lying about in some way.

Those issues are only very, very a little bit relevant here.  Putatively, we could try our case completely without any phone records basically and you still have the defendant showing up to the parking lot that day with the money, the kilos are there and the bunkers underneath the house.

So I think it's important that counsel is not required to be constitutionally effective, counsel is not required to run down absolutely every single lead, subpoena every single document, talk to every single potential witness.  If there were a material witness here who would

change the trajectory of this case, that would obviously be something that counsel should have done, any counsel, over the course of the last four years and four months.  We strongly suspect that's not the case.

Now, Your Honor, we ask that you deny the continuance request and we ask that we select the jury today, that we go to trial on Monday; that the defendant spend the next several days through the investigator or through counsel seeking out these witnesses and attempting to compel them to testify.  Perhaps, you know, the Court could issue an order for these documents, but we would ask that the trial not be continued for that reason.

And, Your Honor, if the Court is inclined to deny the continuance request, which we hope that the Court is, we would ask that sort of a brief record be made not in our presence, ex parte, so that the Court can understand who these witnesses are, what these documents are, because if we are to argue about this potentially post-conviction, I assume that, you know, the Third Circuit would want to know exactly what it is that the defendant intended to bring to court next week.

And, Your Honor, you know, the Court is very busy.  Counsel is all very busy in terms of other cases.  November, personally, I have another trial.  I wouldn't be surprised if the Court has several other trials.  Every time

13

this gets moved, it requires a significant reshuffling.  Law enforcement resources are wasted, the Government's significant resources are wasted.  We've prepared all of our witnesses.  We prepared all of our documents and we are ready to go and it is time.

THE COURT:  Just one question.  You suggested if I were to continue the trial by 30 or 45 days, you might lose yet another witness.  Are you saying that there's a theoretical possibility none of us can see the future or do you really have a good faith belief that there is a specific witness or witnesses who may not be available?

MS. WELSH:  I have a significant witness in mind, Your Honor.  The defendant knows who that is.  I'm inclined not to say who that is.

THE COURT:  That's fine.  I don't need the details.

MS. WELSH:  I don't want to imply we've been told 30 days will be a deal breaker here, but every time this gets moved, that conversation of whether or not that person will come testify, that conversation has to start anew every time the trial gets moved, and even if it were to be moved by 30 days given the schedule in that person's case, 30 days is a big deal.

THE COURT:  Okay.  Thank you very much.

Ms. Chavar, anything you want to add?

14

MS. CHAVAR:  Very briefly.  I don't know anything about the representations Ms. Welsh made about what his agenda, what Mr. Colon's agenda was or strategy was or prior continuance.  I don't know anything about that.  I can't speak to it.

I was appointed May 18th.  I have not had any issues in my attorney/client relationship with him.  He never talked about a continuance.  He didn't even bring it up until the end of the meeting yesterday with the inquiry, do you think it's possible that we're even going to get these on time.

Now, admittedly, I don't know what the test is.  I don't know if I have to come here and show that I have a belief that the records that he wants will change the day.  I don't know that.  If it is, Your Honor, I can't say that.

I know that -- I mean, I can't say it either way, whether it will or will not.  I don't know if I agree with the representation that defense counsel is not obligated to run down every witness or every lead provided by the defendant to be effective.

It's my understanding that I am supposed to seek out witnesses that are brought to my attention, but admittedly, I don't know if that's the definitive position, that I have to run down every one of them.  I'm just saying

that this is something he did ask prior counsel to get. He asked me. And I will be remiss if I did not bring it to the Court's attention today and to say I didn't do it. I didn't have the time. I lost track of things and I don't think it's unreasonable for him to ask for 30 days.

Thank you, Your Honor.

THE COURT: Thank you.

MS. CHAVAR: Your Honor, would you indulge me a minute?

THE COURT: Go right ahead.

(Pause while Ms. Chavar and the defendant conferred.)

THE COURT: Ms. Chavar, I'm ready whenever you are.

MS. CHAVAR: Okay. Your Honor, I apologize. We're okay, Your Honor. Thank you.

THE COURT: Okay.

MS. CHAVAR: Nothing further.

THE COURT: All right. So a couple things. Half of our jury pool, approximately 40, are here. They will be ready for us in just a few minutes. I'm mindful of that, but that principally means I'm going to have to make a decision pretty soon about whether we're going forward with jury selection and with trial.

I think regardless of whether we're going

16

forward or not, it's probably the right thing to do next to excuse the government, have the ex parte discussion so I have a better understanding as to what the defense is really asking.  Don't go far.  We'll bring you right back.  Then it's quite likely that I'm going to need to take at least a short break to give this a little thought, but I recognize I need to make a decision.  We need to know which way we're going.  So we'll ask the AUSAs to step out for a few moments.

(The Assistant United States Attorneys were excused from the courtroom.  Following portion ordered sealed by the Court, bound separately.)

*      *      *

THE COURT:  I'll note for the record we reopened the courtroom.  This discussion is not under seal and we've been rejoined by the two AUSAs.

For your benefit, I'll advise you that I have received a proffer ex parte from Ms. Chavar listing for me the documents that she would be hoping to have in time for trial next week as well as a list of witnesses which I believe is nine witnesses.  And I have had her list them by name for me and tell me about how they may fit into this trial.

With respect to the documents, I have been, without objection, I have been permitted to tell you that

17

they relate to the seven T-Mobile phones, seven T-Mobile phones.

MS. CHAVAR:  Seven.

THE COURT:  Seven, yes.  And I am asking the government whether you have any additional records related to those seven T-Mobile phones that have not been produced or that possibly maybe have been produced but didn't get to Ms. Chavar.

But are there any documents relating to how you requested those T-Mobile phones or records that you got back relating to the T-Mobile phones that have not been produced?

MS. CLOUD:  Your Honor, Whitney Cloud for the government.

No.  We have produced the records to Ms. Chavar, we produced the records to prior counsel.  There are no additional records that we have that have not been produced.

Further, T-Mobile would not be able, relating to these prepaid phones, would not be able to produce records at this time.

THE COURT:  They would not be able to produce additional records.

MS. CLOUD:  Correct.

THE COURT:  Even under a court order?

MS. CLOUD:  Even under court order.

THE COURT:  And how do you know that?

MS. CLOUD:  I know that because T-Mobile no longer maintains these records because they're prepaid phones and it's been four years, so that's outside the time for which they retain these records.

THE COURT:  Okay.

MS. CLOUD:  We asked them specifically for this, so we know, we know this to a certainty.

THE COURT:  Okay.  All right.  We're going to take a short recess.

Is there anything you want to add, Ms. Chavar?

MS. CHAVAR:  No, Your Honor.

THE COURT:  Okay.  Let's take a short recess.

(Brief recess taken.)

*     *     *

(Proceedings reconvened after recess.)

THE COURT:  Have a seat.

All right.  Well, the first order of business is to give you a decision on the defendant's motion to continue trial.

I have decided to deny the motion.  We're going to go forward with this trial as scheduled and we'll begin jury selection just as quickly as we can.

I have a few jury-related issues to talk about before we bring the jurors up, and we are already well behind the schedule that we were trying to follow, but I'm

20

In terms of the documents, it appears that based on the discussion that defense authorized me to have with the government that no additional documents exist.  Not only does the government not have additional T-Mobile related documents, they represent that given the passage of time, no more documents exist.  So clearly that is not a basis for a continuance.

And in terms of the witnesses, I won't go into any details.  A record has been made ex parte but given the nature of the charges, given the nature of the evidence that the government has, I believe that those witnesses would make a minuscule, if any, difference to how this trial would proceed, and therefore I find no meritorious basis to continue with respect to those witnesses.

I do need to balance all of that against the government's interest here.  And I think, and find, that the government would be enormously prejudiced were I to continue this trial yet again.  Obviously, the government is prepared, and they prepared their witnesses and prepared their documents.  This is not probably even the first time the government has prepared for this trial.

If the government represents, and I accept their representation, that they have lost witnesses from their witness list given the delays that have been encountered in just getting to this point, that is the many times we had

hopeful that we can get this jury selected today that we have scheduled.

The motion to continue trial comes in at the last moment. It was filed late in the day, the day before jury selection. In my view, defendant's counsel is prepared to proceed with this trial, and I know she did quite a lot of work to be prepared. I recognize she has only been on the case since May and that was a lot of work to do to get to this point but -- and from everything I can tell, she did the work that was necessary. She did the work she thought would put her in a good position to competently and effectively represent Mr. Colon in this trial which has been on the calendar for awhile.

We had the pretrial conference. We had all the motions practice. No indication that defense counsel wasn't prepared. And from my discussions this morning both in open court and ex parte, I continue to believe that she is prepared to proceed and to effectively represent Mr. Colon.

It's true that effective counsel does not have to necessarily do everything that her client asks her to do.

And I should add, I am informed in part by the ex parte proffer. I have no basis to believe that anything that in terms of the bucket of documents or witnesses that the continuance is based on would make any meaningful difference to how this trial would proceed.

22

calendar in the next 30 to 45 days, that is a challenge in itself, but not one that I considered too much.

But anyway, the government -- sorry, the defendant's motion for continuance is denied.

Ms. Chavar, any questions about that?

MS. CHAVAR:  No, Your Honor.  I understand the Court's ruling.  I thank Your Honor for hearing us this morning, and just for purposes of the record, I'll just note my exception.

THE COURT:  Of course.

MS. CHAVAR:  Thank you, Your Honor.

THE COURT:  I should have also added, I know Ms. Chavar is well aware of this, we won't get to the defense case until some time next week.  Obviously we're not calling any witnesses today, and I expect the government, I expect you know their case pretty well.

MS. CHAVAR:  Um-hmm.

THE COURT:  They've got a list of a fair number of witnesses, so you've probably got a couple days next week also to keep trying to track down these witnesses.

MS. CHAVAR:  And I am doing so, Your Honor. Thank you.

THE COURT:  All right.

MS. CHAVAR:  And just so Your Honor is aware, I had some discussions with AUSAs Welsh and Cloud during the

to reschedule this trial and they represent that even a continuance of 30 days might cause them to lose an additional witness, and even if they didn't, clearly rescheduling the trial at the last minute would lead to, you know, having to prepare yet again, wasting government resource, wasting law enforcement resources, and I just see absolutely no basis to impose those costs on the government.

I will add to that although that is more than enough already, we had roughly 40 jurors waiting elsewhere in the courthouse who have indicated they're ready to perform their duty of citizenship to serve on this jury in a time of COVID. It's unfortunately at some risk, we think a risk that we have managed effectively but some risk for them to leave their jobs, leave their families to be here with us today to assemble in a group and be available to us as potential jurors, and we have another group of roughly 40 that is due in the building in an hour or so to also make themselves available to us. It would be prejudicial and unfortunate to all of them who went to that trouble to now turn them away just so another group like them would have to assemble roughly 30 days and take all the risks attendant and all costs with that.

I won't go into any detail about what it would do to my schedule, and when if ever -- "if ever" is an exaggeration, but when and how I would get you back in my

break.  And there is some raw data from T-Mobile that they can produce which is what they used to make this chart that they produced of the calls, and I think that is a portion of what Mr. Colon is seeking.  So we've made some progress in that regard.  It's certainly not anything that is held back.  It's the raw data.

So I can get that from them later today.

THE COURT:  Okay.  Do you want to confirm that for the record?

MS. WELSH:  Your Honor, we have agreed to produce it.  I want to make sure that the record is clear that these are CSC files that we produced to the defendant himself long ago.  He has had them for a long time.  We produced them straight to the defendant and, in fact, we had to put them into a different format besides CSC files because he couldn't view them in prison, so he has had this.  He personally has had this material for quite some time, since before COVID.

THE COURT:  Okay.  But you will reproduce them.

MS. WELSH:  We will reproduce them.  Absolutely.

THE COURT:  Okay.

MS. CHAVAR:  That would be with his counselor at the FDC?  Is that where it was produced?

MS. CLOUD:  Yes, it was produced directly to the FDC, I want to say it was in February of 2019.  We heard

this request before.  We complied with the request back then.  We introduced the CSC files.  Everything is fine, so ...

THE COURT:  Okay.  Thank you.

MS. CHAVAR:  Thank you, Your Honor.

THE COURT:  Is there anything else the government wants to say about my ruling or about the continuance or anything else?

MS. WELSH:  No, Your Honor.

THE COURT:  All right.  Just quickly.  Let's update the record on the jury pool, make sure we're all in agreement about what is going to happen next.

And some of this is just to make the record, because thank you to counsel, we've had various email communications to get us from the pretrial conference to this point.

128 jurors were noticed for this trial.  As this morning, 90 jurors remained in the pool.  70 had answered our COVID questionnaire, 20 had not.

As to the jurors who did not answer the COVID questionnaire, the parties asked that we not excuse them en masse, so we honored that request and those jurors remained in the pool as of this morning.

38 jurors as of this morning had been excused.  There was a dispute about four of them.  Defense wanted to